IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| In re:<br><br>BRON Media Holdings USA Corp.,*et al.*,<br><br>Debtors in a Foreign Proceeding. | Chapter 15<br><br>Case No. 23-56798-pmb<br><br>Jointly Administered |

**MOTION OF FOREIGN REPRESENTATIVE
FOR AN ORDER GRANTING CERTAIN PROVISIONAL RELIEF**

COMES NOW BRON Media Corp.[1], in its capacity as the Canadian Court-appointed and authorized foreign representative (the "Foreign Representative") for the above-captioned debtors (collectively, the "Debtors") which are the subjects of a reorganization proceeding (the "CCAA Proceeding") commenced before the Supreme Court of British Columbia (the "Canadian Court") under Canada's *Companies' Creditors Arrangement Act* (the "CCAA"), respectfully moves (the "Motion") as follows:

**RELIEF REQUESTED**

1.      Pursuant to Sections 105(a), 362, 363, 364, 365(e), 1517, 1519, and 1521 of title 11 of the United States Code (the "Bankruptcy Code"), the Foreign Representative respectfully

---

[1] The U.S. Debtors in these Chapter 15 cases and the last four digits of their U.S. Federal Employer Identification Numbers are as follows: BRON Creative USA Corp (1363); BRON Digital USA, LLC (0276); BRON Life USA Inc. (1178); BRON Media Holdings USA Corp (0637); BRON Releasing USA Inc. (6368); BRON Studios USA Inc. (8784); BRON Ventures 1 LLC (5066); BRON Studios USA Developments Inc. (7529); Bakhorma, LLC (6944); Drunk Parents, LLC (5462); Fables Holdings USA, LLC (8085); Fables Productions USA INC. (5169); Gossamer Holdings USA, LLC (2582); Gossamer Productions USA, Inc. (7876); Harry Haft Productions, Inc. (6144); Heavyweight Holdings, LLC f/k/a Harry Haft Films, LLC (8193); I am Pink Productions, LLC (6681); Lucite Desk, LLC (2546); National Anthem Holdings, LLC f/k/a BCDC Holdings, LLC (6943); National Anthem ProdCo Inc. (8637); Oakland Pictures Holdings, LLC (4988); Pathway Productions, LLC (Del. Incorporation No. 3081); Robin Hood Digital PC USA Inc. (2499); Robin Hood Digital USA, LLC (4302); Solitary Holdings USA, LLC (3013); Surrounded Holdings USA LLC (8868); and Welcome to Me, LLC (8500) (hereinafter collectively referred to as the "Debtors"). The Debtors' principal offices are located at 1700-Park Place, 666 Burrard Street, Vancouver, British Columbia, Canada.

1

requests entry of an order, substantially in the form attached hereto as **Exhibit A**, providing the following relief (collectively, the "Requested Provisional Relief"):

    a.    recognizing and enforcing in the United States, on a provisional basis, the initial order, as currently constituted and as may be later amended or revised, (the "Initial Order") that, among other things:

        (i)    authorizes the Debtors to enter into, perform and borrow, as an initial draw, up to $1,751,409.00 under that certain interim facility (the "Interim DIP Facility");

        (ii)    grants the Interim DIP Lender (defined below) a charge against the Debtors' property (save for property subject to encumbrances in favor of Comerica Bank) up to a maximum amount of $1,751,409.00 (the "Interim DIP Lender Charge") as security for all obligations to the Interim DIP Lender under the Interim DIP Facility;

        (iii)    grants the Debtors' directors and officers a charge (save for property subject to encumbrances in favor of Comerica Bank) against the Debtors' property for an aggregate amount of $250,000.00 (the "Directors' Charge") as security for the Debtors' indemnification obligations owed to the Debtors' directors and officers in their capacity as such; and

        (iv)    grants the Monitor, the Monitor's legal counsel, the Debtors' (including the Foreign Representatives') legal counsel a charge (save for property subject to encumbrances in favor of Comerica Bank) against the Debtors' property for an aggregate amount of $250,000.00 (the "Administration Charge") as security for the professional fees and expenses incurred in connection with the CCAA Proceeding and Chapter 15 Cases;

    b.    granting, on a provisional basis, to and for the benefit of the Interim DIP Lender, certain protections afforded by the Bankruptcy Code, including those protections provided by Section 364(e) of the Bankruptcy Code; and

    c.    applying Sections 362 and 365(e) of the Bankruptcy Code in these chapter 15 cases on a provisional basis, pursuant to Sections 105(a), 1519(a) and 1521(a)(7) of the Bankruptcy Code.

## JURISDICTION AND VENUE

    2.    This Court has jurisdiction to consider the Motion pursuant to Sections 157 and 1334 of Title 28 of the United States Code.  Recognition of a foreign proceeding and other matters

under Chapter 15 of the Bankruptcy Code are core matters under Section 157(b)(2)(P) of Title 28 of the United States Code.  These cases have been properly commenced pursuant to Section 1504 of the Bankruptcy Code by the filing of Chapter 15 petitions (the "Petitions") and the *Omnibus Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Omnibus Petition," and together with the Petitions, the "Petitions for Recognition") for recognition of the CCAA Proceeding under Section 1515 of the Bankruptcy Code.

3.      The Foreign Representative, in its capacity as authorized foreign representative, consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper in this Court and this District pursuant to 28 U.S.C. § 1410. The Debtors do not have principal offices in the United States.  The Debtors' principal assets in this district are the security retainers paid to and held by the Debtors' counsel in Atlanta, Georgia in advance of filing the Debtors' *Petitions for Recognition.  See, e.g., In re Avanti Commc'n Grp. PLC*, 582 B.R. 603, 613–14 (Bankr. S.D.N.Y. 2018) (finding that a retainer and a 2023 Indenture governed by New York satisfied the property requirement); *In re U.S. Steel Can. Inc*., 571 B.R. 600, 611 (Bankr. S.D.N.Y. 2017) (holding undrawn $100,000 retainer in New York bank account paid by foreign debtor to its United States counsel property of debtor in the United States); *In re Cell C Proprietary Ltd.,* 571 B.R. 542, 552 (Bankr. S.D.N.Y. 2017) (holding foreign debtor eligible under section 109(a) on the basis of retainer paid to international law firm representing debtor, deposited in New York bank account); *In re Inversora Eléctrica de Buenos Aires S.A.,* 560 B.R. 650, 655 (Bankr. S.D.N.Y. 2016) (finding sufficient assets in the United States, among which included an attorney retainer deposited in New York); *See also In re The Alno AG.*, No. 28-12651

(Bankr. D. Del. November 20, 2018); *In re Octaviar Administration Pty Ltd.*, 511 B.R. 361 (Bankr. S.D.N.Y. 2014).

4.      The statutory predicates for the relief requested herein are Sections 105, 362, 363, 364, 365(e), 1517, 1519, and 1521 of the Bankruptcy Code.

## **BACKGROUND**

5.      BRON Media Holdings USA Corp along with its affiliated companies in Canada and the U.S. (collectively,  the "BRON Group"),  develops, produces and sells motion pictures, series television, and digital media content, which includes animation and interactive gaming. To date, the BRON Group has produced or executive produced more than 125 productions. It has received hundreds of honors and produced or executive produced films that have combined to receive 38 Academy Award nominations and 6 Academy Awards. Through its successful and culture-shifting productions, the BRON Group established itself as a reputable producer, trusted by many established, elite players in the North American entertainment industry. *See* Gilbert Decl., ¶ 1.  The BRON Group has operated in Canada since 2010, and currently operates in Canada from facilities in British Columbia, where it maintains its headquarters. *Id.*

6.      Additional information about the Debtors' business and operations, the events leading up to the filing of the Petitions for Recognition, and the facts and circumstances surrounding the CCAA Proceeding and the Chapter 15 Cases, is set forth in the contemporaneously filed *Declaration of Aaron Gilbert in Support of the Debtors' Chapter 15 Petitions and First Day Pleadings in Foreign Proceeding* (the "Gilbert Declaration").   The Gilbert Declaration is incorporated herein by reference.

7.      On July 18, 2023, the Debtors filed applications under the CCAA to commence a restructuring proceeding under the supervision of the Canadian Court.  On July 19, 2023, the

Canadian Court entered the Initial Order, a true and correct copy of which is attached hereto as **Exhibit B**, appointing Grant Thornton Limited ("GTL" or the "Monitor") to monitor and assist the Debtors in their business and financial affairs in accordance with section 23 of the CCAA. The Canadian Court also appointed the Foreign Representative to assist the Debtors in accordance with paragraphs 52-53 of the Initial Order.

8. Among other things, the Initial Order authorizes the Debtors to enter into the interim financing documents to fund the post-filing expenditure of the Debtors pursuant to the terms of that certain DIP Loan Agreement, dated July 18, 2023 (the "DIP Loan Agreement") between each of the Debtors, as borrowers, and Creative Wealth Media Lending LP 2016, as lender (in such capacity, the "Interim DIP Lender"). A copy of the DIP Loan Agreement is attached as Exhibit 3 to the Gilbert Declaration. As set forth in the DIP Loan Agreement and as approved by the Initial Order, the Debtors are authorized to incur a portion, $1,751,409.00, of the DIP Facility. Initial Order, ¶ 35. The Initial Order grants the Interim DIP Lender a charge and security on all of the Debtors' property (save for property subject to encumbrances in favor of Comerica Bank) up to $1,751,409.00. The Interim DIP Lender Charge is entitled to priority as set forth in paragraphs 41 and 43 of the Initial Order.

9. The Initial Order also stays the continuation or commencement of actions and proceedings against the Debtors and their directors and officers, including any actions or proceedings that may be brought in these Chapter 15 Cases, to ensure that dissident creditors cannot bypass the CCAA Proceeding by commencing litigation or taking other actions outside of Canada to obtain a greater recovery than other, similarly situated creditors. Initial Order, ¶ 15. As further explained below, the Debtors' directors and officers are integral to their restructuring

efforts and have rights of indemnification against the Debtors and have been granted by the Canadian Court the Directors' Charge.

10.    On July 19, 2023, the Foreign Representative filed the Petitions for Recognition under Chapter 15 of the Bankruptcy Code for recognition of the CCAA Proceeding, thereby commencing the Debtors' Chapter 15 cases.

