IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re:<br><br>BRON Media Holdings USA Corp., et al.,<br><br>      Debtors in a Foreign Proceeding. | CHAPTER 15<br><br>Case No. 23-56798-pmb<br><br>Jointly Administered |

**OPPOSITION TO MOTION OF FOREIGN REPRESENTATIVE
FOR AN ORDER GRANTING CERTAIN PROVISIONAL RELIEF**

Hercules Film Investors I (US), Inc., a Delaware limited liability company ("Hercules"), objects to the *Motion of Foreign Representative for an Order Granting Certain Provisional Relief* (Docket No. 9) (the "Motion"). Capitalized terms not defined herein have the meanings ascribed to them Motion. This objection is supported by the Declaration of Schuyler Moore filed concurrently herewith (the "Moore Decl.").

## INTRODUCTION

1. The Debtors did not serve Hercules with notice of the commencement of the CCAA Proceeding or the Chapter 15 proceeding, any petition, application or motion for relief filed in the Canadian Court or this Court or the entry of any order. Hercules only became aware of the Motion two days ago. Hercules has been denied its fundamental right to notice and to be heard. Recognition of the Canadian Orders should also be denied as it would impose priming liens and other charges on Hercules' collateral in contravention of public policy of the United States. Hercules is undersecured and the Canadian Orders do not come close to adequately protecting Hercules' interests. Indeed, the Canadian Orders (if recognized) would enable the Debtors to take Hercules' collateral (without just compensation) to fund these proceedings.

- 1 -

## **FACTS**

2.      In 2022, Hercules made a loan in the original principal amount of $2.2 million, later increased by an amendment to $2,290,667 ("Loan") to National Anthem Holdings, LLC, a Delaware limited liability company ("NAH" or "NAH Debtor"), a subsidiary of BRON Media Corp. and one of the U.S. Debtors.  The Loan is secured by a security interest ("Hercules Security Interest") in a film currently titled "Americana" (the "Film") owned by NAH.  The Hercules Security Interest was properly perfected in December 2022, through a UCC-1 Financing Statement filed in Delaware and recordation of an Assignment for Security recorded with the U.S. Copyright Office.  Copies of the Loan and Security Agreement, the Amendment, the filed UCC-1 Financing Statement, and recorded Assignment for Security are attached to the *Moore Decl.* as Exhibits "A", "B", "C", and "D" respectively.

3.      As of the date hereof, there is approximately $3 million outstanding under the Loan. Interest on the upon paid balance is accruing at the rate of 15% per annum (compounded monthly). Over the past several months, NAH, with Hercules support, marketed the Film for sale. No prospective buyer was prepared to pay more than the outstanding amount due under the Loan.  In short, Hercules is undersecured.  *Moore Decl.*

4.      On July 18, 2023, the Debtors filed applications under the CCAA to commence a restructuring proceeding under the supervision of the Canadian Court. On July 20, 2023, the Foreign Representative filed an Omnibus Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code.

5.      The Debtors did not serve Hercules with notice of the commencement of the CCAA Proceeding or the Chapter 15 proceeding, any petition, application or motion for relief filed in the Canadian Court or this Court or the entry of any order.  Hercules only became aware of the Motion due to informal discussions regarding sale of the Film two days ago, on August 8th.  *Moore Decl.*

6. On July 19, 2023, the Canadian Court in the CCAA Proceedings entered the Initial Order which, among other things, (a) approved a debtor-in-possession financing facility (the "DIP Facility") made pursuant to an agreement dated July 18, 2023 with Creative Wealth Media Lending LP (the "DIP Lender"), (b) granted a charge over the Debtors' Property (as defined in the Initial Order), save for any Property subject to an Encumbrance (as defined in the Initial Order) in favor of Comerica Bank, to secure the Debtors' obligations under the DIP Facility up to a maximum amount of $1,751,409 (the "DIP Lender's Charge"), and (c) granted an Administration Charge in the amount of $250,000 and a Directors and Officers Charge in the amount of $250,000. On July 20, 2023, this Court entered an order giving full force and effect to the Interim Order on a provisional basis.

7. On July 28, 2023, the Canadian Court in the CCAA Proceedings entered an Amended and Restated Initial Order ("ARIO") which, among other things (a) increased the borrowing limit under the DIP Facility up to the maximum amount of $6.2 million and granting a corresponding increase to the DIP Lender's Charge, (b) increased the Administration Charge to $500,000.00, and (c) increased the Directors and Officers Charge to $762,000. On August 2, 2023, this Court entered an order giving full force and effect to the ARIO on a provisional basis. The Interim Order, ARIO and any final order are hereinafter referred to as the "Canadian Orders."

8. The Debtors' obligations under the DIP Facility (the "DIP Obligations") are secured by a Court-ordered charge (the "DIP Charge") on all present and after-acquired property, assets and undertakings of the Debtors which shall rank ahead of, and have priority over, all existing liens, claims, trusts and charges other than any liens in favor of Comerica and certain other charges enumerated in the DIP Facility (the "Administrative Charges") including the Administration Charge, the Directors and Officers Charge, and to the extent necessary, any KERP Charge and any Intercompany Charge. The DIP Charge and the Administrative Charges are hereinafter referred to collectively, as the "Canadian Charges."

**OBJECTION & ARGUMENT**

9. Hercules objects to this Court's recognition of the Canadian Orders to the extent the Canadian Charges rank ahead of, or otherwise have priority over, the Hercules Security Interest. Recognition of the Canadian Charges on the Film ahead of Hercules' undersecured claim would be manifestly contrary to the public policy of the United States. In any event, the Canadian Orders do not sufficiently protect Hercules' interests.

**The Canadian Charges on the Film Contravene U.S. Public Policy**

10. Nothing in Chapter 15 of the Bankruptcy Code prevents the court from refusing to take an action governed by Chapter 15 if the action would be manifestly contrary to the public policy of the United States. 11 U.S.C. §1506.

11. A fundamental tenet of U.S. law is that parties affected by a legal proceeding are entitled to due process and notice. The Debtors did not serve Hercules with notice of any application for the relief obtained in the Canadian Orders or any motion in this Court to recognize the Canadian Orders. Because Hercules has been deprived of its fundamental right to notice and opportunity to be heard, this Court should not recognize the Canadian Orders to the extent the Canadian Charges rank ahead of, or otherwise have priority over, the Hercules Security Interest. *See, e.g., In re Sivec Srl*, Case No. 11-80799-TRC, 2011 WL 3651250, at *3 (Bankr. E.D. Okla. 2011) (finding public policy grounds for denying foreign representative's request to continue the stay and direct turnover of disputed funds because such requests would violate this country's fundamental rights of notice and opportunity to be heard).

12. Security interests in the United States enjoy constitutional protection,[1] which would

---

[1] *See Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S. Ct. 854, 79 L. Ed. 1593 (1935) Security interests in the United States enjoy constitutional protection against being compensated against being confiscated without just compensation; *see also In re Koreag, Controle et Revision S.A.,* 961 F.2d 341, 359 (2nd Cir. 1992) (deprivation of a valid security interest or other benefit of domestic law might render a turnover improper).

be eviscerated by the priming Canadian Charges on the Film. This priming would not be approved by a U.S. Bankruptcy Court. Under Bankruptcy Code section 364(d), an existing lien can only be primed if there is "adequate protection" of the interest of such holder, and the trustee has the burden of proof. 11 U.S.C §364(d). The DIP Charge necessarily diminishes Hercules' interest in the Film, which is not being adequately protected. In fact, Hercules is entitled to relief from the automatic stay. 11 U.S.C §362. Under Bankruptcy Code section 506, a trustee can only surcharge property securing for "the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." 11 U.S.C §506(d). To be sure, the Administrative Charges do not benefit Hercules.

13.   Bankruptcy Courts refuse to recognize foreign insolvency proceedings which violate fundamental principles of the Bankruptcy Code. *See, e.g., In re Vitro S.A.B. de CV*, 473 B.R. 117, 132 (Bankr. N.D. Tex. 2012) (foreign proceeding not recognized where reorganization extinguished claims against third party guarantors; citing Bankruptcy Code section 524, "protection of third party claims is a fundamental policy of the United States");[2] *In re Qimonda AG*, 462 B.R. 165, 183-85 (Bankr. E.D. Va. 2011) (foreign proceeding allowing debtors to reject licenses not recognized because the relief is expressly barred under Bankruptcy Code section 365(n), which would severely impinge on an important statutory protection accorded to licensees of U.S. patents, thereby undermining a fundamental U.S. public policy of promoting technological innovation);[3] *Lehman Bros. Special Fin. Inc. v. BNY Corporate Tr. Servs. Ltd.*, 422 B.R. 407 (Bankr. S.D.N.Y. 2010) (court would not recognize foreign proceeding altering the priority for

---

[2]   The bankruptcy court's decision was affirmed on other grounds in *Jaffe v. Samsung Elecs. Co.*, 737 F.3d 14 (4th Cir. 2013). The Fourth Circuit did not determine that recognition would be manifestly contrary to U.S. policy pursuant to §1506, instead, through §1522, balanced the debtor's interest of maximizing profits through renegotiating contracts with licensees with the interest of these licensees, who "'would face both the immediate harm of a hold-up and the future... destabilization of the licensing regime in the semiconductor industry.'" Id. at 29.

[3]   The bankruptcy court's decision was affirmed on other grounds in *In re Vitro S.A.B. de C.V.*, 701 F.3d 1031, 1069 (5th Cir. 2012) (bankruptcy court did not abuse its discretion in applying §1507(b)(4) to decline to enforce foreign insolvency plan which released third party guarantors).

payment enshrined in U.S. bankruptcy law).

### The Canadian Orders Do Not "Sufficiently Protect" Hercules' Interests

14. This Court may grant relief under sections 1519 and 1521 "only if the interests of the creditors and other interested parties, including the debtor, are sufficiently protected." 11 U.S.C. §1522(a). Not only do the Canadian Charges diminish Hercules' security interest in the Film, but the Canadian Orders are silent as to the amount. Presumably, after the Debtors' "sale process", there will be a proposed allocation amongst the Debtors favorable to the DIP Lender which will be costly for Hercules to dispute.

15. Remarkably, even though the Debtors have no equity in the Film, the Canadian Orders enable them to consume Hercules' collateral to fund these proceedings and distributions to other creditors. To remedy this, the Court should condition its recognition of the Canadian Orders on the Film being free and clear of the Canadian Charges. *See* 11 U.S.C. §1522(b) (The Court may "subject relief granted under section 1519 or 1521 …. to conditions it considers appropriate.")

### CONCLUSION

16. For the foregoing reasons, the Court should not recognize or enforce the Canadian Orders to the extent the Canadian Charges on the Film rank ahead of, or otherwise have priority over, the Hercules Security Interest.

DATED: August 10, 2023

**SMITH, GAMBRELL & RUSSELL, LLP**

*/s/ Brian P. Hall*
Brian P. Hall
Georgia Bar No.: 318171
bhall@sgrlaw.com
1105 W. Peachtree Street NE
Suite 1000
Atlanta, GA 30309
Phone: (404) 815-3537
Facsimile: (404) 685-6837

          **GREENBERG GLUSKER LLP**

          */s/ Jonathan Shenson*
          Jonathan Shenson *(Pro Hac Vice Pending)*
          California Bar No.: 184250
          jshenson@greenbergglusker.com
          2049 Century Park East
          Suite 2600
          Los Angeles, CA 90067
          Phone: (310) 201-7581

          Attorneys for Hercules Film Investors I (US), Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I caused to be served a true and correct copy of the foregoing Opposition to Motion of Foreign Representative for an Order Granting Certain Provisional Relief with attached Declaration of Schuyler Moor in support thereof, by filing such notice with the Court's CM/ECF system, and by serving a true and correct copy of same by e-mail and overnight express delivery to the following:

          Cameron McCord
          Mark Gensburg
          JONES & WALDEN, LLC
          699 Piedmont Ave NE
          Atlanta, GA 30308
          cmccord@joneswalden.com
          mgensburg@joneswalden.com

This 10th day of August, 2023.

          SMITH, GAMBRELL & RUSSELL, LLP

          By: */s/ Brian P. Hall*
              Brian P. Hall
              Georgia Bar No. 318171

Smith, Gambrell & Russell, LLP
1105 W. Peachtree Street NE
Suite 1000
Atlanta, GA 30309
Phone: (404) 815-3500
Attorneys for Hercules Film Investors I (US), Inc.

SGR/43215742.1