IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

In re:

BRON Media Holdings USA Corp.,et al.,

          Debtors in a Foreign Proceeding.

CHAPTER 15

Case No. 23-56798-pmb

Jointly Administered

**DELCARATION OF SCHUYLER MOORE IN SUPPORT OF OPPOSITION TO MOTION OF FOREIGN REPRESENTATIVE FOR AN ORDER GRANTING CERTAIN PROVISIONAL RELIEF**

I, Schuyler Moore, hereby declare as follows:

1.      I am a partner at the law firm of Greenberg Glusker Fields Claman & Machtinger LLP and represent Hercules Film Investors I (US), Inc. ("Hercules") with respect to the Loan.  I submit this declaration in support of Hercules' concurrently filed OPPOSITION TO MOTION OF FOREIGN REPRESENTATIVE FOR AN ORDER GRANTING CERTAIN PROVISIONAL RELIEF (the "Opposition").[1]  I make this declaration based on personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2.      Attached as Exhibit "A" is a true and correct copy of the Loan and Security Agreement.

3.      Attached as Exhibit "B" is a true and correct copy of the Amendment.

4.      Attached as Exhibit "C" is a true and correct copy of the filed UCC-1 Financing Statement.

5.      Attached as Exhibit "D" is a true and correct copy of the recorded Assignment for

---

[1]    Capitalized terms not defined herein have the meanings ascribed to them in the Opposition.

- 1 -

Security.

6.    There is approximately $3 million outstanding under the Loan.  Over the past several months, NAH, with Hercules support, marketed the Film for sale. No prospective buyer was prepared to pay more than the outstanding amount due under the Loan.

7.    Hercules only became aware of the Motion due to informal discussions regarding sale of the Film two days ago, on August 8, 2023.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Los Angeles, California, this 10th day of August 2023.


*Schuyler Moore*
SCHUYLER MOORE

**EXHBIT A**

# "NATIONAL ANTHEM" LOAN AND SECURITY AGREEMENT

## TABLE OF CONTENTS

1.   DEFINITIONS ................................................................................................ 1
2.   CONDITIONS PRECEDENT TO LOAN ......................................................... 2
3.   THE LOAN ..................................................................................................... 3

    a.   Commitment to Lend ............................................................................ 3
    b.   Advances ............................................................................................. 3
    c.   Interest ................................................................................................ 3
    d.   Lender's Fees ...................................................................................... 4
    e.   Costs ................................................................................................... 4
    f.   Repayment .......................................................................................... 4
    g.   Promissory Note .................................................................................. 4
    h.   Acknowledgements by Producer .......................................................... 4
    i.   Distribution .......................................................................................... 4
    j.   Credits ................................................................................................. 4

4.   GRANT OF SECURITY INTEREST ............................................................... 5
5.   EVENTS OF DEFAULT .................................................................................. 5

    a.   Occurrence .......................................................................................... 5
    b.   Consequence ....................................................................................... 5

6.   COVENANTS ................................................................................................. 6
7.   RIGHT TO INSPECT ..................................................................................... 7
8.   POWER OF ATTORNEY ................................................................................ 7
9.   MISCELLANEOUS ........................................................................................ 7

    a.   Waivers ............................................................................................... 7
    b.   Rights or Remedies ............................................................................. 7
    c.   Entire Agreement ................................................................................ 7
    d.   Modification .......................................................................................... 7
    e.   Notices ................................................................................................. 7
    f.   Applicable Law .................................................................................... 7
    g.   Jurisdiction .......................................................................................... 7
    h.   Assignability ........................................................................................ 8
    i.   Counterparts ........................................................................................ 8

EXHIBITS:

A    Assignment for Security
B    Draw-Down Notice
C    Secured Promissory Note
D    Power of Attorney

This "National Anthem" Loan and Security Agreement is entered into by and between Producer and Lender.

1.    <u>DEFINITIONS</u>.  All capitalized words used herein shall have the meanings as set forth below:

a.    "Advance" means each separate advance of funds by Lender under the Loan.

b.    "Agreement" means this "National Anthem" Loan and Security Agreement.

c.    "Approved" means approved in writing by Lender.

d.    "Assignment for Security" means the Assignment for Security attached hereto as Exhibit "A" evidencing the Security Interest.

e.    "Budget" means the Approved budget for the Picture.

f.    "Cash-Flow Schedule" means the Approved cash-flow schedule for the Picture.

g.    "Collateral" means Producer's property that is subject to the Security Interest as set forth in the Assignment for Security.

h.    "Commitment Amount" means USD$2,200,000. However, the Commitment Amount is not a ceiling on the amount of the Loan.

i.    "Draw-Down Notice" means the Draw-Down Notice attached hereto as Exhibit B.

j.    "Effective Date" means the date set forth at the end hereof.

k.    "Event of Default" has the meaning set forth in Paragraph 5(a).

l.    "Lender" means Hercules Film Investors I (US), Inc., a Delaware limited liability company.

m.    "Loan" means the aggregate amount that is owed by Producer to Lender hereunder, including, without limitation, all actual or constructive Advances and all interest, fees, and costs hereunder.

n.    "Loan Documents" means this Agreement, all Exhibits attached hereto, and all ancillary documentation relating to the attachment or perfection of the Security Interest.

o.    "Maturity Date" means eighteen months after the Effective Date, subject to acceleration as provided herein.

p.    "Picture" means the motion picture to be produced tentatively titled "National Anthem."

1

DocuSign Envelope ID: 243C490B-9CC0-45B5-941E-6BAF95CB2271

q.      "Producer" means National Anthem Holdings, LLC, a Delaware limited liability company.

r.      "Production Bank Account" means the following bank account, into which all Advances shall be wire transferred except as otherwise provided herein:



s.      "Production Schedule" means the Approved production schedule for the Picture.

t.      "Relevant Documents" means the Budget, the Cash-Flow Schedule, the Production Schedule, the Screenplay, the Loan Documents, and all other contracts relating to the Picture, collectively.

u.      "Screenplay" means the final Approved screenplay for the Picture.

v.      "Security Interest" means a continuing first priority security interest in the Collateral granted to Lender pursuant to the Assignment for Security.

2.      <u>CONDITIONS PRECEDENT TO LOAN</u>.  Lender's obligation to make each and every Advance shall be subject to the continuing conditions precedent of:

a.      Lender's Approval of chain of title for the Picture.

b.      Lender's Approval of the terms of binding agreements for acting services of Sydney Sweeney and Halsey.

c.      Lender's Approval of the Waterfall, attached as Exhibit E hereto, which terms shall be included in a Collection Account Management Agreement for gross receipts from the Picture that is consistent with this Agreement.

d.      Lender's Approval of the identity of the sales agents for the Picture (with WME Independent and Bron Releasing are pre-approved for a U.S./North American or a single worldwide sale and the terms of their agreements (with sales fees not to exceed 7.5% of gross receipts) and BRON Releasing and one of WME International, eOne or FilmNation Releasing are pre-approved for ROW sales and the terms of their agreements (with sales fees not to exceed 7.5% of gross receipts.

e.      Intercreditor Agreements with (i) DGA, WGA and SAG, (ii) Three Point Capital Holdings, LLC (iii) TPC Lending & Services, LLC, and (iv) Creative Wealth Media Finance Corp (which company Producer represents and warrants is not affiliated with Producer), as administrative agent, confirming that Lender's Security Interest is senior except for DGA and SAG and the tax credit lender on the tax credit proceeds only.

99910-01044/3738324.1

f.    Lender's receipt of proof of the ownership of National Anthem Prodco, Inc.

g.    Lender's Approval of all of the Relevant Documents.

h.    Lender's receipt of a Draw-Down Notice for the Advance in conformity with the Cash-Flow Schedule.

i.    The attachment and perfection of the Security Interest.

j.    Lender being the beneficiary of an Approved completion bond.

k.    The receipt of any documents reasonably requested by Lender.

l.    There having been no Event of Default.

3.    THE LOAN

a.    <u>Commitment to Lend</u>.  Subject to the conditions precedent of Paragraph 2, Lender hereby agrees to make Advances in an amount not to exceed the Commitment Amount inclusive of all fees, reserves, and costs referred to in this Agreement. Notwithstanding the forgoing, if Lender does make Advances in excess of the Commitment Amount, such Advances shall be added to the Loan.

b.    <u>Advances</u>.  Subject to satisfaction of the conditions precedent of Paragraph 2, not less than four business days after receipt of a Draw-Down Notice, Lender shall make the requested Advance to the Production Bank Account.  However, upon an Event of Default, Lender may make all further Advances directly to third parties in connection with production of the Picture, all of which Advances shall be included as part of the Loan.

c.    <u>Interest</u>

i.    <u>Fixed Interest</u>.  The unpaid balance of the Loan shall bear fixed interest at 15% per annum.  Interest shall be compounded at the end of each calendar month and shall be calculated on the basis of a 360 day year.  Commencing upon an Event of Default, the interest rate on the unpaid balance of the Loan shall be increased to 20% per year (compounded daily) and shall continue until repayment of the Loan in full.  All fixed interest shall accrue and be due on the Maturity Date. The Loan shall bear a minimum of eight months of fixed interest on the full Commitment Amount even if it is prepaid in all or in part prior to that date.

ii.    <u>Contingent Interest</u>.  In addition to fixed interest, Producer shall pay Lender 5% of 100% of the net profits from the Picture, with calculations, definitions, reporting, and audit rights mfn with all other parties entitled to a share of the profits from the Picture (regardless of the nomenclature used for referring to net profits, such as adjusted gross receipts), but in no event shall any financiers be entitled to recoupment of more than 120% of their actual cash investment before the calculation of net profits.  The contingent interest shall be included in the Loan for all purposes hereunder, with the sole exception that contingent interest shall not be due on the Maturity Date, and the

3

DocuSign Envelope ID: 243G409B-96C0-45B5-941E-6BAF95CB2277

contingent interest shall be paid in perpetuity even if the remainder of the Loan is repaid in full.

d.    <u>Lender's Fees</u>.  In consideration for its obligations hereunder, Lender shall be paid a financing fee of USD$150,000 at the time of the first Advance.  This fee shall be paid out of the Loan proceeds and shall be treated as an Advance under the Loan.

e.    <u>Costs</u>.  At the time of the first Advance, Lender shall be reimbursed an amount estimated to be USD$50,000 for all legal fees and filing costs in connection with (i) the preparation and negotiation of the Loan Documents and (ii) the attachment and perfection of the Security Interest, which shall be paid out of the Loan proceeds and shall be treated as an Advance under the Loan.  Any subsequent fees and costs incurred in connection with enforcement of the Loan Documents shall be treated as additional Advances under the Loan, even if it exceeds the Commitment Amount.

f.    <u>Repayment</u>.  The Loan shall be due and payable in full by Producer not later than the Maturity Date in such manner and to such account as Lender shall designate from time to time.  Producer shall have the right to pre-pay the Loan in full or in part from time to time, subject to the minimum fixed interest amount set forth in Paragraph 3(c)(i).  Producer shall be required to pre-pay the Loan to the extent of:

i.    100% of all amounts actually or constructively (e.g., payments to a third-party collection account) received by Producer attributable to the Picture, including pre-sale deposits, distribution proceeds, and production subsidies (excluding only funding from third-party financiers used to fund the Budget) after the deduction of only (1) third-party collection fees and (2) sales fees not to exceed 7.5% of gross receipts from the Picture.  Thus, residuals shall not be paid prior to full repayment of the Loan.  For the avoidance of doubt, Producer and its affiliates shall not be entitled to any payments or fees relating to the Picture other than (1) Approved fees in the Budget and (2) sales fees attributable to gross receipts from the Picture from the U.S.; and

ii.    Any excess insurance proceeds (i.e. those in excess of any additional expenses actually incurred by Producer as a result of any insured casualty or claim) paid to Producer attributable to the Picture.

g.    <u>Promissory Note</u>.  In order to evidence the Loan, upon execution of this Agreement, Producer shall execute and deliver to Lender the Secured Promissory Note attached hereto as Exhibit "C".

h.    <u>Acknowledgements by Producer</u>.  Producer acknowledges and agrees that (1) the Loan is exempt from California usury laws under California Corporations Code § 25118, and (2) Lender is exempt from the requirement of obtaining a California Lender's License pursuant to California Finance Code § 22050, because the Loan is the only loan Lender has made in the last twelve months.  Producer shall not take any position that is inconsistent with these acknowledgments.

i.    <u>Distribution.</u>  Lender's Approval is required for all distribution and sales agent agreements for the Picture until the Loan is paid in full.

4

DocuSign Envelope ID: 243C499B-96C0-45B5-941E-6BAF9FCB2271

j.    <u>Credits</u>.  Lender shall be entitled to credits for the Picture on and off screen mfn with all similar credits in all respects (including, without limitation, size, duration, and placement on and off screen) as follows:

i.    A credit reading "In Association with Rhea Films and Hercules Film Fund" immediately following the first presentation credit.

ii.    Three Executive Producer credits to Lender's designees.

4.    <u>GRANT OF SECURITY INTEREST</u>.    In order to secure all of Producer's obligations under the Loan Documents, upon execution of this Agreement, Producer shall execute and deliver to Lender the Assignment for Security attached hereto as Exhibit "A".

5.    <u>EVENTS OF DEFAULT</u>

a.    <u>Occurrence</u>.  An "Event of Default" hereunder shall be caused by the occurrence of any of the following:

i.    The failure by Producer to produce the Picture in conformance with the Relevant Documents or any material breach by Producer of any provision of the Relevant Documents.

ii.    Any event or claim which, in Lender's good-faith judgment, results in, or may with the passage of time result in, any material impairment to (1) the existence, attachment, priority, or perfection of the Security Interest, (2) the value of the Collateral, (3) the effectiveness of any of the Loan Documents, or (4) Producer's ability to perform its obligations under the Relevant Documents.

iii.    Subject to Lender's Approval (hereby granted with respect to subordinated guild liens), the creation or attachment of any security interest, lien, or charge against the Collateral (other than the Security Interest).

iv.    Any amendments to the Relevant Documents without Lender's Approval.

v.    Any lawsuit being filed against Producer for more than USD$25,000 that is not dismissed within 30 days.

vi.    Any actual or pending merger or dissolution of, or sale of Collateral by, Producer.

vii.    Any insolvency or bankruptcy filing or material adverse change with respect to Producer.

viii.    Producer giving Lender false or misleading information or representations or not disclosing all material facts that might be relevant to Lender.

99910-01044/3738324.1

b.    <u>Consequence</u>.  Upon the occurrence of any Event of Default, the following consequences shall occur:

i.    Lender may terminate making all further Advances hereunder, the Maturity Date shall be accelerated, and the Loan shall become immediately due and payable.

ii.    Lender may immediately commence enforcement of the Loan, including by foreclosing on the Security Interest, and Lender may exercise all of the rights and remedies of a secured creditor under applicable law.

iii.    Lender shall automatically hold all of the Collateral for Producer, and may take any action, including taking possession of, licensing, or disposing of the Collateral, as Lender in its good-faith discretion deems appropriate, including the settlement or compromise of any claims relating to the Collateral.  Any costs paid by Lender in connection with such actions shall be deemed to be Advances under the Loan.

iv.    Subject to the Intercreditor Agreement and the Lender's completion guaranty, Lender shall have the right to take over production of the Picture as the agent of Producer.

v.    Lender shall be entitled to the appointment of a receiver to take immediate possession of the Collateral.

vi.    The Loan shall bear interest at the default rate set forth in Paragraph 3(c)(i).

6.    <u>COVENANTS</u>.  Producer covenants to Lender as follows:

a.    Producer shall produce the Picture in accordance with the Relevant Documents.

b.    Producer shall at all times own all rights in and to the Screenplay and the Picture.

c.    There are no existing Events of Default.

d.    Producer shall promptly notify Lender of any of the following: (i) any actual or pending Event of Default, (ii) any change to the location of Producer's state of formation, (iii) any change to the name or trade name of Producer, or (iv) any change to the name of the Picture.

e.    Producer shall promptly register the Screenplay with the United States Copyright Office.

f.    For so long as the Loan is outstanding, Producer shall maintain all policies of insurance covering the Picture as shall be required by Lender.

DocuSign Envelope ID: 243C4A93B-96C0-45B5-941F-6BAF95CB2271

g.    Producer shall execute such further documents, and take such further actions, as shall be reasonably requested by Lender to implement the provisions of the Loan Documents or to evidence, attach, perfect, or enforce the Security Interest.

h.    Producer shall not enter into any sales agent agreement, license, or other form of distribution agreement relating to the Picture without Approval.

7.    <u>RIGHT TO INSPECT</u>.  Producer shall maintain complete and accurate books and records relating to the Collateral, and Lender shall have the right to inspect and copy such books and records, including access to all computer hardware or software necessary to inspect any books and records kept on computers upon reasonable notice to Producer and at Lender's sole cost and expense.  Lender shall also have the right to inspect any of the Collateral at any time upon reasonable notice to Producer.  Upon request of Lender, Producer shall furnish Lender with any information as Lender may request from time to time.  Producer shall supply Lender with copies of all production reports for the Picture. Lender shall have the right to visit the set and talk to production personnel regarding the progress of the Picture.

8.    <u>POWER OF ATTORNEY</u>.  Upon execution of this Agreement, Producer shall execute and deliver to Lender the Power of Attorney attached hereto as Exhibit "D".

9.    <u>MISCELLANEOUS</u>

a.    <u>Waivers</u>.  No waiver by Lender of any of the conditions precedent in Paragraph 2, any Event of Default, or any of the obligations or covenants of Producer shall act as a subsequent waiver of the same matter or as a waiver of any other matter.

b.    <u>Rights or Remedies</u>.  All the rights and remedies of Lender under the Loan Documents or by operation of law shall be cumulative, and not exclusive of any other rights or remedies available.

c.    <u>Entire Agreement</u>.  The Loan Documents constitute the entire agreement between Lender and Producer with respect to the subject matter hereof, and supersede all prior term sheets, correspondence, and negotiations.  The Loan Documents are an integrated agreement.

d.    <u>Modification</u>.  Any modifications to the Loan Documents shall only be valid if evidenced by a writing executed by both parties hereto.

e.    <u>Notices</u>.  All notices under the Loan Documents shall be given by email to each party's last known email address that each party notifies the other from time to time.

f.    <u>Applicable Law</u>.  The Loan Documents shall be governed by and construed in accordance with the internal laws of the state of California (i.e., without regard to its conflict of law principles).

g.    <u>Jurisdiction</u>.  Lender and Producer hereby consent to Los Angeles County, California as a non-exclusive location for jurisdiction and venue of any legal actions

99910-01044/3738324.1

brought relating to the Loan Documents and waive any objection they might otherwise have to such jurisdiction and venue, including for non-convenient forum.

      h.    <u>Assignability</u>.  Lender may assign or delegate any or all of its rights and obligations under the Loan Documents at any time.  Producer may not assign or delegate any of its rights or obligations hereunder without Approval.

      i.    <u>Counterparts</u>.  The Loan Documents may be executed in counterparts and transmitted by facsimile or PDF copy, each of which shall constitute an original.

      IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the Effective Date.

Effective Date: <u>Dec 13, 2022 | 16:01 PST</u>

NATIONAL ANTHEM HOLDINGS LLC

By: _Aaron Gilbert_  _Steven Thibault_
Title: MD  Chief Operating Officer

HERCULES FILM INVESTORS I (US), INC.

By: _____
Title: President and CEO

8

EXHIBIT "A"

<u>ASSIGNMENT FOR SECURITY FOR "NATIONAL ANTHEM"</u>

This Assignment for Security is executed by National Anthem Holdings LLC ("Producer") pursuant to the "National Anthem" Loan and Security Agreement (the "Agreement") entered into by and between Producer and Hercules Film Investors I (US), Inc. ("Lender") with respect to a loan for a film tentatively titled "National Anthem" (the "Picture").  Unless otherwise defined herein, all capitalized words used herein shall have the same meaning as set forth in the Agreement.  In order to secure all of Producer's obligations under the Loan Documents, Producer hereby grants to Lender a first priority security interest in all of Producer's right, title, and interest in and to all personal property of every kind and nature, tangible or intangible, whether now owned or hereafter acquired or created, including all products and proceeds thereof and specifically including, without limitation, the Screenplay, the Picture, the sound track and music for the Picture, all marketing material relating to the Picture, and all copyrights and ancillary and derivative rights relating to any of the foregoing.

IN WITNESS WHEREOF, this Assignment for Security has been executed by Producer effective as of ___Dec 13, 2022 | 16:01 PST___.

NATIONAL ANTHEM HOLDINGS LLC

By: _____

Title: ___MD___ ___Chief Operating Officer___

A-1

DocuSign Envelope ID: 243C4C9B-96C0-45B5-941E-6BAF9FCB227F

EXHIBIT "B"

<u>DRAW-DOWN NOTICE</u>

Unless otherwise defined herein, all capitalized words used herein shall have the same meanings as set forth in the "National Anthem" Loan and Security Agreement (the "Agreement") entered into by and between National Anthem Holdings LLC ("Producer") and Hercules Film Investors I (US), Inc. ("Lender").  The undersigned hereby requests the Advance set forth below and certifies as of the date hereof that:

A.    I am a manager of Producer;

B.    I have reviewed the terms of the Loan Documents, and I have made a detailed review of the transactions and conditions of Producer as of the date hereof;

C.    All conditions precedent set forth in Paragraph 2 of the Agreement have been, and continue to be, met;

D.    The requested date and amount of the Advance, which conforms to the date and amount specified therefor in the Cash-Flow Schedule, are _____ and USD$_____, respectively.  The purpose of the requested Advance is to pay production costs included in the Budget;

E.    After giving effect to the Advance requested hereby, the aggregate amount of all Advances outstanding will not exceed the Commitment Amount; and

F.    Producer hereby requests that the Advance be paid directly into the Production Bank Account or as otherwise provided in the Agreement.

IN WITNESS WHEREOF, Producer has caused this Draw-Down Notice to be executed as of _____.

Signature: _____
Print Name: _____
Title: _____

B-1

EXHIBIT "C"

<u>SECURED PROMISSORY NOTE</u>

US USD$2,2000,000                                    As of <u>Dec 13, 2022 | 16:01 PST</u>

FOR VALUE RECEIVED, National Anthem Holdings LLC ("Producer") hereby promises to pay to Hercules Film Investors I (US), Inc. or order ("Holder") the amount of USD$2,200,000 or so much or more as may be borrowed under the "National Anthem" Loan and Security Agreement (the "Agreement") entered into by and between Producer and Holder, together with interest thereon as provided in the Agreement.  Except as otherwise defined herein, all capitalized words used in this Secured Promissory Note (the "Note") shall have the same meaning as set forth in the Agreement. The Loan shall be payable upon the Maturity Date or earlier as provided in the Agreement. This Note is subject to certain voluntary and mandatory prepayment provisions, as set forth in the Agreement. This Note is secured by a Security Interest in the Collateral, as described in the Agreement.  All payments under this Note shall be payable in lawful money of the United States of America and shall be paid in such manner and to such accounts as Holder may designate from time to time.  For the avoidance of doubt, the stated amount of this Note is not a ceiling or cap on the amount of the Loan payable pursuant to this Note.

Upon the occurrence of any Event of Default, the Loan shall become immediately due and payable. In the absence of manifest error, Holder's calculation of the outstanding amount of the Loan shall be conclusively binding on Producer.  Producer shall pay all expenses of Holder incurred in connection with the preparation and enforcement of this Note and the Agreement and collection of the Loan, including attorneys' fees and costs.

This Note shall be governed by and construed in accordance with the internal laws of the State of California (i.e., without regard to its conflict of law principles).

IN WITNESS WHEREOF, this Note has been executed and delivered in Burnaby, British Columbia, on the date set forth above.

NATIONAL ANTHEM HOLDINGS LLC

By:
Title:    MD                              Chief Operating Officer

C-1

EXHIBIT "D"

<u>POWER OF ATTORNEY</u>

This Power of Attorney is entered into by and between National Anthem Holdings LLC ("Producer") and Hercules Film Investors I (US), Inc. ("Lender") pursuant to that certain "National Anthem" Loan and Security Agreement (the "Agreement") entered into by and between Lender and Producer.  Unless otherwise defined herein, all capitalized words used herein have the same meanings as set forth in the Agreement.  Producer hereby irrevocably designates, constitutes, and appoints Lender as its true and lawful attorney-in-fact with full power of substitution and with full and irrevocable power of attorney (which power shall be coupled with an interest), on behalf of Producer, at any time or from time to time and in Lender's sole and absolute discretion to execute any and all documents and to take any actions reasonably necessary in Lender's good faith sole discretion to evidence, attach, perfect, or enforce Lender's Security Interest, and, upon an Event of Default, to take any of the following actions:

a.      Execute any and all documents (including the endorsement of checks) or take any actions reasonably necessary in Lender's good faith sole discretion to enforce any of the provisions of the Agreement.

b.      Take any action, including taking possession of, licensing, or disposing of any property of Producer, as lender in its good-faith judgment deems appropriate, including the settlement or compromise of any claims relating to such property.

c.      Lease, license, sell or otherwise dispose of that certain feature-length motion picture currently entitled "National Anthem" (the "Picture") and any and all distribution rights in and to the Picture in any and all media, markets and territories (or to engage others to do so on Lender's or Producer's behalf).

d.      Demand, collect, receive, settle, adjust, or compromise any and all monies payable to the Producer.

e.      File any claims and proofs of claim or to commence, maintain or discontinue any actions, suits or other proceedings deemed by Lender advisable for the purposes of collecting or enforcing payment of any monies owed to Producer.

f.      Endorse any checks, drafts or other orders or instruments for the payment of monies to or by Producer.

g.      Execute any and all such instruments, agreements or documents as may be necessary or desirable in connection with the foregoing.

Producer does hereby waive any claim for damages it might otherwise have against any third parties (as express third party beneficiaries) who handle, acquire, license, or dispose of Producer's property in accordance with the instructions of Lender operating pursuant to the provisions of this Power of Attorney.

D-1

Lender may, at any time and from time to time, without notice to Producer, sell, transfer or assign any or all of its rights hereunder.

This Power of Attorney shall be governed by and construed in accordance with and be governed by the internal laws of the State of California (i.e., without regard to its conflict of law principles).

IN WITNESS WHEREOF, Producer has executed this Power of Attorney as of Dec 13, 2022 | 16:01 PST

NATIONAL ANTHEM HOLDINGS LLC

By: _____ _____

Title: MD    Chief Operating Officer

D-2

DocuSign Envelope ID: 243C4Q9B-96C0-45B5-941E-6BAF95CB2271

EXHIBIT "E"

<u>WATERFALL</u>

**Distribution of Collected Gross Receipts**

All Collected Gross Receipts and Collection Account Interest shall be distributed by FCAM to the Beneficiaries in the following manner and order (to the extent said amounts have not already been paid or repaid from any other source, in which case the relevant Party or the Producer shall as soon as reasonably possible notify FCAM of such occurrence or with respect to Residuals, such Residuals have been paid through some other source as notified to FCAM in writing by the Guilds):

**A.        Disbursement of Collected Gross Receipts from the ROW Territory**

**Item I:         FIRST**

1.  To FCAM in payment of the FCAM's Expenses and FCAM's Remuneration; and thereafter

**Item II:        SECOND**

2.  to fund the Guilds Residuals Set-Aside in accordance with Schedule 6 [the residual payment provision in the CAMA], and thereafter,

**Item III:       THIRD**

3.  to unions other than the Guilds in payment of the Additional Union Payments; and thereafter

**Item IV        FOURTH**

4.  to Distribution Legal in payment of the Distribution Legal Fees; and thereafter

**Item V:        FIFTH**

5.  solely from the ROW Territory Collected Gross Receipts, to the ROW Sales Agent in payment of (i) ROW Sales Agent's Fee; and (ii) ROW Sales Agent's Sales Expenses; and thereafter

**Item VI:       SIXTH**

6.  to Senior Lender in repayment of the Senior Lender Repayment Amount until the Senior Lender has issued the Senior Lender Repayment Notice; and thereafter

**Item VII:      SEVENTH**

7.  [Intentionally deleted.]

**Item VIII:     EIGHTH**

8.  to any actual, out of pocket, documented, direct, third party expenses (capped at USD$5,000 per year per company) to maintain the Producer and PSC in good standing with any applicable governmental authority, including, but not limited to, professional services and payment of fees (including annual sovereign filing expenses) related thereto (but not including any income tax); and thereafter

E-1

**Item IX:         NINTH**

9.  to the E&O Deductible Reserve as notified by Producer to FCAM; and thereafter

**Item X: TENTH**

10. to Producer or BRON to pay any actual, direct, verifiable, out-of-pocket third party distribution, business and marketing expenses directly related to the Picture which are not included in the budget for the Picture, expressly excluding Overbudget Expenses, and are not assumed or paid by any third-party distributor of the Picture (including, without limitation any festival expenses) but in any event not more than USD$75,000 inclusive of ROW Sales Agent's Sales Expenses without Lender's approval; and thereafter

**Item XI:         ELEVENTH**

11. to Lender in repayment of the Lender Repayment Amount until the Lender has issued the Lender Repayment Notice; and thereafter

**Item XII:        TWELFTH**

12. to Tax Credit Lender in repayment of the Tax Credit Lender Repayment Amount until the Tax Credit Lender has issued the Tax Credit Lender Repayment Notice; and thereafter

**Item XIII:       THIRTEENTH**

13. to Completion Guarantor in payment of any unpaid Completion Guarantor Advances, if any; and thereafter

**Item XIV:        FOURTEENTH**

14. to Producer or BRON to pay Overbudget Expenses; and thereafter

**Item XV:         FIFTEENTH**

15. to Equity Financiers pro rata in repayment of their respective Investment Amount and Preferred Return; and thereafter

**Item XVI:        SIXTEENTH**

16. in accordance with Part C below.


**B.      Disbursement of Collected Gross Receipts from the US Territory or in the event of a single Worldwide sale**

**Item I:          FIRST**

1.  To FCAM in payment of the FCAM's Expenses and FCAM's Remuneration; and thereafter

**Item II:         SECOND**

2.  to fund the Guilds Residuals Set-Aside in accordance with Schedule 6 [the residual payment provision in the CAMA], and thereafter,

**Item III:        THIRD**

E-2

DocuSign Envelope ID: 243G4493B-96C0-45B5-941E-6BAF95CB2271

3.  to unions other than the Guilds in payment of the Additional Union Payments; and thereafter

**Item IV:**              **FOURTH**

4.  solely from the US/Worldwide Territory Collected Gross Receipts, to the Sales Agent in payment of Sales Agent's Fee; and thereafter

**Item V:FIFTH**

5.  to Senior Lender in repayment of the Senior Lender Repayment Amount until the Senior Lender has issued the Senior Lender Repayment Notice; and thereafter

**Item VI:**        **SIXTH**

6.  [Intentionally deleted]

**Item VII**              **SEVENTH**

7.  to Distribution Legal in payment of the Distribution Legal Fees; and thereafter

**Item VIII:**        **EIGHTH**

8.  to any actual, out of pocket, documented, direct, third party expenses (capped at USD$5,000 per year per company) to maintain the Producer and PSC in good standing with any applicable governmental authority, including, but not limited to, professional services and payment of fees (including annual sovereign filing expenses) related thereto (but not including any income tax); and thereafter

**Item IX:**        **NINTH**

9.  to the E&O Deductible Reserve as notified by Producer to FCAM; and thereafter

**Item X:TENTH**

10. to Producer or BRON to pay any actual, direct, verifiable, out-of-pocket third party distribution, business and marketing expenses directly related to the Picture which are not included in the budget for the Picture, expressly excluding Overbudget Expenses, and are not assumed or paid by any third-party distributor of the Picture (including, without limitation any festival expenses) but in any event not more than USD$75,000 inclusive of ROW Sales Agent's Sales Expenses without Lender's approval; and thereafter

**Item XI:**        **ELEVENTH**

11. to Lender in repayment of the Lender Repayment Amount until the Lender has issued the Lender Repayment Notice; and thereafter

**Item XII:**        **TWELFTH**

12. to Tax Credit Lender in repayment of the Tax Credit Lender Repayment Amount until the Tax Credit Lender has issued the Tax Credit Lender Repayment Notice; and thereafter

**Item XIII:**        **THIRTEENTH**

13. to Completion Guarantor in payment of any unpaid Completion Guarantor Advances, if any; and thereafter

DocuSign Envelope ID: 243C492B-96C0-45B5-941E-6BAF95CB2271

**Item XIV:          FOURTEENTH**

14. to Producer or BRON to pay Overbudget Expenses; and thereafter

**Item XV:           FIFTEENTH**

15. to Equity Financiers pro rata in repayment of their respective Investment Amount and Preferred Return; and thereafter

**Item XVI:          SIXTEENTH**

16. in accordance with Part C below.

E-4

**C.**    **Net Profit Disbursement of Collected Gross Receipts from the ROW Territory and US Territory jointly**

**Item I:**        **FIRST**

1.  The remaining balance thereafter shall be referred to as "Net Profits" and shall be applied and distributed on a pari passu as follows:

    a.  <u>Financiers' 50%</u>:

        i.    5% to Senior Financier; and the balance

        ii.   In accordance with the financing agreements

    b.  <u>Producer's 50%</u>:

        i.    In accordance with cast and crew agreements

DocuSign Envelope ID: 243G4B9B-9GG0-45B5-941E-6BAF9BCB227F

## Definitions

"Additional Union Payments": amounts payable with regard to union- or guild-related obligations (e.g., IATSE, AFM or British Actor's Equity Union) of the Producer other than those paid from the Residuals Set-Aside as advised to FCAM by Producer and/or the payroll house;

"Beneficiaries": those persons or entities who are entitled to participate in the proceed from the CAMA;

"BRON": BRON Studios USA Inc. or its designee;

"CAMA": the collection account management agreement for the Film made between, *inter alios*, FCAM, Senior Lender, Producer, PSC, BRON, Lender and Tax Credit Financier;

"Collected Gross Receipts": all monies or any other proceeds (including, but not limited to, advances, guarantees, license fees, overages and deposits and any other revenues generated by the Film without any deduction) derived from any distribution agreement or from any other source of exploitation in the Territory (i.e., the world) relating to the Film or the Rights, but specifically excluding any Tax Credits and any Tax Credit Proceeds (other than the Tax Credit Excess, insurance proceeds and claim recoveries, each of which shall be included in Gross Receipts but such Tax Credit Excess shall not be subject to Items 1-5 in Schedule 5) and actually received or deemed received by the FCAM;

"Collection Account Interest": any interest accrued on the Collected Gross Receipts while held at the FCAM's bank, in a segregated account specifically designated for the Film;

"Completion Guarantor": Film Finances Canada Ltd.

"Distribution Legal Fees": reasonable direct and accountable outside legal fees and expenses for Distribution Agreements in an amount not to exceed USD$25,000 without Lender's prior written approval (as advised to FCAM by Producer).

"E&O Deductible Reserve" a reserve as reasonably required by Producer for any out-of-pocket insurance deductible (not to exceed USD$25,000.00) actually paid by Producer in connection with any legal claims or settlements otherwise covered by Company's errors and omissions policy.

"Equity Financiers": financiers of the Film who contributed their funds as equity, if any;

"FCAM": Freeway CAM B.V.;

"Film": National Anthem

"Guilds": SAG, DGA and WGA;

"Investment Amount": the repayment amount of the contributions made by the Equity Financiers;

"Lender Repayment Amount": all monetary obligations, due to Lender under the Loan Agreement, the exact amounts to be notified in writing to FCAM by Lender in writing;

99910-01044/3738324.1

DocuSign Envelope ID: 243G4A93B-96C0-45B5-941E-6BAF95CB227F

"Lender Repayment Notice": written notice from Lender to FCAM and copied to the Producer that the Lender Repayment Amount has been indefeasibly paid in full (but in no event may such amount exceed 12% per annum interest on the amount actually loaned unless there is an "Event of Default" as defined in the Loan Agreement);

"Lender": Creative Wealth Media Finance Corp.;

"Loan Agreement": the Loan Agreement dated as of December 6, 2021 by and between Lender, PSC and Producer in relation to the Film;

"Overbudget Expenses": amounts actually expended in payment of any actual, direct, verifiable, out of pocket third-party production overages and enhancements directly related to the Film which are not included in the Budget for the Film as notified to FCAM by Producer;

"Party": a party to the CAMA;

"Preferred Return": an accelerated recoupment amount as a percentage of the Investment Amount, not to exceed 20% without the prior written approval of Lender;

"Producer": National Anthem Holdings, LLC;

"PSC": National Anthem Prodco Inc.;

"Residuals Set-Aside": A retention of no more than nine and eight tenths 9.8% of all Collected Gross Receipts as a set-aside for Guild Residuals ("Periodic Gross Receipts").  Said 9.8% of the Collected Gross Receipts shall constitute a temporary "Residuals Set-Aside" earmarked for payment of Residuals (including, Payroll House Fees and Producer Payroll Taxes, if any, in connection with said Residuals) on which the applicable period's Collected Gross Receipts were generated;

"Residuals": all additional compensation which is or may become payable to any Guild-represented employees pursuant to the applicable basic agreement when the Film is exhibited, distributed or otherwise exploited in any Territory, and including, but not limited to, additional compensation payable on advances, minimum guarantees or similar lump sum payments;

"ROW Sales Agent's Fees": an amount not to exceed seven and one-half percent (7.5%) of any Collected Gross Receipts from the ROW Territory, provided that for all second-cycle sales (i.e. sales conducted after the expiration of the term of a distribution agreement), such fee shall not exceed twenty five percent (25%) as advised to FCAM by the ROW Sales Agent;

"ROW Sales Agent's Sales Expenses": any reasonable, actual, direct, verifiable out of pocket, non-overhead, non-salary third party marketing expenses directly related to the Film, provided such costs shall not exceed USD$75,000, without the prior written approval of Lender;

"ROW Sales Agent": BRON Releasing USA Inc. or its designee,        ;

"ROW Territory Collected Gross Receipts": Collected Gross Receipts derived from the exploitation of the Film in the ROW Territory;

"ROW Territory": the world, excluding the US Territory;

"Sales Agent": BRON Releasing USA Inc. or its designee and WME, jointly.

99910-01044/3738324.1

DocuSign Envelope ID: 243C490B-9CC0-45B5-941E-6BAF9FCB227

"Sales Agent's Fee": an amount not to exceed seven and one-half percent (7.5%) of any Collected Gross Receipts from the US Territory, provided that for all second-cycle sales (i.e. sales conducted after the expiration of the term of a distribution agreement), such fee shall be twenty percent (20%) as advised to FCAM by the Sales Agent;

"Senior Lender": Hercules Film Investors I (US), Inc.

"Senior Lender Loan Agreement": the Loan Agreement dated as of November [___], 2022 by and between Senior Lender and Producer in relation to the Film;

"Senior Lender Repayment Amount": all monetary obligations, due to Lender under the Senior Lender Loan Agreement, the exact amounts to be notified in writing to FCAM by Lender in writing;

"Senior Lender Repayment Notice": written notice from Senior Lender to FCAM and copied to the Producer that the Senior Lender Repayment Amount has been indefeasibly paid in full;

"Tax Credit Lender Repayment Amount": all monetary obligations, due to Lender under the Loan Agreement, the exact amounts to be notified in writing to FCAM by Tax Credit Lender in writing;

"Tax Credit Lender Repayment Notice": written notice from Tax Credit Lender to FCAM and copied to the Producer that the Tax Credit Lender Repayment Amount has been indefeasibly paid in full;

"Tax Credit Lender": Three Point Capital Holdings, LLC;

"Tax Credit Loan Agreement": the Loan Agreement dated as of March 11, 2022 by and between Tax Credit Lender, PSC and Producer in relation to the Film;

"US Territory Collected Gross Receipts": Collected Gross Receipts derived from the exploitation of the Film in the US Territory;

"US Territory": the United States of America, and its territories and possessions and any embassies, military bases, military vessels and other governmental facilities or any ship or airline flying the flag of the United States of America.  The US Territory shall include Canada, its territories possession and any embassies, military bases, military vessels and other governmental facilities or any ship or airline flying the flag of Canada, if necessary for a US Territory sale.

99910-01044/3738324.1

**EXHBIT B**

## AMENDMENT TO "NATIONAL ANTHEM" LOAN AND SECURITY AGREEMENT

This Amendment to "National Anthem" Loan and Security Agreement is entered into by and between Producer and Lender.

1.     <u>Definitions</u>.  All capitalized words used herein have the meanings set forth in the "National Anthem" Loan and Security Agreement entered into between Hercules Film Investors I (US), Inc., a Delaware limited liability company, and National Anthem Holdings, LLC, a Delaware limited liability company.

2.     <u>Additional Loan</u>.  Lender shall make an additional Advance to Producer in the amount of $90,667, which shall be added to the Loan.  Of this additional amount, (a) $85,000 will be funded by wire transfer to the Production Bank Account within three business days after complete execution hereof and (b) $5,667 will be paid by Lender directly to Rhea Films, LLC as an additional executive producer fee.

3.     <u>Counterparts</u>.  This Amendment may be executed in counterparts and transmitted by facsimile or PDF copy, each of which shall constitute an original.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment effective as of the date set forth below.

Date: <u>Mar 13, 2023 | 08:12 PDT</u>

NATIONAL ANTHEM HOLDINGS LLC

By: *Aaron Gilbert*    *Steven Thibault*

Title: MD    Chief Operating Officer

HERCULES FILM INVESTORS I (US), INC.

By: _____

Title: _____

**EXHBIT C**

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER** (optional)

Parasec    (916) 576-7000

**B. E-MAIL CONTACT AT FILER** (optional)

uccorders@parasec.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Eric Olea c/o Greenberg Glusker LLP

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 01:44 PM 12/14/2022**
**U.C.C. Initial Filing No: 2022 0348902**

**Service Request No:  20224266818**

Print    Reset

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| National Anthem Holdings LLC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 251 Little Falls Drive | Wilmington | DE | 19808 | US |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Hercules Film Investors I (US), Inc. | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 24 Quai du Seujet, 9th Floor | Geneva | | 1201 | CH |

4. **COLLATERAL:** This financing statement covers the following collateral:

The property identified on Exhibit A, attached hereto.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
35807-00004

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)    International Association of Commercial Administrators (IACA)

EXHIBIT "A"

## ASSIGNMENT FOR SECURITY FOR "NATIONAL ANTHEM"

This Assignment for Security is executed by National Anthem Holdings LLC ("Producer") pursuant to the "National Anthem" Loan and Security Agreement (the "Agreement") entered into by and between Producer and Hercules Film Investors I (US), Inc. ("Lender") with respect to a loan for a film tentatively titled "National Anthem" (the "Picture").  Unless otherwise defined herein, all capitalized words used herein shall have the same meaning as set forth in the Agreement.  In order to secure all of Producer's obligations under the Loan Documents, Producer hereby grants to Lender a first priority security interest in all of Producer's right, title, and interest in and to all personal property of every kind and nature, tangible or intangible, whether now owned or hereafter acquired or created, including all products and proceeds thereof and specifically including, without limitation, the Screenplay, the Picture, the sound track and music for the Picture, all marketing material relating to the Picture, and all copyrights and ancillary and derivative rights relating to any of the foregoing.

IN WITNESS WHEREOF, this Assignment for Security has been executed by Producer effective as of _____Dec 13, 2022 | 16:01 PST_____ .

NATIONAL ANTHEM HOLDINGS LLC

By:    *Aaron Gilbert*                    *Steven Thibault*

Title:    MD                    Chief Operating Officer

A-1

**EXHBIT D**

**Form DCS** (Document Cover Sheet)
**For Recordation of Documents under 17 U.S.C. §205**

UNITED STATES COPYRIGHT OFFICE

Electronic Title List Enclosed ☐

**Declaration of Ownership in a Musical Work (DOMW)** ☐
*If DOMW is checked, an electronic title list must be enclosed
and "Electronic Title List Enclosed" must also be checked.*

---

DO NOT WRITE IN THIS BOX

Volume _____    Document _____

SR# _____

Date of recordation  M _____ D _____ Y _____
(ASSIGNED BY THE COPYRIGHT OFFICE)

---

**Privacy Act Notice:** Sections 205 and 705 of title 17 of the *United States Code* authorize the Copyright Office to collect the personally identifying information (PII) requested on this form. PII is any personal information that can be used to identify, contact, or trace an individual, such as names, addresses, and telephone numbers. By providing this information, you are agreeing to the routine use of it to establish and maintain a public record, which includes appearing in the Office's paper and online public records and indexes, including the Office's online catalog, and in search reports prepared for the public. If you do not provide the information requested, recordation may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

Copyright Office fees are subject to change. For current fees, check the Copyright Office website at *www.copyright.gov*, write the Copyright Office, or call (202) 707-3000 or 1-877-476-0778 (toll free).

**Send to:** *Library of Congress, Copyright Office–DOC, LM 433, 101 Independence Avenue SE, Washington, DC 20559-6000*
*If submitting a DOMW, send to: Copyright Office–DOMW, P.O. Box 71537, Washington, DC 20024-1537*

---

To the Register of Copyrights: *Please record the accompanying document.*

---

**IMPORTANT:** *Please read all instructions for completing this form. If you have enclosed an electronic title list or if your document is a Declaration of Ownership in a Musical Work (DOMW), check the appropriate box(es) on the top of this page.*

**1**  Title of first work provided in document

"NATIONAL ANTHEM"

**2**  Total number of titles in document

One (1)

**3**  Page number(s) in document where titles information can be located

Page one (1)

**4**  Amount of fee calculated

$ 125.00    *(Fees are to be calculated in accordance with 37 C.F.R. § 201.3(c))*

**5**  Fee enclosed

☐ Check    ☐ Money Order
☒ Fee authorized to be charged to Copyright Office deposit account

Deposit account number ██████████████

Deposit account name  Greenberg Glusker Fields Claman & Machtinger LLP

**6**  Return receipt requested

☒ If checked, please enclose a second completed copy of this form and a self-addressed postage-paid envelope

**7**  Redacted document

☐ Check if document is redacted
☐ Check if a written justification for redacted material not enumerated in 37 C.F.R. § 201.4(d)(4)(i) is enclosed

**8**  English translation

☐ Check if an English translation of non-English material is enclosed

**9** Document type

*(Check the one that best describes the document.)*

- [x] Assignment
- [ ] Exclusive License
- [ ] Non-Exclusive License
- [ ] Change of Address
- [ ] Mortgage or Security Agreement
- [ ] Affidavit/Declaration/Certification
- [ ] Court Order
- [ ] Will
- [ ] Change of Name *(e.g., via merger agreement, amendment to articles of incorporation)*
- [ ] Other _____

**10** Document's Date of Execution

December 13, 2022

**11** Party Information

*(Provide the names of all parties to the document and the nature of their respective relationships to the document, including which party, if any, is the current copyright owner of the works to which the document pertains. A mailing address must also be provided if submitting a DOMW and may be voluntarily provided for all other documents. If more space is needed, attach an additional sheet.)*

Name **National Anthem Holdings LLC**

Relationship  Grantor

Number/Street _____  Apt/Suite _____

City _____  State _____  Zip _____

Name **Hercules Film Investors I (US), Inc.**

Relationship  Grantee

Number/Street _____  Apt/Suite _____

City _____  State _____  Zip _____

- [ ] List continued on an attached additional sheet

**12** Remitter Information and Certifications

*(You, the individual actually submitting this form and the attached document to the Copyright Office, provide your contact information and make the required remitter certifications by signing your name. The Office may use this information to contact you about the submission and will send the certificate of recordation to the provided address if the document is successfully recorded.)*

*I certify under penalty of perjury under the laws of the United States of America that I have been given appropriate authority to submit this cover sheet, accompanying document, and any other enclosed materials to the U.S. Copyright Office for recordation, and all information I have submitted is true, accurate, and complete to the best of my knowledge.*

*I understand that any falsification or misrepresentation may subject me to civil or criminal liability. By signing my name below, I acknowledge that I have read and agree to these conditions.*

Signature  *Eric Olea*  Date 12/14/2022

Name  Eric B. Olea

Title/Organization  Paralegal, Greenberg Glusker Fields Claman & Machtinger LLP

Number/Street  2049 Century Park East  Apt/Suite 26th Floor

City  Los Angeles  State CA  Zip 90067

Phone number  310.201.7573  Fax number 310.201.4444

Email  eolea@greenbergglusker.com

If you are not a party to the document, describe your relationship to the document or the original parties to the document *(e.g., duly authorized agent of a party, successor-in-interest to a party, duly authorized agent of a successor-in-interest to a party).*

Duly authorized agent of Hercules Film Investors I (US), Inc.

_____

_____

**13** Document Certifications     ☐ Original document enclosed     ☐ Official certification enclosed

*(These certifications can be made either by the remitter identified on the previous page or another individual.)*

*I certify under penalty of perjury under the laws of the United States of America that the following is true and correct: (Check the box next to each certification being made. The first is always required. The second is required if an original document or official certification is not enclosed. If a different individual is making each one, complete and attach an additional copy of this page.)*

☒ *The accompanying document being submitted to the U.S. Copyright Office for recordation satisfies the signature, completeness, legibility, and, if redacted, redaction requirements for recordation as specified in 37 C.F.R. § 201.4.*

☒ *The accompanying document being submitted to the U.S. Copyright Office for recordation is, to the best of my knowledge, a true and correct copy of the original, signed document.*

*I understand that any falsification or misrepresentation may subject me to civil or criminal liability. By signing my name below, I acknowledge that I have read and agree to these conditions.*

Signature   *Eric Olea*                                    Date  12/14/2022

Certifier Information

*(This information is only required if an individual other than the remitter identified on the previous page is making the above certifications.)*

Name   Eric B. Olea

Title/Organization   Paralegal, Greenberg Glusker Fields Claman & Machtinger LLP

If the certifier is not a party to the document, describe the certifier's relationship to the document or the original parties to the document (*e.g.*, duly authorized agent of a party, successor-in-interest to a party, duly authorized agent of a successor-in-interest to a party).

Duly authorized agent of Hercules Film Investors I (US), Inc..

EXHIBIT "A"

<u>ASSIGNMENT FOR SECURITY FOR "NATIONAL ANTHEM"</u>

This Assignment for Security is executed by National Anthem Holdings LLC ("Producer") pursuant to the "National Anthem" Loan and Security Agreement (the "Agreement") entered into by and between Producer and Hercules Film Investors I (US), Inc. ("Lender") with respect to a loan for a film tentatively titled "National Anthem" (the "Picture").  Unless otherwise defined herein, all capitalized words used herein shall have the same meaning as set forth in the Agreement.  In order to secure all of Producer's obligations under the Loan Documents, Producer hereby grants to Lender a first priority security interest in all of Producer's right, title, and interest in and to all personal property of every kind and nature, tangible or intangible, whether now owned or hereafter acquired or created, including all products and proceeds thereof and specifically including, without limitation, the Screenplay, the Picture, the sound track and music for the Picture, all marketing material relating to the Picture, and all copyrights and ancillary and derivative rights relating to any of the foregoing.

IN WITNESS WHEREOF, this Assignment for Security has been executed by Producer effective as of <u>Dec 13, 2022 | 16:01 PST</u>.

NATIONAL ANTHEM HOLDINGS LLC

By: _____   _____
       *Aaron Gilbert*                              *Steven Thibault*
       3E05B98C84DA4EB...                     EAEC8788F80440F...

Title: ____MD_____   ____Chief Operating Officer____

A-1