**IN THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| In re:<br><br>BRON Media Holdings USA Corp., *et al.*,<br><br>Debtors in a Foreign Proceeding. | Chapter 15<br><br>Case No. 23-56798-pmb<br><br>Jointly Administered |

**FOREIGN REPRESENTATIVE'S REPLY TO OBJECTIONS OF (i) HUDSON PRIVATE LP AND HUDSON PRIVATE CORPORATION, AND (ii) HERCULES FILM INVESTORS I (US), INC. TO FINAL RECOGNITION ORDER**

COMES NOW BRON Media Corp[1] ("**BRON**"), in its capacity as the court-appointed and authorized foreign representative (the "**Foreign Representative**") for the above captioned debtors (the "**Debtors**"), which are the subjects of a reorganization proceeding (the "**CCAA Proceeding**") commenced under Canada's *Companies' Creditors Arrangement Act* (the "**CCAA**"), pending before the Supreme Court of British Columbia (the "**Canadian Court**"), and respectfully submits this reply (the "**Reply**") to the *Opposition to Motion of Foreign Representative for an Order Granting Certain Provisional Relief* (DN 29) filed by Hercules Film Investors I (US), Inc. (the "**Hercules Objection**") and *Hudson Private LP and Hudson Private Corporation's Response in Opposition to BRON Media Corp's Omnibus Petition for (I) Recognition of Foreign*

---

[1] The U.S. Debtors in these Chapter 15 cases and the last four digits of their U.S. Federal Employer Identification Numbers are as follows: BRON Creative USA Corp (1363); BRON Digital USA, LLC (0276); BRON Life USA Inc. (1178); BRON Media Holdings USA Corp (0637); BRON Releasing USA Inc. (6368); BRON Studios USA Inc. (8784); BRON Ventures 1 LLC (5066); BRON Studios USA Developments Inc. (7529); Bakhorma, LLC (6944); Drunk Parents, LLC (5462); Fables Holdings USA, LLC (8085); Fables Productions USA INC. (5169); Gossamer Holdings USA, LLC (2582); Gossamer Productions USA, Inc. (7876); Harry Haft Productions, Inc. (6144); Heavyweight Holdings, LLC f/k/a Harry Haft Films, LLC (8193); I am Pink Productions, LLC (6681); Lucite Desk, LLC (2546); National Anthem Holdings, LLC f/k/a BCDC Holdings, LLC (6943); National Anthem ProdCo Inc. (8637); Oakland Pictures Holdings, LLC (4988); Pathway Productions, LLC (Del. Incorporation No. 3081); Robin Hood Digital PC USA Inc. (2499); Robin Hood Digital USA, LLC (4302); Solitary Holdings USA, LLC (3013); Surrounded Holdings USA LLC (8868); and Welcome to Me, LLC (8500) (hereinafter collectively referred to as the "**Debtors**"). The Debtors' principal offices are located at 1700-Park Place, 666 Burrard Street, Vancouver, British Columbia, Canada.

*Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code and Motion to Transfer Venue* (DN 30) (the "**Hudson Objection**"), in support of the *Omnibus Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (DN. 9) (the "**Petition for Recognition**"), and respectfully represents as follows:

**<u>Procedural History in U.S. Court</u>**

1. On July 19, 2023 (the "**Petition Date**"), each Debtor commenced their respective Chapter 15 case (collectively, the "**Cases**") by the filing of a Chapter 15 Petition for Recognition of a Foreign Proceeding.

2. On July 20, 2023, in the Debtors' jointly administered main case of BRON Media Holdings USA Corp. (the "Main Case"), the Foreign Representative filed a Motion of Foreign Representative for an Order Granting Certain Provisional Relief (DN. 9) (the "**Provisional Relief Motion**").

3. On July 20, 2023, the Foreign Representative also filed its Petition for Recognition.

4. On July 20, 2023, the Court held a hearing on the Provisional Relief Motion. Counsel for Hudson appeared at the hearing and did not object to the relief sought or venue.

5. On July 20, 2023, the Court entered an Order Granting Provisional Relief and Continuing Hearing (DN. 15) (the "**Preliminary Order**"). Pursuant to the terms of the Preliminary Order, the Court continued the hearing to July 28, 2023 at 2:30 p.m.

6. On July 28, 2023, the Court held a status conference on the continued hearing and reset the matter for July 31, 2023 at 9:30 a.m.

7. On July 31, 2023, the Court held the continued hearing on preliminary relief and no one appeared in opposition. Counsel for Hudson appeared at the continued hearing.

8. On July 31, 2023, the Court entered an *Order Granting Continued Provisional Relief* (DN 23).

9. The Petition for Recognition seeks recognition of the Debtors' plenary reorganization proceeding under the CCAA. Out of over two hundred creditors, the only pleadings filed in response to the Petition for Recognition were the Hercules Objection and the Hudson Objection. Notably, neither objection requests the Court to deny final recognition.

**Hercules Objection**

10. Hercules Film Investors I (US), Inc. ("**Hercules**") made a loan to Debtor National Anthem Holdings, LLC, which is a Petitioner in the CCAA Proceeding before the Canadian Court (the "**Hercules Loan**"). The Hercules Loan is secured by a security interest in a film currently titled "Americana" (the "**Film**") (the "**Hercules Security Interest**"). Hercules filed a UCC-1 Financing Statement with respect to the Hercules Security Interest in December 2022, subsequent to the UCC-1 filings of Creative Wealth Media Finance Corp. ("**CWMF**") and Three Point Capital Holdings, LLC ("**TPC**") relating to the Film, which were both filed in March 2022. See Gilbert Decl., ¶ 15. Hercules, CWMF and TPC are parties to a *Collection Account Management Agreement,* which contractually governs the priority of proceeds from any payment out of gross receipts on a worldwide sale relating to the Film.

11. The Hercules Objection is limited in scope as to the Film being subject to the Canadian Charges (as defined in the Hercules Objection).

**Hudson Objection**

12. Hudson is a former investor and judgment creditor of two of the twenty-seven jointly administered Debtors - BRON Studios USA, Inc. and BRON Creative USA – neither of which are the Debtor in the Main Case.

13. The Hudson Objection asserts three arguments for objecting to the Petition for Recognition: (i) venue, (ii) extraordinary relief, and (iii) disclosure of the relationship between Creative Wealth Media Lending LP 2016 (the "**DIP Lender**") and BRON.

**Argument and Citation of Authority**

**I. Relief Requested in Final Recognition Order is Appropriate and Proper Under Chapter 15 of the Bankruptcy Code and Consistent with Principles of Comity and Public Policy**

14. BRON, through its Petition for Recognition, is seeking recognition of the CCAA Proceeding as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code. The plain language of section 1517 provides that an order for recognition in a chapter 15 proceeding involves the recognition of a "foreign proceeding." See 11 U.S.C. § 1517. Section 1517 clearly provides for an order granting broad recognition of a foreign proceeding, which necessarily includes the recognition of the orders entered in such foreign proceeding, subject to any limitations set forth in the recognition order.

15. Relief providing for the general recognition of a foreign proceeding, including the orders entered and transactions approved therein, is commonly granted in Chapter 15 cases. *See, e.g., In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 698-700 (Bankr. S.D.N.Y. 2010) ("U.S. federal courts have repeatedly granted comity to Canadian proceedings," reasoning "[t]here is no basis for this Court to second-guess the decisions of the Canadian courts"); *In re Mega Brands Inc.*, Case No. 10-10485 (CSS) (Bankr. D. Del. Mar. 23, 2010) ("all orders entered by the Canadian Court in the Canadian Proceeding … shall be given full faith and credit in the United States … and shall be upon their entry in the Canadian Proceeding immediately valid and fully enforceable as to the Chapter 15 Debtors and their property and assets in the United States"); *In re Lone Pine Resources Inc.*, Case No. 13-12487 (BLS) (Bankr. D. Del. Oct. 18, 2013) (giving full force and

effect and granting comity to CCAA Initial Order and all extensions or amendments thereto, as well as all transactions to be consummated under CCAA Proceeding and Initial Order); *see also In re Xentel Inc.*, Case No. 13-10888 (KG) (Bankr. D. Del. May 17, 2013); *In re Cinram International Inc.*, Case No. 12-11882 (KJC) (Bankr. D. Del. July 25, 2012); *In re Arctic Glacier International Inc.*, Case No. 12-10605 (KG) (Bankr. D. Del. Mar. 16, 2012); *In re Crystallex International Corporation*, Case No. 11-14074 (LSS) (Bankr. D. Del. Jan. 20, 2012) (granting recognition of CCAA Initial Order and all extensions or amendments thereto); *In re Angiotech Pharmaceuticals Inc.*, Case No. 11-10269 (KG) (Bankr. D. Del. Feb. 2, 2011) [D.I. 83] (same); *In re Essar Steel Algoma Inc.*, Case No. 14-11730 (BLS) (Bankr. D. Del. Aug. 20, 2014) [D.I. 96] (giving full force and effect and granting comity to preliminary Canadian Order and all extensions or amendments thereto, as well as all transactions to be consummated under Canadian Proceeding and preliminary Order); *In re Electro Sonic Inc.*, Case No. 14-10240 (PJW) (Bankr. D. Del. Mar. 30, 2014) (giving full force and effect and granting comity to Canadian bankruptcy proceeding and all transactions to be consummated thereunder); *In re ARXX Corporation*, Case No. 13-13313 (Bankr. D. Del. Jan. 31, 2014) (giving full force and effect to Canadian receivership order, including any future amendments or extensions thereto).

16. Broad recognition of the CCAA Proceeding, including the orders entered and transactions approved therein, is necessary as a practical matter to provide for the efficient administration of these cross-border cases. Moreover, broad recognition of the CCAA Proceeding is consistent with the stated objective of chapter 15 of the Bankruptcy Code to provide for the "fair and efficient administration of cross-border insolvencies." *See* 11 U.S.C. § 1501(a)(3). The "express purpose of chapter 15 is to promote cooperation between the courts of foreign nations and the United States in the efficient administration of cross-border insolvencies". *In re Grand*

*Prix Assocs. Inc.*, No. 09-16545 (DHS), 2009 WL 1850966, at *3 (Bankr. D.N.J. June 26, 2009); *see also In re Oversight & Control Comm'n of Avanzit, S.A.*, 385 B.R. 525, 532 (Bankr. S.D.N.Y. 2008) (*citing In re Bear Stearns High–Grade Structured Credit Strategies Master Fund*, 374 B.R. 122, 126 (Bankr. S.D.N.Y. 2007)); *Jaffe v. Samsung Elecs. Co.*, 737 F.3d 14, 31 (4th Cir. 2013); *In re Hellas Telecommc'ns (Luxembourg) II SCA*, 535 B.R. 543, 570 (Bankr. S.D.N.Y. 2015); *In re Daewoo Logistics Corp.*, 461 B.R. 175, 178 (Bankr. S.D.N.Y. 2011).

17. In a Chapter 15 case, the United States court is to act in an ancillary role, with the goal of assisting with the pursuit of the objectives of the foreign proceeding. *See, e.g., Chen v. Ernst & Young Inc.* (*In re Nortel Networks Corp.*), No. 09-10164-KG, 2013 U.S. Dist. LEXIS 162887, at *11 (D. Del. Nov. 15, 2013) (affirming Bankruptcy Court's recognition of Canadian proceedings, noting Bankruptcy Court's statement that "this is a Chapter 15 case as opposed to a Chapter 11 case," and concurring with the court's heavy reliance on principles of comity to correctly conclude that relief requested by the objecting parties "'could have and should have been brought before the Canadian court in the first instance, the court which is the main proceeding here.'"); *In re British Am. Ins. Co. Ltd.*, 488 B.R. 205, 222 (Bankr. S.D. Fla. 2013). The Court is required to "protect the parties' interests by implementing fair, efficient and … cooperative procedures designed to maximize the value of the debtor's assets for distribution." *In re SPhinX, Ltd.*, 351 B.R. 103, 113 (Bankr. S.D.N.Y. 2006) aff'd, 371 B.R. 10 (S.D.N.Y. 2007).

18. 11 U.S.C. § 1506 provides a public policy exception to matters authorized under Chapter 15 of the Bankruptcy Code, including recognition itself. Section 1506 states that nothing in Chapter 15 prevents a court from refusing to take an action governed by Chapter 15 if the action would be manifestly contrary to the public policy of the United States. By requiring the proposed action to be "manifestly" contrary to public policy, Congress made it clear that this

provision must be interpreted restrictively. Section 1506 should be invoked only under exceptional circumstances concerning matters of fundamental importance to the United States. Although few reported decisions address the scope of § 1506, it appears well settled that the exception is to be construed narrowly. *In re British Am. Isle of Venice, Ltd.*, 441 B.R. 713, 716, 22 Fla. L. Weekly Fed. B 631 (Bankr. S.D. Fla. 2010). *See also In re Toft*, 453 B.R. 186, 194 (Bankr. S.D.N.Y. 2011) ("the Court again reached the § 1506 public policy exception in deciding whether to grant comity to a Canadian plan of arrangement that included third-party releases that arguably could not be granted in a U.S. bankruptcy proceeding. It held, 'The key determination required by this Court is whether the procedures used in Canada met our fundamental standards of fairness,' and it concluded that § 1506 did not bar enforcement of the third-party releases because the Canadian court had statutory authority to grant such relief, the question of the Canadian court's jurisdiction had been fully litigated and carefully considered in Canada, including on appeal and the 'procedures used in Canada meet our fundamental standards of fairness.'")

19. The Court has broad discretion under section 1521 of the Bankruptcy Code to order relief following recognition of a foreign proceeding, and may grant "any appropriate relief" that would further the purposes of chapter 15 and protect a debtor's assets and the interests of its creditors. *See, e.g., In re Atlas Shipping A/S*, 404 B.R. 726, 739 (Bankr. S.D.N.Y. 2009) ("[t]he discretion that is granted is exceedingly broad since a court may grant any appropriate relief that would further the purposes of chapter 15 and protect the debtor's assets and the interests of creditors") (internal quotation marks omitted); *see also In re Sivec SRL*, 476 B.R. 310, 323 (Bankr. E.D. Okla. 2012) (same). The final recognition order is consistent with these objectives.

20. Furthermore, granting broad recognition of the CCAA Proceeding is in the interest of comity, a "central tenet" in chapter 15 proceedings. *See, e.g., In re Rede Energia S.A.*, 515 B.R.

69, 91 (Bankr. S.D.N.Y. 2014) ("[c]hapter 15 … provides courts with broad, flexible rules to fashion relief that is appropriate to effectuate the objectives of the chapter in accordance with comity"); *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333 (S.D.N.Y. 2008) ("relief is largely discretionary and turns on subjective factors that embody principles of comity"); *In re Sino-Forest Corp.*, 501 B.R. 655, 664 (Bankr. S.D.N.Y. 2013) (same); *In re Metcalfe*, 421 B.R. at 697 (Bankr. S.D.N.Y. 2010) (same); *In re Atlas Shipping*, 404 B.R. at 738 (same). As a general matter, comity principles support the recognition and enforcement of Canadian orders in U.S. courts, and recognition is regularly granted to Canadian insolvency proceedings in accordance with such principles. *See In re Metcalfe*, 421 B.R. at 698-700 ("U.S. federal courts have repeatedly granted comity to Canadian proceedings … [p]rinciples of comity in chapter 15 cases support enforcement of the Canadian Orders in the United States"); *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 212 (S.D.N.Y. 2002) ("[t]here is no question that bankruptcy proceedings in Canada—a 'sister common law jurisdiction with procedures akin to our own'— are entitled to comity under appropriate circumstances").

21. Finally, Chapter 15 supports the enforcement of foreign court orders even if the same orders would not be available in a chapter 11 case. *See, e.g., In re Metcalfe*, 421 B.R. at 700 (recognizing Canadian reorganization plan that contained third-party releases that may have been impermissible under U.S. bankruptcy law, reasoning that "[p]rinciples of comity in chapter 15 cases support enforcement of the Canadian Orders in the United States whether or not the same relief could be ordered in a plenary case under chapter 11"); *In re Condor Ins. Ltd.*, 601 F.3d 319, 327 (5th Cir. 2010) (explaining that in enacting chapter 15, congress did not intend to restrict U.S. courts from applying laws of country of foreign main proceeding). This Court is not required to

make an independent determination about the propriety of individual acts of a foreign court. *See In re Metcalfe*, 421 B.R. at 697; *see also In re Bd. of Dirs. of Multicanal S.A.*, 307 B.R. 384, 391 (Bankr. S.D.N.Y. 2004) (noting that neither case law nor section 304 (statutory predecessor to chapter 15) require a determination that foreign proceeding is identical to U.S. proceeding).

22. Indeed, there have been many instances where a U.S. bankruptcy court has enforced an order from a Canadian insolvency proceeding despite such relief not generally being available in a chapter 11 proceeding. *See, e.g.*, *In re Metcalfe*, 421 B.R. 685 (enforcing a broad third-party release and injunction, even though such provisions generally would not be allowable in a chapter 11 case); *In re Sino-Forest*, 501 B.R. 655 (same); *In re Ephedra Prods. Liab. Litig.,* 349 B.R. 333 (S.D.N.Y. 2006) (claims resolution procedure ordered by Canadian court was recognized and enforced, even though procedure arguably deprived parties of their rights to due process and a jury trial under U.S. Constitution).

## II. Response to Objection of Hudson Private LP and Hudson Private Corp (collectively, "Hudson").

### A. The Request to Transfer Venue is Not Properly Before the Court

23. In its Objection, Hudson imbeds a Motion to Transfer Venue (the "**Motion Portion**"). The Motion Portion of the Hudson Objection is not properly before this Court. The Motion Portion requests that this Court transfer the Cases to the Southern District of New York or Los Angeles. Presumably, although it is never stated, this request is made under Federal Rule of Bankruptcy Procedure ("**Rule**") 1014(a). Rule 1014(a) requires that any motion to transfer venue be either granted or denied "after hearing on notice to the petitioners." *See* Rule 1014(a)(1). No notice of hearing has been filed for the Motion Portion.

24. The Eleventh Circuit has held that where a request for relief is "imbedded within an opposition memorandum, the issue has not been raised properly." *Posner v. Essex Ins. Co.,* 178

F.3d 1209, 1222 (11th Cir. 1999). Courts in the Northern District of Georgia have found that, "[a] request for relief generally must be made by a standalone motion that is not imbedded in a response or reply filing." *Ohl v. CSX Transp., Inc.*, 2022 U.S. Dist. LEXIS 122424, *5 (N.D. Ga. Jan. 10, 2022). To that end, courts in this District have clearly, "warned against attempting to file motions imbedded within response or similar opposition filings." *Shenzhen Shenchuang Elec. Appliance Co. v. Hautehouse,* 2021 U.S. Dist. LEXIS 210851, *6 (N.D. Ga. Aug. 24, 2021) (listing cases).[2] The Motion Portion of the Hudson Filing is an improper compound pleading. The relief requested in the Motion Portion has not been raised properly and should be denied.

### B. <u>Venue is Proper in the Northern District of Georgia Pursuant to 11 USC 1410(a) and 1410(c)</u>

25. In so far as the Motion Portion is ripe to be heard by the Court, the Foreign Representative objects to the requested transfer of venue to the Southern District of New York or any other venue. Venue in a Chapter 15 ancillary proceeding is governed by 28 U.S.C. § 1410. Section 1410 gives courts the following "waterfall" series of tests, listed in the disjunctive, to determine proper venue, whereby if one test is satisfied the Court may stop its analysis:

> A case under chapter 15 of title 11 may be commenced in the district court of the United States for the district—
>
> > (1) in which the debtor has its principal place of business or principal assets in the United States;
> > (2) if the debtor does not have a place of business or assets in the United States, in which there is pending against the debtor an action or proceeding in a Federal or State court; or
> > (3) in a case other than those specified in paragraph (1) or (2), in which venue will be consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative.

---

[2] These cases are listed as follows: "*See e.g. Aldridge v. Travelers Home & Marine Ins. Co.*, No. 1:16-CV-01247-SCJ, 2019 U.S. Dist. LEXIS 230313, 2019 WL 8439150, at *2 & n.5 (N.D. Ga. Feb. 21, 2019); *see also Stewart v. Equifax Info. Servs., LLC*, No. 118CV05799ELRRGV, 2019 U.S. Dist. LEXIS 203768, 2019 WL 5549262, at *6 (N.D. Ga. June 10, 2019), *report and recommendation adopted*, No. 1:18-CV-05799-ELR, 2019 U.S. Dist. LEXIS 222023, 2019 WL 5549947 (N.D. Ga. July 2, 2019) (denying a motion contained within an opposition filing)". *Hautehouse*, 2021 U.S. Dist. LEXIS 210851, at *6.

28 U.S.C. § 1410.

26. In going through these tests, Hudson, as the party seeking to transfer venue, "bears the burden of proof by a preponderance of the evidence." *In re Suntech Power Holdings Co.*, 520 B.R. 399, 420 (Bankr. S.D.N.Y. 2014). Similarly, where a case is initially brought in a proper venue, the Foreign Representative's choice of forum is "entitled to great weight." *Id.*

27. The Foreign Representative herein shows that venue is appropriate in the Northern District of Georgia under Section 1410(1) and, alternatively, Section 1410(3).

**i. <u>Venue is Proper Under 28 U.S.C. § 1401(1)</u>**

28. 28 U.S.C. § 1410(1) is the chief test of Section 1410, whereby if it is satisfied no further analysis is required. Under Section 1410(1), venue is proper in the district where a foreign debtor has either its principal place of business or has its principal assets in the United States.[3]

29. Nationwide, courts have regularly held that the retainer paid to United States counsel qualifies as an "asset" for purposes of Section 1410(1). *See In re Forge Grp. Power Pty LTD*, 2017 U.S. Dist. LEXIS 100488 (N.D. Cal., June 28, 2017) ("an attorney retainer that remains the debtor's property in the United States at the time of commencing the Chapter 15 case is sufficient property for purposes of debtor eligibility under § 109(a), without requiring something more."); *In re Culligan Ltd.*, No. 20-12192 (JLG), 2021 WL 2787926, at *9 (Bankr. S.D.N.Y. July 2, 2021) (*citing In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 373–374 (Bankr. S.D.N.Y. 2014) (finding that the foreign debtor 'ha[d] property in the United States in the form of an undrawn retainer in the possession of the Foreign Representatives' counsel.')); *In re U.S. Steel Canada Inc.*, 571 B.R. 600, 610 (Bankr. S.D.N.Y. 2017) (foreign debtor had property in the United States

[3] If a debtor has its principal place of business and principal assets in different districts, venue is proper in either of those districts. *In re Suntech Power Holdings Co.*, 520 B.R. at 414, fn. 16.

including 'an undrawn $100,000 retainer paid to its U.S. counsel and held in a JP Morgan Chase Bank account located in New York, NY.').

30. In these Cases, as of the Chapter 15 Petition Date, BRON had a $140,000.00 retainer with its US counsel Jones & Walden, LLC (the "**BRON Media Corp Retainer**"). Jones & Walden, LLC is located in Atlanta, Georgia, and the BRON Media Corp Retainer and the retainers of each of the other Debtors are held in a South State bank account located in Atlanta, Georgia. The BRON Media Corp Retainer is the principal asset of the Debtors in the United States. Hudson does not deny that the BRON Media Corp Retainer exists and does not cite to any cases that hold an attorney retainer is not a basis for venue pursuant to 11 U.S.C. 1410. In fact, the very district that Hudson requests for these cases to be transferred to, the Southern District of New York, recognizes that an attorney retainer is a basis for venue.

31. Apparently, in an effort to address the concept of "principal place of business", Hudson cites to the concept that a contract is tied to the location of the governing law of that contract. In doing so, however, Hudson fails to actually reference which contract it claims to be an asset of the Debtors. While the Debtors do have contractual rights to certain intellectual property, the value of that intellectual property is uncertain and may be *de minimis* in the event the Debtors are unable to continue operating. As such, the BRON Media Corp Retainer and related Debtor retainers are the sole United States asset of the Debtors that have a quantifiable and significant value.

32. Hudson also alleges that the Debtors have offices and employees in New York, NY (the "**New York Office**") and Los Angeles, CA (the "**L.A. Office**"). See Hudson Objection, at pg. 4. As attested to in the attached declaration of Aaron Gilbert, appended hereto as Exhibit A, this

is no longer true. Both the New York Office and L.A. Office have been effectively closed since March of 2020. Prompted by the onset of the COVID-19 pandemic, the Debtors permitted all employees to work remotely, and all employees continue to work remotely through the present day. The Debtors' website, to which Hudson cites to prove that the New York Office and L.A. Office are open, is out-of-date and no longer accurate. For over two years the Debtors have had no centralized office locations in the United States.

33. As such, the BRON Media Corp Retainer is the primary United States asset of the Debtors and it is located in the Northern District of Georgia, satisfying Section 1410(1).

**ii. <u>28 U.S.C. § 1410(2) is Inapplicable to Twenty-Five Debtors</u>**

34. The second test, in Section 1410(2), renders venue appropriate in whatever district a proceeding has been filed against the debtor and remains pending, whether in State or Federal Court. Hudson asserts that litigation in New York relating to two Debtor entities—BRON Creative USA Corp. and BRON Studios USA Inc. (neither of which is the Main Case) - is sufficient to satisfy Section 1410(2). The Foreign Representative shows herein that Section 1410(2) is inapplicable to the Main Case as well as twenty-four other cases.

35. Simply stated, only two (2) of the twenty-seven (27) Debtors are participants in either of the two New York proceedings to which Hudson cites. Of these proceedings, one was resolved by a consent judgment pre-petition and should no longer be considered "pending" as required by Section 1410(2). There is no proceeding in any venue which involves a majority or even a plurality of the Debtors. Section 1410(2) is an inappropriate basis to assert venue.

**iii. <u>Venue is Proper Under 28 U.S.C. § 1401(3)</u>**

36. 28 U.S.C. § 1410(3) is the final test and makes venue appropriate in any district in which such venue would be "consistent with the interests of justice and the convenience of the

parties." See 28 U.S.C. § 1410(3). Under this test, the Northern District of Georgia is the appropriate venue for these cases.

37. Hudson alleges that the Debtors have "manufactured" venue in this District and that doing so "offends the notion of fair play and due process." However, in so arguing Hudson fails to actually articulate how having to attend entirely virtual hearings creates any issue as to the "notion of fair play" or "due process". Unsurprisingly, Hudson cites no authority to support their claims.

38. It is important to note that Section 1410 operates in an entirely different manner from Section 1408. As the statute governing venue for the administration of an ancillary proceeding, Section 1410 permits foreign representatives to do what might, in other contexts, look like "manufacturing" venue:

> To address appellees' concerns, shared by the bankruptcy court, that a foreign debtor should not be permitted to manufacture eligibility and engage in venue tactics on the eve of filing a Chapter 15 petition, the court concludes that the statutory framework permits such strategic maneuvers to an extent by leaving the term 'property in the United States' undefined. The venue statute applicable to Chapter 15 cases also contemplates that a foreign debtor might establish a basis for a particular venue shortly before filing a petition for recognition, in that § 1410 does not require contacts in the United States for the 180-day period before filing the petition, as does § 1408, which is applicable to all other Title 11 proceedings. In light of the omission of this 180-day requirement from § 1410, an attorney retainer that remains the debtor's property in the United States at the time of commencing the Chapter 15 case is sufficient property for purposes of debtor eligibility under § 109(a), without requiring something more. *Jones v. APR Energy Holdings Ltd. (In re Forge Grp. Power Pty Ltd.)*, 2018 U.S. Dist. LEXIS 23660, *38-39 (N.D. Cal. Feb. 12, 2018) (vacating the bankruptcy court's order denying a foreign representative's petition for recognition).

39. Chapter 15 proceedings are fundamentally different from any other bankruptcy proceeding, and the Section 1410 venue requirements reflect that stark difference. To the extent Hudson accuses the Foreign Representative of "manufacturing" venue, the same is not a basis to transfer venue to the Southern District of New York.

40. Moreover, the interests of justice are best served if the case remains in the Northern District of Georgia. The undersigned U.S. counsel for the Foreign Representative and Debtors are already intimately familiar with the pre-petition activities of the Debtors and BRON as well as the proceedings before this Court.

41. In fact, the undersigned had been facilitating negotiations on behalf of the Debtors for approximately one month pre-petition. This Court is familiar with the procedural posture of these Cases. The hearings in this matter have all been held virtually, thus affording access to all parties who wish to participate. Hudson has participated in all hearings before this Court without objection to venue for the first month of these cases. All major participants in the cases including (i) the DIP Lender, (ii) Comerica Bank, (iii) Access Road Capital, LLC, (iv) Hercules, and (v) Hudson have retained local counsel in the Northern District of Georgia.

42. This District is the venue most in line with the interests of justice and convenience of the parties.

### C. The Recognition of the Stay as to Protected Parties is Appropriate Under Chapter 15

43. The model CCAA initial order made available by the Supreme Court of British Columbia in regards to the *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36 is attached hereto as Exhibit B (the "**Model Order**"). Paragraph 21 of the Model Order contemplates a stay of proceedings in favor of directors and officers of the debtor company or companies under CCAA protection. Specifically, the Model Order provides as follows:

> PROCEEDINGS AGAINST DIRECTORS AND OFFICERS
>
> 21. During the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA, no proceeding may be commenced or continued against the directors or officers of the Petitioner with respect to any claim against the directors or officers that arose before the date hereof and that relates to any obligations of the Petitioner whereby the directors or officers are alleged under any law to be liable in their

> capacity as directors or officers for the payment or performance of such obligations, until a compromise or arrangement in respect of the Petitioner, if one is filed, is sanctioned by this Court or is refused by the creditors of the Petitioner or this Court. Nothing in this Order, including in this paragraph, shall prevent the commencement of a Proceeding to preserve any claim against a director or officer of the Petitioner that might otherwise be barred or extinguished by the effluxion of time, provided that no further step shall be taken in respect of such Proceeding except for service of the initiating documentation on the applicable director or officer.

44. A stay of proceedings in favor of directors and officers of a debtor company is specifically authorized and contemplated by paragraph 11.03(1) of the CCAA, which provides as follows:

> **11.03 (1)** An order made under section 11.02 may provide that no person may commence or continue any action against a director of the company on any claim against directors that arose before the commencement of proceedings under this Act and that relates to obligations of the company if directors are under any law liable in their capacity as directors for the payment of those obligations, until a compromise or an arrangement in respect of the company, if one is filed, is sanctioned by the court or is refused by the creditors or the court.

45. Hudson argues that the relief requested pursuant to the final recognition order is excessive because of the stay extending to the directors and officers. To the contrary, the relief requested is consistent with the notion that section 1517 of the Bankruptcy Code provides for the recognition of foreign proceedings as opposed to merely certain parts of foreign proceedings or certain orders.

46. As stated above, the purpose of Chapter 15 is to recognize foreign proceedings in totality. U.S. bankruptcy courts have enforced orders from a Canadian insolvency proceeding despite such relief not generally being available in a chapter 11 proceeding. See, e.g., *In re Metcalfe*, 421 B.R. 685 (enforcing a broad third-party release and injunction, even though such provisions generally would not be allowable in a chapter 11 case). Conversely, Canadian courts have also enforced orders made in U.S. insolvency proceedings, despite such relief not generally being available in Canada in the interest of comity. See *Hollander Sleep Products, LLC et al., Re*,

2019 ONSC 3238 (Canadian court recognized a U.S. DIP Order that secured obligations of the debtor to the DIP lender that existed before the date of the DIP Order (a.k.a. a "roll up"), which is expressly prohibited under section 11.2 of the CCAA).

47. This Court should grant the final recognition of the CCAA Proceeding, including the directors and officers stay.

### D. Hudson's Disclosure Arguments Should be Rejected

48. Hudson requests that this Court not enter an Order finalizing any DIP financing until the relationship between the DIP Lender and its principals and BRON and its principals are fully disclosed and considered. Hudson Objection, Pg. 7.

49. Hudson fails to mention that the relationship between the DIP Lender and the Debtors was fully vetted at the comeback hearing before the Canadian Court, a hearing which Hudson attended. The Canadian Court overruled or otherwise rejected the same arguments that Hudson alludes to here in the Court's determination that entry of the *Amended and Restated Initial Order* (the "**ARIO**") was appropriate in light of all information presented. Hudson was fully afforded an opportunity to present any such arguments to the Canadian Court, but elected not to do so. The proceedings before this Court are not the appropriate forum to reconsider or rehash the very same arguments.

50. To the extent that Hudson (or any other party in interest) can establish a basis to conduct discovery in the U.S. about the relationship between BRON and the DIP Lender, the discovery process is available pursuant to 11 U.S.C. § 1521 and Rule 2004 of the United States Bankruptcy Code. *See In re Markus*, 607 B.R. 379 (Bankr. S.D.N.Y. 2019) (court may order production of documents in possession, custody or control of a party which documents are outside the U.S.; discovery is not solely controlled by section 1521 as Rule 2004 is also applicable), *In*

*re Viacao Itapemirim S.A.*, 607 B.R. 761 (Bankr. S.D. Fla. 2019) (a party other than a foreign representative may take discovery in a chapter 15 case only if such party has a pecuniary interest); *In re Platinum Partners L.P.*, 583 B.R. 803 (Bankr. S.D.N.Y. 2018) (foreign representative can obtain discovery by seeking turnover pursuant to section 542(e) and by subpoena pursuant to Rule 2004).

51. However, given the due consideration given by the Canadian Court to this issue, the Foreign Representative disputes that Hudson should be afforded any such right, particularly on the current record before the Court. Moreover, this Court should not entertain Hudson's request that it sit in a position of reconsidering the Canadian Court's ruling on this fully-vetted issue, particularly given that without full recognition of the Canadian proceedings and the DIP financing approved therein, the proceedings will fail and there will be no chance for reorganization, to the detriment of all parties in interest. Recognition of the CCAA Proceeding on a final basis is in the best interest of the Debtors and all creditors.

**III. <u>Response to Objection of Hercules</u>**

52. Hercules objects to the Motion on the basis that it was not served notice of the commencement of the CCAA Proceeding or the Chapter 15 proceeding. (Hercules Objection at ¶ 1).

53. Working under extreme financial duress with limited personnel, the Foreign Representative, the Debtors and their counsel undertook their best efforts to ensure that notice was provided to parties in interest. While the Foreign Representative acknowledges that Hercules itself was not served with notice regarding either the CCAA Proceeding or the Chapter 15 proceeding, the Foreign Representative notes that service was in fact provided to Hercules's attorneys, Greenberg Glusker. Hercules' physical UCC service address is in Geneva, Switzerland.

54. In any event, Hercules' principal objection to this Court's recognition of the CCAA Proceeding and the Orders of the Canadian Court is limited to the issue that the effect of such Orders is to subordinate Hercules' lien on the Film to the various Charges (as defined in the ARIO) approved by the Canadian Court.

55. This Court is not the proper forum to address these objections. National Anthem Holdings, LLC is a Petitioner in the CCAA Proceeding. The asset at issue, the Film, is an asset that is being administered as part of the Sale and Investment Solicitation Process ("**SISP**") that was approved by the Canadian Court (the conveyance of which outside of the SISP for a price in excess of CAD$1 million would require prior approval of the Canadian Court). The ARIO expressly contemplates that parties in interest may seek relief in the CCAA proceeding regarding the allocation of applicants' property, including the proceeds thereof. Specifically, to the extent that Hercules has claims to the proceeds from the sale of the Film (the sale of which has not occurred and would be subject to approval of the Canadian Court on a future motion) or issues with the distribution of proceeds subject to the Canadian Charges, Hercules may avail itself of the relief afforded to interested parties under paragraph 48 of the ARIO in the CCAA Proceeding. *See In re Atlas Shipping A/S,* 404 B.R. 726, 741-42 (Bankr. S.D.N.Y. 2009) (When a foreign bankruptcy proceeding--recognized as a foreign main proceeding under chapter 15 of the Bankruptcy Code--is pending, and it provides a forum for all creditors seeking to satisfy their claims against a foreign debtor, plaintiffs such as the creditors in this case *have* a proper forum available to them). Moreover, Hercules can avail itself of the Canadian Court to vary the ARIO and seek reconsideration of the effect of the Canadian Charges with respect to its interest in the Film pursuant to paragraph 64 of the ARIO. If the Canadian Court believes such relief is warranted, the Canadian Court can modify the Canadian Charges accordingly.

56. Even if this Court believes that this is a proper forum to consider Hercules' concerns, the Court should reject the arguments that Hercules is entitled to adequate protection of its security interest. First, as detailed above, Chapter 15 supports the enforcement of foreign court orders even if the same relief would not be available in a chapter 11 case. Under the CCAA, Canadian courts are authorized to grant non-consensual, priming liens to DIP lenders in priority to the claim of any secured creditor upon consideration of the non-exhaustive factors enumerated in paragraph 11.2(4) of the CCAA, including the prejudice to affected parties and the ability of the DIP loan to enhance the prospects of a viable restructuring or plan of compromise or arrangement. Canadian law does not expressly require adequate protection of junior liens in such circumstances (or at all), though Canadian courts can fashion similar relief in their discretion. Here, the Canadian Court determined that the Canadian Charges were appropriate, given the record and submissions to the Canadian Court. It is reasonable to presume that the Canadian Court would have treated Hercules' interest in this single asset of a single Petitioner in the exact same manner as it did all of the other security interests that it subordinated to the approved Canadian Charges. But in any event, Hercules has every right to present its case to the Canadian Court, as the Film has not yet been sold or otherwise administered.

57. Recognizing the Charges as priming Hercules position is not "manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506. The legislative history to Chapter 15 indicates this exception is to be applied narrowly, and should be invoked only when the most fundamental policies of the United States are at risk. *See* H.R. Rep. No. 109-31 at 109 (2005), reprinted in U.S.C.C.A.N. 88, 172; *see also In re Ephedra Products Liability Litigation,* 349 B.R. 333, 336-337 (S.D.N.Y. 2006) (the inability to have a jury trial in Canada, where one would be allowed in the United States, was not "manifestly contrary to the public policy of the United

States"). *See also In re Ernst & Young, Inc.*, 383 B.R. 773, 781 (Bankr. D. Colo. 2008) (Court granted final recognition of Canadian Proceeding over creditors objection that Colorado investors (or more broadly, United States investors) may receive less in the Canadian proceeding, which will include creditors from Canada and Israel, than what these "local" investors would receive from the Colorado Court or the Federal Court in the United States).

58. Second, even if this Court applies US law, Hercules has not met its burden to establish that the Hercules Security Interest has any value that would require adequate protection. Adequate protection under US law is designed to protect the secured party from a decline in the value of its security interest. 11 U.S.C. §§ 361(1), 363. Here, Hercules holds a junior security interest in an asset that it admits does not have a value sufficient to cover even Hercules' claim. In order to be entitled to adequate protection against diminution in value, Hercules must first establish that its lien has any value at all. 11 U.S.C. § 363(p)(2) ("entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest"). Even if Hercules has a contractual agreement with senior lienholders that obligates them to remit proceeds to Hercules based on some priority waterfall, that is a contractual issue amongst non-debtor parties that are not before this Court, which is simply irrelevant to the issue of adequate protection of Hercules' lien. Accordingly, even if this Court considers Hercules' adequate protection arguments, it should reject them.

**Conclusion**

59. Absent final recognition of the CCAA Proceeding and giving full force and effect to the ARIO and SISP Order[4] on a final basis, there will be a default under the DIP Facility[5]. The

[4] As defined in the Order Granting Continued Provisional Relief (DN 23).
[5] As defined in the Order Granting Continued Provisional Relief (DN 23).

Debtors understand and believe that, upon such default, the DIP Lender will issue a notice of default and immediately cease funding the SISP in the Canadian Court, resulting in an immediate and uncoordinated fire sale liquidation of all of the Debtors' assets both in Canada and the United States.

60. In short, final recognition of the CCAA Proceeding and US enforcement of the ARIO and SISP Order is the only path forward. The Debtors generate no revenue. The DIP Lender is the only source of financing for the Debtors' continued operations in support of a professional sales process of the Debtors' unique assets. The Debtors were unable to find anyone else to lend any money to support a coordinated bankruptcy process, and no other parties – including the objectors here or those who objected in Canada – have offered any alternative financing or other reasonable path forward. Absent final recognition of the CCAA Proceeding, there will be bankruptcy proceedings in Canada and Chapter 7 proceedings in the United States, which will guarantee that there is no recovery for any creditors other than the secured lenders and immediately result in loss of employment for all remaining employees of the Debtors.

Respectfully submitted this 14th day of August, 2023.

JONES & WALDEN LLC

*/s/ Cameron M. McCord*
Cameron M. McCord
Georgia Bar No. 143065
Mark Gensburg
Georgia Bar No. 213119
699 Piedmont Ave NE
Atlanta, Georgia 30308
(404)564-9300
cmccord@joneswalden.com
mgensburg@joneswalden.com

*Counsel for Debtors and Foreign Representative*

EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **IN RE:**<br><br>**BRON MEDIA HOLDINGS USA CORP.,** ***et al.*****,**<br><br>**Debtors in a Foreign Proceeding.** | **CHAPTER 15**<br><br>**CASE NO. 23-56798-PMB** |

**DECLARATION OF AARON GILBERT IN SUPPORT OF FOREIGN REPRESENTATIVE'S REPLY TO OBJECTIONS OF (i) HUDSON PRIVATE LP AND HUDSON PRIVATE CORPORATION, AND (ii) HERCULES FILM INVESTORS I (US), INC. TO FINAL RECOGNITION ORDER**

I, Aaron Gilbert, hereby declare that the following is true and correct to the best of my knowledge, information, and belief.

1. I am Chairman and Chief Executive Officer ("CEO") of the BRON Group of Companies ("BRON Group," or collectively, the "Debtors").[1] I have over 13 years of experience as a producer, executive producer and financier of live-action and animated motion pictures and series television. I co-founded the BRON Group in 2010 with my wife, Brenda Gilbert. I am a member of the Academy of Motion Pictures Arts & Sciences. I am also a member of the Academy of Television Arts & Sciences. I am a member of the Producers Guild of America. I began my career in the music industry, then founded and operated a company in the content licensing space,

[1] The U.S. Debtors in these Chapter 15 cases and the last four digits of their U.S. Federal Employer Identification Numbers are as follows: BRON Creative USA Corp (1363); BRON Digital USA, LLC (0276); BRON Life USA Inc. (1178); BRON Media Holdings USA Corp (0637); BRON Releasing USA Inc. (6368); BRON Studios USA Inc. (8784); BRON Ventures 1 LLC (5066); BRON Studios USA Developments Inc. (7529); Bakhorma, LLC (6944); Drunk Parents, LLC (5462); Fables Holdings USA, LLC (8085); Fables Productions USA INC. (5169); Gossamer Holdings USA, LLC (2582); Gossamer Productions USA, Inc. (7876); Harry Haft Productions, Inc. (6144); Heavyweight Holdings, LLC f/k/a Harry Haft Films, LLC (8193); I am Pink Productions, LLC (6681); Lucite Desk, LLC (2546); National Anthem Holdings, LLC f/k/a BCDC Holdings, LLC (6943); National Anthem ProdCo Inc. (8637); Oakland Pictures Holdings, LLC (4988); Pathway Productions, LLC (Del. Incorporation No. 3081); Robin Hood Digital PC USA Inc. (2499); Robin Hood Digital USA, LLC (4302); Solitary Holdings USA, LLC (3013); Surrounded Holdings USA LLC (8868); and Welcome to Me, LLC (8500) (hereinafter collectively referred to as the "Debtors"). The Debtors' principal offices are located at 1700-Park Place, 666 Burrard Street, Vancouver, British Columbia, Canada. The Debtors also maintain a small office in Beverly Hills, California.

prior to the BRON Group. I have served as producer and executive producer on more than 125 productions, many of which have achieved critical acclaim and commercial success. BRON Media Corp.—a member entity of the BRON Group—is the duly appointed and authorized foreign representative (the "Foreign Representative") for the above captioned Debtors, which Debtors are the subjects of reorganization proceedings (the "CCAA Proceeding") commenced before the Supreme Court of British Columbia (the "Canadian Court") under Canada's Companies' Creditors Arrangement Act (the "CCAA"). I submit this declaration in support of Foreign Representatives Reply to Objections of (I) Hudson Private LP and Hudson Private Corporation, and (II) Hercules Film Investors I (Us), Inc. To Final Recognition Order (the "Reply"), filed contemporaneously herewith.[2]

2. In my role as Chairman and CEO of the BRON Group, I am familiar with the Debtors' history, day-to-day operations, assets, financial condition, business affairs, and books and records. I am fully aware of, and closely involved in, the financial affairs and overall restructuring of the Debtors. Except as otherwise indicated, all statements in this declaration are based upon my personal knowledge, my review of the Debtors' books and records, information supplied to me by one or more of the Debtors' officers, directors, and/or employees or other professionals retained by the Debtors, or my experience and knowledge of the Debtors' operations and financial condition. If called to testify as a witness, I could and would competently testify to each of the facts set forth herein based upon my personal knowledge, review of documents, or opinion. I am authorized to submit this declaration on behalf of the Debtors.

[2] Capitalized terms used but not defined herein shall have the meanings defined to them in the Reply.

3. Historically, the Debtors had offices in both Los Angeles, California and New York, New York (the "BRON Offices").

4. In March of 2020, due to the COVID pandemic, the employees of BRON quit physically going into the BRON offices on a regular basis.

5. BRON vacated the New York, NY office completely in 2021.

6. While the lease for the Los Angeles office has not expired by its terms, BRON has not conducted substantial business in the Los Angeles office since 2020 and no employees work out of the Los Angeles office.

7. BRON has not updated its website to reflect that these offices have been vacated.

8. BRON does not utilize physical offices anywhere in the United States and all United States employees work remotely.

9. The principal place of business for all BRON entities is in Canada.

10. Over the spring and early summer of 2023, BRON reached the point that it needed legal assistance with its restructuring efforts.

11. The decision had not been made whether to file a legal restructuring process or continue to restructure outside of the court system.

12. In June 2023, BRON hired the law offices of Jones & Walden, LLC ("Jones & Walden") to assist with its restructuring efforts.

13. At the time of retention, BRON paid a security retainer to Jones & Walden in the amount of $140,000.00.

14. This is the primary tangible asset of BRON in the United States.

15. Through counsel, on July 11, 2023, debtor National Anthem Holdings, LLC requested a search to determine all parties that have filed financing statements with respect to National Anthem Holdings, LLC and its assets. A true and correct copy of the report dated July 19, 2023 is attached.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: August 14, 2023

*/s/ Aaron L. Gilbert*
Aaron L. Gilbert

COGENCYGLOBAL®

194 Washington Ave.
Suite 310
Albany, NY 12210
P: 800-828-0938
F: 866-621-3526

**cogencyglobal.com**

7/19/2023

Cameron McCord
Jones & Walden

Reference:

---

We have conducted UCC & Federal Tax Lien Searches regarding the following:

**Debtor**: NATIONAL ANTHEM HOLDINGS, LLC

**Filing Office**: Department of State, DE

**Thru Date**: 7/11/2023

**Results**: 6 Financing Statements
1 UCC-3 Assignment
No Federal Tax Liens

**Total Copies**: 14

Prepared by: kdixon Email: kdixon@cogencyglobal.com

Reasonable care is exercised in the completion of service requests. Please confirm the accuracy of the name(s) noted above. The categorization of filings is provided for your convenience and should not be relied upon as legal service. Cogency Global Inc. ("We") assumes no liability with respect to the identity of any party named or referred to in this report, nor with respect to the validity, accuracy, completeness, legal effect or priority of any matter shown herein. We make no representation, warranty or guarantee as to the information contained in public records. This report reflects information we received from public records in response to your request. Responsibility for the accuracy and completeness of any public record rests with the filing officer.

# Delaware

The First State



CERTIFICATE

SEARCHED JULY 18, 2023 AT 9:09 A.M.
FOR DEBTOR, NATIONAL ANTHEM HOLDINGS, LLC

1 OF 6 FINANCING STATEMENT 20221139021

EXPIRATION DATE: 02/09/2027

DEBTOR: NATIONAL ANTHEM HOLDINGS, LLC

251 LITTLE FALLS DRIVE ADDED 02-09-22

WILMINGTON, DE US 19808

SECURED: SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS

5757 WILSHIRE BLVD., 7TH FLOOR ADDED 02-09-22

LOS ANGELES, CA US 90036

F I L I N G H I S T O R Y

20221139021 FILED 02-09-22 AT 2:16 P.M. FINANCING STATEMENT

2 OF 6 FINANCING STATEMENT 20221235183

EXPIRATION DATE: 02/11/2027

DEBTOR: NATIONAL ANTHEM HOLDINGS, LLC

345 N MAPLE DRIVE, SUITE 294 ADDED 02-11-22

Jeffrey W. Bullock, Secretary of State

20250200608-UCC11
SR# 20233016785

Authentication: 203765304
Date: 07-18-23

You may verify this certificate online at corp.delaware.gov/authver.shtml

# Delaware

The First State



BEVERLY HILLS, CA US 90210

| | | | |
|---|---|---|---|
| DEBTOR: | NATIONAL ANTHEM PRODCO INC. | | |
| | 345 N MAPLE DRIVE, SUITE 294 | ADDED | 02-11-22 |
| | BEVERLY HILLS, CA US 90210 | | |
| SECURED: | DIRECTORS GUILD OF AMERICA, INC. | | |
| | 7920 SUNSET BLVD. | ADDED | 02-11-22 |
| | LOS ANGELES, CA US 90046 | | |

## F I L I N G H I S T O R Y

| | | | |
|---|---|---|---|
| 20221235183 | FILED 02-11-22 | AT 7:20 P.M. | FINANCING STATEMENT |

3 OF 6 FINANCING STATEMENT 20222003382

EXPIRATION DATE: 03/08/2027

| | | | |
|---|---|---|---|
| DEBTOR: | NATIONAL ANTHEM HOLDINGS, LLC | | |
| | C/O BRON STUDIOS, 345 N. MAPLE DRIVE, SUITE 294 | ADDED | 03-08-22 |
| | BEVERLY HILLS, CA US 90210 | | |
| SECURED: | CREATIVE WEALTH MEDIA FINANCE CORP, AS ADMINISTRATIVE AGENT | | |
| | 151 BLOOR STREET WEST, SUITE 700 | ADDED | 03-08-22 |

Jeffrey W. Bullock, Secretary of State

20250200608-UCC11
SR# 20233016785

Authentication: 203765304
Date: 07-18-23

You may verify this certificate online at corp.delaware.gov/authver.shtml

# Delaware

The First State



TORONTO, ON CA M5S1S4

F I L I N G H I S T O R Y

20222003382 FILED 03-08-22 AT 6:32 P.M. FINANCING STATEMENT

| | | |
|---|---|---|
| 4 OF 6 | FINANCING STATEMENT | 20222670594 |
| | EXPIRATION DATE: 03/30/2027 | |
| DEBTOR: | NATIONAL ANTHEM HOLDINGS, LLC | |
| | 345 N MAPLE DR | ADDED 03-30-22 |
| | STE 294 | |
| | BEVERLY HILLS, CA US 90210 | |
| SECURED: | THREE POINT CAPITAL HOLDINGS, LLC | |
| | 2041 ROSECRANS AVE, STE. 322 | ADDED 03-30-22 |
| | EL SEGUNDO, CA US 90245 | |
| SECURED: | TPC LENDING & SERVICES, LLC | |
| | 2041 ROSECRANS AVE, STE. 322 | ADDED 05-27-22 |
| | EL SEGUNDO, CA US 90245 | |

F I L I N G H I S T O R Y




Jeffrey W. Bullock, Secretary of State

20250200608-UCC11
SR# 20233016785

Authentication: 203765304
Date: 07-18-23

You may verify this certificate online at corp.delaware.gov/authver.shtml

# Delaware

The First State



20222670594 FILED 03-30-22 AT 12:26 P.M. FINANCING STATEMENT

20224478327 FILED 05-27-22 AT 11:48 A.M. FULL ASSIGNMENT

5 OF 6 FINANCING STATEMENT 20220348902

EXPIRATION DATE: 12/14/2027

DEBTOR: NATIONAL ANTHEM HOLDINGS, LLC

251 LITTLE FALLS DRIVE ADDED 12-14-22

WILMINGTON, DE US 19808

SECURED: HERCULES FILM INVESTORS I (US), INC.

24 QUAI DU SEUJET, 9TH FLOOR ADDED 12-14-22

GENEVA, FM CH 1201

F I L I N G H I S T O R Y

20220348902 FILED 12-14-22 AT 1:44 P.M. FINANCING STATEMENT

6 OF 6 FINANCING STATEMENT 20234763388

EXPIRATION DATE: 07/10/2028

DEBTOR: NATIONAL ANTHEM HOLDINGS, LLC

345 NORTH MAPLE DRIVE, SUITE 294 ADDED 07-10-23

Jeffrey W. Bullock, Secretary of State

20250200608-UCC11
SR# 20233016785

Authentication: 203765304
Date: 07-18-23

You may verify this certificate online at corp.delaware.gov/authver.shtml

# Delaware

The First State



| | | | |
|---|---|---|---|
| | BEVERLY HILLS, CA US 90210 | | |
| SECURED: | WRITERS GUILD OF AMERICA, WEST, INC. | | |
| | 7000 WEST 3RD STREET | ADDED | 07-10-23 |
| | LOS ANGELES, CA US 90048 | | |
| SECURED: | WRITERS GUILD OF AMERICA, EAST, INC. | | |
| | 250 HUDSON STREET, SUITE 700 | ADDED | 07-10-23 |
| | NEW YORK, NY US 10013 | | |

F I L I N G H I S T O R Y

20234763388 FILED 07-10-23 AT 12:59 P.M. FINANCING STATEMENT

E N D O F F I L I N G H I S T O R Y

THE UNDERSIGNED FILING OFFICER HEREBY CERTIFIES THAT THE ABOVE LISTING IS A RECORD OF ALL PRESENTLY EFFECTIVE FINANCING STATEMENTS, LAPSED FINANCING STATEMENTS, FEDERAL TAX LIENS AND UTILITY SECURITY INSTRUMENTS FILED IN THIS OFFICE WHICH NAME THE ABOVE DEBTOR, NATIONAL ANTHEM HOLDINGS, LLC AS OF JULY 11, 2023 AT 11:59 P.M.

Jeffrey W. Bullock, Secretary of State

20250200608-UCC11
SR# 20233016785

Authentication: 203765304
Date: 07-18-23

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Parasec (916) 576-7000

B. E-MAIL CONTACT AT FILER (optional)
uccorders@parasec.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Delaware Department of State
U.C.C. Filing Section
Filed: 01:44 PM 12/14/2022
U.C.C. Initial Filing No: 2022 0348902

Service Request No: 20224266818

Print Reset

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME
National Anthem Holdings LLC

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 251 Little Falls Drive | Wilmington | DE | 19808 | US |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

2a. ORGANIZATION'S NAME

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

3a. ORGANIZATION'S NAME
Hercules Film Investors I (US), Inc.

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 24 Quai du Seujet, 9th Floor | Geneva | | 1201 | CH |

4. COLLATERAL: This financing statement covers the following collateral:
The property identified on Exhibit A, attached hereto.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
35807-00004

EXHIBIT "A"

ASSIGNMENT FOR SECURITY FOR "NATIONAL ANTHEM"

This Assignment for Security is executed by National Anthem Holdings LLC ("Producer") pursuant to the "National Anthem" Loan and Security Agreement (the "Agreement") entered into by and between Producer and Hercules Film Investors I (US), Inc. ("Lender") with respect to a loan for a film tentatively titled "National Anthem" (the "Picture"). Unless otherwise defined herein, all capitalized words used herein shall have the same meaning as set forth in the Agreement. In order to secure all of Producer's obligations under the Loan Documents, Producer hereby grants to Lender a first priority security interest in all of Producer's right, title, and interest in and to all personal property of every kind and nature, tangible or intangible, whether now owned or hereafter acquired or created, including all products and proceeds thereof and specifically including, without limitation, the Screenplay, the Picture, the sound track and music for the Picture, all marketing material relating to the Picture, and all copyrights and ancillary and derivative rights relating to any of the foregoing.

IN WITNESS WHEREOF, this Assignment for Security has been executed by Producer effective as of Dec 13, 2022 | 16:01 PST.

NATIONAL ANTHEM HOLDINGS LLC

By: DocuSigned by: Aaron Gilbert 3E03B98C84DA4EB... DocuSigned by: Steven Thibault EAEC8188FB0446...
Title: MD Chief Operating Officer



99910-01044/3738324.1

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
LIEN SOLUTIONS 800-331-3282

B. E-MAIL CONTACT AT FILER (optional)
UCCFILINGRETURN@WOLTERSKLUWER.COM

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

P.O. BOX 29071
GLENDALE, CA 91209-9071
US

Delaware Department of State
U.C.C. Filing Section
Filed: 02:16 PM 02/09/2022
U.C.C. Initial Filing No: 2022 1139021

Service Request No: 20220437925

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME: NATIONAL ANTHEM HOLDINGS, LLC

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 251 LITTLE FALLS DRIVE | WILMINGTON | DE | 19808 | US |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

2a. ORGANIZATION'S NAME:

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

3a. ORGANIZATION'S NAME: SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5757 WILSHIRE BLVD., 7TH FLOOR | LOS ANGELES | CA | 90036 | US |

4. COLLATERAL: This financing statement covers the following collateral:

AS SECURITY FOR THE PROMPT AND COMPLETE PAYMENT AND PERFORMANCE WHEN DUE OF ALL OBLIGATIONS OF DEBTOR(S) TO SECURED PARTY UNDER THE SECURITY AGREEMENT, DEBTOR(S) GRANTS TO SECURED PARTY A CONTINUING SECURITY INTEREST IN ALL PERSONAL AND INTELLECTUAL PROPERTY OF DEBTOR IN CONNECTION WITH THE MOTION PICTURE CURRENTLY ENTITLED "NATIONAL ANTHEM" (THE "PICTURE").

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
DE-0-84808566-63130015

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
LIEN SOLUTIONS 800-331-3282

B. E-MAIL CONTACT AT FILER (optional)
UCCFILINGRETURN@WOLTERSKLUWER.COM

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

P.O. BOX 29071
GLENDALE, CA 91209-9071
US

Delaware Department of State
U.C.C. Filing Section
Filed: 07:20 PM 02/11/2022
U.C.C. Initial Filing No: 2022 1235183

Service Request No: 20220483483

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME
NATIONAL ANTHEM HOLDINGS, LLC

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **1c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 345 N MAPLE DRIVE, SUITE 294 | BEVERLY HILLS | CA | 90210 | US |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

2a. ORGANIZATION'S NAME
NATIONAL ANTHEM PRODCO INC.

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **2c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 345 N MAPLE DRIVE, SUITE 294 | BEVERLY HILLS | CA | 90210 | US |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

3a. ORGANIZATION'S NAME
DIRECTORS GUILD OF AMERICA, INC.

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **3c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 7920 SUNSET BLVD. | LOS ANGELES | CA | 90046 | US |

4. COLLATERAL: This financing statement covers the following collateral:

As security for the prompt and complete payment and performance when due of all obligations of debtor(s) to secured party under the security agreement, debtor(s) grant(s) to secured party a continuing security interest in all personal and intellectual property of debtor in connection with the motion picture currently entitled "National Anthem" (the "Picture").

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
DE-0-84862163-63150892

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
SHEPPARD MULLIN (310)228-2241

B. E-MAIL CONTACT AT FILER (optional)
MSLOANE@SHEPPARDMULLIN.COM

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

SHEPPARD MULLIN RICHTER & HAMPTON LLP
1901 AVENUE OF THE STARS
SUITE 1600
LOS ANGELES, CA 90067

Delaware Department of State
U.C.C. Filing Section
Filed: 06:32 PM 03/08/2022
U.C.C. Initial Filing No: 2022 2003382

Service Request No: 20220925740

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | | |
|---|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME: NATIONAL ANTHEM HOLDINGS, LLC | | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY | |
| C/O BRON STUDIOS, 345 N. MAPLE DRIVE, SUITE 294 | BEVERLY HILLS | CA | 90210 | US | |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME: CREATIVE WEALTH MEDIA FINANCE CORP, AS ADMINISTRATIVE AGENT | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 151 BLOOR STREET WEST, SUITE 700 | TORONTO | ON | M5S 1S4 | CA |

4. COLLATERAL: This financing statement covers the following collateral:
See attached Exhibit A incorporated herein by reference
Collateral Description - please see attached

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
FILED WITH: DE - SECRETARY OF STATE

EXHIBIT "A"

COLLATERAL

For the purposes of this Exhibit "A", "Debtor" means NATIONAL ANTHEM HOLDINGS, LLC, a Delaware limited liability company and "Secured Party" means CREATIVE WEALTH MEDIA FINANCE CORP. as administrative agent under that certain Loan and Security Agreement dated as of the 6th day of December, 2021 by and among Secured Party, each of the lenders thereunder (collectively, the "**Lenders**") and Debtor. Capitalized terms used and otherwise not defined herein have the meaning ascribed to them in the Security Agreement.

"**Collateral**" means all of Debtor's right, title and interest in and to (i) all personal property of the Debtor, whether now owned or hereafter acquired or arising regardless of where located and whether or not in the possession of the Debtor and (ii) all of the following, whether now owned or hereafter acquired or created, regardless of where located and whether or not in possession of the Debtor:

a. The Picture, and all rights therein and thereto, and all properties and things of value pertaining thereto, whether now in existence or hereafter made, acquired or produced, including, without limitation:

i) All rights of every kind and nature (including, without limitation, copyrights) in and to the literary material upon which, in whole or in part, the Picture is or may be based, or that may be or has been used or included in the Picture, including, without limitation, the Screenplay, and all other scripts, scenarios, screenplays, bibles, stories, treatments, novels, outlines, books, titles, concepts, manuscripts or other properties or materials of any kind or nature, in whatever state of completion and all drafts, versions and variations thereof (all of the foregoing collectively, the "**Literary Property**");

ii) All physical properties of every kind or nature of or relating to the Picture and all versions thereof, to the extent now or hereafter in existence, including, without limitation, exposed film, developed film, positives, negatives, prints, answer prints, special effects, pre-print materials (including interpositives, negatives, duplicate negatives, internegatives, color reversals, intermediates, lavenders, fine grain master prints and matrices, and all other forms of pre-print elements that may be necessary or useful to produce prints or other copies or additional pre-print elements, whether now known or hereafter devised), soundtracks, recordings, audio and video tapes and discs of all types and gauges, cutouts, trims and any and all other physical properties of every kind and nature relating to the Picture in whatever state of completion, and all duplicates, drafts, versions, variations and copies of each thereof (all of the foregoing collectively, the "**Physical Property**");

iii) To the extent necessary to distribute, exhibit and otherwise exploit the Picture in accordance with any distribution agreement, and otherwise as contemplated in clause (viii) of this subparagraph a., all rights to perform, copy, record, re-record, produce, reproduce and/or synchronize any or all music and musical compositions created for, used in or to be used in connection with the Picture, and to the extent acquired by Debtor or any of its affiliates

all other rights of every kind and nature in and to any and all of said music and musical compositions created for, used in or to be used in connection with the Picture, including, without limitation, all copyrights therein as well as all other rights to exploit such music including record, soundtrack recording and music publishing rights;

iv) All collateral, allied, ancillary and subsidiary rights of every kind and nature, without limitation, derived from, appurtenant to or related to the Picture, the Physical Property or the Literary Property, including, without limitation, all production, exploitation, reissue, remake, sequel, serial or series production rights by use of film, tape or any other recording devices now known or hereafter devised (including all digital formats), whether based upon, derived from or inspired by the Picture, the Physical Property, or the Literary Property or any part of any of the foregoing; all rights to use, exploit and license others to use or exploit any and all novelization, publishing, commercial tie-ups and merchandising rights of every kind and nature, including, without limitation, all novelization, publishing, merchandising rights and commercial tie-ups arising out of or connected with or inspired by the Picture, the Physical Property or the Literary Property, the title or titles of the Picture, the characters appearing in the Picture, said Physical Property or said Literary Property and/or the names or characteristics of said characters, and including further, without limitation, any and all commercial exploitation in connection with or related to the Picture, and all remakes of or sequels to the Picture, the Physical Property and/or the Literary Property;

v) All rights of every kind or nature, present and future, in and to all agreements relating to the development, production, completion, delivery and exploitation of the Picture, and any and all agreements for personal services, including the services of writers, directors, cast, producers, cameramen and other creative, artistic and technical staff and agreements for the use of studio space, equipment, facilities and laboratory contracts and contracts for the provision of editing or similar services of any party with respect to the Picture;

vi) All insurance and insurance policies heretofore or hereafter obtained in connection with the Picture or the insurable properties thereof and/or any person or persons engaged in the development, production, completion, delivery or exploitation of the Picture, and the proceeds of all of the foregoing;

vii) All copyrights and renewals and extensions of copyrights, domestic and foreign, heretofore or hereafter obtained in the Picture, the Physical Property or the Literary Property or any part thereof, and the right (but not the obligation) to make publication thereof for copyright purposes, to register claim under copyright, and the right (but not the obligation) to renew and extend such copyrights, and the right (but not the obligation) to sue in the name of Debtor or Secured Party (or both) for past, present and future infringements of copyright;

viii) All rights to produce, release, sell, distribute, subdistribute, lease, market, license, sublicense, exhibit, broadcast, reproduce, publicize or otherwise exploit the Picture, the Physical Property, the Literary Property and any and all rights therein in perpetuity, without limitation, in any manner and in any media whatsoever throughout the universe, including without limitation, by projection, radio, all forms of television (including, without limitation, free, pay, toll, cable, sustaining, subscription, sponsored and direct satellite broadcast), in theaters, non-theatrically, all forms of "pay per view" and "video on demand," on cassettes, cartridges, discs

(including Blu-ray discs and DVD's in standard and high definition formats) and other similar and dissimilar video devices, all forms of computer assisted or interactive media (including, but not limited to, CD-ROM, CD-I and similar disc systems, digital cinema packages [DCPs], interactive cable and any other devices or methods now existing or hereinafter devised), and by any and all other scientific, mechanical or electronic means, methods, processes or devices now known or hereafter conceived, devised or created;

ix) All right, title and interest in and to all agreements licensing, granting or selling rights to distribute, broadcast, exhibit or otherwise exploit the Picture or rights therein, including, without limitation, any and all rights relating to merchandising, publishing, music and phonorecords derived from or connected with the Picture and the proceeds of all of said agreements;

x) All rent, revenues, income, compensation, products, increases, proceeds and profits or other property obtained or to be obtained from the production, sale, distribution, marketing, licensing, exhibition, reproduction, publication, ownership, exploitation or other uses or disposition of the Picture, the Physical Property and the Literary Property (and any rights in any of the foregoing or part of any of the foregoing), in any and all media, including, without limitation, the properties thereof and of any collateral, allied, ancillary and subsidiary rights and any and all merchandising and publishing rights therein and thereto, and amounts recovered as damages by reason of unfair competition, the infringement of copyright, breach of any contract or infringement of any rights, or derived therefrom in any manner whatsoever;

xi) Any and all accounts, accounts receivable, general intangibles, contract rights, chattel paper, deposit accounts (including, without limitation, any production bank account), documents, instruments and goods, including inventory (as those terms are defined in the applicable Uniform Commercial Code enacted in any jurisdiction where such collateral may be located), not elsewhere included in this definition, that may arise in connection with the production, sale, distribution or exploitation of the Picture or any element thereof;

xii) Any and all documents, receipts or books and records, including, without limitation, documents or receipts of any kind or nature issued by any pledgeholder, warehouseman or bailee with respect to the Picture or any element thereof;

xiii) The rights of Debtor in and to any film production or distribution rebates, credits, grants, refunds, funding assistance, awards, stipends, or other similar benefits relating to the Picture, whether or not sponsored by any governmental entity, organization, private non-profit organization, or authority or other film commission or festival; and

xiv) All proceeds, products, additions and accessions of and to the Picture, all rights therein and thereto, and all property and things of value pertaining thereto, whether now in existence or hereafter made (including, without limitation, the items set forth in subparagraphs (a)(i) through (xiii) above);

b. The following personal property, whether now owned or hereafter acquired, and the proceeds thereof: (i) all of Debtor's rights in and to the title of the Picture and the exclusive use thereof including (without limitation) any and all rights protected pursuant to trademark,

service mark, unfair competition and/or other laws, rules or principles of law or equity and (ii) to the extent now or hereafter in existence, all inventions, processes, formulae, licenses, patents, patent rights, trademarks, trademark rights, service marks, service mark rights, trade names, trade name rights, logos, indicia, corporate and company names, business source or business identifiers and renewals and extensions thereof, domestic and foreign, relating to the Picture (other than the corporate name and logo of Debtor), whether now owned or hereafter acquired, and the accompanying good will and other like business property rights, and the right (but not the obligation) to register claim under trademark or patent and to renew and extend such trademarks or patents and the right (but not the obligation) to sue in the name of Debtor or Secured Party (or both) for past, present or future infringement of trademark or patent;

c. All cash and cash equivalents of Debtor derived from or relating to the Picture and all drafts, checks, certificates of deposit, notes, bills of exchange and other writings relating to the Picture that evidence a right to the payment of money and are not themselves security agreements or leases and are of a type that is in the ordinary course of business transferred by delivery with any necessary endorsement or assignment whether now owned or hereafter acquired;

d. To the extent now or hereafter in existence, all machinery, electrical and electronic components, equipment, fixtures, furniture, office machinery, vehicles, trailers, implements and other tangible personal property of every kind and description acquired by and used or useful in connection with the Picture (including without limitation, all wardrobe, props, mikes, scenery, sound stages, movable, permanent or vehicular dressing rooms, sets, lighting equipment, cameras and other photographic, sound recording and editing equipment, projectors, film developing equipment and machinery) and all goods of like kind or type hereafter acquired by Debtor in substitution or replacement thereof, and all additions and accessions thereto (collectively, the "**Equipment**") and all rents, proceeds and products of the Equipment, including without limitation, the rights to insurance covering the Equipment;

e. To the extent not included in the foregoing, all accounts, cash and cash equivalents, chattel paper, contract rights, deposit accounts, documents, general intangibles (including payment intangibles and software), goods (including equipment, inventory and fixtures), instruments, intellectual property (including copyrights and trademarks), investment property (which shall include all securities, whether certificated or uncertificated, stocks, bonds, interests in the capital stock of corporations, interests in partnerships and limited liability companies, mutual fund shares, securities entitlements, securities accounts, commodity contracts, commodity accounts, instruments, certificates of deposit, equity interests or investments of any kind), letter-of-credit rights, supporting obligations and all other personal property (as these terms are defined in the applicable Uniform Commercial Code enacted in any jurisdiction where such collateral may be located) of Debtor whether now owned or hereafter acquired or arising regardless of where located and whether or not in the possession of Debtor, and all proceeds, products, additions and successions of and to the foregoing; and

f. all results, products and proceeds of any kind or character of any and all of the foregoing.

To the extent that any materials and/or rights in and to the Picture or any other Collateral are not yet in existence or are not yet acquired, such materials and rights are (to the extent applicable) hereby assigned and conveyed to Secured Party by way of present assignment of future interests.

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
JOHN BAILS (517)303-3184

B. E-MAIL CONTACT AT FILER (optional)
JBAILS@TPC.US

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

FOREST ROAD COMPANY
10 STONY RUN CT
DIX HILLS, NY 11746
US

Delaware Department of State
U.C.C. Filing Section
Filed: 12:26 PM 03/30/2022
U.C.C. Initial Filing No: 2022 2670594

Service Request No: 20221232753

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME: NATIONAL ANTHEM HOLDINGS, LLC

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **1c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 345 N MAPLE DR, STE 294 | BEVERLY HILLS | CA | 90210 | US |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

2a. ORGANIZATION'S NAME:

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **2c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

3a. ORGANIZATION'S NAME: THREE POINT CAPITAL HOLDINGS, LLC

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **3c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 2041 ROSECRANS AVE, STE. 322 | EL SEGUNDO | CA | 90245 | US |

4. COLLATERAL: This financing statement covers the following collateral:

All assets and all personal property of Debtor, whether now owned and/or hereafter acquired.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
NAT ANTHEM

[redacted]

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
JOHN BAILS (517)303-3184

B. E-MAIL CONTACT AT FILER (optional)
JBAILS@TPC.US

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

FOREST ROAD COMPANY
10 STONY RUN CT
DIX HILLS, NY 11746
US

Delaware Department of State
U.C.C. Filing Section
Filed: 11:48 AM 05/27/2022
U.C.C. Initial Filing No: 2022 2670594
Amendment No: 2022 4478327
Service Request No: 20222413051

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
20222670594

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☑ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE:
Check one of these two boxes:
This Change affects ☐ Debtor or ☐ Secured Party of record
AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)
6a. ORGANIZATION'S NAME

OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)
7a. ORGANIZATION'S NAME
TPC LENDING & SERVICES, LLC

OR 7b. INDIVIDUAL'S SURNAME
INDIVIDUAL'S FIRST PERSONAL NAME
INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2041 ROSECRANS AVE, STE. 322 | EL SEGUNDO | CA | 90245 | US |

8. ☐ COLLATERAL CHANGE: Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor
9a. ORGANIZATION'S NAME
THREE POINT CAPITAL HOLDINGS, LLC

OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10. OPTIONAL FILER REFERENCE DATA:
NATIONAL ANTHEM

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
CSC 800-858-5294

B. E-MAIL CONTACT AT FILER (optional)
FILINGDEPT@CSCINFO.COM

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

801 ADLAI STEVENSON DR [259814418]
SPRINGFIELD, IL 62703
US

Delaware Department of State
U.C.C. Filing Section
Filed: 12:59 PM 07/10/2023
U.C.C. Initial Filing No: 2023 4763388

Service Request No: 20232953911

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME: NATIONAL ANTHEM HOLDINGS, LLC

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **1c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 345 NORTH MAPLE DRIVE, SUITE 294 | BEVERLY HILLS | CA | 90210 | US |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

2a. ORGANIZATION'S NAME:

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **2c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

3a. ORGANIZATION'S NAME: WRITERS GUILD OF AMERICA, WEST, INC.

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **3c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 7000 WEST 3RD STREET | LOS ANGELES | CA | 90048 | US |

4. COLLATERAL: This financing statement covers the following collateral:

**As security for the prompt and complete payment and performance when due of all obligations of Debtor(s) to Secured Party under the Security Agreement, Debtor(s) grants to Secured Party a continuing Security Interest in all personal and intellectual property of debtor in connection with the motion picture currently entitled, "National Anthem" (the Picture).**

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
DE - NATIONAL ANTHEM



International Association of Commercial Administrators

# UCC FINANCING STATEMENT ADDITIONAL PARTY

FOLLOW INSTRUCTIONS

**18. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

18a. ORGANIZATION'S NAME
**NATIONAL ANTHEM HOLDINGS, LLC**

OR

| 18b. INDIVIDUAL'S SURNAME | |
|---|---|
| FIRST PERSONAL NAME | |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**19. ADDITIONAL DEBTOR'S NAME:** Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

19a. ORGANIZATION'S NAME

OR

| 19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| 19c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**20. ADDITIONAL DEBTOR'S NAME:** Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

20a. ORGANIZATION'S NAME

OR

| 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| 20c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**21. ADDITIONAL DEBTOR'S NAME:** Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

21a. ORGANIZATION'S NAME

OR

| 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**22.** ☑ **ADDITIONAL SECURED PARTY'S NAME** or ☐ **ASSIGNOR SECURED PARTY'S NAME:** Provide only one name (22a or 22b)

22a. ORGANIZATION'S NAME
**WRITERS GUILD OF AMERICA, EAST, INC.**

OR

| 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 250 HUDSON STREET, SUITE 700 | NEW YORK | NY | 10013 | US |

**23.** ☐ **ADDITIONAL SECURED PARTY'S NAME** or ☐ **ASSIGNOR SECURED PARTY'S NAME:** Provide only one name (23a or 23b)

23a. ORGANIZATION'S NAME

OR

| 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**24. MISCELLANEOUS:**

EXHIBIT B

**MODEL CCAA INITIAL ORDER**
*[Current to August 1, 2015]*

**No. ____________**
**Vancouver Registry**

**IN THE SUPREME COURT OF BRITISH COLUMBIA**
**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36**

**AND**

**IN THE MATTER OF THE [*CANADA BUSINESS CORPORATIONS ACT*, R.S.C. 1985, c. C-44 and/or the *BUSINESS CORPORATIONS ACT*, S.B.C. 2002, c. 57 and/or any other applicable Provincial Statute]**

**AND**

**IN THE MATTER OF [Petitioner(s)]**

**PETITIONER(S)**
**O R D E R MADE AFTER APPLICATION[6]**

| | | |
|---|---|---|
| BEFORE THE HONOURABLE | ) | |
| | ) | dd/mm/yyyy |
| ____________________________ | ) | |

THE APPLICATION of the Petitioner coming on for hearing[7] at Vancouver, British Columbia, on the _____ day of ____________, 201___ (the "**Order Date**"); AND ON HEARING ___________________, counsel for the Petitioner and those other counsel listed on Schedule "A" hereto; AND UPON READING the material filed, including the First Affidavit of ___________________ sworn ______________, 201___ and the consent of ________________ to act as Monitor; AND UPON BEING ADVISED that the secured creditors [and others] who are likely to be affected by the charges created herein were given notice[8]; AND pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985 c. C-36 as amended (the "**CCAA**"), the British Columbia Supreme Court Civil Rules and the inherent jurisdiction of this Honourable

---

[6] This model Order is not in any way determinative of the applicant's entitlement to the relief provided for in this model Order. It is the responsibility of counsel to ensure that the form of Order they propose is appropriate in the circumstances of the case and to justify the relief they are seeking, including by providing the necessary evidentiary support and judicial authority.

[7] Section 11(1) of the CCAA provides for notice of an application to be given. CCAA orders may, and in some cases must, be sought on notice to affected parties, if this is possible. Applications may be made without notice "as [the court] may see fit", although recent British Columbia cases have commented on the appropriateness of bringing such applications without notice: *Re Encore Developments Ltd.* 2008 BCSC 13 and *Re Marine Drive Properties Ltd*. 2009 BCSC 145. If service has been abridged, the Order should reflect that.

[8] Include names of secured creditors or other persons who must be served before certain relief in this model Order may be granted. See, for example, CCAA Sections 11.2(1), 11.3(1), 11.4(1), 11.51(1), 11.52(1), 32(1), 32(3), 33(2) and 36(2)

Court;

THIS COURT ORDERS AND DECLARES THAT:

**JURISDICTION**

**The Petitioner is a company to which the CCAA applies.**

**SUBSEQUENT HEARING DATE**

**The hearing of the Petitioner's application for an extension of the Stay Period (as defined in paragraph [15] of this Order) and for any ancillary relief shall be held at the Courthouse at 800 Smithe Street, Vancouver, British Columbia at ______ __.m. on ____________, the _____ day of ___________, 201___ or such other date as this Court may order.**

**PLAN OF ARRANGEMENT**

**The Petitioner shall have the authority to file and may, subject to further order of this Court, file with this Court a plan of compromise or arrangement (hereinafter referred to as the "Plan").**

**POSSESSION OF PROPERTY AND OPERATIONS**

**Subject to this Order and any further Order of this Court, the Petitioner shall remain in possession and control of its current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof (the "Property"), and continue to carry on its business (the "Business") in the ordinary course and in a manner consistent with the preservation of the Business and the Property. The Petitioner shall be authorized and empowered to continue to retain and employ the employees, consultants, agents, experts, accountants, counsel and such other persons (collectively, "Assistants") currently retained or employed by it, with liberty to retain such further Assistants as it deems reasonably necessary or desirable in the ordinary course of business or for carrying out the terms of this Order.**

**[Cash Management System[9]]**

**The Petitioner shall be entitled, but not required, to pay the following expenses which may have been incurred prior to the Order Date:[10]**

---

[9] This provision but should only be utilized where necessary, in view of the fact that central cash management systems often operate in a manner that consolidates the cash of applicant companies. Specific attention should be paid to cross-border and inter-company transfers of cash. If to be included, the model wording for the provision is as follows: "THIS COURT ORDERS that the Petitioner shall be entitled to continue to utilize the central cash management system currently in place as described in the Affidavit of [NAME] sworn [DATE] or replace it with another substantially similar central cash management system (the "**Cash Management System**") and that any present or future bank providing the Cash Management System shall not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other action taken under the Cash Management System, or as to the use or application by the Petitioner of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, shall be entitled to provide the Cash Management System without any liability in respect thereof to any Person (as hereinafter defined) other than the Petitioner, pursuant to the terms of the documentation applicable to the Cash Management System, and shall be, in its capacity as provider of the Cash Management System, an unaffected creditor under the Plan with regard to any claims or expenses it may suffer or incur in connection with the provision of the Cash Management System."

[10] Paragraphs 5 and 6 were separated to make it clear that only very limited payments may be made on account of pre-filing accruals and expenses. The Petitioner may consider seeking authority to make other payments during

all outstanding wages, salaries, employee and pension benefits (including long and short term disability payments), vacation pay and expenses (but excluding severance pay) payable before or after the Order Date, in each case incurred in the ordinary course of business and consistent with the relevant compensation policies and arrangements existing at the time incurred (collectively "**Wages**");[11] and

the fees and disbursements of any Assistants retained or employed by the Petitioner which are related to the Petitioner's restructuring, at their standard rates and charges, including payment of the fees and disbursements of legal counsel retained by the Petitioner, whenever and wherever incurred, in respect of:

these proceedings or any other similar proceedings in other jurisdictions in which the Petitioner or any subsidiaries or affiliated companies of the Petitioner are domiciled;

any litigation in which the Petitioner is named as a party or is otherwise involved, whether commenced before or after the Order Date; and

any related corporate matters.

**Except as otherwise provided herein, the Petitioner shall be entitled to pay all expenses reasonably incurred by the Petitioner in carrying on the Business in the ordinary course following the Order Date, and in carrying out the provisions of this Order, which expenses shall include, without limitation:**

---

the stay, such as an amendment to paragraph 5 allowing certain payments to creditors, including critical suppliers, on the following terms:

"…… with the written consent of the Monitor:

(i) pay the entire amount of its obligations to any creditor if the amount of such obligations, as agreed between the Petitioner and the creditor, is $__________ or less as at the Order Date;

(ii) pay $__________ to any other creditor to which the outstanding obligations of the Petitioner are greater than $__________ as at the Order Date, provided such creditor agrees to accept that amount in full satisfaction of all obligations of the Petitioner to such creditor as at the Order Date;

(iii) pay amounts owing to creditors who hold possessory or statutory liens against any asset of the Petitioner where the value of such asset exceeds the amount of the possessory or statutory liens or where the asset is deemed critical by the Petitioner and the Monitor to the business operations of the Petitioner; and

(iv) amounts outstanding to creditors for goods and services provided prior to the Order Date where expressly authorized by this Order or any further Order of this Court."

[11] The Petitioner may wish to specifically apply to pay severance pay outstanding as at the Order Date.

all expenses and capital expenditures[12] reasonably incurred and which are necessary for the preservation of the Property or the Business including, without limitation, payments on account of insurance (including directors' and officers' insurance), maintenance and security services, provided that any capital expenditure exceeding $__________ shall be approved by the Monitor;

all obligations incurred by the Petitioner after the Order Date, including without limitation, with respect to goods and services actually supplied to the Petitioner following the Order Date (including those under purchase orders outstanding at the Order Date but excluding any interest on the Petitioner's obligations incurred prior to the Order Date); and

fees and disbursements of the kind referred to in paragraph **[5(b)]** which may be incurred after the Order Date.

**The Petitioner is authorized to remit, in accordance with legal requirements, or pay:**

[12] The Petitioner may wish to consider a limit on this prohibition to allow for flexibility: "…. provided that any capital expenditure exceeding $__________ shall be approved by the Monitor."

any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from Wages, including, without limitation, amounts in respect of (i) employment insurance, (ii) Canada Pension Plan, (iii) Quebec Pension Plan, and (iv) income taxes or any such claims which are to be paid pursuant to Section 6(3) of the CCAA; [13]

all goods and services or other applicable sales taxes (collectively, "**Sales Taxes**") required to be remitted by the Petitioner in connection with the sale of goods and services by the Petitioner, but only where such Sales Taxes accrue or are collected after the Order Date, or where such Sales Taxes accrued or were collected prior to the Order Date but not required to be remitted until on or after the Order Date; and

any amount payable to the Crown in right of Canada or of any Province thereof or any political subdivision thereof or any other taxation authority in respect of municipal property taxes, municipal business taxes or other taxes, assessments or levies of any nature or kind which are entitled at law to be paid in priority to claims of secured creditors.

**Until such time as a real property lease is disclaimed[14] in accordance with the CCAA, the Petitioner shall pay all amounts constituting rent or payable as rent under real property leases (including, for greater certainty, common area maintenance charges, utilities and realty taxes and any other amounts payable as rent to the landlord under the lease) based on the terms of existing lease arrangements or as otherwise may be negotiated between the Petitioner and the landlord from time to time ("Rent"), for the period commencing from and including the Order Date, twice-monthly in equal payments on the first and fifteenth day of the month in advance (but not in arrears). On the date of the first of such payments, any Rent relating to the period commencing from and including Order Date shall also be paid.**

**Except as specifically permitted herein, the Petitioner is hereby directed, until further Order of this Court:**

---

[13] The definition of Wages in paragraph 5(a) is intended to allow payment of these amounts even if owed prior to the Order Date in recognition of the fact that Wages are paid at the end of a stub period and that continued employment is critical to the ongoing operations of the Petitioner. The extension of the ability of the Petitioner to make payments in addition to just Wages in this paragraph is intended to : (a) protect directors and officers from statutory claims; and (b) recognize that Section 6(3) of the CCAA provides for the payment of some of these amounts in a restructuring in any event . It is anticipated that the magnitude of such obligations will be brought to the attention of the Court if significant.

[14] The term "resiliate" should be used if there are leased premises in the Province of Quebec – see also paras. 12 and 13.

to make no payments of principal, interest thereon or otherwise on account of amounts owing by the Petitioner to any of its creditors as of the Order Date except as authorized by this Order;

to make no payments in respect of any financing leases which create security interests;

to grant no security interests, trust, mortgages, liens, charges or encumbrances upon or in respect of any of its Property, nor become a guarantor or surety, nor otherwise become liable in any manner with respect to any other person or entity except as authorized by this Order; [15]

to not grant credit except in the ordinary course of the Business only to its customers for goods and services actually supplied to those customers, provided such customers agree that there is no right of set-off in respect of amounts owing for such goods and services against any debt owing by the Petitioner to such customers as of the Order Date; and

to not incur liabilities except in the ordinary course of Business.

**FINANCIAL ARRANGEMENTS**

**Notwithstanding any other provision in this Order:**

the Petitioner is hereby authorized and empowered to borrow, repay and reborrow from ____________________ (the "**Lender**") such amounts from time to time as the Petitioner considers necessary, and the Lender shall be entitled to revolve its operating loan facility (the "**Lender Loan Facility**") and collect interest, fees and costs on the Lender Loan Facility, subject to such amendments as are agreed between the Lender and the Petitioner;

the Lender Loan Facility shall be secured by the same charge (the "**Lender Charge**") as secured the Lender Loan Facility as at the Order Date; and

the Petitioner is authorized to deal with the Lender in respect of the Lender Loan Facility on such terms as may be negotiated and agreed upon between the Petitioner and the Lender.

**RESTRUCTURING**

**Subject to such requirements as are imposed by the CCAA and such covenants as may be contained in the Definitive Documents (as hereinafter defined), the Petitioner shall have the right to:**

(a) permanently or temporarily cease, downsize or shut down all or any part of its

Business or operations and commence marketing efforts in respect of any of its

---

[15] Counsel may wish to consider adding a provision allowing the granting of PMSI security after the Order Date.

redundant or non-material assets **[and to dispose of redundant or non-material assets not exceeding $_________ in any one transaction or $_________ in the aggregate]**[16]

(b) **[terminate the employment of such of its employees or temporarily lay off such of its employees as it deems appropriate]**;[17] and

(c) pursue all avenues of refinancing for its Business or Property, in whole or part;

all of the foregoing to permit the Petitioner to proceed with an orderly restructuring of the Business (the "**Restructuring**").

**The Petitioner shall provide each of the relevant landlords with notice of the Petitioner's intention to remove any fixtures from any leased premises at least seven (7) days prior to the date of the intended removal. The relevant landlord shall be entitled to have a representative present in the leased premises to observe such removal and, if the landlord disputes the Petitioner's entitlement to remove any such fixture under the provisions of the lease, such fixture shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors who claim a security interest in the fixtures, such landlord and the Petitioner, or by further Order of this Court upon application by the Petitioner, the landlord or the applicable secured creditors on at least two (2) clear days' notice to the other parties. If the Petitioner disclaims the lease governing such leased premises in accordance with Section 32 of the CCAA, it shall not be required to pay Rent under such lease pending resolution of any dispute concerning such fixtures (other than Rent payable for the notice period provided for in Section 32(5) of the CCAA), and the disclaimer of the lease shall be without prejudice to the Petitioner's claim to the fixtures in dispute.**

**If a notice of disclaimer is delivered pursuant to Section 32 of the CCAA, then: (a) during the period prior to the effective time of the disclaimer, the landlord may show the affected leased premises to prospective tenants during normal business hours on giving the Petitioner and the Monitor 24 hours' prior written notice; and (b) at the effective time of the disclaimer, the landlord shall be entitled to take possession of any such leased premises without waiver of or**

---

[16] Section 36 of the CCAA does not seem to contemplate a pre-approved power to sell (see subsection 36(3)), but rather requires notice (subsection 36(2)) and evidence (subsection 36(7)) that may not have occurred or been made available at the initial CCAA hearing.

[17] It is not clear to the BCMIOC whether the termination of an employee is a "disclaimer or resiliation" of the employment agreement within the meaning of Section 32 of the CCAA. Since the termination of an employee may not be a matter governed by Section 32 of the CCAA (except to the extent that collective agreements are exempted from the application of that Section), the BCMIOC has left this provision in the Model Order.

**prejudice to any claims the landlord may have against the Petitioner, or any other rights the landlord might have, in respect of such lease or leased premises and the landlord shall be entitled to notify the Petitioner of the basis on which it is taking possession and gain possession of and re-lease such leased premises to any third party or parties on such terms as the landlord considers advisable, provided that nothing herein shall relieve the landlord of its obligation to mitigate any damages claimed in connection therewith.**

**Pursuant to Section 7(3)(c) of the *Personal Information Protection and Electronics Documents Act*, S.C. 2000, c. 5 and Section 18(1)(o) of the *Personal Information Protection Act*, S.B.C. 2003, c. 63, and any regulations promulgated under authority of either Act, as applicable (the "Relevant Enactment"), the Petitioner, in the course of these proceedings, is permitted to, and hereby shall, disclose personal information of identifiable individuals in its possession or control to stakeholders, its advisors, prospective investors, financiers, buyers or strategic partners (collectively, "Third Parties"), but only to the extent desirable or required to negotiate and complete the Restructuring or to prepare and implement the Plan or transactions for that purpose; provided that the Third Parties to whom such personal information is disclosed enter into confidentiality agreements with the Petitioner binding them in the same manner and to the same extent with respect to the collection, use and disclosure of that information as if they were an organization as defined under the Relevant Enactment, and limiting the use of such information to the extent desirable or required to negotiate or complete the Restructuring or to prepare and implement the Plan or transactions for that purpose, and attorning to the jurisdiction of this Court for the purposes of that agreement. Upon the completion of the use of personal information for the limited purposes set out herein, the Third Parties shall return the personal information to the Petitioner or destroy it. If the Third Parties acquire personal information as part of the Restructuring or the preparation and implementation of the Plan or transactions in furtherance thereof, such Third Parties may, subject to this paragraph and any Relevant Enactment, continue to use the personal information in a manner which is in all respects identical to the prior use thereof by the Petitioner.**[18]

[18] Counsel should consider whether the inclusion of this paragraph concerning exemption from privacy legislation should be included as part of the Initial Order. The paragraph is intended to enable the Petitioner to disclose personal information in the course of its dealings with potential lenders, investors or purchasers. Section 18(1)(o) of the British Columbia *Personal Information Protection Act* allows the release of such information only when "required or authorized by law". Accordingly, it may be appropriate to wait until such a transaction is contemplated before seeking to include this term in an order, and counsel may wish to consider whether it is necessary to adduce evidence showing the court that disclosure is necessary.

**STAY OF PROCEEDINGS, RIGHTS AND REMEDIES** [19] [20]

**Until and including ____________ [MAX. 30 DAYS FROM ORDER DATE], or such later date as this Court may order (the "Stay Period"), no action, suit or proceeding in any court or tribunal (each, a "Proceeding") against or in respect of the Petitioner or the Monitor, or affecting the Business or the Property, shall be commenced or continued except with the written consent of the Petitioner and the Monitor or with leave of this Court, and any and all Proceedings currently under way against or in respect of the Petitioner or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.**

**During the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being "Persons" and each being a "Person") against or in respect of the Petitioner or the Monitor, or affecting the Business or the Property, are hereby stayed and suspended except with the written consent of the Petitioner and the Monitor or leave of this Court.**

**Nothing in this Order, including paragraphs [15] and [16], shall: (i) empower the Petitioner to carry on any business which the Petitioner is not lawfully entitled to carry on; (ii) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA; (iii) prevent the filing of any registration to preserve or perfect a mortgage, charge or security interest (subject to the provisions of Section 39 of the CCAA relating to the priority of statutory Crown securities); or (iv) prevent the registration or filing of a lien or claim for lien or the commencement of a Proceeding to protect lien or other rights that might otherwise be barred or extinguished by the effluxion of time, provided that no further step shall be taken in respect of such lien, claim for lien or Proceeding except for service of the initiating documentation on the Petitioner.**

**NO INTERFERENCE WITH RIGHTS**

**During the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Petitioner, except with the written consent of the Petitioner and the Monitor**

---

[19] In keeping with the underlying philosophy of the Model Order, these provisions include a succinct stay provision which is intended to encapsulate the very broad stay provisions authorized in Section 11 of the CCAA. These provisions are specifically subject to specific limitations, including to permit a regulatory body to continue its investigations of the Petitioner or to permit a lien or security-holder to make filings and commence Proceedings necessary to preserve their lien or security. If a case can be made out that such a Proceeding would have the effect of prejudicing the Petitioner's ability to restructure, then, on application based on the applicable facts, the Model Order can be amended to stay such Proceedings.

[20] In addition, counsel should consider clauses dealing with Section 81.1 and 81.2 of the BIA, as may be appropriate.

**or leave of this Court.** [21]

**CONTINUATION OF SERVICES**

**During the Stay Period, all Persons having oral or written agreements with the Petitioner or mandates under an enactment for the supply of goods and/or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation, services, utility or other services to the Business or the Petitioner, are hereby restrained until further Order of this Court from discontinuing, altering, interfering with, or terminating the supply of such goods or services as may be required by the Petitioner, and that the Petitioner shall be entitled to the continued use of its current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the Order Date are paid by the Petitioner in accordance with normal payment practices of the Petitioner or such other practices as may be agreed upon by the supplier or service provider and the Petitioner and the Monitor, or as may be ordered by this Court.**[22]

**NON-DEROGATION OF RIGHTS**

**Notwithstanding any provision in this Order, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided on or after the Order Date, nor shall any Person be under any obligation to advance or re-advance any monies or otherwise extend any credit to the Petitioner on or after the Order Date. Nothing in this Order shall derogate from the rights conferred and obligations imposed by the CCAA.**[23]

**PROCEEDINGS AGAINST DIRECTORS AND OFFICERS**

**During the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA, no Proceeding may be commenced or continued against the directors or**

---

[21] The Petitioner may wish to consider whether an application should be made relating to the ongoing entitlement/benefit of any applicable volume rebates or discounts based upon volumes supplied during the period prior to the Order Date.

[22] Counsel may wish to consider whether to seek an order deeming one or more suppliers "critical suppliers" in accordance with Section 11.4 of the CCAA. Notice of an application to deem a supplier a critical supplier must be given to the proposed critical supplier and any secured creditors likely to be affected by the security or charge granted in favour of the proposed critical supplier. Suggested wording for the additional paragraph is as follows: "THIS COURT ORDERS that [Name of supplier] is hereby deemed a critical supplier (the "Critical Supplier") in accordance with section 11.4 of the CCAA and shall, from the Order Date, continue to supply goods and services to the Petitioner on such terms and conditions as are consistent with the supply relationship between the Critical Supplier and the Petitioner. The Critical Supplier is hereby granted a charge (the "Critical Suppliers Charge") on the Property, which charge shall not exceed an aggregate amount of $__________, as security for any amounts for which the Petitioner becomes indebted to the Critical Supplier for the supply of goods or services after the Order Date. The Critical Suppliers Charge shall have the priority set out in paragraphs 40 and 42 herein."

[23] This non-derogation provision has acquired more significance due to the recent amendments to the CCAA, since a number of actions or steps cannot be stayed, or the stay is subject to certain limits and restrictions. See, for example, CCAA Sections 11.01, 11.04, 11.06, 11.07, 11.08, 11.1(2) and 11.5(1).

**officers of the Petitioner with respect to any claim against the directors or officers that arose before the date hereof and that relates to any obligations of the Petitioner whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such obligations, until a compromise or arrangement in respect of the Petitioner, if one is filed, is sanctioned by this Court or is refused by the creditors of the Petitioner or this Court. Nothing in this Order, including in this paragraph, shall prevent the commencement of a Proceeding to preserve any claim against a director or officer of the Petitioner that might otherwise be barred or extinguished by the efflux of time, provided that no further step shall be taken in respect of such Proceeding except for service of the initiating documentation on the applicable director or officer.**

**DIRECTORS AND OFFICERS INDEMNIFICATION AND CHARGE [24]**

**The Petitioner shall indemnify its directors and officers against obligations and liabilities that they may incur as directors or officers of the Petitioner after the commencement of the within proceedings[25], except to the extent that, with respect to any director or officer, the obligation or liability was incurred as a result of the director's or officer's gross negligence or wilful misconduct.**

**The directors and officers of the Petitioner shall be entitled to the benefit of and are hereby granted a charge (the "Directors' Charge")[26] on the Property, which charge shall not exceed an aggregate amount of $__________, as security for the indemnity provided in paragraph [22] of this Order. The Directors' Charge shall have the priority set out in paragraphs [40] and [42] herein.**

**Notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge, and (b) the Petitioner's directors and officers shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts indemnified in accordance with paragraph [22] of this Order.**

**APPOINTMENT OF MONITOR**

**____________________ is hereby appointed pursuant to the CCAA as the Monitor, an officer of this Court, to monitor the business and financial affairs of the Petitioner with the powers and obligations set out in the CCAA or set forth**

---

[24] Counsel should be aware that the provisions relating to Directors/Officers/Employees Indemnification and Charge may not be appropriate in all circumstances.

[25] The broad indemnity language from Section 11.51 of the CCAA has been imported into this paragraph. The granting of the indemnity (whether or not secured by a Directors' Charge) and the scope of the indemnity are discretionary matters that should be addressed with the Court.

[26] Section 11.51(3) provides that the Court may not make this security/charging order if in the Court's opinion the Petitioner could obtain adequate indemnification insurance for the director or officer at a reasonable cost.

**herein, and that the Petitioner and its shareholders, officers, directors, and Assistants shall advise the Monitor of all material steps taken by the Petitioner pursuant to this Order, and shall co-operate fully with the Monitor in the exercise of its powers and discharge of its obligations and provide the Monitor with the assistance that is necessary to enable the Monitor to adequately carry out the Monitor's functions.**

**The Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:**

monitor the Petitioner's receipts and disbursements;

report to this Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Property, the Business, and such other matters as may be relevant to the proceedings herein;

assist the Petitioner, to the extent required by the Petitioner, in its dissemination, to the Interim Lender (as hereinafter defined)[27] and its counsel on a [TIME INTERVAL] basis of financial and other information as agreed to between the Petitioner and the Interim Lender which may be used in these proceedings including reporting on a basis to be agreed with the Interim Lender;

advise the Petitioner in its preparation of the Petitioner's cash flow statements and reporting required by the Interim Lender, which information shall be reviewed with the Monitor and delivered to the Interim Lender and its counsel on a periodic basis, but not less than [TIME INTERVAL], or as otherwise agreed to by the Interim Lender;

advise the Petitioner in its development of the Plan and any amendments to the Plan;

assist the Petitioner, to the extent required by the Petitioner, with the holding and administering of creditors' or shareholders' meetings for voting on the Plan;

have full and complete access to the Property, including the premises, books, records, data, including data in electronic form, and other financial documents of the Petitioner, to the extent that is necessary to adequately assess the Petitioner's business and financial affairs or to perform its duties arising under this Order;

be at liberty to engage independent legal counsel or such other persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order; and

perform such other duties as are required by this Order or by this Court from time to time.

**The Monitor shall not take possession of the Property and shall take no part whatsoever in the management or supervision of the management of the Business and shall not, by fulfilling its obligations hereunder, or by inadvertence in relation to the due exercise of powers or performance of duties under this Order, be deemed to have taken or maintained possession or**

[27] This Model Order assumes that there is an Interim Lender.

**control of the Business or Property, or any part thereof, and nothing in this Order shall be construed as resulting in the Monitor being an employer or a successor employer, within the meaning of any statute, regulation or rule of law or equity, for any purpose whatsoever.**

**Nothing herein contained shall require or allow the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, "Possession") of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, without limitation, the *Canadian Environmental Protection Act*, the *Fisheries Act*, the British Columbia *Environmental Management Act*, the British Columbia *Fish Protection Act* and regulations thereunder (the "Environmental Legislation")[28], provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation. For greater certainty, the Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless it is actually in possession.**

**The Monitor shall provide any creditor of the Petitioner and the Interim Lender with information provided by the Petitioner in response to reasonable requests for information made in writing by such creditor addressed to the Monitor. The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph. In the case of information that the Monitor has been advised by the Petitioner is confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the Petitioner may agree.**

**In addition to the rights and protections afforded the Monitor under the CCAA or as an officer of this Court, the Monitor shall incur no liability or obligation as a result of its appointment or the carrying out of the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part. Nothing in this Order shall derogate from the rights and protections afforded the Monitor by the CCAA or any applicable legislation.** [29]

**ADMINISTRATION CHARGE**

**The Monitor, counsel to the Monitor, if any, and counsel to the Petitioner shall be paid their reasonable fees and disbursements, in each case at their standard rates and charges, by the Petitioner as part of the cost of these proceedings.**

---

[28] Counsel should consider whether the Petitioner has property in any other Provinces and, if so, consider whether it is appropriate to include a reference to the relevant environmental legislation of those Provinces.

[29] Counsel should be aware that the provision exempting the Monitor in situations except for gross negligence may not be appropriate in all circumstances.

**The Petitioner is hereby authorized and directed to pay the accounts of the Monitor, counsel to the Monitor and counsel to the Petitioner on a periodic basis and, in addition, the Petitioner is hereby authorized to pay to the Monitor, counsel to the Monitor, and counsel to the Petitioner, retainers in the amount[s] of $__________ [respectively] to be held by them as security for payment of their respective fees and disbursements outstanding from time to time.**

**The Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the British Columbia Supreme Court who may determine the manner in which such accounts are to be passed, including by hearing the matter on a summary basis or referring the matter to a Registrar of this Court.**

**The Monitor, counsel to the Monitor, if any, and counsel to the Petitioner shall be entitled to the benefit of and are hereby granted a charge (the "Administration Charge") on the Property, which charge shall not exceed an aggregate amount of $__________, as security for their respective fees and disbursements incurred at the standard rates and charges of the Monitor and such counsel, both before and after the making of this Order which are related to the Petitioner's restructuring. The Administration Charge shall have the priority set out in paragraphs [40] and [42] hereof.** [30]

**INTERIM FINANCING**

**The Petitioner is hereby authorized and empowered to obtain and borrow under a credit facility from [INTERIM LENDER'S NAME] (the "Interim Lender") in order to finance the continuation of the Business and preservation of the Property, provided that borrowings under such credit facility shall not exceed $_______________ unless permitted by further Order of this Court.**

**Such credit facility shall be on the terms and subject to the conditions set forth in the commitment letter between the Petitioner and the Interim Lender dated as of [DATE] (the "Commitment Letter"), filed.**

**The Petitioner is hereby authorized and empowered to execute and deliver such credit agreements, mortgages, charges, hypothecs and security documents, guarantees and other definitive documents (collectively, the "Definitive Documents"), as are contemplated by the Commitment Letter or as may be reasonably required by the Interim Lender pursuant to the terms thereof, and the Petitioner is hereby authorized and directed to pay and perform all of its indebtedness, interest, fees, liabilities and obligations to the Interim Lender under and pursuant to the Commitment Letter and the Definitive Documents as and when the same become due and are to be performed, notwithstanding any other provision of this Order.**

**The Interim Lender shall be entitled to the benefit of and is hereby granted a**

---

[30] Counsel should be aware that the provision allowing for an Administration Charge in favour of the Petitioner's counsel may not be appropriate in all circumstances.

**charge (the " Interim Lender's Charge") on the Property. The Interim Lender's Charge shall not secure an obligation that exists before this Order is made. The Interim Lender's Charge shall have the priority set out in paragraphs [40] and [42] hereof.**

**Notwithstanding any other provision of this Order:**

the Interim Lender may take such steps from time to time as it may deem necessary or appropriate to file, register, record or perfect the Interim Lender's Charge or any of the Definitive Documents;

upon the occurrence of an event of default under any of the Definitive Documents or the Interim Lender's Charge, the Interim Lender, upon ____ days notice to the Petitioner and the Monitor, may exercise any and all of its rights and remedies against the Petitioner or the Property under or pursuant to the Commitment Letter, Definitive Documents and the Interim Lender's Charge, including without limitation, to cease making advances to the Petitioner and set off and/or consolidate any amounts owing by the Interim Lender to the Petitioner against the obligations of the Petitioner to the Interim Lender under the Commitment Letter, the Definitive Documents or the Interim Lender's Charge, to make demand, accelerate payment and give other notices, or to apply to this Court for the appointment of a receiver, receiver and manager or interim receiver, or for a bankruptcy order against the Petitioner and for the appointment of a trustee in bankruptcy of the Petitioner; and

the foregoing rights and remedies of the Interim Lender shall be enforceable against any trustee in bankruptcy, interim receiver, receiver or receiver and manager of the Petitioner or the Property.

**The Interim Lender, in such capacity, shall be treated as unaffected in any plan of arrangement or compromise filed by the Petitioner under the CCAA, or any proposal filed by the Petitioner under the *Bankruptcy and Insolvency Act* of Canada (the "BIA"), with respect to any advances made under the Definitive Documents.**

**VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER**

**The priorities of the Administration Charge, the Directors' Charge and the Interim Lender's Charge, as among them, shall be as follows:**

First – Administration Charge (to the maximum amount of $__________);

Second – Interim Lender's Charge;

Third - Directors' Charge (to the maximum amount of $__________). [31]

[31] The ranking of these Charges is for illustration purposes only, and is not meant to be determinative. This ranking may be subject to negotiation, and should be tailored to the circumstances of the case before the Court. Similarly, the quantum and caps applicable to the Charges should be considered in each case. Please also note that the CCAA now permits Charges in favour of critical suppliers and others, which should also be incorporated into

**Any security documentation evidencing, or the filing, registration or perfection of, the Administration Charge, the Interim Lender's Charge and the Directors' Charge (collectively, the "Charges") shall not be required, and that the Charges shall be effective as against the Property and shall be valid and enforceable[32] for all purposes, including as against any right, title or interest filed, registered or perfected subsequent to the Charges coming into existence, notwithstanding any failure to file, register or perfect any such Charges.**

**Each of the Charges shall constitute a mortgage, security interest, assignment by way of security and charge on the Property and such Charges shall rank in priority to all other security interests, trusts, liens, mortgages, charges and encumbrances and claims of secured creditors, statutory or otherwise (collectively, "Encumbrances"), in favour of any Person, save and except those claims contemplated by section 11.8(8) of the CCAA.[33]**

**Except as otherwise expressly provided herein, or as may be approved by this Court, the Petitioner shall not grant or suffer to exist any Encumbrances over any Property that rank in priority to, or *pari passu* with the Charges, unless the Petitioner obtains the prior written consent of the Monitor, the Interim Lender and the beneficiaries of the Administration Charge and the Director's Charge.**

**The Administration Charge, the Director's Charge, the Commitment Letter, the Definitive Documents and the Interim Lender's Charge shall not be rendered invalid or unenforceable and the rights and remedies of the chargees entitled to the benefit of the Charges (collectively, the "Chargees") and/or the Interim Lender shall not otherwise be limited or impaired in any way by (a) the pendency of these proceedings and the declarations of insolvency made herein; (b) any application(s) for bankruptcy order(s) issued pursuant to the BIA, or any bankruptcy order made pursuant to such applications; (c) the filing of any assignments for the general benefit of creditors made pursuant to the BIA; (d) the provisions of any federal or provincial statutes; or (e) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any existing loan documents, lease, mortgage, security agreement, debenture, sublease, offer to lease or other agreement (collectively, an "Agreement") which binds the Petitioner; and notwithstanding any provision to the contrary in any Agreement:**

---

this Order (and the rankings, above), where appropriate.

[32] The term "opposable" should be included if there is Property in the Province of Quebec.

[33] This Model Order is not intended to be determinative of whether the Court has the jurisdiction to grant the Administration Charge, the Interim Lender's Charge and the Director's Charge priority over the deemed trusts identified in subsection 37(2) of the CCAA. If the Petitioner seeks an order granting priority for such charges over any such deemed trusts, notice of the application should be given to the Federal and Provincial Crowns, as appropriate. If the Petitioner does not seek an order subordinating any such deemed trust to such charges, the following should be added to the end of paragraph 42: "with the exception of any deemed trust amounts provided for in subsection 37(2) of the CCAA."

neither the creation of the Charges nor the execution, delivery, perfection, registration or performance of the Commitment Letter or the Definitive Documents shall create or be deemed to constitute a breach by the Petitioner of any Agreement to which it is a party;

none of the Chargees shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting from the Petitioner entering into the Commitment Letter, the creation of the Charges, or the execution, delivery or performance of the Definitive Documents; and

the payments made by the Petitioner pursuant to this Order, the Commitment Letter or the Definitive Documents, and the granting of the Charges, do not and will not constitute preferences, fraudulent conveyances, transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law.

**THIS COURT ORDERS that any Charge created by this Order over leases of real property in Canada shall only be a Charge in the Petitioner's interest in such real property leases.**

**SERVICE AND NOTICE**

**The Monitor shall (i) without delay, publish in [newspapers specified by the Court] a notice containing the information prescribed under the CCAA, (ii) within five days after Order Date, (A) make this Order publicly available in the manner prescribed under the CCAA, (B) send, in the prescribed manner, a notice to every known creditor who has a claim against the Petitioner of more than $1000, and (C) prepare a list showing the names and addresses of those creditors and the estimated amounts of those claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder.**

**The Petitioner and the Monitor are at liberty to serve this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery or electronic transmission to the Petitioner's creditors or other interested parties at their respective addresses as last shown on the records of the Petitioner and that any such service or notice by courier, personal delivery or electronic transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.**[34]

**Any Person that wishes to be served with any application and other materials in these proceedings must deliver to the Monitor by way of ordinary mail, courier, personal delivery or electronic transmission a request to be added to a service list (the "Service List") to be maintained by the Monitor. The Monitor shall post and maintain an up to date form of the Service List on its website at: [INSERT WEBSITE ADDRESS].**

---

[34] In all instances, counsel should address the manner of service with the Court, including advising as to how service was or is proposed to be effected.

**Any party to these proceedings may serve any court materials in these proceedings by emailing a PDF or other electronic copy of such materials to counsels' email addresses as recorded on the Service List from time to time, and the Monitor shall post a copy of all prescribed materials on its website at: [INSERT WEBSITE ADDRESS].**

**Notwithstanding paragraphs [47] and [49] of this Order, service of the Petition, the Notice of Hearing of Petition, any affidavits filed in support of the Petition and this Order shall be made on the Federal and British Columbia Crowns[35] in accordance with the *Crown Liability and Proceedings Act*, R.S.C. 1985, c. C-50, and regulations thereto, in respect of the Federal Crown, and the *Crown Proceeding Act*, R.S.B.C. 1996, c. 89, in respect of the British Columbia Crown. [36]**

**GENERAL**

**The Petitioner or the Monitor may from time to time apply to this Court for directions in the discharge of its powers and duties hereunder.**

**Nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the Petitioner, the Business or the Property.**

**THIS COURT REQUESTS the aid and recognition of other Canadian and foreign Courts, tribunal, regulatory or administrative bodies, including any Court or administrative tribunal of any federal or State Court or administrative body in the United States of America, to act in aid of and to be complementary to this Court in carrying out the terms of this Order where required. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Petitioner and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any**

---

[35] Counsel should consider whether the Petitioner has property in any other Provinces and, if so, consider whether it is appropriate to include a reference to those Provinces and the relevant legislation of those Provinces with respect to service.

[36] *The Crown Proceeding Act*, R.S.B.C. 1996, c. 89, s. 8 provides for service on the British Columbia Crown, as follows:

8. A document to be served on the government
   (a) must be served on the Attorney General at the Ministry of the Attorney General in the City of Victoria, and
   (b) is sufficiently served if
      (i) left there during office hours with a solicitor on the staff of the Attorney General at Victoria, or
      (ii) mailed by registered mail to the Deputy Attorney General at Victoria.

A similar provision relating to the Federal Crown is found at s. 23(2) of the *Crown Liability and Proceeding Act*, R.S. 1985, c. C-50, which provides for service on the Deputy Attorney General of Canada or the chief executive officer of the agency in whose name the proceedings are taken, as the case may be. The Federal Crown requests that service of documents be by delivery to Department of Justice, 900 - 840 Howe Street, Vancouver, B.C. V6Z 2S9.

**foreign proceeding, or to assist the Petitioner and the Monitor and their respective agents in carrying out the terms of this Order.**

**Each of the Petitioner and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order and the Monitor is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada, including acting as a foreign representative of the Petitioner to apply to the United States Bankruptcy Court for relief pursuant to Chapter 15 of the *United States Bankruptcy Code*, 11 U.S.C. §§ 101-1330, as amended.**

**The Petitioner may (subject to the provisions of the CCAA and the BIA) at any time file a voluntary assignment in bankruptcy or a proposal pursuant to the commercial reorganization provisions of the BIA if and when the Petitioner determines that such a filing is appropriate.**

**The Petitioner is hereby at liberty to apply for such further interim or interlocutory relief as it deems advisable within the time limited for Persons to file and serve Responses to the Petition.**

**Leave is hereby granted to hear any application in these proceedings on two (2) clear days' notice after delivery to all parties on the Service List of such Notice of Application and all affidavits in support, subject to the Court in its discretion further abridging or extending the time for service.**

**Any interested party (including the Petitioner and the Monitor) may apply to this Court to vary or amend this Order on not less than seven (7) days' notice to all parties on the Service List and to any other party or parties likely to be affected by the order sought or upon such other notice, if any, as this Court may order.**

**Endorsement of this Order by counsel appearing on this application is hereby dispensed with.** [37]

**This Order and all of its provisions are effective as of 12:01 a.m. local Vancouver time on the Order Date.** [38]

THE FOLLOWING PARTIES APPROVE THE FORM OF THIS ORDER AND CONSENT TO EACH OF THE ORDERS, IF ANY, THAT ARE INDICATED ABOVE AS BEING BY CONSENT:

---

[37] Counsel should be aware that the final form of the Order may be modified before entry at the discretion of the Chambers Judge.

[38] For a provision of this or any subsequent order in these proceedings to make any provincial law inapplicable or inoperative, notice must be given under s. 8 of the *Constitutional Question Act* R.S.B.C. 1996, c. 68. If notice is not given, the provision could later be challenged and set aside.

________________________________________
Signature of
☐ Party ☑ Lawyer for the Petitioners

________________________________________
<Print Name>

________________________________________
Signature of
☐ Party ☐ Lawyer for <name of party(ies)>

________________________________________
<Print Name>

BY THE COURT

________________________________________
REGISTRAR

**Schedule "A"**
(List of Counsel)