**IT IS ORDERED as set forth below:**

**Date: August 15, 2023**

**Paul Baisier**
**U.S. Bankruptcy Court Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **In re:** | **Chapter 15** |
| **BRON Media Holdings USA Corp., *et al.*,** | **Case No. 23-56798-pmb** |
| **Debtors in a Foreign Proceeding.** | **Jointly Administered** |

**ORDER GRANTING OMNIBUS PETITION FOR**
**(I) RECOGNITION OF FOREIGN MAIN PROCEEDINGS,**
**(II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND**
**(III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

Upon consideration of the *Omnibus Petition for (I) Recognition of Foreign Main Proceeding (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (DN. 7) (together with the Chapter 15 petitions filed for each of the

Debtors,[1] the "Petitions for Recognition"), the Gilbert Declaration,[2] the Provisional Relief Motion, and the Foreign Representative's Reply to Objections of (i) Hudson Private LP and Hudson Private Corporation, and (ii) Hercules Film Investors I (IS), Inc. to Final Recognition Order with the Declaration of Aaron L. Gilbert in support thereof (together with the Petitions for Recognition, the Gilbert Declaration, and the Provisional Relief Motion, the "Chapter 15 Pleadings"), each filed by or on behalf of the Foreign Representative, BRON Media Corp., in its capacity as the duly-appointed foreign representative of the above-captioned debtors (the "Debtors"), in a voluntary restructuring proceeding (the "CCAA Proceeding") under the *Companies' Creditors Arrangement Act* (the "CCAA") currently pending before the Supreme Court of British Columbia (the "Canadian Court"); the Canadian Court in the CCAA Proceeding having entered: (a) an Amended and Restated Initial Order ("ARIO")[3] which, among other things (i) extended the Stay Period to and including October 18, 2023, (ii) increased the borrowing limit under the DIP Facility up to the maximum amount of USD $6.2 million and granting a corresponding increase to the Interim Lender's Charge (plus accrued and unpaid interest, fees and expenses); (iii) increased the Administration Charge to USD $500,000.00, (iv) increased the Directors' Charge to CAD $742,000, and (b) a Sales and Investment Solicitation

[1] The U.S. Debtors in these Chapter 15 cases and the last four digits of their U.S. Federal Employer Identification Numbers are as follows: BRON Creative USA Corp. (1363); BRON Digital USA, LLC (0276); BRON Life USA Inc. (1178); BRON Media Holdings USA Corp. (0637); BRON Releasing USA Inc. (6368); BRON Studios USA Inc. (8784); BRON Ventures 1 LLC (5066); BRON Studios USA Developments Inc. (7529); Bakhorma, LLC (6944); Drunk Parents, LLC (5462); Fables Holdings USA, LLC (8085); Fables Productions USA INC. (5169); Gossamer Holdings USA, LLC (2582); Gossamer Productions USA, Inc. (7876); Harry Haft Productions, Inc. (6144); Heavyweight Holdings, LLC f/k/a Harry Haft Films, LLC (8193); I am Pink Productions, LLC (6681); Lucite Desk, LLC (2546); National Anthem Holdings, LLC f/k/a BCDC Holdings, LLC (6943); National Anthem ProdCo Inc. (8637); Oakland Pictures Holdings, LLC (4988); Pathway Productions, LLC (Del. Incorporation No. 3081); Robin Hood Digital PC USA Inc. (2499); Robin Hood Digital USA, LLC (4302); Solitary Holdings USA, LLC (3013); Surrounded Holdings USA LLC (8868); and Welcome to Me, LLC (8500) (hereinafter collectively referred to as the "Debtors"). The Debtors' principal offices are located at 1700-Park Place, 666 Burrard Street, Vancouver, British Columbia, Canada.

[2] Capitalized terms not otherwise defined herein have the meaning ascribed to such terms in the ARIO (as defined below).

[3] A copy of which is attached hereto as **Exhibit A**.

Process Order (the "SISP Order")[4] which approved a sales and investment solicitation process ("SISP") in respect of all of the assets, undertaking and business of the Petitioners and the Non-Petitioner Entities; and it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue is proper before this Court pursuant to 28 U.S.C. § 1410; and the Court having considered and reviewed the Chapter 15 Pleadings and having held a hearing on August 14, 2023 at 1:30 p.m. to consider the relief requested in the Petitions for Recognition (the "Hearing"); and at the Hearing, Cameron M. McCord appeared on behalf of Foreign Representative and the Debtors; Bryan Bates appeared on behalf of DIP Lender; Lou McBryan and Kevin Fritz appeared on behalf of Hudson Private LP and Hudson Private Corporation; Brian Hall and Jonathan Shenson appeared on behalf of Hercules Film Investors I (US), Inc.; Walter Jones appeared on behalf of Comerica Bank; and Canadian counsel for the Foreign Representative, Debtors, DIP Lender and other parties in interest also observed the hearing; and it appearing that timely notice of the filing of the Chapter 15 Pleadings and the Hearing has been given pursuant to the *Order Scheduling Hearing and Specifying Form and Manner of Service of Notice Pursuant to Sections 1515 and 105(a) of the Bankruptcy Code and Bankruptcy Rules 2002 and 9007* (DN. 16) and that no other or further notice need be provided; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**THIS COURT HEREBY FINDS AND DETERMINES THAT:**

A. This case was properly commenced pursuant to Sections 1504, 1509 and 1515 of the Title 11 of the United States Code (the "Bankruptcy Code").

B. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

C. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

[4] A copy of which is attached hereto as **Exhibit B**.

D. Venue is proper in this district pursuant to 28 U.S.C. § 1410.

E. All prior factual findings and conclusions set forth in that certain *Order Granting Provisional Relief and Continuing Hearing* [D.N. 15] as well as that certain *Order Granting Continued Provisional Relief* [D.N. 23] are restated and incorporated herein in full on a final basis, except if expressly otherwise stated herein.

F. The CCAA Proceeding is a "foreign proceeding" within the meaning of Section 101(23) of the Bankruptcy Code.

G. The CCAA Proceeding is pending in Canada, which is the country in which the Debtors have their center of main interests and, as such, the CCAA Proceeding is a "foreign main proceeding" within the meaning of Sections 1502(4) and 1517(b)(1) of the Bankruptcy Code and entitled to recognition as a foreign main proceeding in respect of each of the Debtors.

H. The Foreign Representative, BRON Media Corp., is a "person," as such term is defined in Section 101(41) of the Bankruptcy Code, has been duly appointed by the Debtors and has been declared by the Canadian Court as authorized to act as the "foreign representative" with respect to the CCAA Proceeding within the meaning of Section 101(24) of the Bankruptcy Code.

I. The Petitions for Recognition meet all of the requirements set forth in Section 1515 of the Bankruptcy Code and Fed. R. Bankr. P. 1007(a)(4) and 2002(q).

J. The CCAA Proceeding is entitled to recognition by the Court pursuant to Section 1517(a) of the Bankruptcy Code and the Debtors have satisfied the eligibility requirements of Section 109(a) of the Bankruptcy Code, as applicable.

K. The Debtors and the Foreign Representative are entitled to all of the relief set forth in Section 1520 of the Bankruptcy Code.

L. Appropriate notice of the filing of, and the Hearing on, the Petition for Recognition was given, which notice is deemed adequate for all purposes, and no other or further notice need be given.

M. The relief granted hereby is necessary and appropriate, in the interests of the public and of international comity, not inconsistent with the public policy of the United States, warranted pursuant to Sections 105(a), 362, 363, 364, 365(e), 1507(a), 1509(b)(2)-(3), 1520, 1521, 1522 and 1525 of the Bankruptcy Code, and will not cause hardship to creditors of the Debtors or other parties in interests that is not outweighed by the benefits of granting that relief.

N. The relief granted hereby is necessary to effectuate the purposes and objectives of Chapter 15 and to protect the Debtors and the interests of their creditors and other parties in interest.

O. The Foreign Representative has demonstrated to the Canadian Court that, without the financing provided by the DIP Facility, as granted in the ARIO, the Debtors will be unable to continue operations and fund the SISP, which will significantly impair the value of their assets, and that the Canadian Court has approved the DIP Facility and the Interim Lender's Charge as being appropriate and determined that the amount that the Debtors have been authorized to borrow is reasonably necessary for the continued operations of the Debtors in the ordinary course of business.

P. The Foreign Representative has demonstrated to the Canadian Court that the terms of the DIP Facility are fair and reasonable and were entered into in good faith by the Debtors and the Interim Lender and that the Interim Lender would not have extended financing without the provisions of this Order and the Court's recognition of the protections set forth in the ARIO relating to the DIP Facility, including the Interim Lender's Charge.

Q. Absent the relief granted hereby, the Debtors and their directors and officers may be subject to the prosecution of judicial, quasi-judicial, arbitration, administrative or regulatory actions or proceedings in connection with the CCAA Proceeding or otherwise against the Debtors and their directors and officers or their property, thereby interfering with and causing harm to, the Debtors, their creditors, and other parties in interest in the CCAA Proceeding and, as a result, the Debtors, their creditors and such other parties in interest would suffer irreparable injury for which there is no adequate remedy at law.

R. Absent the requested relief, the efforts of the Debtors, the Canadian Court and the Foreign Representative in conducting the CCAA Proceeding and effecting their restructuring therein may be thwarted by the actions of certain creditors, a result that will obstruct the purposes of Chapter 15 as reflected in Section 1501(a) of the Bankruptcy Code.

S. Each of the injunctions contained in this Order (i) is within the Court's jurisdiction, (ii) is essential to the success of the Debtors' restructuring in the CCAA Proceeding, (iii) confers material benefits on, and is in the best interests of, the Debtors and their creditors, and (iv) is important to the overall objectives of the such restructuring.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Petitions for Recognition and the Relief Requested are granted as set forth herein, and any objections thereto including, but not limited to, the *Opposition to Motion of Foreign Representative for an Order Granting Certain Provisional Relief* (DN. 29) filed by Hercules Film Investors I (US), Inc. and *Hudson Private LP and Hudson Private Corporation's Response in Opposition to BRON Media Corp's Omnibus Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code and Motion to Transfer Venue* (DN. 30) are overruled with

prejudice.

2. The CCAA Proceeding is granted recognition with respect to each of the Debtors as a foreign main proceeding (as defined in Section 1502 of the Bankruptcy Code) pursuant to Sections 1517(a) and (b)(1) of the Bankruptcy Code.

3. BRON Media Corp. is recognized as the "foreign representative" as defined in Section 101(24) of the Bankruptcy Code in respect of the CCAA Proceeding.

4. The Debtors and the Foreign Representative are granted all of the relief set forth in Section 1520 of the Bankruptcy Code including, without limitation, the application of the protection afforded by the automatic stay under Section 362(a) of the Bankruptcy Code to the Debtors and to the Debtors' property that is now within or in the future is located within the territorial jurisdiction of the United States.

5. The Foreign Representative is authorized to exercise the powers of a trustee to the extent provided by for in the CCAA Proceeding and by 11 U.S.C. § 1520(a)(3).

6. The ARIO and the SISP Order, as currently constituted and as may later be amended or revised by the Canadian Court, are hereby given full force and effect, on a final basis, with respect to the Debtors and their property that now or in the future is located within the territorial jurisdiction of the United States.

7. Pursuant to 11 U.S.C. § 1521(a)(1)-(3), all persons and entities, other than the Foreign Representative and its representatives and agents, are hereby enjoined (to the extent they have not been stayed under Section 1520(a)) from:

a. execution against any of the Debtors' assets and their directors' and officers' (the "Protected Parties") assets related to the Debtors;

b. the commencement or continuation, including the issuance or employment of process, of a judicial, quasi-judicial, administrative, regulatory, arbitral, or other action or proceeding, or to recover a claim, including, without limitation, any and all unpaid judgments, settlements or otherwise against the Debtors or other

Protected Parties, which in either case is in any way related to, or would interfere with, the administration of the Debtors' estates in the CCAA Proceeding;

c. taking or continuing any act to create, perfect or enforce a lien or other security interest, setoff or other claim against the Debtors or other Protected Parties or any of their property or proceeds thereof, other than the filing of any registration to preserve or protect a security interest;

d. transferring, relinquishing or disposing of any property of the Debtors to any person or entity (as that term is defined in section 101(15) of the Bankruptcy Code) other than the Foreign Representative;

e. commencing or continuing an individual action or proceeding concerning the Debtors' assets, rights, obligations or liabilities or other Protected Parties' assets, rights, obligations or liabilities as the same relate to the Debtors; and

f. declaring or considering the filing of the CCAA Proceeding or these Chapter 15 cases a default or event of default under any agreement, contract or arrangement;

provided, in each case, that such injunctions shall be effective solely within the territorial jurisdiction of the United States; and provided further that nothing herein shall: (x) prevent any entity from filing any claims against the Debtors in the CCAA Proceeding; or (y) prevent any entity from seeking relief from the Canadian Court in the CCAA Proceeding or this Court in these Chapter 15 cases, as applicable, for relief from the injunctions contained in the Order.

8. Pursuant to 11 U.S.C. § 1521(a)(5), the administration or realization of the Debtors' assets within the territorial jurisdiction of the United States is entrusted to the Foreign Representative and the Foreign Representative is hereby established as the exclusive representative of the Debtors in the United States.

9. Pursuant to 11 U.S.C. §§ 1521(a)(6) and 1521(a)(7), all prior relief granted to the Debtors or the Foreign Representative by this Court pursuant to Section 1519(a) or 1521 of the Bankruptcy Code shall be extended and that certain *Order Granting Provisional Relief and Continuing Hearing* [D.N. 15] as well as that certain *Order Granting Continued Provisional Relief* [D.N. 23] shall remain in full force and effect, notwithstanding anything to the contrary contained therein.

10. Pursuant to 11 U.S.C. §§ 105(a), 364(e), and 1521(a)(6-7) of the Bankruptcy Code, the validity of the indebtedness and the priority of the liens authorized by the ARIO made enforceable in the United States by this Order shall not be affected by any reversal or modification of this Order on appeal.

11. The Foreign Representative, the Debtors and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules or local rules of this Court.

12. No action taken by the Foreign Representative, the Debtors, or their respective successors, agents, representatives, advisors, or counsel in preparing, disseminating, applying for, implementing, or otherwise acting in furtherance of or in connection with the CCAA Proceeding, this order, these Chapter 15 cases, or any adversary proceeding herein, or any further proceeding commenced hereunder, shall be deemed to constitute a waiver of the rights or benefits afforded such persons under Sections 306 and 1510 of the Bankruptcy Code.

13. Notwithstanding any provision in the Bankruptcy Rules to the contrary, including, but not limited to, Bankruptcy Rules 7062 and 1018, (i) this Order shall be effective immediately and enforceable upon its entry; (ii) the Foreign Representative and the Interim Lender are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (iii) the Foreign Representative and the Debtors are authorized and empowered, and may in their discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

14. A copy of this Order shall be served within five business days of entry of this order, by electronic mail to the extent email addresses are available and otherwise by U.S. mail, overnight or first-class postage prepaid, upon the Notice Parties and the Core Notice Parties (as

defined in the *Motion of Foreign Representative for Entry of Order Scheduling Hearing and Specifying Form and Manner of Service of Notice Pursuant to Sections 1515 and 105(a) of the Bankruptcy Code and Bankruptcy Rules 2002 and 9007*) and such other entities as the Court may direct. Such service shall be good and sufficient service and adequate notice for all purposes.

15. The Court shall retain jurisdiction with respect to the enforcement, amendment, or modification of this Order, any request for additional relief and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of the Court.

16. This Order shall be effective and enforceable immediately upon entry and shall constitute a final order within the meaning of 28 U.S.C. § 158(a).

END OF ORDER

Prepared and Presented by:

JONES & WALDEN LLC

*/s/ Cameron M. McCord*
Cameron McCord
Georgia Bar No. 143065
Mark Gensburg
Georgia Bar No. 213119
Attorneys for Debtors
699 Piedmont Ave NE
Atlanta, Georgia 30308
(404)564-9300
cmccord@joneswalden.com
mgensburg@joneswalden.com

*Counsel for Debtors and Foreign Representative*

**Distribution List**

Cameron M. McCord, Jones & Walden, LLC, 699 Piedmont Ave NE, Atlanta, GA 30308

EXHIBIT A

SUPREME COURT
OF BRITISH COLUMBIA
VANCOUVER REGISTRY

JUL 28 2023

ENTERED

SUPREME COURT
OF BRITISH COLUMBIA
SEAL
VANCOUVER
REGISTRY

**No. S-235084**
**Vancouver Registry**

**IN THE SUPREME COURT OF BRITISH COLUMBIA**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED
AND
IN THE MATTER OF THE *BUSINESS CORPORATIONS ACT*,
S.B.C. 2002, c. 57, AS AMENDED AND THE BUSINESS CORPORATIONS ACT, R.S.O. 1990, C. B.16, AS AMENDED
AND
AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF BRON MEDIA CORP. AND THE ENTITIES LISTED AT SCHEDULE "A"
PETITIONERS

**PETITIONERS**

**<u>O R D E R MADE AFTER APPLICATION</u>**

| | | |
|---|---|---|
| BEFORE THE HONOURABLE | ) | |
| | ) | July 28, 2023 |
| JUSTICE GOMERY | ) | |

THE APPLICATION of the Petitioners coming on for hearing at Vancouver, British Columbia, on the 27th and 28th day of July, 2023 in respect of the comeback hearing scheduled pursuant to the Initial Order of Justice Gomery of the Supreme Court of British Columbia dated July 19, 2023 (the "**Order Date**"); AND ON HEARING Asim Iqbal and Bryan Hicks, counsel for the Petitioners and those other counsel listed on Schedule "C" hereto; AND UPON READING the material filed, including the First Affidavit of Aaron Gilbert sworn July 18, 2023 (the "**First Gilbert Affidavit**") and the Second Affidavit of Aaron Gilbert sworn July 25, 2023 (the "**Second Gilbert Affidavit**" and together with the First Gilbert Affidavit, the "**Gilbert Affidavits**"), the Pre-Filing Report of Grant Thornton Limited in its capacity as the Monitor (in such capacity, the "**Monitor**"), and the First Report of the Monitor dated July 26, 2023;

AND UPON BEING ADVISED that the secured creditors who are likely to be affected by the charges created herein were given notice; AND pursuant to the *Companies' Creditors*

*Arrangement Act*, R.S.C. 1985 c. C-36 as amended (the "**CCAA**"), the British Columbia Supreme Court Civil Rules and the inherent jurisdiction of this Honourable Court;

**THIS COURT ORDERS AND DECLARES THAT:**

**SERVICE**

1. The time for service of this Notice of Application and supporting materials is hereby abridged such that the Notice of Application is properly returnable today.

**JURISDICTION**

2. The Petitioners are companies to which the CCAA applies.

**PLAN OF ARRANGEMENT**

3. The Petitioners shall have the authority to file and may, subject to further order of this Court, file with this Court a plan of compromise or arrangement (hereinafter referred to as the "**Plan**").

**POSSESSION OF PROPERTY AND OPERATIONS**

4. Subject to this Order and any further Order of this Court, the Petitioners shall remain in possession and control of their current and future assets, licences, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof (the "**Property**"), and continue to carry on their business (the "**Business**") in the ordinary course and in a manner consistent with the preservation of the Business and the Property. The Petitioners shall be authorized and empowered to continue to retain and employ the employees, consultants, agents, experts, accountants, counsel and such other persons (collectively, "**Assistants**") currently retained or employed by them, with liberty to retain such further Assistants as they deem reasonably necessary or desirable in the ordinary course of business or for carrying out the terms of this Order.

**CASH MANAGEMENT SYSTEM**

5. The Petitioners shall be entitled to continue to utilize the central cash management system currently in place as described in the First Gilbert Affidavit or, with the prior written consent of the Interim Lender (as hereinafter defined) and the Monitor, replace it with another substantially similar central cash management system (the "**Cash Management System**"), and that any present or future bank providing the Cash Management System shall not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other action taken under the Cash Management System, or as to the use or application by any of the Petitioners of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, shall be entitled to provide the Cash Management System without any liability in respect thereof to any Person (as hereinafter defined) other than the Petitioners, pursuant to the terms of the documentation applicable to the Cash Management System, and shall be, in its capacity as provider of the Cash Management System, an unaffected creditor under the Plan (if any) with regard to any claims or expenses it may suffer or incur in connection with the provision of the Cash Management System.

6. Subject to the terms of the DIP Term Sheet and Definitive Documents (each, as hereinafter defined), the Petitioners shall be entitled, but not required, to pay the following expenses which may have been incurred prior to the Order Date:

(a) all outstanding wages, salaries, employee and pension benefits (including long and short term disability payments), vacation pay and expenses (but excluding severance pay) payable before or after the Order Date, in each case incurred in the ordinary course of business and consistent with the relevant compensation policies and arrangements existing at the time incurred (collectively "**Wages**");

(b) the fees and disbursements of any Assistants retained or employed by any of the Petitioners which are related to the Restructuring (as hereinafter defined), at their standard rates and charges, including payment of the fees and disbursements of legal counsel retained by the Petitioners, whenever and wherever incurred, in respect of:

(i) these proceedings or any other similar proceedings in other jurisdictions in which any of the Petitioners or any subsidiaries or affiliated companies of the Petitioners are domiciled;

(ii) any litigation in which any of the Petitioners are named as a party or are otherwise involved, whether commenced before or after the Order Date; and

(iii) any related corporate matters; and

(c) with the prior written consent of the Monitor and the Interim Lender, amounts owing for goods and services actually supplied to the Petitioners in the ordinary course of business and consistent with existing policies and procedures (including, without limitation, outstanding source deductions owing to governmental authorities).

7. Subject to the terms of the DIP Term Sheet and Definitive Documents, the Petitioners shall be entitled to operate in the ordinary course of business, including, without limitation, the production and sale, or licensing to third parties, of live-action films, series television, interactive gaming content or other live action, animation or gaming content produced by the Petitioners in the ordinary course of business. For greater certainty: (i) subject to the prior written consent of the Monitor and the Interim Lender and the terms of the DIP Term Sheet and Definitive Documents, the sale of film and television content produced in the ordinary course of business by the Petitioners, other than the Comerica Priority Collateral (as defined below), shall not require the approval of this Court for any transaction below $1,000,000 in value, provided that, if deemed advisable or desirable, the Petitioners may apply for Court approval for any such transaction; and (ii) subject to the terms of the DIP Term Sheet and Definitive Documents, the Petitioners shall seek prior Court approval for any transaction in the ordinary course of business, including, without limitation, the sale of film and television content produced in the ordinary course, (A) in excess of $1,000,000 or (B) involving the Comerica Priority Collateral, or (C) any Property that is subject to an Encumbrance in favour of Access Road Capital, LLC. Notice of at least 3 business days will be given to the Directors Guild of America, Inc., The

Screen Actors Guild – American Federation of Television and Radio Artists and the Writers Guild of America, West, Inc. of any sale contemplated herein and, in the event that such sale provides for any change to the normal course obligations required by the Directors Guild of America, Inc., The Screen Actors Guild – American Federation of Television and Radio Artists and the Writers Guild of America, West, Inc. pursuant to their collective bargaining and related agreements, court approval of such sale shall be required.

8. Except as otherwise provided herein and subject to the terms of the DIP Term Sheet and Definitive Documents, the Petitioners shall be entitled to pay all expenses reasonably incurred by the Petitioners in carrying on the Business in the ordinary course following the Order Date, and in carrying out the provisions of this Order, which expenses shall include, without limitation:

(a) all expenses and capital expenditures reasonably incurred and which are necessary for the preservation of the Property or the Business including, without limitation, payments on account of insurance (including directors' and officers' insurance), maintenance and security services, provided that any capital expenditure exceeding $100,000 shall be approved by the Monitor;

(b) all obligations incurred by the Petitioners after the Order Date, including without limitation, with respect to goods and services actually supplied to the Petitioners following the Order Date (including those under purchase orders outstanding at the Order Date but excluding any interest on the Petitioners' obligations incurred prior to the Order Date); and

(c) fees and disbursements of the kind referred to in paragraph 6(b) which may be incurred after the Order Date.

9. The Petitioners are authorized to remit, in accordance with legal requirements, or pay:

(a) any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from Wages, including, without limitation, amounts in respect of (i)

employment insurance, (ii) Canada Pension Plan, (iii) Quebec Pension Plan, and (iv) income taxes or any such claims which are to be paid pursuant to Section 6(3) of the CCAA;

(b) all goods and services or other applicable sales taxes (collectively, "**Sales Taxes**") required to be remitted by the Petitioners in connection with the sale of goods and services by the Petitioners, but only where such Sales Taxes accrue or are collected after the Order Date, or where such Sales Taxes accrued or were collected prior to the Order Date but not required to be remitted until on or after the Order Date; and

(c) any amount payable to the Crown in right of Canada or of any Province thereof or any political subdivision thereof or any other taxation authority in respect of municipal property taxes, municipal business taxes or other taxes, assessments or levies of any nature or kind which are entitled at law to be paid in priority to claims of secured creditors.

10. Until such time as a real property lease is disclaimed in accordance with the CCAA, the Petitioners shall pay, without duplication, all amounts constituting rent or payable as rent under real property leases (including, for greater certainty, common area maintenance charges, utilities and realty taxes and any other amounts payable as rent to the landlord under the lease, but for greater certainty, excluding accelerated rent or penalties, fees or other charges arising as a result of the insolvency of the Petitioners or the making of this Order) based on the terms of existing lease arrangements or as otherwise may be negotiated between the Petitioners and the landlord from time to time ("**Rent**"), for the period commencing from and including the Order Date, twice-monthly in equal payments on the first and fifteenth day of the month in advance (but not in arrears). On the date of the first of such payments, any Rent relating to the period commencing from and including Order Date shall also be paid.

11. Except as specifically permitted herein and subject to the DIP Term Sheet and the Definitive Documents, the Petitioners are hereby directed, until further Order of this Court:

(a) to make no payments of principal, interest thereon or otherwise on account of amounts owing by any of the Petitioners to any of their respective creditors as of the Order Date except as authorized by this Order;

(b) to make no payments in respect of any financing leases which create security interests;

(c) to grant no security interests, trust, mortgages, liens, charges or encumbrances upon or in respect of any of their Property, nor become a guarantor or surety (other than in the ordinary course of the Business and with the prior written consent of the Interim Lender, where a completion guarantee or other bond is required to be posted by one or more of the Petitioners in connection with the production of an animated or live-action film, series television or other production), nor otherwise become liable in any manner with respect to any other Person or entity except as authorized by this Order;

(d) to not grant credit except in the ordinary course of the Business only to their customers for goods and services actually supplied to those customers, provided such customers agree that there is no right of set-off in respect of amounts owing for such goods and services against any debt owing by the Petitioners to such customers as of the Order Date; and

(e) to not incur liabilities except in the ordinary course of Business.

**RESTRUCTURING**

12. Subject to such requirements as are imposed by the CCAA and such covenants as may be contained in the DIP Term Sheet or Definitive Documents, the Petitioners shall have the right to:

(a) permanently or temporarily cease, downsize or shut down all or any part of their Business or operations and commence marketing efforts in respect of any of their redundant or non-material assets and to dispose of redundant or non-material assets

not exceeding $500,000 in any one transaction or $1,000,000 in the aggregate;

(b) terminate the employment of such of their employees or temporarily lay off such of their employees as they deem appropriate; and

(c) pursue all avenues of refinancing for their Business or Property, in whole or part;

all of the foregoing to permit the Petitioners to proceed with an orderly restructuring of the Business (the "**Restructuring**").

13. The Petitioners shall provide each of the relevant landlords with notice of the Petitioners' intention to remove any fixtures from any leased premises at least seven (7) days prior to the date of the intended removal. The relevant landlord shall be entitled to have a representative present in the leased premises to observe such removal and, if the landlord disputes the Petitioners' entitlement to remove any such fixture under the provisions of the lease, such fixture shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors who claim a security interest in the fixtures, such landlord and the Petitioners, or by further Order of this Court upon application by the Petitioners, the landlord or the applicable secured creditors on at least two (2) clear days' notice to the other parties. If the Petitioners disclaims the lease governing such leased premises in accordance with Section 32 of the CCAA, they shall not be required to pay Rent under such lease pending resolution of any dispute concerning such fixtures (other than Rent payable for the notice period provided for in Section 32(5) of the CCAA), and the disclaimer of the lease shall be without prejudice to the Petitioners' claim to the fixtures in dispute.

14. If a notice of disclaimer is delivered pursuant to Section 32 of the CCAA, then: (a) during the period prior to the effective time of the disclaimer, the landlord may show the affected leased premises to prospective tenants during normal business hours on giving the Petitioners and the Monitor 24 hours' prior written notice; and (b) at the effective time of the disclaimer, the landlord shall be entitled to take possession of any such leased premises without waiver of or prejudice to any claims the landlord may have against the Petitioners, or any other

rights the landlord might have, in respect of such lease or leased premises and the landlord shall be entitled to notify the Petitioners of the basis on which it is taking possession and gain possession of and re-lease such leased premises to any third party or parties on such terms as the landlord considers advisable, provided that nothing herein shall relieve the landlord of its obligation to mitigate any damages claimed in connection therewith.

15. Pursuant to Section 7(3)(c) of the *Personal Information Protection and Electronics Documents Act*, S.C. 2000, c. 5 and Section 18(1)(o) of the *Personal Information Protection Act*, S.B.C. 2003, c. 63, and any regulations promulgated under authority of either Act, as applicable (the "**Relevant Enactment**"), the Petitioners, in the course of these proceedings, are permitted to, and hereby shall, disclose personal information of identifiable individuals in their possession or control to stakeholders, their advisors, prospective investors, financiers, buyers or strategic partners (collectively, "**Third Parties**"), but only to the extent desirable or required to negotiate and complete the Restructuring or to prepare and implement the Plan or transactions for that purpose; provided that the Third Parties to whom such personal information is disclosed enter into confidentiality agreements with the Petitioners binding them in the same manner and to the same extent with respect to the collection, use and disclosure of that information as if they were an organization as defined under the Relevant Enactment, and limiting the use of such information to the extent desirable or required to negotiate or complete the Restructuring or to prepare and implement the Plan or transactions for that purpose, and attorning to the jurisdiction of this Court for the purposes of that agreement. Upon the completion of the use of personal information for the limited purposes set out herein, the Third Parties shall return the personal information to the Petitioners or destroy it. If the Third Parties acquire personal information as part of the Restructuring or the preparation and implementation of the Plan or transactions in furtherance thereof, such Third Parties may, subject to this paragraph and any Relevant Enactment, continue to use the personal information in a manner which is in all respects identical to the prior use thereof by the Petitioners.

## STAY OF PROCEEDINGS, RIGHTS AND REMEDIES

16. Until and including October 18, 2023, or such later date as this Court may order (the "**Stay Period**"), no action, suit or proceeding in any court or tribunal (each, a "**Proceeding**")

against or in respect of the Petitioners or the Monitor, or affecting the Business or the Property, shall be commenced or continued except with the prior written consent of the Petitioners and the Monitor or with leave of this Court, and any and all Proceedings currently under way against or in respect of the Petitioners or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.

17. During the Stay Period, all rights and remedies of any individual, firm, corporation, organization, governmental body or agency, or any other entities (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of any of the Petitioners or the Monitor, or affecting the Business or the Property, are hereby stayed and suspended except with the prior written consent of the Petitioners and the Monitor or leave of this Court.

18. Nothing in this Order, including paragraphs 16 and 17, shall: (i) empower the Petitioners to carry on any business which the Petitioners are not lawfully entitled to carry on; (ii) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA; (iii) prevent the filing of any registration to preserve or perfect a mortgage, charge or security interest (subject to the provisions of Section 39 of the CCAA relating to the priority of statutory Crown securities); or (iv) prevent the registration or filing of a lien or claim for lien or the commencement of a Proceeding to protect lien or other rights that might otherwise be barred or extinguished by the effluxion of time, provided that no further step shall be taken in respect of such lien, claim for lien or Proceeding except for service of the initiating documentation on the Petitioners.

**STAY IN RESPECT OF THE NON-PETITIONER ENTITIES**

19. During the Stay Period, no Person shall (a) commence any Proceeding or enforcement process, (b) terminate, repudiate, make any demand, accelerate, alter, amend, declare in default, exercise any options, rights or remedies, or (c) discontinue, fail to honour, alter, interfere with or cease to perform any obligation pursuant to or in respect of any agreement, lease, sublease license or permit with respect to which any of the Non-Petitioner Entities (as defined in the

Gilbert Affidavits) listed at **Schedule "B"** hereto are a party, borrower, principal obligor or guarantor, by reason of:

(a) any of the Petitioners being insolvent, having become subject to insolvency proceedings, or having made an petition to this Court under the CCAA or the granting of this Order;

(b) any of the Petitioners being party to these proceedings or taking any steps related thereto;

(c) the stay of proceedings granted pursuant to this paragraph 19;

(d) any default or cross-default arising from the matters set out in the foregoing subparagraphs (a) to (c),

except with the prior written consent of the Petitioners and the Monitor, or with leave of this Court.

**NO INTERFERENCE WITH RIGHTS**

20. During the Stay Period, no Person shall accelerate, suspend, discontinue, fail to honour, alter, interfere with, repudiate, rescind, terminate or cease to perform any right, renewal right, contract, agreement, lease, sublease, licence, authorization or permit in favour of or held by any of the Petitioners, except with the prior written consent of the Petitioners and the Monitor or leave of this Court.

**CONTINUATION OF SERVICES**

21. During the Stay Period, all Persons having oral or written agreements with any of the Petitioners or mandates under an enactment for the supply of goods and/or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll and benefit services, accounting services, insurance, transportation,

services, utility, or other services, to the Business or any of the Petitioners, are hereby restrained until further Order of this Court from discontinuing, altering, interfering with, suspending or terminating the supply of such goods or services as may be required by any of the Petitioners, and that the Petitioners shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the Order Date are paid by the Petitioners in accordance with normal payment practices of the Petitioners or such other practices as may be agreed upon by the supplier or service provider and the applicable Petitioners and the Monitor, or as may be ordered by this Court.

**NON-DEROGATION OF RIGHTS**

22. Notwithstanding any provision in this Order, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided on or after the Order Date, nor shall any Person be under any obligation to advance or re-advance any monies or otherwise extend any credit to the Petitioners on or after the Order Date. Nothing in this Order shall derogate from the rights conferred and obligations imposed by the CCAA.

**PROCEEDINGS AGAINST DIRECTORS AND OFFICERS**

23. During the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA, no Proceeding may be commenced or continued against the directors or officers of any of the Petitioners with respect to any claim against the directors or officers that arose before the Order Date and that relates to any obligations of any of the Petitioners whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such obligations, until a compromise or arrangement in respect of the Petitioners, if one is filed, is sanctioned by this Court or is refused by the creditors of the Petitioners or this Court. Nothing in this Order, including in this paragraph, shall prevent the commencement of a Proceeding to preserve any claim against a director or officer of any of the Petitioners that might otherwise be barred or extinguished by the effluxion of time, provided

that no further step shall be taken in respect of such Proceeding except for service of the initiating documentation on the applicable director or officer.

## DIRECTORS AND OFFICERS INDEMNIFICATION AND CHARGE

24. The Petitioners shall indemnify their directors and officers against obligations and liabilities that they may incur as directors or officers of the Petitioners after the commencement of the within proceedings, except to the extent that, with respect to any director or officer, the obligation or liability was incurred as a result of the director's or officer's gross negligence or wilful misconduct.

25. The directors and officers of the Petitioners shall be entitled to the benefit of and are hereby granted a charge (the "**Directors' Charge**") on the Property, which charge shall not exceed an aggregate amount of CAD $742,000, as security for the indemnity provided in paragraph 24 of this Order. The Directors' Charge shall have the priority set out in paragraphs 42 and 44 hereof.

26. Notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge, and (b) the Petitioners' directors and officers shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts indemnified in accordance with paragraph 24 of this Order.

## APPOINTMENT OF MONITOR

27. Grant Thornton Limited is hereby appointed pursuant to the CCAA as the Monitor, an officer of this Court, to monitor the business and financial affairs of the Petitioners with the powers and obligations set out in the CCAA or set forth herein, and that the Petitioners and their shareholders, officers, directors, and Assistants shall advise the Monitor of all material steps taken by the Petitioners pursuant to this Order, and shall co-operate fully with the Monitor in the exercise of its powers and discharge of its obligations and provide the Monitor with the

assistance that is necessary to enable the Monitor to adequately carry out the Monitor's functions.

28. The Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:

(a) monitor the Petitioners' receipts and disbursements;

(b) report to this Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Property, the Business, the DIP Term Sheet, the Definitive Documents and such other matters as may be relevant to the proceedings herein;

(c) assist the Petitioners, to the extent required by the Petitioners, in their dissemination, to the Interim Lender and its counsel, as and when required or permitted under the DIP Term Sheet or the Definitive Documents or as otherwise reasonably required by the Interim Lender, of financial and other information as agreed to between the Petitioners and the Interim Lender which may be used in these proceedings including reporting on a basis to be agreed with the Interim Lender;

(d) advise the Petitioners in their preparation of the Petitioners' cash flow statements and reporting required by the Interim Lender, which information shall be reviewed with the Monitor and delivered to the Interim Lender and its counsel as and when required under the DIP Term Sheet and the Definitive Documents or as otherwise agreed to by the Interim Lender;

(e) advise the Petitioners in their development of the Plan and any amendments to the Plan;

(f) assist the Petitioners, to the extent required by the Petitioners, with the holding and administering of creditors' or shareholders' meetings for voting on the Plan;

(g) monitor all payments, obligations and transfers as between any of the Petitioners;

(h) monitor and track the costs of these proceedings including the utilization of the proceeds of the DIP Facility (as defined below) and the incurring of the costs and liabilities that are subject to any of the Charges (as defined below) in respect of each of the Petitioners and their respective Property.

(i) have full and complete access to the Property, including the premises, books, records, data, including data in electronic form, and other financial documents of the Petitioners, to the extent that is necessary to adequately assess the Petitioners' business and financial affairs or to perform its duties arising under this Order;

(j) be at liberty to engage independent legal counsel or such other Persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order; and

(k) perform such other duties as are required by this Order or by this Court from time to time.

29. The Monitor shall not take possession of the Property and shall take no part whatsoever in the management or supervision of the management of the Business and shall not, by fulfilling its obligations hereunder, or by inadvertence in relation to the due exercise of powers or performance of duties under this Order, be deemed to have taken or maintained possession or control of the Business or Property, or any part thereof, and nothing in this Order shall be construed as resulting in the Monitor being an employer or a successor employer, within the meaning of any statute, regulation or rule of law or equity, for any purpose whatsoever.

30. Nothing herein contained shall require or allow the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, "**Possession**") of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance

contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, without limitation, the *Canadian Environmental Protection Act*, the *Fisheries Act*, the British Columbia *Environmental Management Act*, the British Columbia *Fish Protection Act* and regulations thereunder (the "**Environmental Legislation**"), provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation. For greater certainty, the Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless it is actually in possession.

31. The Monitor shall provide any creditor of the Petitioners and the Interim Lender with information provided by the Petitioners in response to reasonable requests for information made in writing by such creditor addressed to the Monitor. The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph. In the case of information that the Monitor has been advised by the Petitioners is confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the Petitioners may agree.

32. In addition to the rights and protections afforded the Monitor under the CCAA or as an officer of this Court, the Monitor shall incur no liability or obligation as a result of its appointment or the carrying out of the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part. Nothing in this Order shall derogate from the rights and protections afforded the Monitor by the CCAA or any applicable legislation.

33. The Monitor, counsel to the Monitor, if any, and counsel to the Petitioners shall be paid their reasonable fees and disbursements, in each case at their standard rates and charges, by the Petitioners as part of the cost of these proceedings. The Petitioners are hereby authorized and directed to pay the accounts of the Monitor, counsel to the Monitor and counsel to the Petitioners on a periodic basis and, in addition, the Petitioners are hereby authorized to pay to the Monitor, counsel to the Monitor, and counsel to the Petitioners, retainers in the amounts of

$50,000, respectively, to be held by them as security for payment of their respective fees and disbursements outstanding from time to time.

34. The Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the British Columbia Supreme Court who may determine the manner in which such accounts are to be passed, including by hearing the matter on a summary basis or referring the matter to a Registrar of this Court.

## ADMINISTRATION CHARGE

35. The Monitor, counsel to the Monitor, if any, and counsel to the Petitioners shall be entitled to the benefit of and are hereby granted a charge (the "**Administration Charge**") on the Property, which charge shall not exceed an aggregate amount of USD $500,000, as security for their respective fees and disbursements incurred at the standard rates and charges of the Monitor and such counsel, both before and after the making of this Order which are related to the Petitioners' restructuring. The Administration Charge shall have the priority set out in paragraphs 42 and 44 hereof.

## INTERIM FINANCING

36. The Petitioners are hereby authorized and empowered to obtain and borrow under a credit facility (the "**DIP Facility**") from Creative Wealth Media Lending LP 2016 (the "**Interim Lender**") in order to finance the continuation of the Business and preservation of the Property, all in accordance with the DIP Term Sheet and the Definitive Documents, provided that borrowings under the DIP Facility shall not exceed the aggregate principal amount of USD $6,200,000 unless permitted by further Order of this Court.

37. The DIP Facility shall be on the terms and subject to the conditions set forth in the DIP Term Sheet between the Petitioners and the Interim Lender dated as of July 18, 2023 (the "**DIP Term Sheet**"), filed.

38. The Petitioners are hereby authorized and empowered to execute and deliver such credit agreements, mortgages, charges, hypothecs and security documents, guarantees and other definitive documents (collectively, the "**Definitive Documents**"), as are contemplated by the DIP Term Sheet or as may be reasonably required by the Interim Lender pursuant to the terms thereof, and the Petitioners are hereby authorized and directed to pay and perform all of their indebtedness, interest, fees, liabilities and obligations to the Interim Lender under and pursuant to the DIP Term Sheet and the Definitive Documents as and when the same become due and are to be performed, notwithstanding any other provision of this Order.

39. The Interim Lender shall be entitled to the benefit of and is hereby granted a charge (the "**Interim Lender's Charge**") on the Property up to the maximum amount of USD $6,200,000 (plus accrued and unpaid interest, fees and expenses) to secure amounts advanced under the DIP Facility. The Interim Lender's Charge shall not secure an obligation that exists before this Order is made. The Interim Lender's Charge shall have the priority set out in paragraphs 42 and 44 hereof.

40. Notwithstanding any other provision of this Order:

(a) the Interim Lender may take such steps from time to time as it may deem necessary or appropriate to file, register, record or perfect the Interim Lender's Charge or any of the Definitive Documents;

(b) upon the occurrence and during the continuance of an Event of Default (as defined in the DIP Term Sheet), whether or not there is availability under the DIP Facility and notwithstanding any stay imposed under this Order: (i) without any notice to the Petitioners, the Petitioners shall have no right to receive any additional advances thereunder or other accommodation of credit from the Interim Lender except in the sole discretion of the Interim Lender; and (ii) the Interim Lender may immediately terminate the DIP Facility and demand immediate payment of all obligations owing thereunder by providing such notice and demand to the Petitioners, with a copy to the Monitor;

(c) with leave of this Court, sought on not less than three (3) business days' notice to the Petitioners and the Monitor after the occurrence and during the continuance of an Event of Default, the Interim Lender shall have the right to enforce the Interim Lender's Charge and to exercise all other rights and remedies in respect of the obligations owing under the DIP Facility and the Interim Lender's Charge; and

(d) the foregoing rights and remedies of the Interim Lender shall be enforceable against any trustee in bankruptcy, interim receiver, receiver or receiver and manager of the Petitioners or the Property.

41. The Interim Lender, in such capacity, shall be treated as unaffected in any plan of arrangement or compromise filed by the Petitioners under the CCAA, or any proposal filed by the Petitioners under the *Bankruptcy and Insolvency Act* of Canada (the "**BIA**"), with respect to any advances made under the Definitive Documents.

**VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER**

42. The priorities of the Administration Charge, the KERP Charge (as defined below), the Directors' Charge, the Interim Lender's Charge (collectively, the "**Charges**"), and the Comerica Security (as defined below), as among them, shall be as follows:

With respect to Property not subject to an Encumbrance (as defined below) in favour of Comerica Bank:

First - Administration Charge (to the maximum amount of USD $500,000);

Second - KERP Charge (to the maximum amount of USD $234,460);

Third - Interim Lender's Charge (to the maximum amount of USD $6,200,000 plus accrued and unpaid interest, fees and expenses); and

Fourth - Directors' Charge (to the maximum amount of CAD $742,000);

With respect to Property subject to an Encumbrance in favour of Comerica Bank (all such Property, the "**Comerica Collateral**", and all such Encumbrances, the "**Comerica Security**"):

First - any Comerica Security on the revenues, tax incentives or proceeds derived from or related to the motion pictures "Queen and Slim", "Fences" and "Surrounded" (collectively, the "**Comerica Priority Collateral**");

Second - Administration Charge (to the maximum amount of USD $500,000);

Third - any Comerica Security on any Comerica Collateral other than the Comerica Priority Collateral (collectively, the "**Comerica Second-Priority Collateral**");

Fourth - KERP Charge (to the maximum amount of USD $234,460);

Fifth - Interim Lender's Charge (to the maximum amount of USD $6,200,000 plus accrued and unpaid interest, fees and expenses); and

Sixth - Directors' Charge (to the maximum amount of CAD $742,000).

43. Any security documentation evidencing, or the filing, registration or perfection of, the Charges shall not be required, and the Charges shall be effective as against the Property and shall be valid and enforceable for all purposes, including as against any right, title or interest filed, registered or perfected subsequent to the Charges coming into existence, notwithstanding any failure to file, register or perfect any such Charges.

44. Each of the Charges shall constitute a mortgage, hypothec, security interest, assignment by way of security and charge on the Property and such Charges shall rank in priority to all other security interests, trusts, liens, mortgages, charges and encumbrances and claims of secured creditors, statutory or otherwise (collectively, "**Encumbrances**"), in favour of any Person, save and except those claims contemplated by section 11.8(8) of the CCAA. Notwithstanding the foregoing:

(i) the Administration Charge shall rank subordinate to any Comerica Security on the Comerica Priority Collateral but in priority to any Comerica Security on the Comerica Second-Priority Collateral;

(ii) the KERP Charge, the Interim Lender's Charge and the Directors' Charge shall rank subordinate to any Comerica Security on the Comerica Collateral; and

(iii) the Interim Lender's Charge shall rank subordinate to any existing Encumbrance on any Property in favour of the Writers Guild of America, West Inc., the Directors Guild of America Inc. or the Screen Actors Guild-American Federation of Television and Radio Artists (each, a "**Union Party**") solely to the extent (A) of a Union Party's interest in such Property and (B) to which the Interim Lender has agreed that such existing Encumbrance shall rank in priority to any Encumbrance on such Property in favour of the Interim Lender pursuant to a valid and enforceable Interparty Agreement (or similar binding agreement) between the Interim Lender and a Union Party.

45. Except as otherwise expressly provided herein, or as may be approved by this Court, the Petitioners shall not grant or suffer to exist any Encumbrances over any Property that rank in priority to, or *pari passu* with the Charges, unless the Petitioners obtain the prior written consent of the Monitor, the Interim Lender and the beneficiaries of the Administration Charge and the Director's Charge.

46. The Charges, the DIP Term Sheet and the Definitive Documents shall not be rendered invalid or unenforceable and the rights and remedies of the chargees entitled to the benefit of the Charges (collectively, the "**Chargees**") and/or the Interim Lender shall not otherwise be limited or impaired in any way by: (a) the pendency of these proceedings and the declarations of insolvency made herein; (b) any application(s) for bankruptcy order(s) or receivership order(s) issued pursuant to the BIA or otherwise, or any bankruptcy order or receivership order made pursuant to such applications; (c) the filing of any assignments for the general benefit of

creditors made pursuant to the BIA; (d) the provisions of any federal or provincial statutes; or (e) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any existing loan documents, lease, mortgage, security agreement, debenture, sublease, offer to lease or other agreement (collectively, an "**Agreement**") which binds the Petitioners; and notwithstanding any provision to the contrary in any Agreement:

(a) neither the creation of the Charges nor the execution, delivery, perfection, registration or performance of the DIP Term Sheet or the Definitive Documents shall create or be deemed to constitute a breach by any of the Petitioners of any Agreement to which any of the Petitioners is a party;

(b) none of the Chargees shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting from the Petitioners entering into the DIP Term Sheet, the creation of the Charges, or the execution, delivery or performance of the Definitive Documents; and

(c) the payments made by the Petitioners pursuant to this Order, the DIP Term Sheet or the Definitive Documents, and the granting of the Charges, do not and will not constitute preferences, fraudulent conveyances, transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law.

47. Any Charge created by this Order over leases of real property in Canada shall only be a Charge in the Petitioners' interest in such real property leases.

48. Any interested Person may apply to this Court on notice to any other party likely to be affected for an order to allocate the Charges amongst the Property, provided that, in all cases, any such allocation must provide for the payment in full of all amounts and obligations secured by such Charges.

## KERP APPROVAL

49. The key employee retention plan ("**KERP**") described in the Second Gilbert Affidavit and in the First Report of the Monitor, is hereby approved and the Petitioners are authorized and directed to make payments in accordance with the terms thereof.

50. The Petitioners are authorized to deliver such documents as may be necessary to give effect to the KERP, subject to prior approval of the Monitor and the Interim Lender or as may be ordered by this Court.

51. The KERP Participants (as defined in the Second Gilbert Affidavit) shall be entitled to the benefit of and are hereby granted a charge (the "**KERP Charge**") on the Property, which charge shall not exceed an aggregate amount of $234,460 as security for the obligations of the Petitioners under the KERP. The KERP Charge shall have the priority set out in paragraphs 42 and 44 hereof.

## SERVICE AND NOTICE

52. The Monitor shall: (i) without delay, publish in *The Globe and Mail* (National Edition) a notice containing the information prescribed under the CCAA; and (ii) within five days after Order Date, (A) make this Order publicly available in the manner prescribed under the CCAA, (B) send, in the prescribed manner, a notice to every known creditor who has a claim against the Petitioners of more than $1,000, and (C) prepare a list showing the names and addresses of those creditors and the estimated amounts of those claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder.

53. The Petitioners and the Monitor are at liberty to serve this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery or electronic transmission to the Petitioners' creditors or other interested parties at their respective addresses as last shown on the records of the Petitioners and that any such service or notice by courier, personal delivery or

electronic transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.

54. Any Person that wishes to be served with any application and other materials in these proceedings must deliver to the Monitor by way of ordinary mail, courier, personal delivery or electronic transmission a request to be added to a service list (the "**Service List**") to be maintained by the Monitor. The Monitor shall post and maintain an up to date form of the Service List on its website at: www.grantthornton.ca/BronMedia.

55. Any party to these proceedings may serve any court materials in these proceedings by emailing a PDF or other electronic copy of such materials to counsels' email addresses as recorded on the Service List from time to time, and the Monitor shall post a copy of all prescribed materials on its website at: www.grantthornton.ca/BronMedia.

56. Notwithstanding paragraphs 52 and 54 of this Order, service of the Petition, the Notice of Hearing of Petition, any affidavits filed in support of the Petition and this Order shall be made on the Federal and British Columbia Crowns in accordance with the *Crown Liability and Proceedings Act*, R.S.C. 1985, c. C-50, and regulations thereto, in respect of the Federal Crown, and the *Crown Proceeding Act*, R.S.B.C. 1996, c. 89, in respect of the British Columbia Crown.

**FOREIGN PROCEEDINGS**

57. BRON Media Corp., or any of the Petitioners, are hereby authorized and empowered to act as the foreign representative (as applicable, the "**Foreign Representative**") in respect of these proceedings of the purpose of having these proceedings recognized in a foreign jurisdiction.

58. The Foreign Representative is authorized to apply for foreign recognition of these proceedings, as necessary or advisable, in any jurisdiction outside of Canada including, without limitation, the United States pursuant to Chapter 15 of Title 11 of the United States Code 11 U.S.C., §§ 101 – 1532, the United Kingdom, Ireland and New Zealand.

## GENERAL

59. The Petitioners or the Monitor may from time to time apply to this Court for directions in the discharge of their powers and duties hereunder.

60. Nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the Petitioners, the Business or the Property.

61. This Court requests the aid and recognition of other Canadian and foreign Courts, tribunal, regulatory or administrative bodies, including any Court or administrative tribunal of any federal or State Court or administrative body in the United States of America, the United Kingdom, or any other foreign jurisdiction, to act in aid of and to be complementary to this Court in carrying out the terms of this Order where required. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Foreign Representative, the Petitioners and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Foreign Representative in any foreign proceeding, or to assist the Foreign Representative, Petitioners and the Monitor and their respective agents in carrying out the terms of this Order.

62. The Petitioners are hereby at liberty to apply for such further interim or interlocutory relief as it deems advisable within the time limited for Persons to file and serve Responses to the Petition.

63. Leave is hereby granted to hear any application in these proceedings on two (2) clear days' notice after delivery to all parties on the Service List of such Notice of Application and all affidavits in support, subject to the Court in its discretion further abridging or extending the time for service.

64. Any interested party (including the Petitioners, the Interim Lender and the Monitor) may apply to this Court to vary or amend this Order on not less than seven (7) days' notice to all

parties on the Service List and to any other party or parties likely to be affected by the order sought or upon such other notice, if any, as this Court may order.

65. Eendorsement of this Order by counsel appearing on this application is hereby dispensed with.

66. This Order and all of its provisions are effective as of 12:01 a.m. local Vancouver time on the Order Date.

67. Leave is hereby granted for counsel to appear at future hearings in this matter remotely by video.

THE FOLLOWING PARTIES APPROVE THE FORM OF THIS ORDER AND CONSENT TO EACH OF THE ORDERS, IF ANY, THAT ARE INDICATED ABOVE AS BEING BY CONSENT:

_______________________________
Signature of
☐ Party ☑ Lawyer for the Petitioners

for _______________________________
Asim Iqbal

_______________________________

BY THE COURT

_______________________________
REGISTRAR

Certified a true copy according to the records of the Supreme Court at Vancouver, B.C.
DATED: JUL 28 2023

Authorized Signing Officer

LALA WONG

CHECKED

**Schedule "A"**

**List of Petitioners**

| | Debtor Company | Jurisdiction |
|---|---|---|
| 1. | BRON Animation Inc. | British Columbia |
| 2. | BRON Creative Corp. | Ontario |
| 3. | BRON Developments Inc. | British Columbia |
| 4. | BRON Media Corp. | British Columbia |
| 5. | BRON Media Holdings Intl. Corp. | British Columbia |
| 6. | BRON Media Holdings USA Inc. | British Columbia |
| 7. | BRON Releasing Inc. | British Columbia |
| 8. | BRON Studios Inc. | British Columbia |
| 9. | BRON Ventures 1 (Canada) Corp | British Columbia |
| 10. | BRON Everest Productions Inc. | Ontario |
| 11. | Fables Productions BC Inc. | British Columbia |
| 12. | Gossamer Productions BC Inc. | British Columbia |
| 13. | Hench 2 BC Productions Inc. | British Columbia |
| 14. | Henchmen Productions Inc. | British Columbia |
| 15. | Robin Hood Digital PC BC Inc. | British Columbia |
| 16. | Windor Productions BC Inc. | British Columbia |
| 17. | BRON Creative USA, Corp. | Nevada |
| 18. | BRON Digital USA, LLC | Delaware |
| 19. | BRON Life USA Inc. (BRON Legacy USA Inc.) | Delaware |
| 20. | BRON Media Holdings USA Corp. | Delaware |
| 21. | BRON Releasing USA Inc. | Delaware |
| 22. | BRON Studios USA Inc. | Nevada |

| | | |
|---|---|---|
| 23. | BRON Ventures 1, LLC | Delaware |
| 24. | BRON Studios USA Developments Inc. | Nevada |
| 25. | Bakhorma, LLC | Washington |
| 26. | Drunk Parents, LLC | New York |
| 27. | Fables Holdings USA, LLC | Delaware |
| 28. | Fables Productions USA Inc | Delaware |
| 29. | Gossamer Holdings USA, LLC | Delaware |
| 30. | Gossamer Productions USA Inc. | Delaware |
| 31. | Harry Haft Productions, Inc. | New York |
| 32. | Heavyweight Holdings, LLC<br>(previously Harry Haft Films, LLC) | Delaware |
| 33. | I Am Pink Productions, LLC | Delaware |
| 34. | Lucite Desk, LLC | Delaware |
| 35. | National Anthem Holdings, LLC<br>(f. k. a. BCDC Holdings, LLC) | Delaware |
| 36. | National Anthem ProdCo Inc. | New Mexico |
| 37. | Oakland Pictures Holdings, LLC | Delaware |
| 38. | Pathway Productions, LLC | Delaware |
| 39. | Robin Hood Digital PC USA Inc. | Delaware |
| 40. | Robin Hood Digital USA, LLC | Delaware |
| 41. | Solitary Holdings USA, LLC | Delaware |
| 42. | Surrounded Holdings USA LLC | Delaware |
| 43. | Welcome to Me, LLC | California |

**Schedule "B"**
Non-Petitioner Entities

BRON Studios UK Ltd.
BRON Releasing UK Ltd.
CMA Productions UK Ltd.
In Good Company Holdings Ltd.
Kid Unknown Holdings Ltd (fka Hunaman Holdings Ltd.)
Neon Club Productions, Ltd.
Shadowplay Series Holdings UK Limited
TDBB Holdings UK Ltd.
Townsend Series Holdings UK Ltd.
Townsend Series Holdings UK Ltd.
Townsend Series Productions UK Ltd. (Grey Door Film Productions Ltd.)
Front Runner Productions, Inc.
BRON Creative MG1, LLC
BRON Creative WB 1, LLC
BRON Labs LLC
A Single Shot Movie, LLLP
Blackhand Developments Inc.
Blackhand Pictures, LLC
BRON Next Film Production, LLC (BRON Life, LLC)
BRON Pictures Holdings, LLC
BRON Subnation Slate 1, LLC
Rideg Film Holdings, LLC
Brown Amy, LLC
Driftless Area, LLC
Drunk Parents Production Services Inc.
Erostratus LA, LLC
Erostratus, LLC
Fonzo Production Services Inc.
Fonzo, LLC
Front Runner, LLC
Green Moon Inc.
Harmon Films, LLC
Harmon Monster Films, Inc.
I Saw The Light Movie, LLC
I Saw The Light, LLC
Layover LLC
Mad Solar Productions, LLC
Master Cleanse, LLC
Meadowland Movie, LLC
Meadowland Production Services Inc.
My Abandonment LLC
My Abandonment Production Services Inc.
Needle In A Timestack, LLC
October Series Holdings, LLC
Pangea Cup Holdings, LLC
Pangea Cup Productions Inc.
Para Productions, LLC

Phil Productions, LLC
Red Sea LLC
Red Sea Productions Inc.
Savant Developments Inc.
Summerland Holdings, LLC
The Good Nurse Films, LLC
The Realm Productions USA LLC
TMF Productions, LLC
Tully Productions, LLC
Tumbledown, LLC
TWWMD Holdings, LLC
TWWMD Productions, Inc.
Villains Pictures, LLC
Villains Production Services, Inc.
Wonder Book Holdings USA, LLC
BRON Charitable Foundation, Inc.
Hercules BRON Creative Partnership

**Schedule "C"**

List of Counsel

**List of Counsel**

| Name | Party |
|---|---|
| Jordan Schultz | Comerica |
| John Salmas (Remote) | Comerica |
| Peter Bychawski | Access Road Capital, LLC |
| Andrew Froh | CWM |
| Mike Shakra | CWM |
| John Birch | Court-appointed Monitor |
| Forrest Finn | Court-appointed Monitor |
| Wojtek Jaskiewicz | Premium Properties Ltd. |
| David Stabber | Comerica |
| Mark van Zandvoort | Hudson Private Corp. |
| Kathryn Esaw | Screen Actors Guild, Gilds |
| Hilary Bock | Bayshore |
| ASIM IQBAL | Petitioners |
| BRYAN HICKS | Petitioners |
| MONICA FAHEEM | Petitioners. |
| Dawid Gieldszczyk | Union of BC Performers |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

EXHIBIT B

SUPREME COURT
OF BRITISH COLUMBIA
VANCOUVER REGISTRY
JUL 28 2023
ENTERED

SUPREME COURT
OF BRITISH COLUMBIA
SEAL
VANCOUVER
REGISTRY

No. S-235084
Vancouver Registry

**IN THE SUPREME COURT OF BRITISH COLUMBIA**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND

IN THE MATTER OF THE *BUSINESS CORPORATIONS ACT*, S.B.C. 2002, c. 57, AS AMENDED AND THE BUSINESS CORPORATIONS ACT, R.S.O. 1990, C. B.16, AS AMENDED

AND

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF BRON MEDIA CORP. AND THE ENTITIES LISTED AT SCHEDULE "A"

**PETITIONERS**

**<u>O R D E R MADE AFTER APPLICATION</u>**

**SALE AND INVESTMENT SOLICITATION PROCESS ORDER**

| | | |
|---|---|---|
| BEFORE THE HONOURABLE | ) | |
| | ) | July 28, 2023 |
| JUSTICE GOMERY | ) | |

**THIS APPLICATION** of the Petitioners coming on for hearing at Vancouver, British Columbia, on the 27th and 28th day of July, 2023 in respect of the comeback hearing scheduled pursuant to the Initial Order of Justice Gomery of the Supreme Court of British Columbia dated July 19, 2023; AND ON HEARING Asim Iqbal and Bryan Hicks, counsel for the Petitioners and those other counsel listed on Schedule "C" hereto; AND UPON READING the material filed, including the First Affidavit of Aaron Gilbert sworn July 18, 2023 and the Second Affidavit of Aaron Gilbert

sworn July 25, 2023, the Pre-Filing Report of Grant Thornton Limited in its capacity as the proposed Monitor dated July 18, 2023, and the First Report of Grant Thornton Limited in its capacity as the Monitor (in such capacity the "**Monitor**") dated July 26, 2023;

**SERVICE AND DEFINITIONS**

1. The time for service of this Notice of Application and supporting materials is hereby abridged such that the Notice of Application is properly returnable today.

2. Capitalized terms used in this Order and not otherwise defined herein shall have the meaning ascribed to them under the SISP (as defined below) or the Amended and Restated Initial Order of this Court dated as of the date hereof.

**APPROVAL OF SALE AND INVESTMENT SOLICITATION PROCESS**

3. The Sale and Investment Solicitation Process attached as **Schedule "B"** to this Order (the "**SISP**") is hereby approved and the Petitioners and the Monitor are hereby authorized and directed to implement the SISP in accordance with its terms and the terms of this Order. The Monitor and the Petitioners are hereby authorized and directed to perform their respective obligations and to do all things reasonably necessary to perform their obligations under the SISP, subject to prior approval of this Court being obtained before completion of any transaction(s) under the SISP.

4. The Monitor and its respective affiliates, partners, employees, representatives and agents shall have no liability with respect to any and all losses, claims, damages or liabilities, of any nature or kind, to any Person in connection with or as a result of the SISP, except to the extent

such losses, claims, damages or liabilities result from the gross negligence or willful misconduct of the Monitor in performing its obligations under the SISP as determined by this Court.

5. Notwithstanding anything contained in this Order or in the SISP, the Monitor shall not take Possession of the Business or the Property or be deemed to take Possession of the Business or the Property, including pursuant to any provision of the Environmental Legislation.

**PIPEDA AND CONFIDENTIAL INFORMATION**

6. Pursuant to section 7(3)(c) of the *Personal Information Protection and Electronic Documents* Act, S.C. 2000, c. 5 (“**PIPEDA**”) and Section 18(1)(o) of the *Personal Information Protection Act*, S.B.C. 2003, c. 63, the Monitor and the Petitioners and their respective counsel be and are hereby authorized but not obligated, to serve or distribute this Order, any other materials, orders, communication, correspondence or other information as may be necessary or desirable in connection with the SISP to any Person or interested party that the Monitor or the Petitioners consider appropriate.

7. Pursuant to clause 7(3)(c) of the PIPEDA and any similar legislation in any other applicable jurisdictions, the Monitor, the Petitioners and their respective counsel are hereby authorized and permitted to disclose and transfer to each Potential Bidder and to their advisors, if requested, personal information of identifiable individuals, including, without limitation, all human resources and payroll information in the Petitioners’ records pertaining to their past and current employees, but only to the extent desirable or required to negotiate or attempt to complete a sale of the Property (“**Sale**”) or investment in the Business (“**Investment**”). Each Potential Bidder to whom such personal information is disclosed shall maintain and protect the privacy of such information and

limit the use of such information to its evaluation of the Sale or Investment, and if it does not complete a Sale or Investment, shall return all such information to the Monitor and the Petitioners, or in the alternative destroy all such information. The Successful Bidder(s) shall maintain and protect the privacy of such information and, upon closing of the transaction contemplated in the Successful Bid(s), shall be entitled to use the personal information provided to it that is related to the Property or Business acquired pursuant to the Sale or invested in pursuant to the Investment in a manner which is in all material respects identical to the prior use of such information by the Petitioners, and shall return all other personal information to the Monitor and the Petitioners, or ensure that all other personal information is destroyed.

8. The Monitor is hereby authorized to disclose any information or documentation contained in the Petitioners' records (including, without limitation, confidential information or documentation) regarding the Petitioners' assets, undertakings and properties, including the Applicant's business and operations (collectively, the "**Property and Business Information**") to Potential Bidders, provided that the Monitor will only disclose Property and Business Information that the Monitor determines is reasonably necessary to permit a Qualified Bidder to conduct due diligence regarding a potential Transaction or that is otherwise necessary to implement the SISP or a potential Transaction.

9. Each Potential Bidder to whom Property and Business Information is disclosed under the SISP will maintain and protect the confidentiality of such Property and Business Information and limit the use of such Property and Business Information to its evaluation of a potential Transaction in accordance with the terms of the SISP and their Confidentiality Agreement, and, if a Transaction is no longer being considered by the Potential Bidder, if the Potential Bidder does not complete a

Transaction under the SISP or otherwise at the request of the Monitor, such Potential Bidder will return all such Property and Business Information to the Monitor or alternatively destroy such Property and Business Information and provide confirmation of its destruction of so requested by the Monitor. The Successful Bidder(s) will maintain and protect the confidentiality of the Property and Business Information and, upon the closing of any Transaction(s), will be entitled to use the Property and Business Information provided to them that is related to the Property or the Business subject to the Transaction(s) in a matter that is in all material respects identical to the prior use of such Property and Business Information by the Petitioners and the Monitor, and will return all other Property and Business Information to the Monitor or alternatively destroy such Property and Business Information and provide confirmation of its destruction if so requested by the Monitor.

**GENERAL**

10. The Petitioners or the Monitor may from time to time apply to this Court for advice and directions in the discharge of their powers and duties hereunder.

11. The aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom, Ireland, New Zealand or any other foreign jurisdiction, to give effect to this Order and to assist the Foreign Representative, the Petitioners, the Monitor, and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Foreign Representative, the Petitioners and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Foreign Representative in any foreign proceeding, or to assist

the Foreign Representative, the Petitioners and the Monitor and their respective agents in carrying out the terms of this Order.

12. Each of the Foreign Representative, the Petitioners and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory, or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

13. Endorsement of this Order by counsel appearing on this application is hereby dispensed with.

14. This Order and all of its provisions are effective as of 12:01 a.m. local Vancouver time on the date hereof.

THE FOLLOWING PARTIES APPROVE THE FORM OF THIS ORDER AND CONSENT TO EACH OF THE ORDERS, IF ANY, THAT ARE INDICATED ABOVE AS BEING BY CONSENT:

**Asim Iqbal**

Lawyers for the Petitioners

BY THE COURT

REGISTRAR

CKED

Certified a true copy according to the records of the Supreme Court at Vancouver, B.C.
DATED: JUL 28 2023

Authorized Signing Officer
Pamela Grant

## Schedule "A"

## List of Petitioners

| | Debtor Company | Jurisdiction |
|---|---|---|
| 1. | BRON Animation Inc. | British Columbia |
| 2. | BRON Creative Corp. | Ontario |
| 3. | BRON Developments Inc. | British Columbia |
| 4. | BRON Media Corp. | British Columbia |
| 5. | BRON Media Holdings Intl. Corp. | British Columbia |
| 6. | BRON Media Holdings USA Inc. | British Columbia |
| 7. | BRON Releasing Inc. | British Columbia |
| 8. | BRON Studios Inc. | British Columbia |
| 9. | BRON Ventures 1 (Canada) Corp | British Columbia |
| 10. | BRON Everest Productions Inc. | Ontario |
| 11. | Fables Productions BC Inc. | British Columbia |
| 12. | Gossamer Productions BC Inc. | British Columbia |
| 13. | Hench 2 BC Productions Inc. | British Columbia |
| 14. | Henchmen Productions Inc. | British Columbia |
| 15. | Robin Hood Digital PC BC Inc. | British Columbia |
| 16. | Windor Productions BC Inc. | British Columbia |
| 17. | BRON Creative USA, Corp. | Nevada |
| 18. | BRON Digital USA, LLC | Delaware |
| 19. | BRON Life USA Inc. (BRON Legacy USA Inc.) | Delaware |
| 20. | BRON Media Holdings USA Corp. | Delaware |
| 21. | BRON Releasing USA Inc. | Delaware |
| 22. | BRON Studios USA Inc. | Nevada |

| | | |
|---|---|---|
| 23. | BRON Ventures 1, LLC | Delaware |
| 24. | BRON Studios USA Developments Inc. | Nevada |
| 25. | Bakhorma, LLC | Washington |
| 26. | Drunk Parents, LLC | New York |
| 27. | Fables Holdings USA, LLC | Delaware |
| 28. | Fables Productions USA Inc | Delaware |
| 29. | Gossamer Holdings USA, LLC | Delaware |
| 30. | Gossamer Productions USA Inc. | Delaware |
| 31. | Harry Haft Productions, Inc. | New York |
| 32. | Heavyweight Holdings, LLC (previously Harry Haft Films, LLC) | Delaware |
| 33. | I Am Pink Productions, LLC | Delaware |
| 34. | Lucite Desk, LLC | Delaware |
| 35. | National Anthem Holdings, LLC (f. k. a. BCDC Holdings, LLC) | Delaware |
| 36. | National Anthem ProdCo Inc. | New Mexico |
| 37. | Oakland Pictures Holdings, LLC | Delaware |
| 38. | Pathway Productions, LLC | Delaware |
| 39. | Robin Hood Digital PC USA Inc. | Delaware |
| 40. | Robin Hood Digital USA, LLC | Delaware |
| 41. | Solitary Holdings USA, LLC | Delaware |
| 42. | Surrounded Holdings USA LLC | Delaware |
| 43. | Welcome to Me, LLC | California |

## Schedule "B"

SISP Attached.

## SALES AND INVESTMENT SOLICITATION PROCESS
## BRON GROUP OF COMPANIES

### INTRODUCTION

1. On July 19, 2023, BRON Media Holdings USA Inc., BRON Media Corp., BRON Media Holdings Intl. Corp. and their direct and indirect subsidiaries identified on Schedule "A" hereto (collectively, the "**Petitioners**" and, together with the Non-Petitioner Entities, "**BRON**") obtained an Initial Order (the "**Initial Order**") under the *Companies' Creditors Arrangement Act,* R.S.C. 1985, c. C-36, as amended (the "**CCAA**") from the Supreme Court of British Columbia (the "**CCAA Court**"). The Petitioners' proceedings under the CCAA are referred to herein as the "**CCAA Proceedings**".

2. Pursuant to the Initial Order, Grant Thornton Limited was appointed as monitor (in such capacity, the "**Monitor**") of the Petitioners in the CCAA Proceedings.

3. Pursuant to proceedings (the "**Chapter 15 Proceedings**", and together with the CCAA Proceedings, the "**Insolvency Proceedings**") commenced in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division (the "**US Bankruptcy Court**", and together with the CCAA Court, the "**Insolvency Courts**") under Chapter 15, Title 11, of the United States Code (the "**US Bankruptcy Code**"), the Petitioners obtained, among other things, recognition of the CCAA Proceedings.

4. Creative Wealth Media Lending LP 2016 (the "**Lender**") has agreed to provide certain interim financing to the Petitioners during the Insolvency Proceedings pursuant to, and in accordance with, a DIP Loan Agreement dated July 18, 2023 between the Lender and the Petitioners and approved by the CCAA Court (the "**DIP Loan**").

5. Pursuant to the Order of the CCAA Court dated July 27, 2023 (the "**SISP Order**"), the CCAA Court approved the sale and investment solicitation process set out herein (the "**SISP**"). Capitalized terms used herein are as defined in the SISP Order unless defined otherwise herein.

### SISP OVERVIEW

6. The purpose of the SISP is to solicit interest in one or more or any combination of (1) a restructuring, recapitalization or other form of reorganization of the business and affairs of one or more of the Petitioners as a going concern, or (2) a sale of all, substantially all or one or more components of BRON's assets (the "**Property**") and / or business operations of BRON (the "**Business**") as a going concern or otherwise.

7. The SISP describes the manner in which individuals, corporations, limited and unlimited liability companies, general and limited partnerships, associations, trusts, unincorporated organizations, joint ventures, governmental organizations or other entities (each, a "**Person**") may gain access to or continue to have access to due diligence materials concerning the Petitioners, the Property and the Business, how bids involving the Petitioners, the Property or the Business will be submitted to and dealt with by the

Petitioners and Monitor and how Court approval will be obtained in respect of any Transaction (as defined below).

8. As described below, the various deadlines herein may be extended by the Monitor and the Petitioners, with the consent of the Lender in its sole discretion. The Monitor will consider extending the various deadlines herein in the event that the Monitor determines that such an extension will generally benefit the Petitioners' creditors and other stakeholders.

**"AS IS, WHERE IS" BASIS**

9. Any transaction involving the Petitioners, the Property or the Business (in each case, a "**Transaction**") will be on an "as is, where is" basis and without surviving representations, warranties, covenants or indemnities of any kind, nature, or description by the Monitor, the Petitioners, BRON or any of their respective agents, estates, advisors, professionals or otherwise, except to the extent expressly set forth in the relevant Final Agreement (as defined herein).

**SISP TIMELINE**

The SISP shall commence on July 28, 2023. The table below sets out subsequent key deadlines in the SISP that interested parties should note:

| Milestone | Date |
|---|---|
| Distribution of a notice regarding the SISP | By no later than 5:00 p.m. (Pacific Daylight Time) on August 1, 2023 |
| Distribution of the Teaser Letter and Confidentiality Agreement (each as defined below) | By no later than 5:00 p.m. (Pacific Daylight Time) on August 1, 2023 |
| Preparation of Confidential Information Memorandum and Virtual Data Room to be accessed by Potential Bidders (as defined below) | By no later than 5:00 p.m. (Pacific Daylight Time) on August 7, 2023 |
| LOI Submission Deadline | By no later than 5:00 p.m. (Pacific Daylight Time) on August 28, 2023 |
| Final Bid Submission Deadline | By no later than 5:00 p.m. (Pacific Daylight Time) on September 8, 2023 |
| Approval Order (as defined below) | As soon as practical after selection of Winning Bid(s) |

| | |
|---|---|
| | and the execution of the Final Agreement (both as defined below) |
| Closing Date(s) | As soon as practical after receipt of Approval Order |

## THE SISP PROCESS

### A. Initial Solicitation of Interest

10. The Monitor, and the Petitioners (with the consent of the Monitor and on such terms as the Monitor deems advisable), may contact any Person to solicit expressions of interest in a Transaction either before or after the granting of the SISP Order.

11. As soon as reasonably practicable after the granting of the SISP Order and in any event by no later than 5:00 p.m. (Pacific Daylight Time) on August 1, 2023, the Monitor will arrange to have a notice regarding the SISP, in a form satisfactory to and previously approved by the Petitioners, the Monitor and the Lender, to be published in the next available issue of the Globe and Mail (National Edition) or such other national daily or industry publications acceptable to the Petitioners, the Lender and the Monitor.

12. As soon as reasonably practicable after the granting of the SISP Order and in any event by no later than 5:00 p.m. (Pacific Daylight Time) on July 31, 2023, in consultation with the Petitioners and the Lender, the Monitor will prepare a list of potential bidders (the "**Known Potential Bidders**") who may have interest in a Transaction. Such list will include both strategic and financial parties who may be interested in acquiring an interest in the Petitioners and/or their assets pursuant to an asset purchase transaction (an "**Asset Bid**"), a restructuring of the debt, share or capital structure of the Petitioners (a "**Restructuring Bid**") or some combination of an Asset Bid and a Restructuring Bid (such combination bid, a "**Hybrid Bid**"). Concurrently, the Monitor, in consultation with the Lender, will prepare an initial offering summary (the "**Teaser Letter**") notifying the Known Potential Bidders of the SISP and inviting the Known Potential Bidders to express interest in making an Asset Bid, Restructuring Bid or Hybrid Bid (each, a "**SISP Bid**").

13. By no later than 5:00 p.m. (Pacific Daylight Time) on August 1, 2023, the Monitor shall distribute to the Known Potential Bidders and any other interested Persons the Teaser Letter, as well as a draft form of confidentiality agreement (the "**Confidentiality Agreement**") that shall inure to the benefit of the Person or Persons who make the Winning Bid pursuant to the SISP. Copies of the Teaser Letter and Confidentiality Agreement shall be provided to any appropriate Persons who become known to the Monitor, or Petitioners after the initial distribution of such documents.

14. Any Person (a) who executes a Confidentiality Agreement in form and substance satisfactory to the Petitioners and the Monitor, and (b) whom the Monitor is satisfied has

the financial capabilities and technical expertise to make a viable SISP Bid, shall be deemed to be a potential bidder (each, a "**Potential Bidder**").

## B. Due Diligence

15. The Monitor will prepare a confidential information memorandum ("**CIM**") by no later than 5:00 p.m. (Pacific Daylight Time) on August 7, 2023, describing the opportunity to make a SISP Bid and shall deliver the CIM to each Potential Bidder as soon as practicable after such Person is deemed to be a Potential Bidder in accordance with the SISP.

16. The Monitor shall provide each Potential Bidder with information, including access to an electronic data room established by the Monitor by no later than 5:00 p.m. (Pacific Daylight Time) on August 7, 2023 (the "**Data Room**"), that the Monitor determines to be necessary for the Potential Bidder to evaluate a transaction involving a SISP Bid.

## C. LOI Process

17. Any Potential Bidder who wishes to submit a SISP Bid must deliver a written, non-binding letter of intent (each, a "**LOI**") to the Monitor at the address specified in and in accordance with Schedule "B" hereto so as to be received by the Monitor no later than 5:00 p.m. (Pacific Daylight Time) on August 28, 2023, or such other date or time as the Monitor and the Petitioners may determine with the approval of the Lender (the "**LOI Deadline**"). The Monitor shall forthwith provide copies of any LOIs received to the Petitioners and the Lender.

18. Following the LOI Deadline, all LOIs shall be reviewed by the Petitioners, in consultation with the Monitor and the Lender.

19. An LOI shall be a qualified LOI (each, a "**Qualified LOI**") provided that it contains:

    (a) a specific indication of the anticipated sources of capital for such Potential Bidder and preliminary evidence of the availability of such capital, or such other form of financial disclosure and credit support or enhancement that will allow the Monitor and its legal advisors, to make, in their reasonable business or professional judgment, a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate a SISP Bid;

    (b) a letter setting forth the identity of the Potential Bidder, the contact information for such Potential Bidder and full disclosure of the direct and indirect owners of the Potential Bidder and their principals;

    (c) an indication of whether the Potential Bidder wishes to tender (i) an Asset Bid; (ii) a Restructuring Bid; or (iii) a Hybrid Bid;

    (d) in the case of an Asset Bid, it identifies:



71250778.3

(i) the purchase price range (including liabilities to be assumed by the Potential Bidder);

(ii) whether the Asset Bid is *en bloc,* the Property included, any of the Property expected to be excluded, and/or any additional assets desired to be included in the transaction;

(iii) the structure and financing of the transaction (including, but not limited to, the sources of financing for the purchase price, preliminary evidence of the availability of such financing and the steps necessary and associated timing to obtain the financing and consummate the proposed transaction and any related contingencies, as applicable);

(iv) the proposed treatment of employees of the Petitioners;

(v) the proposed treatment of any leases and other material contracts;

(vi) any anticipated corporate, shareholder, internal or regulatory approvals required to close the transaction and the anticipated time frame and any anticipated impediments for obtaining such approvals;

(vii) any additional due diligence required or desired to be conducted by the Potential Bidder, if any;

(viii) any conditions to closing that the Potential Bidder may wish to impose; and

(ix) any other terms or conditions of the Asset Bid which the Potential Bidder believes are material to the transaction;

(e) in the case of a Restructuring Bid, it identifies:

(i) the aggregate amount of the equity and debt investment, including liabilities to be assumed by the Potential Bidder (including the sources of such capital, preliminary evidence of the availability of such capital and the steps necessary and associated timing to obtain the capital and consummate the proposed transaction and any related contingencies, as applicable) to be made in the Petitioners;

(ii) the underlying assumptions regarding the *proforma* capital structure (including, the anticipated debt levels, debt service fees, interest and amortization);

(iii) the consideration to be allocated to the stakeholders including claims of any secured or unsecured creditors of the Petitioners and the proposed treatment of employees;

(iv) the structure and financing of the transaction including all requisite financial assurance;

(v) any anticipated corporate, shareholder, internal or regulatory approvals required to close the transaction, the anticipated time frame and any anticipated impediments for obtaining such approvals;

(vi) any additional due diligence required or desired to be conducted by the Potential Bidder, if any;

(vii) any conditions to closing that the Potential Bidder may wish to impose; and

(viii) any other terms or conditions of the Restructuring Bid which the Potential Bidder believes are material to the transaction;

(f) in the case of a Hybrid Bid, all of the information contained in subparagraphs (a) through (e) above, as applicable; and

(g) such other information as may be requested by the Monitor.

20. Any Potential Bidder who submits a Qualified LOI on or before the LOI Deadline shall be designated a **"Qualified Bidder"**.

21. The Monitor may, in consultation with the Petitioners and the Lender, waive strict compliance with one or more of the requirements specified above and deem any LOI to be a Qualified LOI, notwithstanding any noncompliance with the terms and conditions of the SISP. The Monitor shall advise each Potential Bidder designated a Qualified Bidder that it has submitted a Qualified LOI as soon as practical after the LOI Deadline.

22. In the event that no Person submits an LOI, or that no LOI qualifies as or is deemed to qualify as a Qualified LOI, or that no LOI is deemed commercially reasonable to the Petitioners, and the Monitor, the Petitioners may, with the prior written consent of the Monitor and the Lender, terminate the SISP. If no Qualified LOIs are received by the LOI Deadline, the Petitioners may, in consultation with the Monitor and the Lender, consider other forms of bids for the Property and the Business. At any time during the SISP, the Petitioners, may, with the prior written consent of the Monitor and the Lender, determine that any bid is a Winning Bid and seek Approval Orders in respect of such Winning Bid(s) from the Insolvency Courts.

**D. Final Bid Process**

23. The Monitor may invite Qualified Bidders to conduct additional due diligence or otherwise make available to Qualified Bidders additional information not posted in the Data Room, and arrange for inspections and site visits at the Petitioners' premises, as determined by the Monitor. The Data Room will include, among other things, a form of purchase agreement for use by Qualified Bidders.

24. Any Qualified Bidder may submit an Asset Bid, a Restructuring Bid or a Hybrid Bid (each, a "**Final Bid**") to the Monitor at the address specified in Schedule "B" hereto on or before 5:00 p.m. (Pacific Daylight Time) on September 8, 2023, or such later time and date that the Petitioners may determine, with the prior written consent of the Monitor and the Lender (the "**Final Bid Deadline**"). The Monitor shall forthwith provide copies of any Final Bids received to the Petitioners and the Lender.

25. Final Bids shall be reviewed by the Monitor, the Petitioners and the Lender.

26. A Final Bid submitted as an Asset Bid shall be a "**Qualified Asset Bid**" in the event that:

(a) it includes a letter stating that the Asset Bid is irrevocable until the earlier of (i) the approval by the Insolvency Courts, and (ii) forty-five (45) days following the Final Bid Deadline; provided, however, that if such Asset Bid is selected as the Winning Bid or the Backup Bid (as defined below), it shall remain irrevocable until the closing of the Winning Bid or the Backup Bid, as the case may be;

(b) it includes a duly authorized and executed purchase and sale agreement specifying all consideration payable, together with all exhibits and schedules thereto, and such ancillary agreements as may be required by the Qualified Bidder with all exhibits and schedules thereto;

(c) it does not include any request or entitlement to any break fee, expense reimbursement or similar type of payment;

(d) it includes written evidence of a firm, irrevocable commitment for all required funding and/or financing from a creditworthy bank or financial institution to consummate the proposed transaction, or other evidence satisfactory to the Monitor to allow the Monitor to make a reasonable determination as to the Qualified Bidders (and its direct and indirect owners and their principals) financial and other capabilities to consummate the transaction contemplated by the Asset Bid;

(e) it is not conditional on (i) the outcome of unperformed due diligence by the Qualified Bidder and/or (ii) obtaining any financing capital and includes an acknowledgment and representation that the bidder has had an opportunity to conduct any and all required due diligence prior to making its Asset Bid;

(f) it is not conditional upon any governmental or regulatory approval;

(g) it fully discloses the identity of each Person that is bidding or otherwise that will be sponsoring or participating in the Asset Bid, including the identification of the bidder's direct and indirect owners and their principals, and the complete terms of any such participation;

(h) it is accompanied by a refundable cash deposit (the "**Deposit**") in the form of a wire transfer (to a trust account specified by the Monitor), in an amount equal to

ten percent (10%) of the consideration to be paid in respect of the Asset Bid, to be held and dealt with in accordance with the SISP;

(i) it contains an allocation of the consideration payable;

(j) it includes a closing date of no later than October 6, 2023, subject to the Approval Order having been obtained, and the ability of the closing date to be extended pursuant to a Closing Extension (as defined below);

(k) it contains other information requested by the Petitioners, the Monitor or the Lender; and

(l) it is received by no later than the Final Bid Deadline.

27. A Final Bid submitted as a Restructuring Bid shall be a "**Qualified Restructuring Bid**" in the event that:

(a) it includes definitive documentation, duly authorized and executed by the Qualified Bidder, setting out the terms and conditions of the proposed transaction, including the aggregate amount of the proposed equity and debt investment, assumption of debt if any, and details regarding the proposed equity and debt structure of the Petitioners following completion of the proposed transaction;

(b) it includes a letter stating that the Restructuring Bid is irrevocable until the earlier of (i) the approval by the Insolvency Courts, and (ii) forty five (45) days following the Final Bid Deadline; provided, however, that if such Restructuring Bid is selected as the Winning Bid or the Backup Bid, it shall remain irrevocable until the closing of the Winning Bid or the Backup Bid, as the case may be;

(c) it does not include any request or entitlement to any break fee, expense reimbursement or similar type of payment;

(d) it includes written evidence of a firm, irrevocable commitment for all required funding and/or financing from a creditworthy bank or financial institution to consummate the proposed transaction, or other evidence satisfactory to the Monitor to allow the Monitor to make a reasonable determination as to the Qualified Bidder's (and its direct and indirect owners and their principals) financial and other capabilities to consummate the transaction contemplated by the Restructuring Bid;

(e) it is not conditional on (i) the outcome of unperformed due diligence by the Qualified Bidder and/or (ii) obtaining any financing capital and includes an acknowledgment and representation that the bidder has had an opportunity to conduct any and all required due diligence prior to making its Restructuring Bid;

(f) it is not conditional upon any governmental or regulatory approval;

(g) it fully discloses the identity of each Person that is bidding or otherwise that will be sponsoring or participating in the Restructuring Bid, including the identification of the Qualified Bidder's direct and indirect owners and their principals, and the complete terms of any such participation;

(h) it is accompanied by a refundable Deposit in the form of a wire transfer (payable to a trust account specified by the Monitor) in an amount equal to ten percent (10%) of the consideration to be paid pursuant to the Restructuring Bid, to be held and dealt with in accordance with the SISP;

(i) it contains an allocation of the consideration payable;

(j) it includes a closing date of no later than October 6, 2023, subject to the Approval Order having been obtained and the ability of the closing date to be extended pursuant to a Closing Extension;

(k) it contains other information requested by the Petitioners, the Monitor or the Lender; and

(l) it is received by no later than the Final Bid Deadline.

28. A Hybrid Bid submitted by the Final Bid Deadline will be considered a "**Qualified Hybrid Bid**" if it is in substantial compliance with conditions enumerated in paragraphs 26 and 27 of the SISP, as determined by the Monitor.

29. All Qualified Asset Bids, Qualified Restructuring Bids and Qualified Hybrid Bids shall constitute "**Qualified Final Bids**"; provided, however, that, unless otherwise consented to by the Lender, no Qualified Asset Bids, Qualified Restructuring Bids and Qualified Hybrid Bids shall constitute Qualified Final Bids if they do not provide for the indefeasible payment in full of all amounts owing to the Lender under the DIP Loan. The Monitor may, in consultation with the Petitioners and the Lender, waive strict compliance with one or more of the requirements specified in paragraphs 26 and 27 of the SISP and deem any Final Bid(s) to be a Qualified Final Bid notwithstanding any non-compliance with the terms and conditions of the SISP.

## E. Selection of Winning Bid

30. The Monitor, in consultation with the Petitioners and the Lender, shall review all Qualified Final Bids and select (i) one or more highest, best or otherwise most favourable bids (each, a "**Winning Bid**"), and (ii) the next highest, best or otherwise most favourable Qualified Bid (each, a "**Backup Bid**"). Subject to the prior written consent of the Monitor and the Lender, the Petitioners may enter into a definitive agreement or agreements (each a "**Final Agreement**") with the Person or Persons who submitted the Winning Bid(s) on or before 5:00 p.m. (Pacific Daylight Time) on Friday, September 15, 2023, or such later time and date that the Monitor may determine, in consultation with the Lender (the "**Final Agreement Deadline**").

31. Any Qualified Bidder that makes a Winning Bid shall be a "**Successful Bidder**" and any Qualified Bidder that makes a Backup Bid shall be a "**Backup Bidder**". The Monitor will notify each Successful Bidder and Backup Bidder as soon as reasonably practical of the Final Agreement and the Backup Bid shall remain open until the consummation of the transaction contemplated by the Winning Bid (and, for greater certainty, the Monitor shall be entitled to continue to hold the Deposit in respect of the Backup Bid until such time as the transaction contemplated by the Winning Bid is consummated).

32. In the event that (a) no Qualified Bidder submits or is deemed to have submitted a Qualified Final Bid, (b) the Petitioners, with the prior written consent of the Monitor and the Lender, determine that none of the Qualified Final Bids should be accepted, or (c) that a Final Agreement has not been entered into before the Final Agreement Deadline, the SISP shall terminate.

33. The highest Qualified Final Bid may not necessarily be accepted by the Petitioners. The Petitioners, with the prior written consent of the Monitor and the Lender, reserve the right not to accept any Qualified Final Bid or to otherwise terminate the SISP. The Petitioners, with the prior written consent of the Monitor and the Lender, further reserve the right to deal with one or more Qualified Bidders to the exclusion of other Persons, to accept a Qualified Final Bid or Qualified Final Bids for some or all of the Property, the Petitioners or the Business, to accept multiple Qualified Final Bids and enter into multiple Final Agreements.

## F. Credit Bidding

34. The Lender, any of the Lender's affiliates, or other secured creditors of a Petitioner (each, a "**Secured Party**") shall be entitled to submit an offer in the form of a Final Bid pursuant to which the consideration offered includes an exchange for, and in full and final satisfaction of, all or a portion of such secured creditor's secured claim against one or more of the Petitioners (a "**Credit Bid**"), provided that (i) the secured claim portion of such Credit Bid cannot exceed the aggregate value of the Secured Party's secured claim; and (ii) such Credit Bid must include at least sufficient cash consideration to satisfy any priority payment required to be paid that ranks ahead of such Secured Party's secured claim or otherwise assume or satisfy such obligations. For greater certainty, a Secured Party that wishes to make a Credit Bid shall also be required to submit an LOI in accordance with the terms and deadlines set out herein.

35. A Secured Party may only make a Credit Bid in relation to the Property subject to such Secured Party's security (in each case, the "**Encumbered Assets**"). To the extent that a Secured Party wishes to submit a Final Bid for Property that does not form part of the Encumbered Assets (the "**Unencumbered Assets**"), such Secured Party shall specify a cash purchase price allocated to the Unencumbered Assets while making a Credit Bid for the Encumbered Assets that are included in such Final Bid.

36. Notwithstanding any other provision of the SISP, the Lender shall not be entitled to: (i) receive copies of any LOIs received by the LOI Deadline in the event that the Lender elects to submit an LOI; and (ii) receive copies of any Final Bids received by the Final

Bid Deadline nor consultation with respect to the selection of the Winning Bid or the Backup Bid in the event that the Lender elects to submit a Final Bid.

37. Notwithstanding any other provision of the SISP, the Monitor may take protective or other measures to limit access to LOIs, Final Bids or the identity of Qualified Bidders to any Secured Party to protect the integrity of the SISP in the event any such Secured Party makes or expresses an intention to submit an LOI or Final Bid, as applicable.

## APPROVAL ORDERS

38. In the event that the Petitioners enter into a Final Agreement, as soon as reasonably practicable, the Petitioners shall apply for orders (the "**Approval Orders**") from the Insolvency Courts, in form and substance, satisfactory to the Monitor and the Petitioners, approving the transaction contemplated by the Winning Bid and any necessary related relief required to consummate the transaction contemplated by the Winning Bid, subject to the terms of the Final Agreement.

39. The Petitioners may also concurrently obtain relief approving the transaction contemplated by the Backup Bid and any necessary related relief required to consummate the transaction contemplated by the Backup Bid.

## CLOSING

40. Closing of the transactions contemplated in any Final Agreement shall occur as soon as reasonably practical after the granting of the Approval Order(s), but in any event, no later than October 6, 2023 or as may be extended with the approval of the Monitor and the Lender (which extension shall be referred to as a "**Closing Extension**").

## DEPOSITS

41. All Deposits paid pursuant to the SISP shall be held in trust by the Monitor. The Monitor shall hold Deposits paid by each of the Winning Bidder and the Backup Bidder in accordance with the terms outlined in the SISP. In the event that a Deposit is paid pursuant to the SISP and the Petitioners elect not to proceed to negotiate and settle the terms and conditions of a definitive agreement with the Person that paid such Deposit, the Monitor shall return the Deposit and any interest accrued thereon to that Person.

42. In the event that either of the Successful Bidder or the Backup Bidder default in the payment or performance of any obligations owed to the Petitioners or the Monitor pursuant to any Final Agreement the Deposit paid by the Winning Bidder or the Backup Bidder, as applicable, shall be forfeited to such party as liquidated damages and not as a penalty.

## GENERAL

43. Subject to approval of the Monitor and the Lender, the Petitioners may at any time prior to the Final Bid Deadline apply to the Insolvency Courts for approval to accept a "stalking horse" bid in the SISP.

## SCHEDULE "A"

| BRON GROUP OF COMPANIES | |
|---|---|
| Canadian Debtors | BRON Animation Inc. (British Columbia)<br>BRON Creative Corp. (Ontario)<br>BRON Developments Inc. (British Columbia)<br>BRON Media Corp. (British Columbia)<br>BRON Media Holdings Intl. Corp. (British Columbia)<br>BRON Media Holdings USA Inc. (British Columbia)<br>BRON Releasing Inc. (British Columbia)<br>BRON Studios Inc. (British Columbia)<br>BRON Ventures 1 (Canada) Corp (British Columbia)<br>Canadian Production HoldCos & ProdCos[1] |
| U.S. Debtors | BRON Creative USA Corp. (Nevada)<br>BRON Digital USA, LLC (Delaware)<br>BRON Life USA Inc. (Delaware)<br>BRON Media Holdings USA Corp. (Delaware)<br>BRON Releasing USA Inc. (Delaware)<br>BRON Studios USA Inc. (Nevada)<br>BRON Ventures 1 LLC (Delaware)<br>BRON Studios USA Developments Inc. (Nevada)<br>US Production HoldCos & ProdCos[2]<br>Welcome to Me, LLC (California) |
| UK Debtors | BRON Studios UK Ltd. (England and Wales)<br>BRON Releasing UK Ltd. (England and Wales)<br>CMA Productions UK Ltd. (England and Wales)<br>In Good Company Holdings Ltd. (England and Wales)<br>Kid Unknown Holdings Ltd (fka Hunaman Holdings Ltd.) (England and Wales)<br>Neon Club Productions, Ltd. (England and Wales)<br>Shadowplay Series Holdings UK Limited (England and Wales)<br>TDBB Holdings UK Ltd. (England and Wales)<br>Townsend Series Holdings UK Ltd. (England and Wales) |

1 BRON Everest Productions Inc., Fables Productions BC Inc., Gossamer Productions BC Inc., Hench 2 BC Productions Inc., Henchmen Productions Inc., Robin Hood Digital PC BC Inc., and Windor Productions BC Inc.

2 Bakhorma, LLC (Washington), Drunk Parents, LLC (New York), Fables Holdings USA, LLC (Delaware), Fables Productions USA Inc. (Delaware), Gossamer Holdings USA, LLC (Delaware), Gossamer Productions USA Inc. (Delaware), Harry Haft Productions, Inc. (New York), Heavyweight Holdings, LLC, previously Harry Haft Films, LLC (Delaware), I Am Pink Productions, LLC (Delaware), Lucite Desk, LLC (Delaware), National Anthem Holdings, LLC (f. k. a. BCDC Holdings, LLC) (Delaware), National Anthem ProdCo Inc. (New Mexico), Oakland Pictures Holdings, LLC (Delaware), Pathway Productions, LLC (Delaware), Robin Hood Digital PC USA Inc. (Delaware), Robin Hood Digital USA, LLC (Delaware), Solitary Holdings USA, LLC (Delaware), and Surrounded Holdings USA LLC (Delaware).

| BRON GROUP OF COMPANIES | |
|---|---|
| | Townsend Series Holdings UK Ltd. (England and Wales)<br>Townsend Series Productions UK Ltd. (Grey Door Film Productions Ltd) (England and Wales) |
| **Other Non Petitioner Entities** | Front Runner Productions, Inc.<br>BRON Creative MG1, LLC<br>BRON Creative WB 1, LLC<br>BRON Labs LLC<br>A Single Shot Movie, LLLP<br>Blackhand Developments Inc.<br>Blackhand Pictures, LLC<br>BRON Next Film Production, LLC (BRON Life, LLC)<br>BRON Pictures Holdings, LLC<br>BRON Subnation Slate 1, LLC<br>Rideg Film Holdings, LLC<br>Brown Amy, LLC<br>Driftless Area, LLC<br>Drunk Parents Production Services Inc.<br>Erostratus LA, LLC<br>Erostratus, LLC<br>Fonzo Production Services Inc.<br>Fonzo, LLC<br>Front Runner, LLC<br>Green Moon Inc.<br>Harmon Films, LLC<br>Harmon Monster Films, Inc.<br>I Saw The Light Movie, LLC<br>I Saw The Light, LLC<br>Layover LLC<br>Mad Solar Productions, LLC<br>Master Cleanse, LLC<br>Meadowland Movie, LLC<br>Meadowland Production Services Inc.<br>My Abandonment LLC<br>My Abandonment Production Services Inc.<br>Needle In A Timestack, LLC<br>October Series Holdings, LLC<br>Pangea Cup Holdings, LLC<br>Pangea Cup Productions Inc.<br>Para Productions, LLC<br>Phil Productions, LLC<br>Red Sea LLC<br>Red Sea Productions Inc.<br>Savant Developments Inc. |

| BRON GROUP OF COMPANIES | |
|---|---|
| | Summerland Holdings, LLC<br>The Good Nurse Films, LLC<br>The Realm Productions USA LLC<br>TMF Productions, LLC<br>Tully Productions, LLC<br>Tumbledown, LLC<br>TWWMD Holdings, LLC<br>TWWMD Productions, Inc.<br>Villains Pictures, LLC<br>Villains Production Services, Inc.<br>Wonder Book Holdings USA, LLC<br>BRON Charitable Foundation, Inc.<br>Hercules BRON Creative Partnership |

# SCHEDULE "B"

## Addresses for Deliveries

Any notice or other delivery made to the Monitor pursuant to the SISP shall be made to:

**GRANT THORNTON LIMITED**
Suite 1600 - 333 Seymour Street
Vancouver BC V6B 0A4
**Attention: Mark Wentzell/James Saxton/Eric Jamieson**
Email: Mark.Wentzell@ca.gt.com / james.saxton@ca.gt.com /
Eric.Jamieson@ca.gt.com

with a copy to:

**CASSELS BROCK & BLACKWELL LLP**
Suite 2200, HSBC Building
885 West Georgia Street
Vancouver, BC V6C 3E8

**Attention: John Birch/Forrest Finn**
Email: jbirch@cassels.com / ffinn@cassels.com

Deliveries pursuant to the SISP by email or by facsimile shall be deemed to be received when sent. In all other instances, deliveries made pursuant to the SISP shall be deemed to be received when delivered to the relevant address, as identified above.

**Schedule "C"**

List of Counsel.

List of Counsel

| Name | Party |
| --- | --- |
| Jordan Schultz | Comerica |
| John Salmas (Remote) | Comerica |
| Peter Bychawski | Access Road Capital, LLC |
| Andrew Froh | CWM |
| Mike Shakra | CWM |
| John Birch | Court-appointed Monitor |
| Forrest Finn | Court-appointed Monitor |
| Wojtek Jaskiewicz | Premium Properties Ltd. |
| David Stabber | Comerica |
| Mark van Zandvoort | Hudson Private Corp. |
| Kathryn Esaw | Screen Actors Guild, Guilds |
| Hilary Bock | Bayshore |
| Asim IQBAL | Petitioners |
| BRYAN HICKS | Petitioners |
| MONICA FAHEIM | Petitioners. |
| Dawid Cieloszczyk | Union of BC Performers |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |