**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| In re: | Chapter 15 |
| BRON Media Holdings USA Corp., *et al.*, | Case No. 23-56798-pmb |
| Debtors in a Foreign Proceeding. | Jointly Administered |

### NOTICE OF FILING OF (I) NOTICE OF APPLICATION AND (II) NINTH AFFIDAVIT OF AARON GILBERT

BRON Media Corp., in its capacity as the Canadian Court-appointed and authorized foreign representative (the "<u>Foreign Representative</u>") for the above-captioned debtors (collectively, the "<u>Debtors</u>") which are the subjects of a reorganization proceeding (the "<u>CCAA Proceeding</u>") commenced before the Supreme Court of British Columbia (the "<u>Canadian Court</u>") under Canada's *Companies' Creditors Arrangement Act*, hereby files the following:

(i)     *Notice of Application* attached hereto as **Exhibit A**; and

(ii)     *Ninth Affidavit of Aaron Gilbert* attached hereto as **Exhibit B**; and

submitted for filing with the Canadian Court on March 12, 2024 in the case styled *In the Matter of the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, As Amended and In the Matter of the Business Corporations Act, S.B.C. 2002, c. 57, As Amended and the Business Corporations Act, R.S.O. 1990, C. B. 16, As Amended and In the Matter of a Plan of Compromise or Arrangement of Bron Media Cop. And the Entities Listed on Schedule "A".*

Dated: March 14, 2024.

**JONES & WALDEN LLC**

*/s/ Cameron M. McCord*
Cameron McCord
Georgia Bar No. 143065
Mark Gensburg
Georgia Bar No. 213119
Attorneys for Debtors
699 Piedmont Ave NE
Atlanta, Georgia 30308
(678) 701-9235
cmccord@joneswalden.com
mgensburg@joneswalden.com
*Counsel for Debtors and Foreign Representatives*

# **EXHIBIT A**

***Notice of Application***

No. S-235084
Vancouver Registry

## IN THE SUPREME COURT OF BRITISH COLUMBIA

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, c. C-36, AS AMENDED

AND

IN THE MATTER OF THE *BUSINESS CORPORATIONS ACT*,
S.B.C. 2002, c. 57, AS AMENDED AND THE *BUSINESS CORPORATIONS ACT*, R.S.O.
1990, c. B.16, AS AMENDED

AND

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
BRON MEDIA CORP. AND THE ENTITIES LISTED AT **SCHEDULE "A"**

PETITIONERS

## NOTICE OF APPLICATION

**TO: THE SERVICE LIST**

**TAKE NOTICE** that an application will be made by the Petitioners to the Honourable Justice
Gomery at the courthouse at 800 Smithe Street, Vancouver, British Columbia on March 22, 2024
at 9:00 a.m. in person and by MS Teams, for the orders set out in Part 1 below.

**PART 1: ORDERS SOUGHT**

1.      An order (the "**Termination Order**"), among other things:

    (a)      terminating these CCAA proceedings when (the "**CCAA Termination Time**")
             Grant Thornton Limited ("**GTL**") in its capacity as the Court-appointed Monitor of
             the Petitioners (in such capacity, the "**Monitor**") files with this court a termination
             certificate (the "**Termination Certificate**");

(b)     approving the conduct and activities of the Monitor as described in the Monitor's Sixth Report to be filed (the "**Sixth Report**");

(c)     approving the fees and disbursements of the Monitor (including estimated fees until the completion of these proceedings) as summarized in the Sixth Report and as set out in Affidavit #3 of Mark Wentzell, to be affirmed (the "**Third Wentzell Affidavit**");

(d)     approving the fees and disbursements of Cassels Brock & Blackwell LLP ("**Cassels**") (including estimated fees until the completion of these proceedings) in its capacity as counsel to the Monitor, as summarized in the Sixth Report and set out in Affidavit #2 of Forrest Finn, to be affirmed (the "**Second Finn Affidavit**");

(e)     discharging the Monitor as at the CCAA Termination Time;

(f)     terminating the court-ordered charges made in these CCAA proceedings at the CCAA Termination Time; and

(g)     extending the stay of proceedings until the earlier of

1.   the date that Monitor files the Termination Certificate, and

2.   April 30, 2024; and

2.     Such other relief as this Court may deem just.

## PART 2: FACTUAL BASIS

### A.     Overview and Background

3.     The full facts in support of this application to the Court are set out in the ninth Affidavit of Aaron Gilbert, affirmed March 12, 2024 (the "**Ninth Gilbert Affidavit**"). All capitalized terms not otherwise defined herein shall have the same meanings prescribed to them in the Ninth Gilbert Affidavit.

4.      The Petitioners in this proceeding are listed within Schedule "A" to this application and are collectively referred to herein as the "**Petitioners**" or the "**Company**".

5.      The Company is a private, closely-held corporate group that develops, produces and sells motion pictures, series television, and digital media content. It has a complex corporate structure with over 100 entities. This is due to the nature of the Company's global production business, and because the Company manages and operates each film or television production it undertakes through special-purpose entities.

6.      Given its liquidity challenges and dire need for stability, the Company, in consultation with its advisors, determined that it was in the best interests of the Company and its stakeholders to initiate these proceedings and seek the Initial Order.

7.      The most recent set of orders granted in these proceedings (the "**January 17 Orders**") were the culmination of the court-approved and court-supervised sale and investment solicitation process. The January 17 Orders approved a number of transactions involving the Petitioners, among other things, as follows:

(a)      an order, among other things, approving a global settlement between Access Road Capital LLC ("**Access Road**") and Creative Wealth Media Lending LP 2016 ("**CW Lending**");

(b)      an order, among other things, approving a transaction between Access Road and certain of the Petitioners for certain of the Petitioners' assets;

(c)      an order approving a transaction between CW Lending, by its general partner Creative Wealth Media GenPar Ltd., as purchaser, and certain of the Petitioners for the vast majority of the Petitioners' assets (the "**CW Lending AVO**"); and

(d)      a Second Amended and Restated Initial Order.

8.      Following this Court's approval of the transactions on January 17, 2024, the Foreign Representative brought a motion in the U.S. Recognition Proceedings, seeking an order recognizing each of the January 17 Orders. The motion was granted and the January 17 Orders were recognized.

Click or tap here to enter text.

**Termination Order and Discharge of Monitor**

9.      The sale transactions this court approved on January 17, 2024 have closed. The Monitor filed its closing certificates for each transaction, as applicable.  These CCAA proceedings have successfully served their purpose.

10.     Subject to certain remaining activities to be completed by the Monitor, as will be detailed in the Monitor's forthcoming report to the Court, the Monitor has completed its duties. It is appropriate at this time to discharge GT in its capacity as the Monitor of the Petitioners at the CCAA Termination Time.

11.     The following court-ordered charges remain against title to the Petitioners' property (collectively the "**Charges**"), each as defined in the Initial Order:

(a)      the Administration Charge;

(b)      the KERP Charge;

(c)      the Interim Lender's Charge; and

(d)      the Directors' Charge.

12.     The Petitioners ask the court to terminate the Charges as of the CCAA Termination Time.

13.     Since cash was a purchased asset in the CW Lending sale transaction, amounts secured under the Administration Charge will have to be appropriately secured before the sale transactions close. In that regard, paragraph 6 of the CW Lending AVO authorizes the Petitioners to hold back from the cash to be transferred to CW Lending on closing the following sums:

(a)      the projected operating expenses of the Petitioners and the fees of the Monitor, its counsel and counsel for the Petitioners, all as set out in the cash flow of the Petitioners up to March 29, 2024 that was appended to the Monitor's Fifth Report (the "**Cash Reserve**"); and

(b)    a further $100,000 to cover fees and expenses of the Monitor, its counsel, and counsel for the Petitioners after March 29, 2024 to complete the proceedings and to have the Monitor discharged (the "**Case Termination Reserve**").

14.    The Petitioners propose to pay the Cash Reserve and the Case Termination Reserve to the Monitor to be held in trust and then disbursed for the purposes described above. Any remaining portion of the Cash Reserve and Case Termination Reserve that remains after Case Termination occurs will be remitted to CW Lending or the Permitted Assignee.

15.    Upon filing and service of the Termination Certificate, GTL will be discharged from its duties as Monitor, but will continue to have the benefit of any of the rights, approvals, releases, and protections in favour of the Monitor as set out in the Orders in the CCAA proceedings and the Termination Order.

16.    Notwithstanding its discharge as Monitor, GTL shall have the authority to carry out, complete or address any matters in its role as Monitor that are ancillary or incidental to the CCAA proceedings as may be required.

## PART 3: LEGAL BASIS

17.    The Petitioners rely on

(a)    the CCAA;

(b)    the *Supreme Court Civil Rules,* BC Reg. 241/2010;

(c)    the inherent and equitable jurisdiction of this Honourable Court; and

(d)    such further and other legal basis as counsel may advise and this Honourable Court may allow.

### *CCAA Termination Order is Appropriate*

18.    Section 11 of the CCAA provides this Court with broad discretion to make "any order that it considers appropriate in the circumstances." It must be exercised in furtherance of CCAA's remedial objectives. And courts consider whether:

      (a)      the order sought is appropriate in the circumstances;

      (b)      the debtor company is acting in good faith; and

      (c)      the debtor company is acting with due.[1]

19.    An order under section 11 of the CCAA will be appropriate where it "advances the policy objectives underlying the CCAA." These objectives include maximizing creditor recovery and providing a "timely, efficient and impartial resolution of a debtor's insolvency."[2]

20.    In furtherance of the remedial objectives of the CCAA, this Court has routinely granted orders akin to the proposed CCAA Termination Order—terminating a debtor company's proceedings under the CCAA and discharging the court-appointed monitor.[3] Prior CCAA Termination Orders have also provided for a variety of additional relief to assist in the interim and subsequent periods surrounding the termination of the CCAA proceedings.

21.    Having regard to the foregoing considerations, it is appropriate for this Court to terminate these CCAA proceedings in the manner contemplated by the Termination Order given that

      (a)      the Petitioners have no ongoing business operations as the contemplated transactions approved by the January 17 Orders have now closed;

      (b)      since the granting of the Initial Order, the Petitioners have acted, and continue to act, in good faith and with due diligence;

---

[1] *9354-9186 Quebec Inc v Callidus Capital Corp*, 2020 SCC 10 at para 49.

[2] *9354-9186 Quebec Inc v Callidus Capital Corp*, 2020 SCC 10 at paras 40 and 46.

[3] See, for example, *In the Matter of a Plan of Compromise or Arrangement of Harte Gold Corp.,* CCAA Distribution and Termination Order (February 15, 2022), Toronto, CV-21-00673304-00CL.

(c)      all matters requiring resolution within the ambit of the CCAA proceedings, including the Monitor's remaining activities, will have been completed by the CCAA Termination Time, and there are no outstanding amounts owing in relation to the Charges that have not been reserved for in the Case Termination Reserve; and

(d)      the Monitor supports the termination of the CCAA proceedings on the terms set out in the proposed Termination Order.

***Monitor's Report and Activities Approval***

22.      The Sixth Report outlines the specific activities taken by the Monitor from the time of Monitor's Fifth Report (the "**Fifth Report**") to the present, and the Monitor seeks approval for its conduct and activities as set out in the Sixth Report.

23.      A request to approve a monitor's report "is not unusual".[4] There are policy and practical reasons for the Court to approve the Monitor's activities and provide a level of protection for the Monitor during the CCAA proceedings. Specifically, Court approval

(a)      allows the Monitor to move forward with next steps in the CCAA proceedings;

(b)      brings the Monitor's activities before the Court;

(c)      allows an opportunity for the concerns of the stakeholders to be addressed, and any problems to be rectified;

(d)      enables the Court to satisfy itself that the Monitor's activities have been conducted in prudent and diligent manners;

(e)      provides protection for the Monitor not otherwise provided by the CCAA; and

(f)      protects the creditors from the delay and distribution that would be caused by

    1.      re-litigation of steps taken to date; and

---

[4] *Re Target Canada Co*, <u>2015 ONSC 7574</u> at para 2.

2.    potential indemnity claims by the Monitor.[5]

24.    In addition, the approval sought is not a general approval of the Monitor's activities to date but is the approval of the specific activities taken by the Monitor from the Fifth Report to date, all of which are detailed in the Sixth Report.

***Fees and disbursements of the Monitor and its counsel***

25.    The Amended and Restated Initial Order pronounced July 28, 2023 (the "**ARIO**") provides that the Monitor and its counsel shall be paid their reasonable fees and disbursements at their standard rates and charges.

26.    Paragraph 34 of the ARIO provides that the Monitor and its legal counsel shall pass their accounts from time to time:

> 34.    The Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the British Columbia Supreme Court who may determine the manner in which such accounts are to be passed, including by hearing the matter on a summary basis or referring the matter to a Registrar of this Court.

27.    The Monitor and its counsel have been paid their fees and disbursements at their standard rates and charges by the Petitioners from time to time, in accordance with the terms of the ARIO. The Monitor's invoices for the period from January 2, 2024 to March 13, 2024, including an estimate of fees and disbursements to completion are set out in the Third Wentzell Affidavit. Cassels's invoices for the period from January 1, 2024 to March 13, 2024, including an estimate of fees and disbursements to completion are set out in the Second Finn Affidavit.

28.    It is not necessary for the Court to go through the supporting documentation for the fees and disbursements line by line to determine what the appropriate fees and disbursements

---

[5] *Re Target Canada Co*, 2015 ONSC 7574 at paras 12, 22, 23.

are. Nor is the Court to second-guess the amount of time spent by a monitor unless it is clearly excessive or overreaching.[6]

29.    The Petitioners seek approval of the fees and disbursements incurred by the Monitor and its counsel, Cassels, for the following reasons:

(a)    **The fees are fair and reasonable**: In considering the "overriding principle of reasonableness" and the overall value contributed by the Monitor and its counsel, the fees and disbursements incurred, and the estimated fees and disbursements, are fair and reasonable in the circumstances.[7]

(b)    **Factors Support Reasonableness Assessmen**t: The Court has recognized certain non-exhaustive factors which apply in this case,[8] including: (i) the complexity of the issues and the competing interests of multiple stakeholders; and (ii) the material, positive impact of the Monitor and its counsel's efforts on advancing the CCAA proceedings.

(c)    **Time incurred**. The time spent, and the fees and disbursements, are commensurate with the significant role, responsibilities and activities undertaken.

(d)    **Knowledge, Experience and Skill**. The Monitor and its counsel have significant knowledge, experience and skill in complex restructuring matters.

(e)    **Diligence and Thoroughness Displayed**. The breadth of matters detailed in the Sixth Report and the Monitor's other reports to Court demonstrate the diligence and thoroughness displayed by the Monitor and its counsel throughout the CCAA proceedings.

---

[6] *Bank of Nova Scotia v Diemer*, 2014 ONSC 365 at para 19 (aff'd 2014 ONCA 851).

[7] *Nortel Networks Inc.*, 2022 ONSC 6680 at para 10; Also see *Re Nortel Networks Corporation et al*, 2017 ONSC 673 at paras 15 and 21; also, see *Vantreight v Vantreight*, 2007 BCSC 1345 at para 43 and *Street v Sather Ranch Ltd*, 2021 BCSC 1090 at para 50.

[8] *Bank of Nova Scotia v Diemer*, 2014 ONCA 851 at para 33

(f) **Responsibilities Assumed**. The Monitor, with the assistance of its counsel, assumed significant responsibilities and carried out extensive activities, which are detailed in the Sixth Report.

(g) **Results achieved**. The efforts of the Monitor and its counsel, including the contribution to the completion of several critical steps in these proceedings, were integral to advancing the CCAA proceedings.

(h) **Cost of Comparable Services**. The Monitor and its counsel billed amounts at each firm's standard/regular hourly rates, which are consistent with the hourly rates charged by other firms of comparable size and expertise for the provision of similar services.

30.    Accordingly, the fees and disbursements of the Monitor and its counsel, including the estimate of fees and disbursements to completion of the CCAA proceedings are fair and reasonable in the circumstances and ought to be approved.

## PART 4: MATERIAL TO BE RELIED ON

31.    Affidavit #1 of Aaron Gilbert dated July 18, 2023;

32.    Affidavit #9 of Aaron Gilbert dated March 12, 2024;

33.    The Sixth Report of the Monitor to the Court; and

34.    Such further and other materials as counsel may advise and this Honourable Court may allow.

The Petitioners estimate that the application will take 30 minutes.

TO THE PERSONS RECEIVING NOTICE OF THIS APPLICATION:

Date:    March 12, 2024

Signature of Asim Iqbal
Lawyers for the Petitioners

Click or tap here to enter text.

***To be completed by the court only:***

Order made

[ ]   in the terms requested in paragraphs _____ of Part 1
of this Notice of Application.

[ ]   with the following variations and additional terms:

..............................................................................................................

..............................................................................................................

..............................................................................................................

Date:                                    ..............

...........................................

Signature of   [ ] Judge   [ ] Master

## **EXHIBIT B**

### *Ninth Affidavit of Aaron Gilbert*

This is the 9th affidavit
of Aaron Gilbert in this case
and it was made on March 12, 2024.

**No. S-235084**
**Vancouver Registry**

### IN THE SUPREME COURT OF BRITISH COLUMBIA

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND

IN THE MATTER OF THE *BUSINESS CORPORATIONS ACT*,
S.B.C. 2002, c. 57, AS AMENDED AND THE *BUSINESS CORPORATIONS ACT*, R.S.O.
1990, C. B.16, AS AMENDED

AND

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
BRON MEDIA CORP. AND THE ENTITIES LISTED AT SCHEDULE "A"

PETITIONERS

### AFFIDAVIT OF AARON GILBERT
### (Affirmed March 12, 2024)

I, **AARON GILBERT** of the Town of Anmore in the Metro Vancouver Area in the

Province of British Columbia, **AFFIRM THAT:**

1.  I am the Chairman and Chief Executive Officer of BRON Media Holdings USA Inc.,

    BRON Media Corp., and BRON Media Holdings Intl. Corp., a digital animation and live-

    action production company based and headquartered in British Columbia.

2.  I have personal knowledge of the matters deposed to in this Affidavit except where I depose

    to a matter based on information from an informant I identify, in which case I believe that

    both the information from the informant and the resulting statement are true.

## PART I - INTERPRETATION

3.      The Petitioners at Schedule "A" hereto are collectively referred to herein as the **"Petitioners"** or the **"Company"**.

4.      All references to currency in this Affidavit are references to U.S. dollars, unless otherwise indicated.

## PART II - BACKGROUND

5.      The  background and circumstances giving rise to these proceedings under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**") are described in my previous affidavits and are not repeated here.

6.      On July 19, 2023, the Court granted an initial order under the CCAA in respect of the Petitioners. On July 28, 2023, the Court granted the ARIO (as defined below) and approved a sale and investment solicitation process (the "**SISP**") in respect of the business and/or assets of the Petitioners and the Non-Petitioner Entities.

7.      On January 10th, 2024, I swore my Eighth Affidavit in these CCAA proceedings (the "**Eighth Gilbert Affidavit**"). The Eighth Affidavit sets out the detailed circumstances which led to the Court's approval of a number of critical orders in these CCAA proceedings following completion of the court-approved SISP.

8.      On January 17, 2024, the Court granted a number of orders involving the approval of transactions involving the Petitioners, including the following (collectively, the "**January 17 Orders**"):

(a)    an order, among other things, approving a global settlement between Access Road Capital LLC ("**Access Road**") and Creative Wealth Media Lending LP 2016 ("**CW Lending**");

(b)    an order, among other things, approving a transaction between Access Road and certain of the Petitioners for certain of the Petitioners' assets ("**Access Road AVO**");

(c)    an order approving a transaction between CW Lending, by its general partner Creative Wealth Media GenPar Ltd., as purchaser, and certain of the Petitioners for the vast majority of the Petitioners' assets (the "**CW Lending AVO**"); and

(d)    a Second Amended and Restated Initial Order.

9.    This is my ninth affidavit made in these CCAA proceedings. Copies of each of the affidavits made in these proceedings, as well as orders granted in these CCAA proceedings, are located on Grant Thornton Limited's ("**GT**", and in such capacity, the "**Monitor**") website at the following URL:

https://www.grantthornton.ca/service/advisory/creditor-updates/#Bron-Media-Group.

10.    This Affidavit is sworn in support of the Petitioners' application for an Order ("**Termination Order**"), among other things:

(i)    terminating these CCAA proceedings when (the "**CCAA Termination Time**") the Monitor files with this court a termination certificate (the "**Termination Certificate**");

(ii)    discharging the Monitor as at the CCAA Termination Time;

(iii)    terminating the court-ordered charges made in these CCAA proceedings at the CCAA Termination Time; and

(iv)    extending the stay of proceedings until the earlier of

(1)    the date that Monitor files the Termination Certificate, and

(2)    April 30, 2024.

11.    The Initial Order authorized BRON Media Corp. or any of the Petitioners to act as the foreign representative (in such capacity, the "**Foreign Representative**") in respect of these CCAA proceedings, for the purpose of having the proceedings recognized in the United States pursuant to chapter 15 of title 11 of the United States Code, 11 U.S.C. § 101-1532 and any other foreign legislation ("**U.S. Recognition Proceedings**")

12.    Following this Court's approval of the transactions on January 17, 2024, the Foreign Representative brought a motion in the U.S. Recognition Proceedings, seeking an order recognizing each of the January 17 Orders. The motion was granted and the January 17 Orders were recognized. A copy of the Order of Justice Paul Baisier dated January 31, 2024 is attached as **Exhibit** "**A**".

**PART III - TERMINATION ORDER AND DISCHARGE OF MONITOR**

13.    The sale transactions this court approved on January 17, 2024 have closed. The transaction contemplated by the CW Lending AVO closed on March 8, 2024, and the Monitor filed its closing certificate in respect of that transaction on March 11, 2024. The transaction contemplated by the Access Road AVO closed on March 11, 2024 and the Monitor filed

DocuSign Envelope ID: 1651A876-5195-4114-9705-555B55685E4E

its closing certificate in respect of that transaction on March 12, 2024. These CCAA proceedings have successfully served their purpose.

14.     Subject to certain remaining activities to be completed by the Monitor, as will be detailed in the Monitor's forthcoming report to the Court, the Monitor has completed its duties. It is appropriate at this time to discharge GT in its capacity as the Monitor of the Petitioners at the CCAA Termination Time.

15.     The following court-ordered charges remain against title to the Petitioners' property (collectively the "**Charges**"):

(a)     the Administration Charge;

(b)     the KERP Charge;

(c)     the Interim Lender's Charge; and

(d)     the Directors' Charge.

16.     The Petitioners ask the court to terminate the Charges as of the CCAA Termination Time. Since cash was a purchased asset in the CW Lending sale transaction, amounts secured under the Administration Charge will have to be appropriately secured before the sale transactions close. In that regard, paragraph 6 of the CW Lending AVO authorizes the Petitioners to hold back from the cash to be transferred to CW Lending on closing the following sums:

(a)     the projected operating expenses of the Petitioners and the fees of the Monitor, its counsel and counsel for the Petitioners, all as set out in the cash flow of the Petitioners up

to March 29, 2024 that was appended to the Monitor's Fifth Report (the "**Cash Reserve**"); and

(b)    a further $100,000 to cover fees and expenses of the Monitor, its counsel, and counsel for the Petitioners after March 29, 2024 to complete the proceedings and to have the Monitor discharged (the "**Case Termination Reserve**").

17.    The Petitioners propose to pay the Cash Reserve and the Case Termination Reserve to the Monitor to be held in trust and then disbursed for the purposes described above.  Any remaining portion of the Cash Reserve and Case Termination Reserve that remains after Case Termination occurs will be remitted to CW Lending or the Permitted Assignee.

## PART IV - CONCLUSION

18.    I affirm this Affidavit in support of the Termination Order, and for no other or improper purpose.

AFFIRMED BEFORE ME via video-conference with the deponent in the City of Burnaby, in the Province of British Columbia, and the Commissioner in the City of Mississauga in the Province of Ontario this 12th day of March, 2024

DocuSigned by:

*Aaron Gilbert*
A335BE505EB7422

**AARON GILBERT**

DocuSigned by:

*Monica Faheim*
A927328446B742A...

**MONICA FAHEIM**
A Commissioner for taking Affidavits

DocuSign Envelope ID: 1651A976-5195-4114-9795-555D55685E4F

This is Exhibit "A" referred to in the Affidavit of Aaron Gilbert sworn by Aaron Gilbert of the City of Burnaby , in the Province of British Columbia, before me at the City of Mississauga, in the Province of Ontario, on March 12, 2024 in accordance with O. Reg. 431/20, Administering Oath or Declaration Remotely.

DocuSigned by:

*Monica Faheim*

A3222-28448B742A...

*Commissioner for Taking Affidavits (or as may be)*

**MONICA FAHEIM**

This is the 8th affidavit
of Aaron Gilbert in this case
and it was made on January 10, 2024.

**No. S-235084**
**Vancouver Registry**

### IN THE SUPREME COURT OF BRITISH COLUMBIA

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND

IN THE MATTER OF THE *BUSINESS CORPORATIONS ACT*,
S.B.C. 2002, c. 57, AS AMENDED AND THE *BUSINESS CORPORATIONS ACT*, R.S.O.
1990, C. B.16, AS AMENDED

AND

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
BRON MEDIA CORP. AND THE ENTITIES LISTED AT SCHEDULE "A"

PETITIONERS

**AFFIDAVIT OF AARON GILBERT**
**(Affirmed January 10, 2024)**

I, **AARON GILBERT** of the Town of Anmore in the Metro Vancouver Area in the

Province of British Columbia, **AFFIRM THAT:**

1.    I am the Chairman and Chief Executive Officer of BRON Media Holdings USA Inc.,

BRON Media Corp., and BRON Media Holdings Intl. Corp., a digital animation and live-

action production company based and headquartered in British Columbia.

2.    I have personal knowledge of the matters deposed to in this Affidavit except where I depose

to a matter based on information from an informant I identify, in which case I believe that

both the information from the informant and the resulting statement are true.

## PART I - INTERPRETATION

3.      The table at paragraph 4 below sets forth each of the Petitioners in these proceedings as at the date of this Affidavit, organized by jurisdiction of incorporation, along with other affiliated entities.

4.      The Canadian Petitioners and the U.S. Petitioners are collectively referred to herein as the "**Petitioners**" or the "**Company**".

| BRON GROUP OF COMPANIES | |
|---|---|
| **"Canadian Petitioners"** | BRON Animation Inc.  (British Columbia)<br>BRON Creative Corp. (Ontario)<br>BRON Developments Inc. (British Columbia)<br>BRON Media Corp.  (British Columbia)<br>BRON Media Holdings Intl. Corp.   (British Columbia)<br>BRON Media Holdings USA Inc.  (British Columbia)<br>BRON Releasing Inc.   (British Columbia)<br>BRON Studios Inc.  (British Columbia)<br>BRON Ventures 1 (Canada) Corp. (British Columbia)<br>Canadian Production HoldCos & ProdCos[1] |
| **"U.S. Petitioners"** | BRON Creative USA Corp. (Nevada)<br>BRON Digital USA, LLC  (Delaware)<br>BRON Life USA Inc.   (Delaware)<br>BRON Media Holdings USA Corp. (Delaware)<br>BRON Releasing USA Inc.  (Delaware)<br>BRON Studios USA Inc.  (Nevada)<br>BRON Ventures 1 LLC   (Delaware)<br>BRON Studios USA Developments Inc. (Nevada)<br>US Production HoldCos & ProdCos[2] |

---

[1]    BRON Everest Productions Inc., Fables Productions BC Inc., Gossamer Productions BC Inc., Hench 2 BC Productions Inc., Henchmen Productions Inc., Robin Hood Digital PC BC Inc., and Windor Productions BC Inc. (collectively, the "**Canadian Production HoldCos & ProdCos**").

[2]    Bakhorma, LLC (Washington), Drunk Parents, LLC (New York), Fables Holdings USA, LLC (Delaware), Fables Productions USA Inc. (Delaware), Gossamer Holdings USA, LLC (Delaware), Gossamer Productions USA Inc. (Delaware), Harry Haft Productions, Inc. (New York), Heavyweight Holdings, LLC, previously Harry Haft Films, LLC (Delaware), I Am Pink Productions, LLC (Delaware), Lucite Desk, LLC (Delaware), National Anthem Holdings, LLC (f. k. a. BCDC Holdings, LLC) (Delaware), National Anthem ProdCo Inc. (New Mexico), Oakland Pictures Holdings, LLC (Delaware), Pathway Productions, LLC (Delaware), Robin Hood Digital PC USA Inc. (Delaware), Robin Hood Digital USA, LLC (Delaware), Solitary Holdings USA, LLC (Delaware), Surrounded

| | Welcome to Me, LLC (California) |
|---|---|
| **"UK Non-Petitioner Entities"** | BRON Studios UK Ltd.   (England and Wales)<br>BRON Releasing UK Ltd.  (England and Wales)<br>CMA Productions UK Ltd. (England and Wales)<br>In Good Company Holdings Ltd. (England and Wales)<br>Kid Unknown Holdings Ltd (fka Hunaman Holdings Ltd.) (England and Wales)<br>Neon Club Productions, Ltd. (England and Wales)<br>Shadowplay Series Holdings UK Limited (England and Wales)<br>TDBB Holdings UK Ltd. (England and Wales)<br>Townsend Series Holdings UK Ltd. (England and Wales)<br>Townsend Series Productions UK Ltd. (Grey Door Film Productions Ltd) (England and Wales) |
| **"Non-Petitioner Entities"** | Front Runner Productions, Inc.<br>BRON Creative MG1, LLC<br>BRON Creative WB 1, LLC<br>BRON Labs LLC<br>A Single Shot Movie, LLLP<br>Blackhand Developments Inc.<br>Blackhand Pictures, LLC<br>BRON Next Film Production, LLC (BRON Life, LLC)<br>BRON Pictures Holdings, LLC<br>BRON Subnation Slate 1, LLC<br>Rideg Film Holdings, LLC<br>Brown Amy, LLC<br>Driftless Area, LLC<br>Drunk Parents Production Services Inc.<br>Erostratus LA, LLC<br>Erostratus, LLC<br>Fonzo Production Services Inc.<br>Fonzo, LLC<br>Front Runner, LLC<br>Green Moon Inc.<br>Harmon Films, LLC<br>Harmon Monster Films, Inc.<br>I Saw The Light Movie, LLC<br>I Saw The Light, LLC<br>Layover LLC<br>Mad Solar Productions, LLC<br>Master Cleanse, LLC<br>Meadowland Movie, LLC<br>Meadowland Production Services Inc.<br>My Abandonment LLC<br>My Abandonment Production Services Inc.<br>Needle In A Timestack, LLC<br>October Series Holdings, LLC |

Holdings USA LLC (Delaware), and Surrounded Productions USA Inc. (Delaware) (collectively, the **"US Production HoldCos & ProdCos"**). Surrounded Productions USA Inc. was inadvertently omitted as a Petitioner in Schedule "A" to the Initial Order and the Amended and Restated Initial Order.

DocuSign Envelope ID: 1651A876-5195-4114-9795-555B56685E4F

| |
|---|
| Pangea Cup Holdings, LLC |
| Pangea Cup Productions Inc. |
| Para Productions, LLC |
| Phil Productions, LLC |
| Red Sea LLC |
| Red Sea Productions Inc. |
| Savant Developments Inc. |
| Summerland Holdings, LLC |
| The Good Nurse Films, LLC |
| The Realm Productions USA LLC |
| TMF Productions, LLC |
| Tully Productions, LLC |
| Tumbledown, LLC |
| TWWMD Holdings, LLC |
| TWWMD Productions, Inc. |
| Villains Pictures, LLC |
| Villains Production Services, Inc. |
| Wonder Book Holdings USA, LLC |
| BRON Charitable Foundation, Inc. |
| Hercules BRON Creative Partnership |

5.    All references to currency in this Affidavit are references to U.S. dollars, unless otherwise indicated.

## PART II - BACKGROUND

6.    The background and circumstances giving rise to these proceedings under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**") are described in my previous affidavits and are not repeated here.

7.    On July 19, 2023, the Court granted an initial order under the CCAA in respect of the Petitioners. On July 28, 2023, the Court granted the ARIO (as defined below) and approved a sale and investment solicitation process (the "**SISP**") in respect of the business and/or assets of the Petitioners and the Non-Petitioner Entities.

8.      As discussed in the Fifth Gilbert Affidavit (as defined below), the sole viable – and highest and best – transaction to have materialized in the SISP was the transaction proposed by Creative Wealth Media Lending LP 2016 ("**CW Lending**") pursuant to an asset purchase agreement (the "**CW Lending Purchase Agreement**") between CW Lending, by its general partner, Creative Wealth Media GenPar Ltd., as purchaser, and the Petitioners and Non-Petitioner Entities listed at Schedule "A" to the CW Lending Purchase Agreement, as vendors. Accordingly, following the completion of the SISP and in accordance with its terms, the Petitioners applied for Court approval of the CW Lending Purchase Agreement. The Petitioners' application (the "**Initial Sale Approval Application**") was heard on November 7, 2023 and November 24, 2023 and was supported by, among others, the Monitor (as defined below) and CW Lending.

9.      On November 29, 2023, the Court rendered its decision (the "**November 29 Decision**") in respect of the Initial Sale Approval Application. The Court dismissed the Initial Sale Approval Application, as well as several of the objections to the Initial Sale Approval Application and the cross-application of an ad hoc group of certain investor creditors. A copy of the November 29 Decision is attached as **Exhibit** "**A**" and is also accessible at the following URL: https://canlii.ca/t/k1f78

10.     Following extensive negotiations, the Petitioners, with the support of the Monitor and their senior secured creditors, CW Lending and Access Road Capital LLC ("**Access Road**"), are now prepared to seek approval of a global settlement that allows the Company to consensually divest substantially all of its assets to the parties with the primary economic interest in those assets, and conclude these CCAA proceedings.

11.     This is my eighth affidavit made in these CCAA proceedings. Copies of each of the affidavits made in these proceedings are located on Grant Thornton Limited's (the "**Monitor**") website at the following URL:

https://www.grantthornton.ca/service/advisory/creditor-updates/#Bron-Media-Group.

12.     This Affidavit is made in support of an application for the following relief:

(a)     an order (the "**Global Settlement Approval Order**"):

(i)     approving and authorizing a settlement agreement dated January 10, 2024 (the "**Global Settlement**") among Access Road, Creative Wealth by its general partner, Creative Wealth Media GenPar Ltd., Creative Wealth Media Lending Limited Partnership, by its general partner, Creative Wealth Media Genpar Ltd., LPF Media Asset Acq, Inc., LPF Media Asset Acq, LLC, and LPF  Media Acq, LLC (collectively with CW Lending, the "**CWML Entities**"), and the Petitioners;

(ii)     approving a letter agreement dated December 19, 2023 among Media Res Studio, LLC ("**Media Res**"), Access Road, BRON Ventures 1 LLC ("**BRON Ventures**"), BRON Media Corp., and BRON Studios USA Inc. (the "**Media Res Letter Agreement**") and the transaction contemplated therein;

(iii)     authorizing Media Res to cancel BRON Ventures's 218 units of Media Res that are the subject of the Media Res Letter Agreement; and

      (iv)     approving the distribution of the Media Res Proceeds (as defined below);

(b)     an order (the "**CW Transaction Approval and Vesting Order**"), among other things:

      (i)     approving an amended and restated asset purchase agreement (the "**Amended and Restated CW Lending Purchase Agreement**") between CW Lending by its general partner, Creative Wealth Media GenPar Ltd., as purchaser, and the Petitioners and Non-Petitioner Entities listed at Schedule "A" to the Amended and Restated CW Lending Purchase Agreement (collectively, the "**Vendors**"), as vendors, and the transactions contemplated thereby; and

      (ii)     vesting in CW Lending and/or its permitted assignee, all of the right, title and interest in and to the Purchased Assets (as defined in the Amended and Restated CW Lending Purchase Agreement) free and clear of all claims and encumbrances, other than such permitted encumbrances as provided for in the CW Transaction Approval and Vesting Order;

(c)     an order (the "**CW Lending Assignment Order**"), pursuant to Section 11.3 of the CCAA, approving the assignment to CW Lending and its permitted assignee, LPF Media Asset Acq, LLC of the contracts listed at Schedules "D" and "E" to the draft CW Lending Assignment Order, respectively;

(d)     an order ("**Access Road Transaction Approval and Vesting Order**"), among other things:

(i)      approving an asset purchase agreement (the "**Access Road Purchase Agreement**") entered into between Access Road, as purchaser, and BRON Ventures, BRON Media Holdings USA Inc., and BRON Media Holdings USA Corp. as vendors, and the transactions contemplated thereby (the "**Access Road Transaction**"); and

(ii)     vesting in Access Road and/or its permitted assignee, all of the right, title and interest in and to the Purchased Assets (as defined in the Access Road Purchase Agreement) free and clear of all claims and encumbrances;

(e)     an order (the "**Access Road Assignment Order**"), pursuant to Section 11.3 of the CCAA, approving the assignment to Access Road and its permitted assignee, of the contracts listed at Schedule "D" to the draft Access Road Assignment Order;

(f)     an order (the "**Second ARIO**"), amending and restating the Amended and Restated Initial Order of Justice Gomery dated July 28, 2023 (the "**ARIO**"), among other things:

(i)      converting the following Non-Petitioner Entities that are Vendors under the Amended and Restated CW Lending Purchase Agreement into Petitioners in these CCAA proceedings: Front Runner Productions, Inc.; Brown Amy, LLC; Fonzo Production Services Inc.; Fonzo, LLC; Front Runner, LLC; Green Moon Inc.; Harmon Films, LLC; Harmon Monster Films, Inc.; Needle In A Timestack, LLC; Para Productions, LLC; Red Sea LLC; Red Sea Productions Inc.; Surrounded Productions USA Inc.; Tully Productions, LLC; TWWMD Holdings, LLC; TWWMD Productions, Inc.; Villains

Pictures, LLC; Villains Production Services, Inc.; and October Series Holdings, LLC (the "**Additional Petitioners**");

(ii)     approving five amendments to the debtor-in-possession loan agreement dated July 18, 2023 (the "**DIP Loan Agreement**") made between the Petitioners (including, in certain instances, the proposed Additional Petitioners) and CW Lending (in such capacity, the "**DIP Lender**");

(iii)     removing the UK Non-Petitioner Entities from Schedule "A" to the Second ARIO; and

(iv)     extending the stay of proceedings in favour of the Petitioners and Non-Petitioner Entities up to and including March 29, 2024.

13.     Pursuant to an Order made on December 11, 2023, the stay of proceedings in favour of the Petitioners currently expires on January 26, 2024.

**PART III - GLOBAL SETTLEMENT**

14.     On January 10, 2024, the CWML Entities, Access Road, and BRON, in consultation with the Monitor, entered into the Global Settlement to pave the way for consensual approval of transactions and completion of these CCAA proceedings. A copy of the Global Settlement is attached as **Exhibit** "**B**".

15.     The key terms are as follows:

(a)    the Company will seek court approval of the Global Settlement, the Media Res Letter Agreement and a distribution of the Media Res Proceeds (as defined below) according to an agreed-upon allocation, as described below;

(b)    the Amended and Restated CW Lending Purchase Agreement will be submitted in a form substantially similar to the initial CW Lending Purchase Agreement, except that it will exclude certain assets, namely: (i) Access Road's entitlement to a significant portion of the Media Res Proceeds, (ii) the remaining units of Media Res owned by BRON Ventures; and (iii) BRON Ventures' ownership interests in Emjag Productions, Inc. and Picturestart LLC (collectively, the "**Excluded Assets**");

(c)    the Company will seek a vesting and assignment order transferring to Access Road the Excluded Assets;

(d)    the Company will seek a vesting order approving the Amended and Restated CW Lending Purchase Agreement and transferring to CW Lending and its permitted assignee, the Purchased Assets;

(e)    Access Road will have no further entitlement to receive any payments from the Company or CW Lending in connection with any of the assets proposed to be acquired by CW Lending under the Amended and Restated CW Lending Purchase Agreement; and

(f)    CW Lending and Access Road will mutually release each other.

16.    The Global Settlement is a product of extensive negotiations and concessions to reach a resolution acceptable to the Petitioners, the CWML Entities, Access Road and the Monitor. The Global Settlement provides substantial benefit to the Petitioners, Access Road and CW

DocuSign Envelope ID: 1651A876-5195-4114-9705-555B55685E4F

Lending, as the parties with the primary economic interest in the Petitioners' assets, will enable the consummation of the transactions contemplated by the Amended and Restated CW Lending Purchase Agreement and the Access Road Purchase Agreement, and prevent further deterioration of value by facilitating the termination of these protracted, costly and previously contested CCAA proceedings.

## PART IV - MEDIA RES LETTER AGREEMENT

### A.    Background and Overview

17.    As described in further detail in the fifth affidavit of Aaron Gilbert made on October 24, 2023 (the "**Fifth Gilbert Affidavit**"):

(a)    BRON Ventures owned 248 Class A Common Units in Media Res ("**Media Res Units**");

(b)    pursuant to a Transactions and Settlement Agreement dated October 27, 2021 (the "**Transactions and Settlement Agreement**"), BRON Ventures agreed to sell to Media Res, 220 out of 248 units of Media Res for an aggregate purchase price of USD $7,557,075;

(c)    BRON Ventures transferred two Media Res Units to Media Res contemporaneously with the execution of the Transactions and Settlement Agreement on October 27, 2021;

(d)    Media Res was required to repurchase the remaining 218 Media Res Units, in one or a series of subsequent closings (each a "**Subsequent Closing**") by December 31, 2022; however, Subsequent Closings could occur after December 31, 2022 subject to any outstanding purchase price of the Media Res Units bearing simple interest at 8% per

annum. Approximately USD $7,433,374.32 of the Purchase Price remained left to be paid in Subsequent Closings;

(e)     pursuant to an acknowledgment agreement dated October 29, 2021, the Company agreed that any payments made by Media Res would be made directly to Access Road on behalf of the Company; and

(f)     since no Subsequent Closings had occurred (as of the date of the proposed CW Lending Purchase Agreement), BRON Ventures continued to hold 248 Media Res Units.

18.     On December 13, 2023, counsel for Media Res advised the Company and the Monitor that it had potential financing to complete the Subsequent Closing and pay the remaining purchase price (plus interest) under the Transactions and Settlement Agreement.

19.     On December 19, 2023, Media Res, Access Road, BRON Ventures, BRON Media Corp., and BRON Studios USA Inc. entered into the Media Res Letter Agreement to memorialize a transaction to complete a Subsequent Closing to repurchase the remaining 218 Media Res Units from BRON Ventures.  The Media Res Letter Agreement was extensively negotiated and included commercial concessions including the mutual exchange of releases among Access Road and Media Res. A copy of the Media Res Letter Agreement is attached as **Exhibit** "**C**".

20.     Pursuant to the Media Res Letter Agreement, Media Res paid the Monitor, in trust, $7,485,366.35, plus accrued interest, for a total of USD $8,069,430.00 (the "**Media Res Proceeds**"). The Monitor has received and continues to hold this amount.

21.     It is a condition of the Media Res Letter Agreement that the Company seek the Court's approval of it and authorization for Media Res to cancel the Media Res Units it re-purchased. Such court approval is also a condition of the Global Settlement and the Amended and Restated CW Lending Purchase Agreement.

**B.      Allocation and Distribution of Proceeds from the Subsequent Closing**

22.     It is a term of the Global Settlement that the Company seek court authorization to distribute the Media Res Proceeds in accordance with the terms of the Global Settlement as follows:

     (a)      to the DIP Lender, USD$1,100,000 in permanent reduction of the obligations under the DIP Loan Agreement; and

     (b)      to Access Road, the balance of the Media Res Proceeds in permanent reduction of the amounts owing to Access Road.

23.     The foregoing distribution is necessary and appropriate at this time given that the DIP Lender and Access Road are the only two parties with an interest in the Media Res Proceeds and such distributions are a condition precedent to the effectiveness of the negotiated resolutions reflected in the Global Settlement, the Amended and Restated CW Lending Purchase Agreement, and the Access Road Purchase Agreement.

**PART V - AMENDED AND RESTATED CW LENDING PURCHASE AGREEMENT**

24.     This section and section VII of my affidavit should be read in conjunction with the Fifth Gilbert Affidavit which summarizes in detail the terms of the original CW Lending Purchase Agreement and the reasons for which the Petitioners believe its approval and the various Court orders required to effectuate the transactions contemplated thereby are

appropriate in the circumstances and in the best interests of the Petitioners and their stakeholders. I adopt and repeat such details and reasons herein. A copy of the Fifth Gilbert Affidavit is attached as **Exhibit** "**D**".

**A.    Transaction Overview**

25.    The parties have agreed to an alternative transaction, which is memorialized in the Amended and Restated CW Lending Purchase Agreement, a copy of which is attached as **Exhibit** "**E**".

26.    A redline showing the changes made to the CW Lending Purchase Agreement, as compared to the Amended and Restated CW Lending Purchase Agreement, is attached as **Exhibit** "**F**". The Amended and Restated CW Lending Purchase Agreement is substantially similar to the original CW Lending Purchase Agreement other than its exclusion of the Excluded Assets that will be transferred to Access Road.

27.    Below is a table summarizing the commercial terms of the Amended and Restated CW Lending Purchase Agreement (all capitalized but undefined terms have the meaning ascribed to them in the Amended and Restated CW Lending Purchase Agreement).

| CW Lending Asset Purchase Agreement | |
|---|---|
| **Key Terms** | **Asset Purchase Agreement** |
| Purchaser | Creative Wealth Media Lending LP 2016, by its general partner, Creative Wealth Media GenPar Ltd. |
| Vendors | **Canadian Vendors:**<br><br>BRON Animation Inc. (British Columbia)<br>BRON Creative Corp. (Ontario)<br>BRON Developments Inc. (British Columbia)<br>BRON Media Corp. (British Columbia) |

BRON Media Holdings Intl. Corp. (British Columbia)
BRON Media Holdings USA Inc. (British Columbia)
BRON Releasing Inc. (British Columbia)
BRON Studios Inc. (British Columbia)
BRON Ventures 1 (Canada) Corp. (British Columbia)
BRON Everest Productions Inc. (Ontario)
Fables Productions BC Inc. (British Columbia)
Gossamer Productions BC Inc. (British Columbia)
Hench 2 BC Productions Inc. (British Columbia)
Windor Productions BC Inc. (British Columbia)
Robin Hood Digital PC BC Inc. (British Columbia)

**US Vendors:**

Bakhorma, LLC (Washington)
BRON Creative USA, Corp. (Nevada)
BRON Digital USA, LLC (Delaware)
BRON Life USA Inc. (BRON Legacy USA Inc.) (Delaware)
BRON Media Holdings USA Corp. (Delaware)
BRON Releasing USA Inc. (Delaware)
BRON Studios USA Development Inc. (Nevada)
BRON Studios USA Inc. (Nevada)
BRON Ventures 1 LLC (Delaware)
Brown Amy, LLC (Nevada)
Drunk Parents, LLC (New York)
Fables Holdings USA, LLC (Delaware)
Fables Productions USA Inc. (Delaware)
Fonzo Production Services Inc. (Louisiana)
Fonzo, LLC (Nevada)
Front Runner, LLC (Nevada)
Front Runner Productions, Inc. (Georgia)
Gossamer Holdings USA, LLC (Delaware)
Gossamer Productions USA Inc. (Delaware)
Green Moon Inc. (Washington)
Harmon Films, LLC (New York)
Harmon Monster Films, Inc. (New York)
Harry Haft Productions, Inc. (New York)
Heavyweight Holdings, LLC (previously Harry Haft Films, LLC) (Delaware)
I Am Pink Productions, LLC (Delaware)
Lucite Desk, LLC (Delaware)
Needle In A Timestack, LLC (Delaware)
Oakland Pictures Holdings, LLC (Delaware)
October Series Holdings, LLC (Delaware)
Para Productions, LLC (Nevada)
Pathway Productions, LLC (Delaware)
Red Sea LLC (Nevada)
Red Sea Productions Inc. (Nevada)

|  | Robin Hood Digital PC USA Inc. (Delaware)<br>Robin Hood Digital USA, LLC (Delaware)<br>Solitary Holdings USA, LLC (Delaware),<br>Surrounded Holdings USA LLC (Delaware)<br>Surrounded Productions USA Inc. (Delaware)<br>Tully Productions, LLC (Nevada)<br>TWWMD Holdings, LLC (Delaware)<br>TWWMD Productions, Inc. (Nevada)<br>Villains Pictures, LLC (Nevada)<br>Villains Production Services, Inc. (New York)<br>Welcome to Me, LLC (California) |
|---|---|
| Purchased Assets | All of the Vendors' and, if applicable, the Vendor Controlled Subsidiaries' right, title, benefit and interest in listed assets, including, among other things:<br><br>1. all cash on hand, cash equivalents, bank or other deposits (including security deposits), prepaid expenses, prepayments, deferred assets, refunds, credits or overpayments, except for the Settled Excluded Media Res Proceeds;<br><br>2. all Books and Records;<br><br>3. all tangible and intangible personal property;<br><br>4. all Projects[3], all versions and/or episodes thereof in any and all stages of development, production and/or post-production, all rights throughout the world therein and thereto, and all properties and things of value pertaining to such Projects, including all rights of every kind and nature in and to the literary or other works and/or other rights upon which any Project is or may be based;<br><br>5. all rights in and to any musical compositions and/or sound recordings whether used on Projects or otherwise;<br><br>6. all Accounts Receivable;<br><br>7. all Assumed Contracts;<br><br>8. all Intellectual Property owned by or licensed to any of the Vendors;<br><br>9. the proceeds of any and all refunds, credits and/or other benefits that may be due to the Vendors from Canada Revenue Agency, from any provincial tax authorities or any equivalent authorities at any level of government in any other jurisdictions in which the Vendors operate; |

---

[3] In the CW Lending Purchase Agreement, "Projects" means all protectable works, including, without limitation, motion pictures; audio, visual, and audiovisual works, interactive works, development properties and all literary and written works.



| | |
|---|---|
| | 10. all claims, actions, causes of action, indemnities, warranties, guarantees, rights of recovery, rights of set-off and rights of recoupment of the Vendors; and |
| | 11. all of the issued and outstanding shares in the capital, equity securities or membership interests or units, of the following entities, including any securities convertible into or options, equity-based awards or other rights, agreements or commitments that are convertible into or exchangeable for such shares, membership interests or units, or any other securities: NOW//with Ventures LLC and VideoShop; Epic Story Media Inc.; Mad Solar Productions, LLC; Blackhand Pictures, LLC; Little Lamb Productions, Inc.; and Subnation Media Inc. |
| | 12. all partnership interests or units of Hercules-Bron Creative Partnership, including rights agreements or commitments that are convertible into or exchangeable for such partnership interests or units; |
| | 13. all Warranties; |
| | 14. all Transferred Permits; |
| | 15. all software and/or computer programs, software code and other electronic data pertaining to the Purchased Assets; and |
| | 16. certain enumerated Contracts. |
| Assumed Liabilities | Subject to further qualifications in the CW Lending Purchase Agreement: <br><br> 1. all debts, Liabilities and obligations under the Assumed Contracts (to the extent assigned or transferred to CW Lending on Closing) for the period from and after the Closing Time; <br><br> 2. payment of Cure Costs in respect of any Consent Required Contract; <br><br> 3. all debts, Liabilities and obligations arising from ownership and use of the Purchased Assets for the period from and after the Closing Time; <br><br> 4. the Priority Indebtedness; and <br><br> 5. all obligations owing from any Vendor(s) to any Guild(s) arising from a collective bargaining agreement or collection account management agreement. |
| Purchase Price | Exclusive of Transfer Taxes, (1) a credit bid in the amount of: the Interim Lender Debt, BRON Media Debt, Robin Hood Debt, Solitary Debt, Surrounded Debt, and an amount equal to the Assumed Liabilities as at the Closing Time; and (2) a cash payment of $9,500. |

| Transaction Structure | Asset purchase. |
|---|---|
| Outside Date for Closing | February 23, 2024, or such later date and time as the Vendors, with the consent of the Monitor, and CW Lending may agree to in writing. |
| Key Conditions to Closing | Subject to further qualifications in the CW Lending Purchase Agreement: <br><br> 1. an amendment to the DIP Loan Agreement, among other things, adding the Additional Petitioners entities as "Borrowers" and extending the maturity date to February 23, 2024; <br><br> 2. this Court's issuance of the Global Settlement Approval Order; <br><br> 3. this Court's issuance of the CW Transaction Approval and Vesting Order; <br><br> 4. this Court's issuance of the Second ARIO; <br><br> 5. the U.S. Court's issuance of the U.S. Recognition Orders; <br><br> 6. delivery of the executed Monitor's Certificate; <br><br> 7. the entry by the parties into the Transition Agreement; <br><br> 8. this Court's issuance of the Assignment Order; <br><br> 9. CW Lending and the Vendors delivering their respective closing deliverables; <br><br> 10. the Stay of proceedings, Initial Order, SISP Order, and Final Recognition Order shall have remained in full force and effect; and <br><br> 11. the CCAA Charge Amount shall have been pre-funded pursuant to the DIP Loan Agreement or otherwise satisfied from the Vendors' cash on hand. |

28.     Substantially all of the film and television projects which constitute the Purchased Assets are subject to Collection Account Management Agreements ("**CAMAs**"). Under the Amended and Restated CW Lending Purchase Agreement, CW Lending will only assume the applicable Vendor's right, title and interest under and in the applicable CAMAs. Therefore, the transaction is not intended to affect the rights of other parties to the CAMAs

being assumed by CW Lending under the Amended and Restated CW Lending Purchase Agreement.

29.     The Petitioners are of the view that the transaction contemplated under the Amended and Restated CW Lending Purchase Agreement is appropriate in the circumstances and provides the highest and best value for the Purchased Assets to the Petitioners and their stakeholders available in the circumstances. I understand that the Monitor and Access Road support the approval of the Amended and Restated CW Lending Purchase Agreement and the granting of the CW Transaction Approval and Vesting Order.

## B.      Assignment Order

30.     The Amended and Restated CW Lending Purchase Agreement is substantially the same as the original CW Lending Purchase Agreement with the exception of the aspects described above. The transaction continues to contemplate the assignment to CW Lending (or its permitted assignee) of certain contracts that require the consent of the counterparty to such contract or purport to prohibit the assignment thereof. These contracts are scheduled to the proposed Assignment Order (the "**Assigned Contracts**"). They are integral components of the Purchased Assets and were marketed for sale in the SISP.

31.      The Amended and Restated CW Lending Purchase Agreement is conditional upon an Order from this Court assigning to CW Lending and its permitted assignee the rights and obligations of the Vendors under the Assigned Contracts for which a consent, approval or waiver necessary for the assignment has not been obtained. The proposed assignment of the Assigned Contracts is therefore essential to closing the proposed transaction.

32.     The efforts of the Petitioners to obtain consents from the applicable counterparties of the Assigned Contracts, the nature of the Assigned Contracts, and evidence relating to CW Lending's and its permitted assignee's ability to perform any obligations thereunder, are set out at paragraphs 59 to 63 of the Fifth Gilbert Affidavit. Additional details concerning CW Lending's and its permitted assignee's ability and wherewithal to assume, perform, discharge and pay when due all debts, liabilities and obligations under the Assigned Contracts, including those requiring counterparty consent to assignment are set out in First Affidavit of Richard McConnell sworn on November 1, 2023 (the "**McConnell Affidavit**"). A copy of the McConnell Affidavit (without exhibits) is attached as Exhibit "**G**".

33.     I understand that the Monitor supports the granting of the proposed Assignment Order.

34.     No additional consents have been received since the Fifth Gilbert Affidavit.

## PART VI - ACCESS ROAD TRANSACTION APPROVAL AND VESTING ORDER

35.     Under the Global Settlement, at paragraph 6, the Company agreed to transfer to Access Road the Excluded Assets. Subject to the Charges (as defined in the ARIO), Access Road is the senior secured creditor of BRON Ventures and has a first priority security interest in the Excluded Assets. All of the Excluded Assets were subject to extensive marketing under the Court-approved SISP and no satisfactory transaction (other than with CW Lending) materialized in respect of such assets.

36.     The Access Road Purchase Agreement is the product of extensive negotiations between the parties with an economic stake in the Excluded Assets.

37.    Among other things, as noted above, Access Road's agreement to the Global Settlement will result in (a) the consensual allocation of priority CCAA charges to the Excluded Assets; (b) the support of Access Road for the approval of the CW Lending Purchase Agreement including the consensual release of Access Road's security in and to the assets of the Petitioners subject to such agreement; (c) the mutual release of claims among Access Road and CW Lending; and (d) the implementation of a framework for an orderly, timely, and cost-efficient completion of the Petitioners' restructuring as agreed to by the Petitioners' primary secured creditors and economic stakeholders.

38.    In addition to the Global Settlement, and in furtherance thereof, the terms of the Access Road Transaction are documented in (a) the Access Road Purchase Agreement, a copy of which is attached as **Exhibit** "**H**"; (b) the Access Road Transaction Approval and Vesting Order; and (c) the Access Road Assignment Order. The terms upon which the Excluded Assets are being transferred to Access Road are substantially similar to those upon which CW Lending is acquiring the CW Lending Purchased Assets taking into account differences in the nature and scope of the assets subject to each transaction. Redlines comparing (a) the Access Road Purchase Agreement to the CW Lending Purchase Agreement; (b) the Access Road Transaction Approval and Vesting Order to the CW Transaction Approval and Vesting Order; and (c) Access Road Assignment Order to the CW Lending Assignment Order, are attached for ease of reference as **Exhibits** "**I**", "**J**", and "**K**".

39.    Access Road is the sole secured creditor of the owner of the Excluded Assets, BRON Ventures, and a material creditor of the Petitioners with long-standing and detailed knowledge of the Petitioners and their business including the Excluded Assets. Access

Road is a subsidiary of The Forest Road Company, LLC ("**Forest Road**"), a US-based investment and banking firm that, among other things, specializes in investments in film, independent film, film tax credits, and distribution. Forest Road is the majority owner of two operating businesses in the media and entertainment sector: (a) Vertical Entertainment, a leading global independent distributor releasing films across all mediums, and (b) TPC (f/k/a Three Point Capital), a film-finance and services company with lending, servicing, brokerage and accounting capabilities that provides multi-faceted financial solutions for content creators tailored to specific projects and needs.

40.    I do not believe any party is being prejudiced by this Court's approval of the transfer of the Excluded Assets to Access Road pursuant to the Global Settlement and in partial reduction of the amounts owing to Access Road.

41.    Following the completion of the Global Settlement, Access Road will continue to suffer a shortfall. Access Road asserts claims against certain of the Company's subsidiaries in the United Kingdom ("**UK**"), which are under UK administration. I understand that Access Road will continue to assert its claims (as reduced by the recoveries achieved in these CCAA proceedings) in those proceedings as a creditor of those UK entities. The amounts that Access Road may be entitled to claim against the UK entities will be reduced by the portion of the Media Res Proceeds received by Access Road pursuant to the Global Settlement and the Credit Reduction Amount contemplated by the Access Road Purchase Agreement.

42.    I understand that the Monitor and CW Lending support the transfer of the Excluded Assets to Access Road pursuant to the Access Road Purchase Agreement and the Global Settlement.

## PART VII - SECOND AMENDED AND RESTATED INITIAL ORDER

### i.    Additional Petitioners

43.    Each of the Additional Petitioners is a wholly-owned subsidiary of the Company.

44.    The Company seeks to add the Additional Petitioners as Petitioners in the CCAA proceedings and as "Borrowers" under the DIP Loan Agreement. Such additions are conditions precedent to the Amended and Restated CW Lending Purchase Agreement.

45.    The most recent unaudited unconsolidated financial statements (some of which include cost reporting) of the Additional Petitioners were filed and included at Appendix "5" to the Monitor's Supplement to the Third Report dated November 3, 2023.

46.    The Additional Petitioners are insolvent. In the November 29 Decision, this Court held at paragraph 52 that the 19 Additional Petitioners were "…project based entities…without visible means to continue paying expenses as they come due".

47.    The addition of the Additional Petitioners as Petitioners in these CCAA proceedings and as "Borrowers" under the DIP Loan Agreement is necessary to allow the Company to pay the filing fees and professional fees required to complete the steps to convey the Additional Petitioners' assets under the Amended and Restated CW Lending Purchase Agreement.

DocuSign Envelope ID: 1651A876-5195-4114-9795-555B556685E4F

48.     The SISP expressly made available for sale the assets of the Additional Petitioners. No acceptable bids were received in respect of these assets, other than CW Lending's revised bid. The majority of the Additional Petitioners are U.S. entities, all of whom have assets in Canada by way of funds held by Canadian counsel to the Petitioners.

### ii.     Amendments to the DIP Loan Agreement

49.     The Petitioners have entered into the following amendments to the DIP Loan Agreement (collectively, the "**Amendments to the DIP Loan Agreement**"):

(a)     a first amendment dated October 17, 2023;

(b)     a second amendment dated November 8, 2023;

(c)     a third amendment dated November 22, 2023;

(d)     a fourth amendment dated November 28, 2023; and

(e)     a fifth amendment dated December 11, 2023 (the "**Fifth DIP Amendment**").

50.     The primary purpose of the Amendments to the DIP Loan Agreement was to extend the maturity date to prevent an immediate event of default under the DIP Loan Agreement and to effectuate the transactions contemplated by the CW Lending Purchase Agreement and the Amended and Restated CW Lending Purchase Agreement. The most recent amendment, among other things, extends the maturity date to February 23, 2024.

51.     The Company seeks this Court's approval of the Amendments to the DIP Loan Agreement. A copy of each of the Amendments to the DIP Loan Agreement are attached as **Exhibit**

DocuSign Envelope ID: 1651A876-5195-4114-9795-555B55685E4F

"**L**". Approval of the Fifth DIP Amendment is a condition of the Amended and Restated CW Lending Purchase Agreement.

### iii.    Stay Extension Request

52.    The Petitioners have acted and continue to act in good faith and with due diligence to, among other things: consult with their stakeholders, in particular Access Road and CW Lending, in consultation with the Monitor; identify an alternative transaction; prepare and finalize the Amended and Restated CW Lending Purchase Agreement; finalize a transaction with Media Res in respect of the Media Res Units; negotiate and achieve a settlement with Access Road and the CWML Entities; and maintain the human resources necessary to complete an alternative transaction.

53.    The current stay of proceedings expires on January 26, 2024. The Petitioners seek an extended stay period up to and including March 29, 2024 to allow time for the Company, CW Lending and Access Road to seek recognition in the United States of the transaction approval orders (if granted), complete the transactions for which approval is sought on this application, and thereafter, bring an application to terminate these CCAA proceedings.

54.    Attached as **Exhibit** "**M**" is a copy of the most updated cash flow forecast prepared by the Monitor for the period ending March 29, 2024.

## PART VIII - NEXT STEPS IN CCAA PROCEEDING

55.    At the conclusion of the proposed extended stay period, it is expected that the proposed transaction will be complete and recognition in the United States of the proposed orders,

as required, will have been obtained. At that time, the Company intends to return to Court

to seek the following relief:

(a)    the termination of these CCAA proceedings;

(b)    the discharge of Grant Thornton Limited as Monitor of the Company; and

(c)    a court-ordered release in favour of the Petitioners' officers and directors.

56.    I affirm this Affidavit in support of the Global Settlement Approval Order, the CW

Transaction Approval and Vesting Order, the Second ARIO, the CW Lending Assignment

Order, the Access Road Assignment Order, and the Access Road Transaction Approval

and Vesting Order, and for no other or improper purpose.

AFFIRMED BEFORE ME via video-conference
with the deponent in the City of Burnaby, in the
Province of British Columbia, and the
Commissioner in the City of Mississauga in the
Province of Ontario this 10th day of January, 2024

**AARON GILBERT**

**MONICA FAHEIM**
A Commissioner for taking Affidavits

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| In re: | Chapter 15 |
| BRON Media Holdings USA Corp., *et al*., | Case No. 23-56798-pmb |
| Debtors in a Foreign Proceeding. | Jointly Administered |

**CERTIFICATE OF SERVICE**

This is to certify that on this day I have filed the foregoing *Notice of Filing of (i) Notice of Application and (ii) Ninth Affidavit of Aaron Gilbert* (the "Notice") using the Bankruptcy Court's Electronic Case Filing program which sent a notice of and an accompanying link to the Notice to the following parties who have appeared in this case under the Bankruptcy Court's ECF Program:

- **Bryan E. Bates**    bbates@phrd.com
- **Kennedy Bodnarek**    kbodnarek@phrd.com
- **Alison Elko Franklin**    Alison.Franklin@gtlaw.com, fieldss@gtlaw.com
- **Brian P. Hall**    bhall@sgrlaw.com, sgr.notifications@gmail.com
- **Michael F. Holbein**    mholbein@sgrlaw.com
- **Walter E. Jones**    wjones@balch.com, fednoticesatl@balch.com
- **David B. Kurzweil**    kurzweild@gtlaw.com, brattons@gtlaw.com
- **Louis G. McBryan**    lmcbryan@mcbryanlaw.com, alepage@mcbryanlaw.com
- **Office of the United States Trustee**    ustpregion21.at.ecf@usdoj.gov
- **Matthew Petrie**    petriem@gtlaw.com
- **Patrick Silloway**    psilloway@balch.com, ddaley@balch.com
- **J. Nevin Smith**    tpauley@smithconerly.com, jsmith@smithconerly.com;R40523@notify.bestcase.com

This 14th day of March, 2024.

**JONES & WALDEN LLC**

*/s/ Cameron M. McCord*
Cameron M. McCord
Georgia Bar No. 143065
699 Piedmont Ave, NE
Atlanta, Georgia 30308
(404) 564-9300
cmccord@joneswalden.com
*Counsel for Debtors and Foreign Representative*