## BASIS FOR RELIEF

**A.    *Section 1519 of the Bankruptcy Code Authorizes the Requested Provisional Relief.***

11.    Section 1519 of the Bankruptcy Code authorizes the Court to grant the Foreign Representative certain enumerated relief pending the Court's ruling on the Petitions for Recognition:

(a)    From the time of filing a petition for recognition until the court rules on the petition, the court may, at the request of the foreign representative, where relief is urgently needed to protect the assets of the debtor or the interests of the creditors, grant relief of a provisional nature, including —

(1)    staying execution against the debtor's assets;

(2)    entrusting the administration or realization of all or part of the debtor's assets located in the United States to the foreign representative or another person authorized by the court, including an examiner, in order to protect and preserve the value of assets that, by their nature or because of other circumstances, are perishable, susceptible to devaluation or otherwise in jeopardy; and

(3)    any relief referred to in paragraph (3), (4) or (7) of section 1521(a).

11 U.S.C. § 1519(a).

12.    Section 1519(a)(3) of the Bankruptcy Code expressly authorizes the Court to grant the Foreign Representative any relief referenced in, among others, Section 1521(a)(7) of the Bankruptcy Code. Section 1521(a)(7), in turn, permits a court to grant any relief, with certain limited exceptions that are not applicable here, that would be available to a bankruptcy trustee, and therefore authorizes the Court apply Sections 105, 362, 363, 364(e) and 365(e) of the Bankruptcy

Code to the Chapter 15 Cases on a provisional basis and grant provisional recognition to foreign court orders.

13.    Sections 105(a), 1519 and 1521(a)(7) of the Bankruptcy Code also grant the court authority to extend the protections of Sections 362 of the Bankruptcy Code not only to the Debtors, but also to their directors and officers, as non-Debtors, in these Chapter 15 Cases.  Indeed, courts have extended and applied the automatic stay to non-debtor entities in Chapter 11 cases where the relief is necessary to prevent irreparable harm.  *In re W.C. Wood Corp., Ltd*., No. 09-11893 (Bankr. D. Del. June 1, 2009) [Docket No. 16] (extending stay protection to officers and directors); *In re Fraser Papers Inc*., No 09-12123 (Bankr. D. Del. June 19, 2009) [Docket No. 18] (same).

**B.    *The Requested Provisional Relief Is Justified.***

14.    Provisional relief under Section 1519 requires satisfaction of the standard for injunctive relief.  11 U.S.C. § 1519(e); *In re Innua Can. Ltd*., No. 09-16362, 2009 WL 1025088, at *3 (Bankr. D. N.J. Mar. 25, 2009).  That same standard applies to a request to extend and apply the automatic stay to a non-debtor entity.  To that end,  various courts nationwide have applied a standard which requires a movant to show that: (a) it has a likelihood of success on the merits; (b) it will suffer irreparable harm if the injunction is denied; (c) granting provisional relief will not result in even greater harm to the nonmoving party; and (d) the public interest favors such relief.  *See e.g. In re Andrade Gutierrez Engenharia S.A.*, 645 B.R. 175, 180 (Bankr. SDNY 2022); *Rogers v. Corbett*, 468 F.3d 188, 192 (3d Cir. 2006) (citing *Kos Pharm., Inc. v. Andrx Corp*., 369 F.3d 700, 708 (3d Cir. 2004) (citations omitted)).  The Foreign Representative submits that the standard is satisfied in these Chapter 15 Cases.

     i.      <u>There Is a Substantial Likelihood of Recognition</u>.

15.     As detailed more fully in the Omnibus Petition and the Gilbert Declaration, there is a substantial likelihood of recognition of the CCAA Proceeding as a foreign main proceeding, or, in the alternative, a foreign nonmain proceeding.  The CCAA Proceeding is a "foreign proceeding" and the Foreign Representative is a "foreign representative," as those terms are defined in sections 101(23) and (24) the Bankruptcy Code. In addition, these Chapter 15 Cases were duly and properly commenced by filing the Petitions for Recognition in accordance with Section 1515 of the Bankruptcy Code and Rule 7007.1 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").  Moreover, the CCAA Proceeding is a foreign main proceeding as defined in Section 1502 of the Bankruptcy Code because the Debtors' center of main interests is located in Canada for the reasons set forth in the Omnibus Petition and Gilbert Declaration.  To the extent this Court determines that the CCAA Proceeding (with respect to the Debtors incorporated outside of Canada) is not recognized as a foreign main proceeding, such CCAA Proceeding is a foreign nonmain proceeding because each such Debtor has an establishment within the meaning of Section 1502 of the Bankruptcy Code in Canada.

     ii.      <u>The Debtors Will Suffer Irreparable Harm if the Request for Provisional Relief is Denied</u>.

16.     Provisional recognition and relief under Sections 105(a), 362, 363, 364, 365(e), 1517, 1519, and 1521 of the Bankruptcy Code in these cases is important to prevent irreparable damage to the interests of the Debtors' estates, creditors, and the efficacy of the CCAA Proceeding. The stay in Section 362 of the Bankruptcy Code is one of the fundamental protections provided by bankruptcy law, halting all collection efforts, harassment and foreclosure actions and providing debtors with necessary breathing room from the financial pressures that caused the bankruptcy filing.  Section 365(e) of the Bankruptcy Code provides a debtor with similar relief by prohibiting

counterparties from terminating contracts with the debtor solely because of the debtor's bankruptcy filing. Although the Initial Order implements a stay preventing parties from taking actions against the Debtors and their assets wherever located, the Debtors have intellectual and other property in the United States that may be subject to enforcement actions by certain creditors and litigants that may not believe they are bound by the Initial Order.[2] *See In re Daebo Int'l Shipping Co.*, 543 B.R. 47, 54 (Bankr. S.D.N.Y. 2015) (holding that "the Court finds that under [Canadian] law the stay order plainly was intended to have worldwide effect . . .[Canadian] law (and the stay order) are clear, and it is consistent with the purpose of Chapter 15 to give effect to them").

17.     If these protections under Sections 362 and 365(e) were unavailable, the Debtors could face immediate and irreparable harm resulting from the potential termination of critical leases and contracts and the piecemeal loss of assets from individual creditor collection and enforcement efforts.

18.     The Eleventh Circuit has recognized the need to avoid abnormally excessive or deleterious piecemeal litigation. *Ambrosia Coal & Constr. Co. v. Morales*, 368 F.3d 1320, 1333 (11th Cir. 2004). In the Chapter 15 context, courts have recognized the need to provide provisional relief in order to ensure the orderly distribution of a debtor's assets in a single proceeding, and prevent piecemeal enforcement against a debtor's assets across multiple jurisdictions. *See, e.g., In re The Aldo Group, Inc.*, No. 20-11060 (KBO) (Bankr. D. Del. May 8, 2020) [Docket No. 29] (granting provisional relief, including recognition and enforcement of the Initial Order entered in the CCAA Proceeding and application of Sections 362, 364(e) and 365(e)); *In re Groupe Dynamite Inc.*, No. 20-12085 (CSS) (Bankr. D. Del. Sept. 9, 2020) [Docket No. 25] (granting provisional relief, including recognition and enforcement of the Initial Order entered in the CCAA Proceeding

---

[2] The Foreign Representative and the Debtors reserve all rights and remedies with respect to any party that takes action against the Debtors or their assets inconsistent with the Initial Order and Canadian law.

and application of sections 362 and 365(e)); *In re Unique Broadband Sys. Ltd.*, No. 19-11321 (BLS) (Bankr. D. Del. June 13, 2019) [Docket No. 12]; *In re Kraus Carpet Inc.*, No. 18-12057 (KG) (Bankr. D. Del. Sept. 12, 2018) [Docket No. 17] (granting recognition on a provisional basis); *In re RCR Int'l Inc.*, No. 18-10112 (LSS) (Bankr. D. Del. Jan. 24, 2018) [Docket No. 11] (same); *In re Essar Steel Algoma Inc.*, No. 15-12271 (BLS) (Bankr. D. Del. Nov. 10, 2015) [Docket No. 30] (same).

19.    In addition, the Debtors will suffer immediate and irreparable harm if the Interim DIP Lender refuses to allow the Debtors access to the Interim DIP Facility approved by the Canadian Court because the Interim DIP Lender is not protected pursuant to Section 364(e) of the Bankruptcy Code. The Debtors require immediate access to a portion of the Interim DIP Facility to fund working capital requirements, other general corporate purposes and the costs of administering their CCAA Proceeding until a final hearing can be held on the Petitions for Recognition. With the assistance of GTL, the Debtors have prepared projections that provide the projected cash flow for the Debtors on a weekly basis following entry of the Initial Order.

20.    Essential funding under the Interim DIP Facility is explicitly contingent on recognition of the Interim DIP Facility. More specifically, Section 8, Sub-Sections 2(a) and 3(b) of the Interim DIP Facility make it a predicate condition to the Debtors receiving a second and third advance that the DIP Facility has been provisionally recognized by this Court.

21.    As discussed in the Gilbert Declaration, the Debtors have run out of cash to continue operations unless the additional, immediate funding is provided through the DIP Facility. The funding provided by the DIP Facility is therefore necessary to give vendors, employees and other critical parties who deal with the Debtors confidence that the Debtors have access to funds to meet their post-filing obligations to such parties. See Gilbert Declaration, ¶ 27. If such requested

relief is not granted, the Debtors will ultimately be unable to meet their obligations and maintain the operation of their business.

22.     The Interim DIP Lender has agreed to provide the Interim DIP Facility upon the terms outlined in the DIP Loan Agreement. *See* Gilbert Declaration, ¶ 29. The terms of the DIP Loan Agreement were negotiated, proposed and entered by the Debtors and the Interim DIP Lender without collusion, in good faith and at arm's length. The Interim DIP Facility will preserve and maintain the going concern value of the Debtors' estates, which, in turn, is integral to maximizing recoveries for the Debtors' stakeholders.

23.     Accordingly, the Foreign Representative requests that the Court, on a provisional basis, recognize the liens, charges and other protections negotiated in the Interim DIP Facility approved by the Canadian Court and afford the Interim DIP Lender the protections available under Section 364(e) of the Bankruptcy Code. Cause exists to grant the requested relief pursuant to Sections 1519 and 1521(a)(7) of the Bankruptcy Code because the Debtors require immediate access to the funds under the Interim DIP Facility and the Interim DIP Lender has requested, and may not make the funds available unless they are afforded these protections, including the protections of Section 364(e) of the Bankruptcy Code.

24.     Courts have previously granted similar relief requested in Chapter 15 proceedings. *See, e.g., Essar Steel Algoma Inc*., No. 15-12271 (Bankr. D. Del. Nov. 10, 2015) [Docket No. 30]; *Arctic Glacier Int'l, Inc.*, No. 12-10605 (Bankr. D. Del. Feb. 23, 2012) [Docket No. 28]; *In re Catalyst Paper Corp*., No. 12-10221 (Bankr. D. Del. Feb. 8, 2012) [Docket No. 60]. Absent immediate interim financing relief, the Debtors and their creditors will suffer immediate and irreparable harm.

25.     As described more fully in the Gilbert Declaration, the Debtors may face immediate and irreparable harm if the commencement or continuation of actions against the directors and officers and their assets are not enjoined.  The directors and officers in question are essential to managing the Debtors' business and ability to implement a successful restructuring. Gilbert Declaration ¶ 26.  Further, the Debtors' directors and officers have indemnification rights and have been granted a Directors' Charge against certain of the Debtors' property.

     iii.     <u>There Will Be No Harm to Creditors if the Provisional Relief Is Granted</u>.

26.     The Debtors' creditors will not be harmed by the requested provisional relief as it will largely preserve the status quo and will enable the Debtors to continue to finance their operations for the short time necessary for the Court to rule on the Petitions for Recognition.  In fact, granting the request for provisional relief will benefit the Debtors' creditors because it will ensure that the value of the Debtors' assets is preserved for the benefit of all interested parties. Indeed, as stated in the legislative history to section 362 of the Bankruptcy Code:

> The automatic stay also provides creditor protection.  Without it, certain creditors would be able to pursue their own remedies against the debtor's property.  Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally.  A race of diligence by creditors for the debtor's assets prevents that.

> H.R. Rep. No. 95-595, at 340-42 (1977), *reprinted* in 1978 U.S.C.C.A.N. 5963, 6297.

Similarly, the legislative history to section 365(e) provides:

> Subsection (e) invalidates <u>ipso factor</u> [sic] or bankruptcy clauses. These clauses, protected under present law, automatically terminate the contract or lease, or permit the other contracting party to terminate the contract or lease, in the event of bankruptcy.  This frequently hampers rehabilitation efforts.  If the trustee may assume or assign the contract under the limitations imposed by the remainder of the section, then the contract or lease may be utilized to assist in the debtor's rehabilitation or liquidation.

> *Id*. at 348-49, 1978 U.S.C.C.A.N at 6304-05.

27.     The Foreign Representative submits that there will be no harm to creditors if the Foreign Representative's request for provisional relief is granted.

iv.     <u>The Public Interest Favors Granting the Provisional Relief</u>.

28.     As noted above, the requested provisional relief is consistent with the policy underlying bankruptcy law and is in the public interest because it will facilitate the Debtors' efforts to pursue and complete a successful restructuring for the benefit of the Debtors' creditors and other stakeholders. *See In re W.R. Grace & Co.*, 475 B.R. 34, 208 (D. Del. 2012) (emphasizing that "[i]n the bankruptcy context, there is a general public policy weighing in favor of affording finality to bankruptcy judgments."); *In re Tribune Co*., 477 B.R. 465, 475 (Bankr. D. Del. 2012) (stating "there is also a strong public interest in the swift and efficient resolution of bankruptcy proceedings"); *Grimes v. Genesis Health Ventures, Inc. (In re Genesis Health Ventures, Inc.*), 280 B.R. 339, 346 (D. Del. 2002) (explaining "[p]ublic policy weighs in favor of facilitating quick and successful reorganizations of financially troubled companies"); *Rehabworks, Inc. v. Lee (In re Integrated Health Servs, Inc.)*, 281 B.R. 231, 239 (Bankr. D. Del. 2002) (emphasizing "[i]n the context of a bankruptcy case, promoting a successful reorganization is one of the most important public interests") (citations omitted).

29.     In addition, granting the provisional relief is in the public interest because it promotes cooperation between jurisdictions in cross-border insolvencies, an express purpose of Chapter 15 of the Bankruptcy Code:

(a)     The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of —

(3)     fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;

(4)     protection and maximization of the value of the debtors' assets; and

(5)     facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501(a).

30.     For the reasons stated above, courts have frequently granted requests for similar provisional relief in Chapter 15 cases. *See In re Cellfor Corp.*, No. 11-86263-PWB (Bankr. N.D. Ga. Dec. 22, 2011) [Docket No. 15] (order granting a temporary restraining order to protect a Canadian debtor's American assets); *See also, Essar Steel Algoma Inc., et al*., No. 15- 12271 (Bankr. D. Del. Nov. 10, 2015) [Docket No. 30]; *Arctic Glacier Int'l, Inc.*, No. 12-10605 (Bankr. D. Del. Feb. 23, 2012) [Docket No. 28]; *In re Angiotech Pharm., Inc*., No. 11-10269 (Bankr. D. Del. Jan. 31, 2011) [Docket No. 26] (order granting provisional relief, including protections of automatic stay and 365(e)); *In re MAAX Corp.*, No. 08-11443 (Bankr. D. Del. July 14, 2008) [Docket No. 22] (order granting provisional relief, including protections of 365(e)).

## <u>NOTICE</u>

31.     The Foreign Representative will provide notice of this Motion consistent with Bankruptcy Rule 2002(q). The Foreign Representative proposes to notify all creditors and parties in interest of the filing of the Petitions for Recognition and the Foreign Representative's request for entry of the Final Order in the form and manner set forth in the *Motion of Foreign Representative for Order (I) Scheduling Hearing on Omnibus Petition Under Chapter 15 of The Bankruptcy Code For Recognition of a Foreign Main Proceeding and for Additional Relief and Assistance Under 11 U.S.C. §§105(a), 1507, and 1521 and (II) Specifying Form and Manner of Service of Notice of Hearing*, filed contemporaneously herewith. The Foreign Representative submits that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## **CONCLUSION**

WHEREFORE, for all of the reasons stated above, the Foreign Representative respectfully requests that this Court: (a) enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein; and (b) grant such other and further relief as this Court deems just and proper.

Dated: July 20, 2023                                    JONES & WALDEN LLC

*/s/ Cameron M. McCord*
Cameron McCord
Georgia Bar No. 143065
Mark Gensburg
Georgia Bar No. 213119
Attorneys for Debtors
699 Piedmont Ave NE
Atlanta, Georgia 30308
(678) 701-9235
cmccord@joneswalden.com
mgensburg@joneswalden.com

*Counsel for Debtors and Foreign
Representative*

15

## <u>EXHIBIT A</u>

**Proposed Provisional Relief Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **In re:** | **Chapter 15** |
| **BRON Media Holdings USA Corp.,***et al.*, | **Case No. 23-56798-pmb** |
| **Debtors in a Foreign Proceeding.** | **Jointly Administered** |

## <u>ORDER GRANTING PROVISIONAL RELIEF</u>

Upon the *Motion of Foreign Representative, for an Order Granting Certain Provisional Relief* (the "<u>Motion</u>"),[1] in its capacity as the Canadian Court-appointed and authorized foreign representative (the "<u>Foreign Representative</u>") for the above-captioned debtors[2] (the "<u>Debtors</u>") in a reorganization proceeding (the "<u>CCAA Proceeding</u>") commenced under Canada's *Companies' Creditors Arrangement Act* (the "<u>CCAA</u>") pending before the Supreme Court of British Columbia (the "<u>Canadian Court</u>"), for entry of a provisional order (this "<u>Order</u>"), pursuant to Sections 105(a), 362, 363, 364(e), 365(e), 1517, 1519, and 1521, of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "<u>Bankruptcy Code</u>") granting the Requested Provisional Relief as defined and described in the Motion; and the Court having jurisdiction to consider the Motion

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[2] The U.S. Debtors in these Chapter 15 cases and the last four digits of their U.S. Federal Employer Identification Numbers are as follows: BRON Creative USA Corp (1363); BRON Digital USA, LLC (0276); BRON Life USA Inc. (1178); BRON Media Holdings USA Corp (0637); BRON Releasing USA Inc. (6368); BRON Studios USA Inc. (8784); BRON Ventures 1 LLC (5066); BRON Studios USA Developments Inc. (7529); Bakhorma, LLC (6944); Drunk Parents, LLC (5462); Fables Holdings USA, LLC (8085); Fables Productions USA INC. (5169); Gossamer Holdings USA, LLC (2582); Gossamer Productions, Inc. (7876); Harry Haft Productions, Inc. (6144); Heavyweight Holdings, LLC f/k/a Harry Haft Films, LLC (8193); I am Pink Productions, LLC (6681); Lucite Desk, LLC (2546); National Anthem Holdings, LLC f/k/a BCDC Holdings, LLC (6943); National Anthem ProdCo Inc. (8637); Oakland Pictures Holdings, LLC (4988); Pathway Productions, LLC (Del. Incorporation No. 3081); Robin Hood Digital PC USA Inc. (2499); Robin Hood Digital USA, LLC (4302); Solitary Holdings USA, LLC (3013); Surrounded Holdings USA LLC (8868); and Welcome to Me, LLC (8500) (hereinafter collectively referred to as the "Debtors"). The Debtors' principal offices are located at 1700-Park Place, 666 Burrard Street, Vancouver, British Columbia, Canada.

2

and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334, 11 U.S.C.
§§ 109 and 1501; and consideration of the Motion and the relief requested therein being a core
proceeding pursuant to 28 U.S.C. § 157(b)(2)(P); and the Debtors having consented to the Court's
authority to enter a final order consistent with Article III of the U.S. Constitution; and venue being
proper before this Court pursuant to 28 U.S.C. § 1410; and due and proper notice of the provisional
relief sought in the Motion having been provided; and it appearing that no other or further notice
need be provided; and a hearing having been held to consider the relief requested in the Motion
(the "Hearing"); and upon the Gilbert Declaration, the verified Chapter 15 petitions and all other
pleadings filed contemporaneously with the Motion, the record of the Hearing and all of the
proceedings had before the Court; and the Court having found and determined that the provisional
relief sought in the Motion is in the best interests of the Debtors, creditors and all parties in interest
and that the legal and factual bases set forth in the Motion establish just cause for the relief granted
herein; and after due deliberation and sufficient cause appearing therefor;

**THIS COURT HEREBY FINDS AND DETERMINES THAT**:

A.      The findings and conclusions set forth herein constitute this Court's findings of fact
and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedures (the
"Bankruptcy Rules") made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To
the extent any of the following findings of fact constitute conclusions of law, they are adopted as
such.  To the extent any of the following conclusions of law constitute findings of fact, they are
adopted as such.

B.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and
1334.

C.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

D.     Venue for this proceeding is proper before this Court pursuant to 28 U.S.C. § 1410.

E.     The Foreign Representative has demonstrated a substantial likelihood of success on the merits that (a) the CCAA Proceeding is a "foreign main proceeding" as that term is defined in Section 1502(4) of the Bankruptcy Code or, alternatively, with respect to certain Debtors, the CCAA Proceeding is a "foreign nonmain proceeding" as defined in Section 1502(5) of the Bankruptcy Code, (b) the Foreign Representative is a "foreign representative" as that term is defined in Section 101(24) of the Bankruptcy Code, (c) all statutory elements for recognition of the CCAA Proceeding are satisfied in accordance with Section 1517 of the Bankruptcy Code, (d) upon recognition of the CCAA Proceeding as a foreign main proceeding, Section 362 of the Bankruptcy Code will automatically apply in these Chapter 15 cases pursuant to Section 1520(a)(1) of the Bankruptcy Code, and (e) that application of Section 365(e) on an interim basis to prevent contract counterparties from terminating their prepetition contracts with the Debtors is entirely consistent with the injunctive relief afforded by the automatic stay under Section 362.

F.     The Foreign Representative has demonstrated that (a) the commencement of any proceeding or action in the U.S. against Debtors and its business and all of its assets should be stayed pursuant to Sections 1519, 1521, and 105(a) of the Bankruptcy Code, which protections, in each case, shall be coextensive with the provisions of Section 362 of the Bankruptcy Code, to permit the fair and efficient administration of the CCAA Proceeding, including a reorganization pursuant to a plan of compromise or arrangement, pursuant to the Initial Order and any other applicable orders of the Canadian Court, for the benefit of all stakeholders, and (b) the relief requested in the Motion will neither cause an undue hardship nor create any hardship to parties in interest that is not outweighed by the benefits of the relief granted herein.

G.    The Foreign Representative has demonstrated that without the protection of Sections 362 and 365(e) of the Bankruptcy Code, there is a material risk that the Debtors' creditors, including counterparties to certain of the Debtors' leases and contracts, may take the position that the commencement of the CCAA Proceeding or these Chapter 15 cases authorizes them to terminate such contracts or accelerate obligations or exercise remedies thereunder. Such termination or acceleration will severely impair the Debtors' restructuring efforts and result in irreparable damage to the Debtors' business and the value of Debtors' assets, and substantial harm to Debtors' creditors and other parties in interest.

H.    The Foreign Representative has demonstrated that without the protections afforded to the Interim DIP Lender under Section 364(e), there is a material risk that the Debtors will be unable to obtain the requisite financing to continue their business operations and fund their restructuring proceedings, which will significantly impair and potentially result in irreparable damage to the value of the Debtors' assets.

I.    The Foreign Representative has demonstrated to the Canadian Court that the incurrence of indebtedness under the Interim DIP Facility and the granting of liens and a charge negotiated in connection with the Interim DIP Facility is necessary to prevent irreparable harm to the Debtors because, without such financing, the Debtors will be unable to continue operations and fund their restructuring proceedings, which will significantly impair the value of their assets, and the Canadian Court has approved the Interim DIP Facility as being appropriate and the amount that the Debtors have been authorized to borrow is reasonably necessary for the continued operations of the Debtors in the ordinary course of business.

J.    The Foreign Representative has demonstrated to the Canadian Court that the terms of the Interim DIP Facility are fair and reasonable and were entered into in good faith by the

5

Debtors and the Interim DIP Lender and that the Interim DIP Lender would not have extended financing without the provisions of this Order and the Court's recognition of the protections set forth in the Initial Order relating to the Interim DIP Facility.

K.      The Foreign Representative has demonstrated to the Canadian Court that absent the relief granted herein, there is a material risk that one or more parties in interest will take action against the Debtors or their assets.  As a result, the Debtors may suffer immediate and irreparable injury, loss, or damage for which there is no adequate remedy at law and therefore it is necessary that this Court grant the relief requested in the Motion with notice as provided in the motion. Further, unless this Order is entered, the Debtors' assets could be subject to efforts by creditors to control, possess, or execute upon such assets and such efforts could result in the Debtors suffering immediate and irreparable injury, loss or damage by, among other things, creditors (a) interfering with the jurisdictional mandate of this Court under Chapter 15 of the Bankruptcy Code, and (b) interfering with or undermining the success of the CCAA Proceeding.

L.      The Foreign Representative has demonstrated that no injury will result to any party that is greater than the harm to the Debtors' business, assets, and property in the absence of the relief requested in the Motion.

M.      The Debtors' creditors will not suffer any significant harm by the requested provisional relief, as the relief will ensure the value of the Debtors' assets are preserved, protected and maximized for the benefit of all creditors.

N.      The Foreign Representative has demonstrated that, in the interest of comity, the purpose of Chapter 15 is carried out by granting recognition and giving effect to the Initial Order.

O.      The interests of the public and public policy of the U.S. will be served by entry of this Order.

6

P.      The Foreign Representative and Debtors are entitled to the full protections and rights available pursuant to Section 1519(a)(1)-(3) of the Bankruptcy Code.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is **GRANTED** as set forth herein.

2.      The Initial Order, as currently constituted and as may be later amended or revised, is hereby given full force and effect on a provisional basis, including, without limitation, the sections of the Initial Order (a) authorizing the Debtors to obtain credit under the Interim DIP Facility in the amount of  $1,751,409.00 and granting to the Interim DIP Lender the Interim DIP Lender Charge to authorize the Debtors to enter into, perform and borrow under the Interim DIP Facility, (b) staying the commencement or continuation of any actions against the Debtors and their assets, (c) imposing a stay with respect to claims or actions against the Debtors' directors and officers or their assets in connection with the directors' or officers' positions at the Debtor, and (d) granting the Directors' Charge and Administration Charge.

3.      While this Order is in effect, the Foreign Representative and the Debtors are entitled to the full protections and rights pursuant to Section 1519(a)(1), which protections shall be coextensive with the provisions of Section 362 of the Bankruptcy Code, and this Order shall operate as a stay of any execution against the Debtors' assets within the territorial jurisdiction of the United States.

4.      While this Order is in effect, pursuant to Sections 1519(a)(3) and 1521(a)(7) of the Bankruptcy Code, Sections 362 and 365(e) of the Bankruptcy Code are hereby made applicable in these Chapter 15 Cases to the Debtors and their property within the territorial jurisdiction of the United States, and (b) Section 362 of the Bankruptcy Code is hereby made applicable to the

Debtors' directors and officers and their property within the territorial jurisdiction of the United

States.

5.      Pursuant to 11 U.S.C. § 1519(a) and 1521(a)(3) and (7), all persons and entities,

other than the Foreign Representative and its representatives and agents, are hereby enjoined from:

a.      execution against any of the Debtors' and their directors and officers (the
        "Protected Parties") assets;

b.      the commencement or continuation, including the issuance or employment of
        process, of a judicial, quasi-judicial, administrative, regulatory, arbitral, or other
        action or proceeding, or to recover a claim, including, without limitation, any and
        all unpaid judgments, settlements or otherwise against the Debtors or other
        Protected Parties, which in either case is in any way related to, or would interfere
        with, the administration of the Debtors' estates in the CCAA Proceeding;

c.      taking or continuing any act to create, perfect or enforce a lien or other security
        interest, setoff or other claim against the Debtors or other Protected Parties or any
        of their property or proceeds thereof, other than the filing of any registration to
        preserve or protect a security interest;

d.      transferring, relinquishing or disposing of any property of the Debtors to any person
        or entity (as that term is defined in Section 101(15) of the Bankruptcy Code) other
        than the Foreign Representative;

e.      commencing or continuing an individual action or proceeding concerning the
        Debtors' or other Protected Parties' assets, rights, obligations or liabilities; and

f.      declaring or considering the filing of the CCAA Proceeding or these Chapter 15
        cases a default or event of default under any agreement, contract or arrangement;

provided, in each case, that such injunctions shall be effective solely within the territorial

jurisdiction of the United States; and provided further that nothing herein shall: (x) prevent any

entity from filing any claims against the Debtors in the CCAA Proceeding; or (y) prevent any entity

from seeking relief from the Canadian Court in the CCAA Proceeding or this Court in these

Chapter 15 Cases, as applicable, for relief from the injunctions contained in the Order.

6.      To the extent authorized under the Initial Order, the Court recognizes, on a

provisional basis, that during the Stay Period, as defined in the Initial Order and except as permitted

8

under subsection 11.03(2) of the CCAA, no Proceeding, as defined in the Initial Order, may be commenced or continued against any former, present or future director or officer of the Debtors.

7.      Notwithstanding anything to the contrary contained herein, this Order shall not be construed as (a) enjoining the police or regulatory act of a governmental unit, including a criminal action or proceeding, to the extent not stayed pursuant to Section 362 of the Bankruptcy Code or (b) staying the exercise of any rights that Section 362(o) of the Bankruptcy Code does not allow to be stayed.

8.      To the extent provided in the Initial Order, and based on the finding therein and to promote cooperation between jurisdictions in cross-border insolvencies, the Debtors are hereby authorized to execute and deliver such term sheets, credit agreements, mortgages, charges, hypothecs and security documents, guarantees, and other definitive documents as are contemplated by the Interim DIP Facility (collectively, the "Definitive Documents") or as may be reasonably required by the Interim DIP Lender pursuant to the terms thereof, and the Debtors are hereby authorized to pay and perform all of their indebtedness, interest, fees, liabilities, and obligations to the Interim DIP Lender under and pursuant to the Interim DIP Facility without any need for further approval from this Court.

9.      To the extent authorized under the Initial Order, the Court recognizes, on a provisional basis, the Interim DIP Lender Charge, as defined in the Initial Order, granted in the Initial Order which applies to all of the Debtors' assets located in the United States (save for assets subject to encumbrances in favor of Comerica Bank), subject to the priorities, terms, and conditions of the Initial Order, to secure current and future amounts outstanding under the Interim DIP Facility.

10.     This Order shall be sufficient and conclusive notice and evidence of the grant, validity, perfection, and priority of the liens granted to the Interim DIP Lender in the Initial Order without the necessity of filing or recording this Order or any financing statement, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction; provided that the Debtors are authorized to execute, and the administrative agent under the Interim DIP Facility may file or record, any financing statements, mortgages, other instruments or any other Definitive Document to further evidence the liens authorized, granted, and perfected hereby and by the Initial Order.

11.     Pursuant to Sections 364(e), 1519(a)(3), 1521(a)(7), and 105(a) of the Bankruptcy Code, the validity of the indebtedness, and the priority of the liens authorized by the Initial Order made enforceable in the United States by this Order, shall not be affected by any reversal or modification of this Order, on appeal or the entry of an order denying recognition of the CCAA Proceeding pursuant to Section 1517 of the Bankruptcy Code.

12.     No action, inaction or acquiescence by the Interim DIP Lender, including, without limitation, funding the Debtors' ongoing operations under this Order, shall be deemed to be or shall be considered as evidence of any alleged consent by the Interim DIP Lender to a charge against the collateral pursuant to Sections 506(c), 552(b) or 105(a) of the Bankruptcy Code.  The Interim DIP Lender shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the collateral.

13.     Effective on a provisional basis upon entry of this Order, to the extent precluded by or provided for under the Initial Order, no person or entity shall be entitled, directly or indirectly, whether by operation of Sections 506(c), 552(b) or 105 of the Bankruptcy Code or otherwise, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or

otherwise control the disposition of any collateral or property after a breach under the Interim DIP Facility, the Definitive Documents, the Initial Order or this Order.

14.     The Foreign Representative, Debtors, and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules or local rules of this Court.

15.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, including, but not limited to, Bankruptcy Rules 7062 and 1018, (i) this Order shall be effective immediately and enforceable upon its entry; (ii) the Foreign Representative and the Interim DIP Lender are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (iii) the Foreign Representative and the Debtors are authorized and empowered, and may in their discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

16.     This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

END OF ORDER

Prepared and Presented by:

JONES & WALDEN LLC

*/s/ Cameron M. McCord*
Cameron McCord
Georgia Bar No. 143065
Mark Gensburg
Georgia Bar No. 213119
Attorneys for Debtors
699 Piedmont Ave NE
Atlanta, Georgia 30308
(404)564-9300
cmccord@joneswalden.com
mgensburg@joneswalden.com

*Counsel for Debtors and Foreign Representative*

## **EXHIBIT B**

**Initial Order**



**No. S-235084**
**Vancouver Registry**

## IN THE SUPREME COURT OF BRITISH COLUMBIA

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED
AND
IN THE MATTER OF THE *BUSINESS CORPORATIONS ACT*,
S.B.C. 2002, c. 57, AS AMENDED AND THE BUSINESS CORPORATIONS ACT, R.S.O.
1990, C. B.16, AS AMENDED
AND
AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
BRON MEDIA CORP. AND THE ENTITIES LISTED AT SCHEDULE "A"
PETITIONERS

### PETITIONERS

### O R D E R MADE AFTER APPLICATION

BEFORE THE HONOURABLE　　　　)
　　　　　　　　　　　　　　　　)　　19/07/2023
JUSTICE GOMERY　　　　　　　　)

THE APPLICATION of the Petitioners coming on for hearing at Vancouver, British Columbia,
on the 19th day of July, 2023 (the "**Order Date**"); AND ON HEARING Asim Iqbal and Bryan
Hicks, counsel for the Petitioners and those other counsel listed on Schedule "C" hereto; AND
UPON READING the material filed, including the First Affidavit of Aaron Gilbert sworn July
18, 2023 (the "**Gilbert Affidavit**") and the consent of Grant Thornton Limited to act as Monitor
(in such capacity, the "**Monitor**");

AND UPON BEING ADVISED that the secured creditors who are likely to be affected by the
charges created herein were given notice; AND pursuant to the *Companies' Creditors
Arrangement Act*, R.S.C. 1985 c. C-36 as amended (the "**CCAA**"), the British Columbia
Supreme Court Civil Rules and the inherent jurisdiction of this Honourable Court;

**THIS COURT ORDERS AND DECLARES THAT:**

**JURISDICTION**

1.      The Petitioners are companies to which the CCAA applies.

**SUBSEQUENT HEARING DATE**

2.      The hearing of the Petitioners' application for an extension of the Stay Period (as defined in paragraph 15 of this Order) and for any ancillary relief shall be held at the Courthouse at 800 Smithe Street, Vancouver, British Columbia at 9:00 a.m. on Thursday, the 27th day of July, 2023 for one hour and continuing at 9:00 a.m. on Friday, the 28th day of July, 2023 for one hour, or such other date as this Court may order.

**PLAN OF ARRANGEMENT**

3.      The Petitioners shall have the authority to file and may, subject to further order of this Court, file with this Court a plan of compromise or arrangement (hereinafter referred to as the "**Plan**").

**POSSESSION OF PROPERTY AND OPERATIONS**

4.      Subject to this Order and any further Order of this Court, the Petitioners shall remain in possession and control of their current and future assets, licences, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof (the "**Property**"), and continue to carry on their business (the "**Business**") in the ordinary course and in a manner consistent with the preservation of the Business and the Property.   The Petitioners shall be authorized and empowered to continue to retain and employ the employees, consultants, agents, experts, accountants, counsel and such other persons (collectively, "**Assistants**") currently retained or employed by them, with liberty to retain such further Assistants as they deem reasonably necessary or desirable in the ordinary course of business or for carrying out the terms of this Order.

## CASH MANAGEMENT SYSTEM

5.      The Petitioners shall be entitled to continue to utilize the central cash management system currently in place as described in the Gilbert Affidavit or, with the prior written consent of the Interim Lender (as hereinafter defined) and the Monitor, replace it with another substantially similar central cash management system (the "**Cash Management System**"), and that any present or future bank providing the Cash Management System shall not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other action taken under the Cash Management System, or as to the use or application by any of the Petitioners of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, shall be entitled to provide the Cash Management System without any liability in respect thereof to any Person (as hereinafter defined) other than the Petitioners, pursuant to the terms of the documentation applicable to the Cash Management System, and shall be, in its capacity as provider of the Cash Management System, an unaffected creditor under the Plan (if any) with regard to any claims or expenses it may suffer or incur in connection with the provision of the Cash Management System.

6.      Subject to the terms of the DIP Term Sheet and Definitive Documents (each, as hereinafter defined), the Petitioners shall be entitled, but not required, to pay the following expenses which may have been incurred prior to the Order Date:

      (a)      all outstanding wages, salaries, employee and pension benefits (including long and short term disability payments), vacation pay and expenses (but excluding severance pay) payable before or after the Order Date, in each case incurred in the ordinary course of business and consistent with the relevant compensation policies and arrangements existing at the time incurred (collectively "**Wages**");

      (b)      the fees and disbursements of any Assistants retained or employed by any of the Petitioners which are related to the Restructuring (as hereinafter defined), at their standard rates and charges, including payment of the fees and disbursements of legal counsel retained by the Petitioners, whenever and wherever incurred, in respect of:

(i)     these proceedings or any other similar proceedings in other jurisdictions in which any of the Petitioners or any subsidiaries or affiliated companies of the Petitioners are domiciled;

(ii)    any litigation in which any of the Petitioners are named as a party or are otherwise involved, whether commenced before or after the Order Date; and

(iii)   any related corporate matters; and

(c)     with the prior written consent of the Monitor and the Interim Lender, amounts owing for goods and services actually supplied to the Petitioners in the ordinary course of business and consistent with existing policies and procedures (including, without limitation, outstanding source deductions owing to governmental authorities).

7.      Except as otherwise provided herein and subject to the terms of the DIP Term Sheet and Definitive Documents, the Petitioners shall be entitled to pay all expenses reasonably incurred by the Petitioners in carrying on the Business in the ordinary course following the Order Date, and in carrying out the provisions of this Order, which expenses shall include, without limitation:

(a)     all expenses and capital expenditures reasonably incurred and which are necessary for the preservation of the Property or the Business including, without limitation, payments on account of insurance (including directors' and officers' insurance), maintenance and security services, provided that any capital expenditure exceeding $100,000 shall be approved by the Monitor;

(b)     all obligations incurred by the Petitioners after the Order Date, including without limitation, with respect to goods and services actually supplied to the Petitioners following the Order Date (including those under purchase orders outstanding at the Order Date but excluding any interest on the Petitioners' obligations incurred prior to the Order Date); and

(c)     fees and disbursements of the kind referred to in paragraph 6(b) which may be incurred after the Order Date.

8.      The Petitioners are authorized to remit, in accordance with legal requirements, or pay:

     (a)     any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from Wages, including, without limitation, amounts in respect of (i) employment insurance, (ii) Canada Pension Plan, (iii) Quebec Pension Plan, and (iv) income taxes or any such claims which are to be paid pursuant to Section 6(3) of the CCAA;

     (b)     all goods and services or other applicable sales taxes (collectively, "**Sales Taxes**") required to be remitted by the Petitioners in connection with the sale of goods and services by the Petitioners, but only where such Sales Taxes accrue or are collected after the Order Date, or where such Sales Taxes accrued or were collected prior to the Order Date but not required to be remitted until on or after the Order Date; and

     (c)     any amount payable to the Crown in right of Canada or of any Province thereof or any political subdivision thereof or any other taxation authority in respect of municipal property taxes, municipal business taxes or other taxes, assessments or levies of any nature or kind which are entitled at law to be paid in priority to claims of secured creditors.

9.      Until such time as a real property lease is disclaimed in accordance with the CCAA, the Petitioners shall pay, without duplication, all amounts constituting rent or payable as rent under real property leases (including, for greater certainty, common area maintenance charges, utilities and realty taxes and any other amounts payable as rent to the landlord under the lease, but for greater certainty, excluding accelerated rent or penalties, fees or other charges arising as a result of the insolvency of the Petitioners or the making of this Order) based on the terms of existing lease arrangements or as otherwise may be negotiated between the Petitioners and the landlord from time to time ("**Rent**"), for the period commencing from and including the Order Date, twice-monthly in equal payments on the first and fifteenth day of the month in advance (but not in arrears). On the date of the first of such payments, any Rent relating to the period commencing from and including Order Date shall also be paid.

10.     Except as specifically permitted herein and subject to the DIP Term Sheet and the
Definitive Documents, the Petitioners are hereby directed, until further Order of this Court:

   (a)     to make no payments of principal, interest thereon or otherwise on account of
           amounts owing by any of the Petitioners to any of their respective creditors as of
           the Order Date except as authorized by this Order;

   (b)     to make no payments in respect of any financing leases which create security
           interests;

   (c)     to grant no security interests, trust, mortgages, liens, charges or encumbrances
           upon or in respect of any of their Property, nor become a guarantor or surety
           (other than in the ordinary course of the Business and with the prior written
           consent of the Interim Lender, where a completion guarantee or other bond is
           required to be posted by one or more of the Petitioners in connection with the
           production of an animated or live-action film, series television or other
           production), nor otherwise become liable in any manner with respect to any other
           Person or entity except as authorized by this Order;

   (d)     to not grant credit except in the ordinary course of the Business only to their
           customers for goods and services actually supplied to those customers, provided
           such customers agree that there is no right of set-off in respect of amounts owing
           for such goods and services against any debt owing by the Petitioners to such
           customers as of the Order Date; and

   (e)     to not incur liabilities except in the ordinary course of Business.

**RESTRUCTURING**

11.     Subject to such requirements as are imposed by the CCAA and such covenants as may
be contained in the DIP Term Sheet or Definitive Documents, the Petitioners shall have the
right to:

   (a)     permanently or temporarily cease, downsize or shut down all or any part of their
           Business or operations and commence marketing efforts in respect of any of their

70855982.8

redundant or non-material assets and to dispose of redundant or non-material assets not exceeding $ 500,000 in any one transaction or $ 1,000,000 in the aggregate;

(b)     terminate the employment of such of their employees or temporarily lay off such of their employees as they deem appropriate; and

(c)     pursue all avenues of refinancing for their Business or Property, in whole or part;

all of the foregoing to permit the Petitioners to proceed with an orderly restructuring of the Business (the "**Restructuring**").

12.     The Petitioners shall provide each of the relevant landlords with notice of the Petitioners' intention to remove any fixtures from any leased premises at least seven (7) days prior to the date of the intended removal. The relevant landlord shall be entitled to have a representative present in the leased premises to observe such removal and, if the landlord disputes the Petitioners' entitlement to remove any such fixture under the provisions of the lease, such fixture shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors who claim a security interest in the fixtures, such landlord and the Petitioners, or by further Order of this Court upon application by the Petitioners, the landlord or the applicable secured creditors on at least two (2) clear days' notice to the other parties. If the Petitioners disclaims the lease governing such leased premises in accordance with Section 32 of the CCAA, they shall not be required to pay Rent under such lease pending resolution of any dispute concerning such fixtures (other than Rent payable for the notice period provided for in Section 32(5) of the CCAA), and the disclaimer of the lease shall be without prejudice to the Petitioners' claim to the fixtures in dispute.

13.     If a notice of disclaimer is delivered pursuant to Section 32 of the CCAA, then: (a) during the period prior to the effective time of the disclaimer, the landlord may show the affected leased premises to prospective tenants during normal business hours on giving the Petitioners and the Monitor 24 hours' prior written notice; and (b) at the effective time of the disclaimer, the landlord shall be entitled to take possession of any such leased premises without

waiver of or prejudice to any claims the landlord may have against the Petitioners, or any other rights the landlord might have, in respect of such lease or leased premises and the landlord shall be entitled to notify the Petitioners of the basis on which it is taking possession and gain possession of and re-lease such leased premises to any third party or parties on such terms as the landlord considers advisable, provided that nothing herein shall relieve the landlord of its obligation to mitigate any damages claimed in connection therewith.

14.     Pursuant to Section 7(3)(c) of the *Personal Information Protection and Electronics Documents Act*, S.C. 2000, c. 5 and Section 18(1)(o) of the *Personal Information Protection Act*, S.B.C. 2003, c. 63, and any regulations promulgated under authority of either Act, as applicable (the "**Relevant Enactment**"), the Petitioners, in the course of these proceedings, are permitted to, and hereby shall, disclose personal information of identifiable individuals in their possession or control to stakeholders, their advisors, prospective investors, financiers, buyers or strategic partners (collectively, "**Third Parties**"), but only to the extent desirable or required to negotiate and complete the Restructuring or to prepare and implement the Plan or transactions for that purpose; provided that the Third Parties to whom such personal information is disclosed enter into confidentiality agreements with the Petitioners binding them in the same manner and to the same extent with respect to the collection, use and disclosure of that information as if they were an organization as defined under the Relevant Enactment, and limiting the use of such information to the extent desirable or required to negotiate or complete the Restructuring or to prepare and implement the Plan or transactions for that purpose, and attorning to the jurisdiction of this Court for the purposes of that agreement. Upon the completion of the use of personal information for the limited purposes set out herein, the Third Parties shall return the personal information to the Petitioners or destroy it. If the Third Parties acquire personal information as part of the Restructuring or the preparation and implementation of the Plan or transactions in furtherance thereof, such Third Parties may, subject to this paragraph and any Relevant Enactment, continue to use the personal information in a manner which is in all respects identical to the prior use thereof by the Petitioners.

**STAY OF PROCEEDINGS, RIGHTS AND REMEDIES**

15.     Until and including July 29, 2023, or such later date as this Court may order (the "**Stay Period**"), no action, suit or proceeding in any court or tribunal (each, a "**Proceeding**") against or in respect of the Petitioners or the Monitor, or affecting the Business or the Property, shall be commenced or continued except with the prior written consent of the Petitioners and the Monitor or with leave of this Court, and any and all Proceedings currently under way against or in respect of the Petitioners or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.

16.     During the Stay Period, all rights and remedies of any individual, firm, corporation, organization, governmental body or agency, or any other entities (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of any of the Petitioners or the Monitor, or affecting the Business or the Property, are hereby stayed and suspended except with the prior written consent of the Petitioners and the Monitor or leave of this Court.

17.     Nothing in this Order, including paragraphs 15 and 16, shall: (i) empower the Petitioners to carry on any business which the Petitioners are not lawfully entitled to carry on; (ii) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA; (iii) prevent the filing of any registration to preserve or perfect a mortgage, charge or security interest (subject to the provisions of Section 39 of the CCAA relating to the priority of statutory Crown securities); or (iv) prevent the registration or filing of a lien or claim for lien or the commencement of a Proceeding to protect lien or other rights that might otherwise be barred or extinguished by the effluxion of time, provided that no further step shall be taken in respect of such lien, claim for lien or Proceeding except for service of the initiating documentation on the Petitioners.

**STAY IN RESPECT OF THE NON-PETITIONER ENTITIES**

18.     During the Stay Period, no Person shall (a) commence any Proceeding or enforcement process, (b) terminate, repudiate, make any demand, accelerate, alter, amend, declare in default,

exercise any options, rights or remedies, or (c) discontinue, fail to honour, alter, interfere with or cease to perform any obligation pursuant to or in respect of any agreement, lease, sublease license or permit with respect to which any of the Non-Petitioner Entities (as defined in the Gilbert Affidavit) listed at **Schedule "B"** hereto are a party, borrower, principal obligor or guarantor, by reason of:

(a)     any of the Petitioners being insolvent, having become subject to insolvency proceedings, or having made an petition to this Court under the CCAA or the granting of this Order;

(b)     any of the Petitioners being party to these proceedings or taking any steps related thereto;

(c)     the stay of proceedings granted pursuant to this paragraph 18;

(d)     any default or cross-default arising from the matters set out in the foregoing subparagraphs (a) to (c),

except with the prior written consent of the Petitioners and the Monitor, or with leave of this Court.

## NO INTERFERENCE WITH RIGHTS

19.     During the Stay Period, no Person shall accelerate, suspend, discontinue, fail to honour, alter, interfere with, repudiate, rescind, terminate or cease to perform any right, renewal right, contract, agreement, lease, sublease, licence, authorization or permit in favour of or held by any of the Petitioners, except with the prior written consent of the Petitioners and the Monitor or leave of this Court.

## CONTINUATION OF SERVICES

20.     During the Stay Period, all Persons having oral or written agreements with any of the Petitioners or mandates under an enactment for the supply of goods and/or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll and benefit services, accounting services, insurance, transportation, services, utility, or other services, to the Business or any of the Petitioners, are hereby restrained until further Order of this Court from discontinuing, altering, interfering with, suspending or terminating the supply of such goods or services as may be required by any of the Petitioners, and that the Petitioners shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the Order Date are paid by the Petitioners in accordance with normal payment practices of the Petitioners or such other practices as may be agreed upon by the supplier or service provider and the applicable Petitioners and the Monitor, or as may be ordered by this Court.

## NON-DEROGATION OF RIGHTS

21.     Notwithstanding any provision in this Order, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided on or after the Order Date, nor shall any Person be under any obligation to advance or re-advance any monies or otherwise extend any credit to the Petitioners on or after the Order Date. Nothing in this Order shall derogate from the rights conferred and obligations imposed by the CCAA.

## PROCEEDINGS AGAINST DIRECTORS AND OFFICERS

22.     During the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA, no Proceeding may be commenced or continued against the directors or officers of any of the Petitioners with respect to any claim against the directors or officers that arose before the date hereof and that relates to any obligations of any of the Petitioners whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the

70855982.8

payment or performance of such obligations, until a compromise or arrangement in respect of
the Petitioners, if one is filed, is sanctioned by this Court or is refused by the creditors of the
Petitioners or this Court. Nothing in this Order, including in this paragraph, shall prevent the
commencement of a Proceeding to preserve any claim against a director or officer of any of the
Petitioners that might otherwise be barred or extinguished by the effluxion of time, provided
that no further step shall be taken in respect of such Proceeding except for service of the
initiating documentation on the applicable director or officer.

## DIRECTORS AND OFFICERS INDEMNIFICATION AND CHARGE

23.     The Petitioners shall indemnify their directors and officers against obligations and
liabilities that they may incur as directors or officers of the Petitioners after the commencement
of the within proceedings, except to the extent that, with respect to any director or officer, the
obligation or liability was incurred as a result of the director's or officer's gross negligence or
wilful misconduct.

24.     The directors and officers of the Petitioners shall be entitled to the benefit of and are
hereby granted a charge (the "**Directors' Charge**") on the Property, which charge shall not
exceed an aggregate amount of USD $250,000, as security for the indemnity provided in
paragraph 22 of this Order.  The Directors' Charge shall have the priority set out in paragraphs
41 and 43 herein.

25.     Notwithstanding any language in any applicable insurance policy to the contrary, (a) no
insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge, and
(b) the Petitioners' directors and officers shall only be entitled to the benefit of the Directors'
Charge to the extent that they do not have coverage under any directors' and officers' insurance
policy, or to the extent that such coverage is insufficient to pay amounts indemnified in
accordance with paragraph 23 of this Order.

**APPOINTMENT OF MONITOR**

26.     Grant Thornton Limited is hereby appointed pursuant to the CCAA as the Monitor, an
officer of this Court, to monitor the business and financial affairs of the Petitioners with the
powers and obligations set out in the CCAA or set forth herein, and that the Petitioners and their
shareholders, officers, directors, and Assistants shall advise the Monitor of all material steps
taken by the Petitioners pursuant to this Order, and shall co-operate fully with the Monitor in
the exercise of its powers and discharge of its obligations and provide the Monitor with the
assistance that is necessary to enable the Monitor to adequately carry out the Monitor's
functions.

27.     The Monitor, in addition to its prescribed rights and obligations under the CCAA, is
hereby directed and empowered to:

    (a)     monitor the Petitioners' receipts and disbursements;

    (b)     report to this Court at such times and intervals as the Monitor may deem
            appropriate with respect to matters relating to the Property, the Business, the DIP
            Term Sheet, the Definitive Documents and such other matters as may be relevant
            to the proceedings herein;

    (c)     assist the Petitioners, to the extent required by the Petitioners, in their
            dissemination, to the Interim Lender and its counsel, as and when required or
            permitted under the DIP Term Sheet or the Definitive Documents or as otherwise
            reasonably required by the Interim Lender, of financial and other information as
            agreed to between the Petitioners and the Interim Lender which may be used in
            these proceedings including reporting on a basis to be agreed with the Interim
            Lender;

    (d)     advise the Petitioners in their preparation of the Petitioners' cash flow statements
            and reporting required by the Interim Lender, which information shall be
            reviewed with the Monitor and delivered to the Interim Lender and its counsel as

70855982.8

and when required under the DIP Term Sheet and the Definitive Documents or as otherwise agreed to by the Interim Lender;

(e)     advise the Petitioners in their development of the Plan and any amendments to the Plan;

(f)     assist the Petitioners, to the extent required by the Petitioners, with the holding and administering of creditors' or shareholders' meetings for voting on the Plan;

(g)     monitor all payments, obligations and transfers as between any of the Petitioners;

(h)     have full and complete access to the Property, including the premises, books, records, data, including data in electronic form, and other financial documents of the Petitioners, to the extent that is necessary to adequately assess the Petitioners' business and financial affairs or to perform its duties arising under this Order;

(i)     be at liberty to engage independent legal counsel or such other Persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order; and

(j)     perform such other duties as are required by this Order or by this Court from time to time.

28.     The Monitor shall not take possession of the Property and shall take no part whatsoever in the management or supervision of the management of the Business and shall not, by fulfilling its obligations hereunder, or by inadvertence in relation to the due exercise of powers or performance of duties under this Order, be deemed to have taken or maintained possession or control of the Business or Property, or any part thereof, and nothing in this Order shall be construed as resulting in the Monitor being an employer or a successor employer, within the meaning of any statute, regulation or rule of law or equity, for any purpose whatsoever.

70855982.8

29. Nothing herein contained shall require or allow the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, **"Possession"**) of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, without limitation, the *Canadian Environmental Protection Act*, the *Fisheries Act*, the British Columbia *Environmental Management Act*, the British Columbia *Fish Protection Act* and regulations thereunder (the "**Environmental Legislation**"), provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation. For greater certainty, the Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless it is actually in possession.

30. The Monitor shall provide any creditor of the Petitioners and the Interim Lender with information provided by the Petitioners in response to reasonable requests for information made in writing by such creditor addressed to the Monitor. The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph. In the case of information that the Monitor has been advised by the Petitioners is confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the Petitioners may agree.

31. In addition to the rights and protections afforded the Monitor under the CCAA or as an officer of this Court, the Monitor shall incur no liability or obligation as a result of its appointment or the carrying out of the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part. Nothing in this Order shall derogate from the rights and protections afforded the Monitor by the CCAA or any applicable legislation.

32. The Monitor, counsel to the Monitor, if any, and counsel to the Petitioners shall be paid their reasonable fees and disbursements, in each case at their standard rates and charges, by the

70855982.8

Petitioners as part of the cost of these proceedings.  The Petitioners are hereby authorized and directed to pay the accounts of the Monitor, counsel to the Monitor and counsel to the Petitioners on a periodic basis and, in addition, the Petitioners are hereby authorized to pay to the Monitor, counsel to the Monitor, and counsel to the Petitioners, retainers in the amount[s] of $50,000, respectively, to be held by them as security for payment of their respective fees and disbursements outstanding from time to time.

33.     The Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the British Columbia Supreme Court who may determine the manner in which such accounts are to be passed, including by hearing the matter on a summary basis or referring the matter to a Registrar of this Court.

**ADMINISTRATION CHARGE**

34.     The Monitor, counsel to the Monitor, if any, and counsel to the Petitioners shall be entitled to the benefit of and are hereby granted a charge (the "**Administration Charge**") on the Property, which charge shall not exceed an aggregate amount of USD $250,000, as security for their respective fees and disbursements incurred at the standard rates and charges of the Monitor and such counsel, both before and after the making of this Order which are related to the Petitioners' restructuring.   The Administration Charge shall have the priority set out in paragraphs 41 and 43 hereof.

**INTERIM FINANCING**

35.     The Petitioners are hereby authorized and empowered to obtain and borrow under a credit facility (the "**DIP Facility**") from Creative Wealth Media Lending LP 2016 (the "**Interim Lender**") in order to finance the continuation of the Business and preservation of the Property, all in accordance with the DIP Term Sheet and the Definitive Documents, provided that borrowings under the DIP Facility shall not exceed the aggregate principal amount of USD $1,751,409  unless permitted by further Order of this Court.

36.     The DIP Facility shall be on the terms and subject to the conditions set forth in the DIP Term Sheet between the Petitioners and the Interim Lender dated as of July 18, 2023 (the "**DIP Term Sheet**"), filed.

37.     The Petitioners are hereby authorized and empowered to execute and deliver such credit agreements, mortgages, charges, hypothecs and security documents, guarantees and other definitive documents (collectively, the "**Definitive Documents**"), as are contemplated by the DIP Term Sheet or as may be reasonably required by the Interim Lender pursuant to the terms thereof, and the Petitioners are hereby authorized and directed to pay and perform all of their indebtedness, interest, fees, liabilities and obligations to the Interim Lender under and pursuant to the DIP Term Sheet and the Definitive Documents as and when the same become due and are to be performed, notwithstanding any other provision of this Order.

38.     The Interim Lender shall be entitled to the benefit of and is hereby granted a charge (the "**Interim Lender's Charge**") on the Property up to the maximum amount of USD $1,751,409. (plus accrued and unpaid interest, fees and expenses) to secure amounts advanced under the DIP Facility. The Interim Lender's Charge shall not secure an obligation that exists before this Order is made.  The Interim Lender's Charge shall have the priority set out in paragraphs 41 and 43 hereof.

39.     Notwithstanding any other provision of this Order:

    (a)     the Interim Lender may take such steps from time to time as it may deem necessary or appropriate to file, register, record or perfect the Interim Lender's Charge or any of the Definitive Documents;

    (b)     upon the occurrence and during the continuance of an Event of Default (as defined in the DIP Term Sheet), whether or not there is availability under the DIP Facility and notwithstanding any stay imposed under this Order: (i) without any notice to the Petitioners, the Petitioners shall have no right to receive any additional advances thereunder or other accommodation of credit from the Interim Lender except in the sole discretion of the Interim Lender; and (ii) the

Interim Lender may immediately terminate the DIP Facility and demand immediate payment of all obligations owing thereunder by providing such notice and demand to the Petitioners, with a copy to the Monitor;

(c)     with leave of this Court, sought on not less than three (3) business days' notice to the Petitioners and the Monitor after the occurrence and during the continuance of an Event of Default, the Interim Lender shall have the right to enforce the Interim Lender's Charge and to exercise all other rights and remedies in respect of the obligations owing under the DIP Facility and the Interim Lender's Charge; and

(d)     the foregoing rights and remedies of the Interim Lender shall be enforceable against any trustee in bankruptcy, interim receiver, receiver or receiver and manager of the Petitioners or the Property.

40.     The Interim Lender, in such capacity, shall be treated as unaffected in any plan of arrangement or compromise filed by the Petitioners under the CCAA, or any proposal filed by the Petitioners under the *Bankruptcy and Insolvency Act* of Canada (the "**BIA**"), with respect to any advances made under the Definitive Documents.

**VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER**

41.     The priorities of the Administration Charge, the Directors' Charge and the Interim Lender's Charge (collectively, the "Charges", as among them, shall be as follows:

First – Administration Charge (to the maximum amount of USD $250,000);

Second –  Interim Lender's Charge (to the maximum amount of USD $1,751,409.00 plus accrued and        unpaid interest, fees and expenses);

Third – Directors' Charge (to the maximum amount of USD $250,000).

42.     Any security documentation evidencing, or the filing, registration or perfection of, the Charges shall not be required, and that the Charges shall be effective as against the Property and

shall be valid and enforceable for all purposes, including as against any right, title or interest filed, registered or perfected subsequent to the Charges coming into existence, notwithstanding any failure to file, register or perfect any such Charges.

43.     Each of the Charges shall constitute a mortgage, hypothec, security interest, assignment by way of security and charge on the Property and such Charges shall rank in priority to all other security interests, trusts, liens, mortgages, charges and encumbrances and claims of secured creditors, statutory or otherwise (collectively, "**Encumbrances**"), in favour of any Person, save and except those claims contemplated by section 11.8(8) of the CCAA. Notwithstanding the foregoing or any other provision of this Order, the Charges shall not constitute an Encumbrance on any Property subject to an Encumbrance in favour of Comerica Bank; provided, however, that such exception shall be without prejudice to the ability of the Petitioners and the beneficiaries of the Charges to seek priority of the Charges ahead of or subordinate to additional Encumbrances on notice to those Persons likely to be affected by such Charge, including, without limitation, Comerica Bank.

44.     Except as otherwise expressly provided herein, or as may be approved by this Court, the Petitioners shall not grant or suffer to exist any Encumbrances over any Property that rank in priority to, or *pari passu* with the Charges, unless the Petitioners obtain the prior written consent of the Monitor, the Interim Lender and the beneficiaries of the Administration Charge and the Director's Charge.

45.     The Charges, the DIP Term Sheet and the Definitive Documents shall not be rendered invalid or unenforceable and the rights and remedies of the chargees entitled to the benefit of the Charges (collectively, the "**Chargees**") and/or the Interim Lender shall not otherwise be limited or impaired in any way by: (a) the pendency of these proceedings and the declarations of insolvency made herein; (b) any application(s) for bankruptcy order(s) or receivership order(s) issued pursuant to the BIA or otherwise, or any bankruptcy order or receivership order made pursuant to such applications; (c) the filing of any assignments for the general benefit of creditors made pursuant to the BIA; (d) the provisions of any federal or provincial statutes; or (e) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any existing loan documents,

lease, mortgage, security agreement, debenture, sublease, offer to lease or other agreement (collectively, an "**Agreement**") which binds the Petitioners; and notwithstanding any provision to the contrary in any Agreement:

    (a)    neither the creation of the Charges nor the execution, delivery, perfection, registration or performance of the DIP Term Sheet or the Definitive Documents shall create or be deemed to constitute a breach by any of the Petitioners of any Agreement to which any of the Petitioners is a party;

    (b)    none of the Chargees shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting from the Petitioners entering into the DIP Term Sheet, the creation of the Charges, or the execution, delivery or performance of the Definitive Documents; and

    (c)    the payments made by the Petitioners pursuant to this Order, the DIP Term Sheet or the Definitive Documents, and the granting of the Charges, do not and will not constitute preferences, fraudulent conveyances, transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law.

46.    Any Charge created by this Order over leases of real property in Canada shall only be a Charge in the Petitioners' interest in such real property leases.

**SERVICE AND NOTICE**

47.    The Monitor shall: (i) without delay, publish in *The Globe and Mail* (National Edition) a notice containing the information prescribed under the CCAA; and (ii) within five days after Order Date, (A) make this Order publicly available in the manner prescribed under the CCAA, (B) send, in the prescribed manner, a notice to every known creditor who has a claim against the Petitioners of more than $1,000, and (C) prepare a list showing the names and addresses of those creditors and the estimated amounts of those claims, and make it publicly available in the

prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder.

48.     The Petitioners and the Monitor are at liberty to serve this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery or electronic transmission to the Petitioners' creditors or other interested parties at their respective addresses as last shown on the records of the Petitioners and that any such service or notice by courier, personal delivery or electronic transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.

49.     Any Person that wishes to be served with any application and other materials in these proceedings must deliver to the Monitor by way of ordinary mail, courier, personal delivery or electronic transmission a request to be added to a service list (the "**Service List**") to be maintained by the Monitor. The Monitor shall post and maintain an up to date form of the Service List on its website at: www.grantthornton.ca/BronMedia.

50.     Any party to these proceedings may serve any court materials in these proceedings by emailing a PDF or other electronic copy of such materials to counsels' email addresses as recorded on the Service List from time to time, and the Monitor shall post a copy of all prescribed materials on its website at: www.grantthornton.ca/BronMedia.

51.     Notwithstanding paragraphs 48 and 50 of this Order, service of the Petition, the Notice of Hearing of Petition, any affidavits filed in support of the Petition and this Order shall be made on the Federal and British Columbia Crowns in accordance with the *Crown Liability and Proceedings Act*, R.S.C. 1985, c. C-50, and regulations thereto, in respect of the Federal Crown, and the *Crown Proceeding Act*, R.S.B.C. 1996, c. 89, in respect of the British Columbia Crown.

**FOREIGN PROCEEDINGS**

52.     BRON Media Corp., or any of the Petitioners, are hereby authorized and empowered to act as the foreign representative (as applicable, the "**Foreign Representative**") in respect of

these proceedings of the purpose of having these proceedings recognized in a foreign jurisdiction.

53.     The Foreign Representative is authorized to apply for foreign recognition of these proceedings, as necessary or advisable, in any jurisdiction outside of Canada including, without limitation, the United States pursuant to Chapter 15 of Title 11 of the United States Code 11 U.S.C., §§ 101 – 1532, the United Kingdom, Ireland and New Zealand.

**GENERAL**

54.     The Petitioners or the Monitor may from time to time apply to this Court for directions in the discharge of their powers and duties hereunder.

55.     Nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the Petitioners, the Business or the Property.

56.     This Court requests the aid and recognition of other Canadian and foreign Courts, tribunal, regulatory or administrative bodies, including any Court or administrative tribunal of any federal or State Court or administrative body in the United States of America, the United Kingdom, or any other foreign jurisdiction, to act in aid of and to be complementary to this Court in carrying out the terms of this Order where required.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Foreign Representative, the Petitioners and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Foreign Representative in any foreign proceeding, or to assist the Foreign Representative, Petitioners and the Monitor and their respective agents in carrying out the terms of this Order.

57.     The Petitioners are hereby at liberty to apply for such further interim or interlocutory relief as it deems advisable within the time limited for Persons to file and serve Responses to the Petition.

58.     Leave is hereby granted to hear any application in these proceedings on two (2) clear days' notice after delivery to all parties on the Service List of such Notice of Application and all affidavits in support, subject to the Court in its discretion further abridging or extending the time for service.

59.     Any interested party (including the Petitioners, the Interim Lender and the Monitor) may apply to this Court to vary or amend this Order on not less than seven (7) days' notice to all parties on the Service List and to any other party or parties likely to be affected by the order sought or upon such other notice, if any, as this Court may order.

60.     Eendorsement of this Order by counsel appearing on this application is hereby dispensed with.

61.     This Order and all of its provisions are effective as of 12:01 a.m. local Vancouver time on the Order Date.

62.     Leave is hereby granted for counsel to appear at future hearings in this matter remotely by video.

THE FOLLOWING PARTIES APPROVE THE FORM OF THIS ORDER AND CONSENT TO EACH OF THE ORDERS, IF ANY, THAT ARE INDICATED ABOVE AS BEING BY CONSENT:

Signature of
☐ Party  ☑ Lawyer for the Petitioners

Asim Iqbal

Bryan Hicks

BY THE COURT

REGISTRAR

Certified a true copy according to
the records of the Supreme Court
at Vancouver, B.C.
DATED:      JUL 1 9 2023

Authorized Signing Officer

Taranjeet Kaur

Form
CHECKED

## Schedule "A"

### List of Petitioners

|     | **Debtor Company** | **Jurisdiction** |
| --- | --- | --- |
| 1. | BRON Animation Inc. | British Columbia |
| 2. | BRON Creative Corp. | Ontario |
| 3. | BRON Developments Inc. | British Columbia |
| 4. | BRON Media Corp. | British Columbia |
| 5. | BRON Media Holdings Intl. Corp. | British Columbia |
| 6. | BRON Media Holdings USA Inc. | British Columbia |
| 7. | BRON Releasing Inc. | British Columbia |
| 8. | BRON Studios Inc. | British Columbia |
| 9. | BRON Ventures 1 (Canada) Corp | British Columbia |
| 10. | BRON Everest Productions Inc. | Ontario |
| 11. | Fables Productions BC Inc. | British Columbia |
| 12. | Gossamer Productions BC Inc. | British Columbia |
| 13. | Hench 2 BC Productions Inc. | British Columbia |
| 14. | Henchmen Productions Inc. | British Columbia |
| 15. | Robin Hood Digital PC BC  Inc. | British Columbia |
| 16. | Windor Productions BC Inc. | British Columbia |
| 17. | BRON Creative USA, Corp. | Nevada |
| 18. | BRON Digital USA, LLC | Delaware |
| 19. | BRON Life USA Inc.  (BRON Legacy USA Inc.) | Delaware |
| 20. | BRON Media Holdings USA Corp. | Delaware |
| 21. | BRON Releasing USA Inc. | Delaware |
| 22. | BRON Studios USA Inc. | Nevada |

| 23. | BRON Ventures 1, LLC | Delaware |
| 24. | BRON Studios USA Developments Inc. | Nevada |
| 25. | Bakhorma, LLC | Washington |
| 26. | Drunk Parents, LLC | New York |
| 27. | Fables Holdings USA, LLC | Delaware |
| 28. | Fables Productions USA Inc | Delaware |
| 29. | Gossamer Holdings USA, LLC | Delaware |
| 30. | Gossamer Productions USA Inc. | Delaware |
| 31. | Harry Haft Productions, Inc. | New York |
| 32. | Heavyweight Holdings, LLC (previously Harry Haft Films, LLC) | Delaware |
| 33. | I Am Pink Productions, LLC | Delaware |
| 34. | Lucite Desk, LLC | Delaware |
| 35. | National Anthem Holdings, LLC (f. k. a. BCDC Holdings, LLC) | Delaware |
| 36. | National Anthem ProdCo Inc. | New Mexico |
| 37. | Oakland Pictures Holdings, LLC | Delaware |
| 38. | Pathway Productions, LLC | Delaware |
| 39. | Robin Hood Digital PC USA Inc. | Delaware |
| 40. | Robin Hood Digital USA, LLC | Delaware |
| 41. | Solitary Holdings USA, LLC | Delaware |
| 42. | Surrounded Holdings USA LLC | Delaware |
| 43. | Welcome to Me, LLC | California |

**Schedule "B"**

Non-Petitioner Entities

BRON Studios UK Ltd.
BRON Releasing UK Ltd.
CMA Productions UK Ltd.
In Good Company Holdings Ltd.
Kid Unknown Holdings Ltd (fka Hunaman Holdings Ltd.)
Neon Club Productions, Ltd.
Shadowplay Series Holdings UK Limited
TDBB Holdings UK Ltd.
Townsend Series Holdings UK Ltd.
Townsend Series Holdings UK Ltd.
Townsend Series Productions UK Ltd. (Grèy Door Film Productions Ltd)
Front Runner Productions, Inc.
BRON Creative MG1, LLC
BRON Creative WB 1, LLC
BRON Labs LLC
A Single Shot Movie, LLLP
Blackhand Developments Inc.
Blackhand Pictures, LLC
BRON Next Film Production, LLC (BRON Life, LLC)
BRON Pictures Holdings, LLC
BRON Subnation Slate 1, LLC
Rideg Film Holdings, LLC
Brown Amy, LLC
Driftless Area, LLC
Drunk Parents Production Services Inc.
Erostratus LA, LLC
Erostratus, LLC
Fonzo Production Services Inc.
Fonzo, LLC
Front Runner, LLC
Green Moon Inc.

**Schedule "C"**

List of Counsel

**LIST OF COUNSEL**

| Name | Party |
|---|---|
| J. Schultz | Comerica Bank |
| J. Salmaz | Comerica Bank |
| D. Gruber | Creative Wealth Media |
| M. Shakra | Creative Wealth Media |
| J. Foster | Creative Wealth Media |
| J. Birch | Grant Thornton LLP |
| R. Mittal | Grant Thornton LLP |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |